

## Arnold & Itkin LLP
### TRIAL LAWYERS

June 22, 2015

Mollie F. Benedict                                    **By Fax  (213) 430-3409**
Joshua J. Wes                                         **and US Mail**
Lauren H. Gragin
TUCKER ELLIS LLP
515 S. Flower Street, 42nd Floor
Los Angeles, CA  90071

Re:    Case No. BC531848; **Xochilt Robinson et. al. v. Johnson & Johnson et. al.**;
JCCP 4733, Transvaginal Vaginal Mesh Products Cases; Superior Court for
the State of California for the County of Los Angeles, Central Civil West

Dear Counsel:

At the hearing last week, you indicated that you planned to remove this case, once
again to federal court if Judge Highberger granted your motion for severance.  We have spent
a considerable amount of time reviewing the law in the Ninth Circuit and the facts of this
case.  It is abundantly clear that the Order issued by Judge Highberger does not provide any
new basis for removal or federal jurisdiction.  Any attempt to remove these cases to federal
court would be improper, untimely, and done without a valid basis in law or fact.

If you attempt to remove my clients' claims to federal court, Plaintiffs will respond
with an immediate and appropriate motion to remand and will seek sanctions for any and all
attorney's fees and costs associated with the improper removal.  Should you chose to move
forward with removal, please consider this letter notice of our opposition to removal and
notice of intent to file an immediate remand and motion for sanctions in satisfaction of our
meet and confer requirements.

Sincerely,

Jason A. Itkin

JAI/tcp

cc:    Steve Mostyn
       Mark Sparks
       Paul Kiesel


**EXHIBIT 1**

5

6009 Memorial Drive  •  Houston, TX 77007  •  Phone 713.222.3800  •  Toll Free 866.222.2606  •  Fax 713.222.3850  •  www.arnolditkin.com

```
        ********************
        *** FAX TX REPORT ***
        ********************

             TRANSMISSION OK

   JOB NO.                 0349
   DESTINATION ADDRESS     912134303409
   SUBADDRESS
   DESTINATION ID
   ST. TIME                06/22 17:00
   TX/RX TIME              01'01
   PGS.                    2
   RESULT                  OK
```

# ARNOLD & ITKIN LLP

**A REGISTERED LIMITED LIABILITY PARTNERSHIP**
**ATTORNEYS AT LAW**
**5 HOUSTON CENTER**
**1401 MCKINNEY STREET, SUITE 2550**
**HOUSTON, TEXAS 77010**
**(713) 222-3800**
**(713) 222-3850 (FAX)**
**www.arnolditkin.com**

FROM:      Teresa Peebles
DATE:      June 22, 2015
CLIENT #:  226042

TOTAL # OF PAGES,
INCLUDING COVER      2

[X] Machine Confirm

| | TO | COMPANY | FAX # | CONFIRM # |
|---|---|---|---|---|
| 1 | Mollie Benedict<br>Joshua Wes<br>Lauren Gragin | TUCKER ELLIS | 213/430-3409 | |
| 2 | | | | |

| MESSAGE |
|---|
| |

## NOTICE OF CONFIDENTIALITY

The information contained in and transmitted with this fax is

1.  **SUBJECT TO THE ATTORNEY-CLIENT PRIVILEGE;**
2.  **ATTORNEY WORK PRODUCT; or**
3.  **CONFIDENTIAL.**

It is intended only for the individual or entity designated above. Any distribution, copying, or use of or reliance upon the information contained in and transmitted with this fax by or to anyone other than the recipient designated above by the sender is *unauthorized* and *strictly prohibited*. If you have received this fax in error, please notify Arnold & Itkin ... ce at (713) 222-3800, immediately. Any fax erroneously transmitted to you should be immediately returned to the sender by U.S. Mail or, if authorization is granted by the sender, destroyed.

**EXHIBIT**
**1**

**An original hard copy of this transmission will not be sent separately.**

ORIGINAL

**FILED**
Superior Court Of California
County Of Los Angeles

**DEC 30 2013**

Sherri R. Carter, Executive Officer/Clerk
By _Kristina Vargas_, Deputy
Kristina Vargas

1  Thomas v. Girardi, SBN 36603
2  Amy F. Solomon, SBN 140333
   GIRARDI | KEESE
3  1126 Wilshire Boulevard
4  Los Angeles, California 90017
   Telephone:    (213) 977-0211
5  Facsimile:    (213) 481-1554

6  Kurt B. Arnold Texas SBN 24036150
7  Jason A. Itkin Texas SBN 24032461
   Noah M. Wexler
8  ARNOLD & ITKIN LLP
   1401 McKinney Street, Suite 2550
9  Houston, Texas 77010
10 Telephone:    (713) 222-3800
   Facsimile:    (713) 222-3850

11
12 J. Steve Mostyn SBN 00798389
   The Mostyn Law Firm
13 3810 West Alabama Street
   Houston, TX 77027
14 Telephone:    (713) 861-6616
15 Facsimile:    (713) 861-8084

16 Attorney(s) For: Plaintiff(s)

17

18          SUPERIOR COURT OF THE STATE OF CALIFORNIA

19                     COUNTY OF LOS ANGELES

20 XOCHILT ROBINSON; THERESA      )   CASE NO.   **BC531848**
21 BARNES; PATRICIA GIBBS; KELLY  )
   BRADLEY-LERMA; JOANN NUNES;    )   **COMPLAINT FOR DAMAGES AND**
22 PHYLLIS GOODMAN; DINA          )   **DEMAND FOR JURY TRIAL**
   GUASE; JUDY MAY; WILHELMINA    )
23 NEWMAN; PAMELA STEWART;        )   1. Negligence & Negligence Per Se;
24 IRENE TOBIN; CYNTHIA           )   2. Design Defect;
   TORTORICI; BONNIE HAND;        )   3. Manufacturing Defect;
25 FLORENCE BUCHANAN; VENITA      )   4. Failure to Warn;
26 MASTERS; BIBIANA QUIAMBAO;     )   5. Breach of Implied Warranties; and
   LISHA MCMILLAN; CAROLYN        )   6. Gross Negligence
27 BLACKMER; JANE HEWLETT;        )
28 ILHAM DAGON; SANDRA            )
   HAMANN; DONNA PEARSON;         )

**EXHIBIT**

**2**

1

**COMPLAINT FOR DAMAGES**

|     |                                                        |     |
| --- | ------------------------------------------------------ | --- |
| 1   | RUTH GAUNT; BEVERLY                                     | )   |
|     | TINKHAM; SARA CARMONA;                                  | )   |
| 2   | JOYCE REAVIS; JANICE HIRD;                              | )   |
| 3   | GEORGINA VOKATY; DAWN                                   | )   |
|     | CUNNINGHAM; PAMELA PEELE;                               | )   |
| 4   | MARY EDWARDS; VICKIE                                    | )   |
| 5   | SKELTON; MARY FRIEL; MARIE                              | )   |
|     | PARNELL; MARIAN MOXLEY;                                 | )   |
| 6   | MALLAH BUELL; SHIRLEY                                   | )   |
| 7   | STEWART; SHIRLENE HUFFMAN;                              | )   |
|     | SUSAN SCHURICHT; VALENTINE                              | )   |
| 8   | SCHULER; LINDA BERRY; TAMMY                             | )   |
| 9   | PIAZZA; MARTHA DAVIS; MARY                              | )   |
|     | KATUIN; JUDITH FESLER; SHARON                           | )   |
| 10  | LOUGHMAN; TRACY MULLER;                                 | )   |
| 11  | AVA KRUM; LINDA WALTON;                                 | )   |
|     | HILDEGARD MILEUSNIC;                                    | )   |
| 12  | MARGARET DULEY; BOBBIE JO                               | )   |
| 13  | RENUCCI; ANGELA MCCASKELL;                              | )   |
|     | LAURI KOTZEN; MARIE WICK;                               | )   |
| 14  | MARCILLE MILLER; SHERRY                                 | )   |
| 15  | ROBERTS; GWEN PELTIER; MERRY                            | )   |
|     | BREEDEN; MEDINA OMEROVIC;                               | )   |
| 16  | NOLA PIOTROSWSKI; LISA                                  | )   |
| 17  | MURPHY; SERENA COOVERT;                                 | )   |
|     | REGINA WEST; MAIDA NAQUIN;                              | )   |
| 18  | MARY ORSI AND JADA SPANGLER                            | )   |
| 19  |                                                        | )   |
|     |      Plaintiffs,              | )   |
| 20  | vs.                                                    | )   |
| 21  |                                                        | )   |
|     | JOHNSON & JOHNSON, a New Jersey                        | )   |
| 22  | Corporation; ETHICON, INC., a New                     | )   |
| 23  | Jersey Corporation; ETHICON, LLC, a                   | )   |
|     | Limited Liability Company; and DOES                   | )   |
| 24  | 1 through 500, inclusive,                              | )   |
| 25  |                                                        | )   |
|     |     Defendants.                   | )   |
| 26  | _____                  | )   |
| 27  |                                                        |     |
| 28  |                                                        |     |

**EXHIBIT**

**2**  2

**COMPLAINT FOR DAMAGES**

8

### Plaintiffs' Original Complaint

Plaintiffs, as identified in further detail below, bring this action for damages against Defendants, as identified in further detail below, and would show the Court as follows:

### I.

### Parties

**A.**    **Plaintiffs**

1.    At all relevant times, Plaintiffs resided in the United States of America or its territories. Plaintiffs include women who had Defendants' Mesh Products implanted in their bodies. There are a total of sixty-six (66) Plaintiffs bringing claims in this action.

2.    As a result of Defendants' intentional and coordinated conduct, Plaintiffs were implanted with Defendants' defective and dangerous Mesh Products. Plaintiffs' use of Defendants' Mesh Products caused Plaintiffs' injuries and resulting damages. As pled with additional particularly herein, Defendants' Mesh Products were defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with their use.

3.    Plaintiff Xochilt Robinson is an adult female resident and citizen of California who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

4.    Plaintiff Theresa Barnes is an adult female resident and citizen of California who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

5.    Plaintiff Patricia Gibbs is an adult female resident and citizen of California who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

EXHIBIT

**2**    3

**COMPLAINT FOR DAMAGES**

6.      Plaintiff Kelly Bradley-Lerma is an adult female resident and citizen of California who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

7.      Plaintiff Joann Nunes is an adult female resident and citizen of California who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

8.      Plaintiff Phyllis Goodman is an adult female resident and citizen of California who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

9.      Plaintiff Dina Guase is an adult female resident and citizen of California who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

10.     Plaintiff Judy May is an adult female resident and citizen of California who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

11.     Plaintiff Wilhelmina Newman is an adult female resident and citizen of California who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

12.     Plaintiff Pamela Stewart is an adult female resident and citizen of California who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

13.     Plaintiff Irene Tobin is an adult female resident and citizen of New Jersey who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

EXHIBIT
**2**
4

14. Plaintiff Cynthia Tortorici is an adult female resident and citizen of New Jersey who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

15. Plaintiff Bonnie Hand is an adult female resident and citizen of New Jersey who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

16. Plaintiff Florence Buchanan is an adult female resident and citizen of Missouri who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

17. Plaintiff Venita Masters is an adult female resident and citizen of Georgia who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

18. Plaintiff Bibiana Quiambao is an adult female resident and citizen of Virginia who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

19. Plaintiff Lisha McMillan is an adult female resident and citizen of Maryland who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

20. Plaintiff Carolyn Blackmer is an adult female resident and citizen of Vermont who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

21. Plaintiff Jane Hewlett is an adult female resident and citizen of New York who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

EXHIBIT

**2** 5

**COMPLAINT FOR DAMAGES**

22.     Plaintiff Ilham Dagon is an adult female resident and citizen of Arizona who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

23.     Plaintiff Sandra Hamann is an adult female resident and citizen of Minnesota who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

24.     Plaintiff Donna Pearson is an adult female resident and citizen of North Carolina who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

25.     Plaintiff Ruth Gaunt is an adult female resident and citizen of Pennsylvania who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

26.     Plaintiff Beverly Tinkham is an adult female resident and citizen of Rhode Island who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

27.     Plaintiff Sara Carmona is an adult female resident and citizen of Florida  who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

28.     Plaintiff Joyce Reavis is an adult female resident and citizen of Virginia who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

29.     Plaintiff Janice Hird is an adult female resident and citizen of Colorado who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

**EXHIBIT**

**2**

6

**COMPLAINT FOR DAMAGES**

12

30.   Plaintiff Georgina Vokaty is an adult female resident and citizen of Minnesota who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

31.   Plaintiff Dawn Cunningham is an adult female resident and citizen of Maryland who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

32.   Plaintiff Pamela Peele is an adult female resident and citizen of North Carolina who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

33.   Plaintiff Mary Edwards is an adult female resident and citizen of Missouri who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

34.   Plaintiff Vickie Skelton is an adult female resident and citizen of Arkansas who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

35.   Plaintiff Mary Friel is an adult female resident and citizen of New York who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

36.   Plaintiff Marie Parnell is an adult female resident and citizen of South Carolina who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

37.   Plaintiff Marian Moxley is an adult female resident and citizen of Missouri who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

**EXHIBIT**

**2**   7

**COMPLAINT FOR DAMAGES**

13

38.    Plaintiff Mallah Buell is an adult female resident and citizen of Missouri who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

39.    Plaintiff Shirley Stewart is an adult female resident and citizen of South Carolina who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

40.    Plaintiff Shirlene Huffman is an adult female resident and citizen of Mississippi who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

41.    Plaintiff Susan Schuricht is an adult female resident and citizen of Wyoming who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

42.    Plaintiff Valentine Schuler is an adult female resident and citizen of Wisconsin who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

43.    Plaintiff Linda Berry is an adult female resident and citizen of Illinois who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

44.    Plaintiff Tammy Piazza is an adult female resident and citizen of Oregon who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

45.    Plaintiff Martha Davis is an adult female resident and citizen of Oregon who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

EXHIBIT
2
8

**COMPLAINT FOR DAMAGES**

14

46.     Plaintiff Mary Katuin is an adult female resident and citizen of Iowa who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

47.     Plaintiff Judith Fesler is an adult female resident and citizen of Indiana who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

48.     Plaintiff Sharon Loughman is an adult female resident and citizen of Ohio who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

49.     Plaintiff Tracy Muller is an adult female resident and citizen of Oregon who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

50.     Plaintiff Ava Krum is an adult female resident and citizen of Texas who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

51.     Plaintiff Linda Walton is an adult female resident and citizen of Oregon who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

52.     Plaintiff Hildegard Mileusnic is an adult female resident and citizen of Nevada who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

53.     Plaintiff Margaret Duley is an adult female resident and citizen of Illinois who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

EXHIBIT

**2** 9

54.     Plaintiff Bobbie Jo Renucci is an adult female resident and citizen of Michigan who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

55.     Plaintiff Angela McCaskell is an adult female resident and citizen of California who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

56.     Plaintiff Lauri Kotzen is an adult female resident and citizen of Massachusetts who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

57.     Plaintiff Marie Wick is an adult female resident and citizen of Massachusetts who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

58.     Plaintiff Marcille Miller is an adult female resident and citizen of Michigan who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

59.     Plaintiff Sherry Roberts is an adult female resident and citizen of Alabama who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

60.     Plaintiff Gwen Peltier is an adult female resident and citizen of Minnesota who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

61.     Plaintiff Merry Breeden is an adult female resident and citizen of Kansas who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

EXHIBIT
**2**
10

**COMPLAINT FOR DAMAGES**

16

62.     Plaintiff Medina Omerovic is an adult female resident and citizen of Michigan who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

63.     Plaintiff Nola Piotroswski is an adult female resident and citizen of Michigan who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

64.     Plaintiff Lisa Murphy is an adult female resident and citizen of Florida who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

65.     Plaintiff Serena Coovert is an adult female resident and citizen of Colorado who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

66.     Plaintiff Regina West is an adult female resident and citizen of Colorado who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

67.     Plaintiff Maida Naquin is an adult female resident and citizen of New Mexico who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

68.     Plaintiff Mary Orsi is an adult female resident and citizen of Washington who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

69.     Plaintiff Jada Spangler is an adult female resident and citizen of Ohio who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

**EXHIBIT**

**2** 11

**COMPLAINT FOR DAMAGES**

17

**B.**   **Defendants**

70.     Defendant Johnson & Johnson ("J&J") is a New Jersey corporation with its worldwide headquarters located at One Johnson & Johnson Plaza, New Brunswick, New Jersey. Johnson & Johnson organizes its subsidiary businesses into individual Business Units to coordinate the development, manufacture, testing, marketing promotion, training, distribution and sale of its' Mesh Products as described herein.

71.     Within J&J there are three sectors, medical devices and diagnostics, pharmaceutical, and consumer. Within the medical devices and diagnostic sector are "Business Units" including the "Ethicon Franchise." The Ethicon Franchise was charged by J&J with the design, development, promotion, marketing, testing, training, distribution and sale of the Mesh Products at issue in this case. The Company Group Chairman and Worldwide Franchise Chairman for the Ethicon Franchise, Gary Pruden, is employed by J&J. The companies which comprise the Ethicon Franchise are thus controlled by J&J and include, but are not limited to, Ethicon Inc., Ethicon LLC, Ethicon LTD.

72.     Defendant, Ethicon, Inc. is a wholly owned subsidiary of Defendant J&J which maintains its principle place of business in Somerville, New Jersey.

73.     Defendant, Ethicon, LLC, is a wholly owned subsidiary of Johnson & Johnson Medical, Inc., with its principle place of business in San Lorenzo, Puerto Rico. Ethicon LLC was charged by J&J with the manufacture of Ethicon Inc.'s Mesh Products.

74.     Defendants J&J, Ethicon, Inc., and Ethicon, LLC are collectively referred to herein as Defendants.

75.     Defendants designed, manufactured, packaged, labeled, marketed, sold, and distributed the transvaginal mesh products at issue in this matter (collectively referred to herein as "Defendants' Mesh Products" or "Mesh Products").

76.     Defendants are citizens of New Jersey.



**EXHIBIT**

**2**   12

**COMPLAINT FOR DAMAGES**

18

# II.

## Jurisdiction & Venue

77. Jurisdiction in this Court is proper as Defendants do business in the state of California and committed torts in whole or in part against Plaintiffs in California.

78. Venue is proper in this Court pursuant to Cal. Civ. Proc. Code § 395 because one or more of the named Defendants reside in Los Angeles County, maintained their principal place of business in Los Angeles County, and maintain their registered agent for service in Los Angeles County. Further, one or more of the named Plaintiffs reside in, were implanted with Defendants' Mesh Products, and/or were injured in Los Angeles County, California.

79. At all times material to this action, Defendants and/or their predecessors in interest and/or its subsidiaries, regularly engaged in business in California and Los Angeles County, including advertising, analyzing, assembling, designing, developing, distributing, inspecting, labeling, manufacturing, marketing, packaging, producing, processing, promoting, researching, selling, testing, and/or training in the use of the Mesh Products.

80. Defendants regularly solicit and transact business in, receive substantial revenues from, and/or distribute products in California and Los Angeles County.

81. It was reasonably foreseeable to Defendants that the Mesh Products would be used on patients such as Plaintiffs and in the state of California and Los Angeles County.

82. At all relevant times, Defendants transacted business in the state of California and Los Angeles County.

83. At all relevant times, Defendants committed tortious conduct within the state of California and Los Angeles County.

**EXHIBIT**

**2**

13

84.     At all relevant times, Defendants used or possessed property situated in the state of California and Los Angeles County.

85.     At all relevant times, Defendants marketed, promoted, and sold their Mesh Products throughout the state of California and Los Angeles County.

86.     Defendants' contacts with the state of California and Los Angeles County were at all relevant times systematic and continuous such that the exercise of jurisdiction comports with the notions fair play and substantial justice.

87.     Additionally, some Plaintiffs named herein were implanted with and suffered injury as a direct and proximate result of Defendants' Mesh Products and/or Defendants' acts and/or omissions in the state of California and Los Angeles County.

88.     Plaintiffs do not assert claims or rights arising under the Constitution, treaties, or laws of the United States; thus, there is no federal question at issue pursuant to 28 U.S.C. §1441(b) and 28 U.S.C. §1331.

89.     Complete diversity of citizenship is lacking pursuant to 28 U.S.C. §1441(b) and 28 U.S.C. §1332(c) as certain Plaintiffs and Defendants are citizens of the same state.

90.     Plaintiffs' claims are brought pursuant to state law. As such, there is no federal subject matter jurisdiction because no federal question is raised and complete diversity does not exist.

91.     Plaintiffs' claims present common questions of fact and law concerning, as alleged herein, what information Defendants possessed concerning the harmful effects of the Mesh Products, what information Defendants chose to disclose, and what information Defendants were required by law to disclose about those harmful effects.

92.     Plaintiffs' claims are logically related because all Plaintiffs allege the same claims related to their use of Mesh Products **EXHIBIT** e Mesh Products were defectively designed,

**2** 14

**COMPLAINT FOR DAMAGES**

20

manufactured, marketed and sold by Defendants, and Defendants failed to provide appropriate warnings and instructions regarding the dangers posed by these Mesh Products.

93.    Defendants' conduct, which resulted in Plaintiffs' injuries, is common to all Plaintiffs and includes, but is not limited to, Defendants' failure to conduct adequate safety and efficacy testing, Defendants' submissions to the regulatory agency that indicated that the Mesh Products were the substantial equivalent to pre-existing and previously approved devices, Defendants' marketing materials and literature, and Defendants' failure to provide adequate warnings regarding the risks associated with Defendants' Mesh Products.

94.    Defendants' conduct in designing, developing, marketing, and distributing these products relates to all Plaintiffs and provides a common universe of facts underlying Plaintiffs' claims, such that Plaintiffs' claims against Defendants arise from the same transaction or occurrence or the same series of transactions or occurrences.

95.    Plaintiffs suffered injuries and damages following as a result of Defendants' Mesh Products, and common liability facts will be presented to demonstrate that Defendants' knew or should have known that their Mesh Products cause such serious complications and injuries.

96.    Discovery will be identical for all Plaintiffs' claims with respect to Defendants' conduct and regulatory violations, as all claims arise out of the same acts and/or omissions of Defendants and involve common questions of law and/or fact.

97.    Joinder of Plaintiffs' claims is proper because Plaintiffs' claims arise out of the same acts and/or omissions of Defendants and involve common questions of law and/or fact.

98.    This is an action for damages that exceed the minimum jurisdictional limits of this Court.

**EXHIBIT**

**2**  15

**COMPLAINT FOR DAMAGES**

99. Plaintiffs have timely filed this lawsuit within the applicable statutory limitations period.

100. All conditions precedent have been satisfied or have occurred.

101. Plaintiffs' claims are not removable to federal court on the basis of diversity jurisdiction, federal question jurisdiction, or any other jurisdictional basis, any attempt to remove this matter would be improper and would provide grounds for sanctions.

### III.

### Tolling of Statute Of Limitations

102. Plaintiffs assert all applicable state statutory and common law rights and theories related to the tolling or extension of any applicable statute of limitations, including equitable tolling, delayed discovery, discovery rule, and/or fraudulent concealment.

103. Despite diligent investigation by Plaintiffs into the cause of their injuries, the nature of Plaintiffs' injuries and damages and their relationship to the Mesh Products was not discovered, and through reasonable care and due diligence could not have been discovered, until a date within the applicable statute of limitations for filing Plaintiffs' claims. Therefore, under appropriate application of the discovery rule, Plaintiffs' suit was filed within the applicable statutory limitations period.

104. Further, the running of the statute of limitations in this cause is tolled under the doctrine of equitable tolling. Defendants are estopped from asserting a statute of limitations defense due to Defendants' concealment of the true risks associated with the use of the Mesh Products. Plaintiffs could not have reasonably discovered the wrongdoing. As a direct and proximate result of Defendants' concealment, the Plaintiffs suffered severe injuries and damages.

**EXHIBIT**

**2** 16

## IV.

### General Allegations

105.    At all relevant times, Defendants designed, patented, tested, manufactured, labeled, marketed, sold, and distributed the Mesh Products in question.  Defendants' Mesh Products were designed primarily for the purposes of treating pelvic organ prolapse ("POP") and stress urinary incontinence ("SUI").

106.    POP is a condition that results from weakened or stretched tissues that support the female pelvic organs. When treating POP, the Mesh Products are usually implanted vaginally to reinforce the vaginal wall.

107.    SUI is a medical condition involving involuntary leakage of urine during moments of physical activity.  When treating SUI, Defendants' Mesh Products are usually implanted vaginally to support a patient's urethra.

108.    Surgical mesh products have been used to repair abdominal hernias for decades. In the 1990's surgeons began using surgical mesh for the treatment of POP and SUI.  At or near that time, Defendants began to modify the mesh previously used for abdominal hernia repairs to be used as products specifically marketed for the surgical treatment of POP and SUI.  Defendants began marketing these Mesh Products along with the tools and appurtenances used for pelvic area tissue insertion and fixation.

109.    Defendants' Mesh Products are targeted for use in women who suffer from POP and/or SUI. Defendants' Mesh Products are composed of biologic and/or non-absorbable synthetic.  Despite Defendants' claims that the materials used in their Mesh Products are inert, the scientific evidence indicates that this material is biologically incompatible with human tissue and promotes a negative

**EXHIBIT**

**2**

17

**COMPLAINT FOR DAMAGES**

23

immune response and/or inflammation of pelvic tissue in a large subset of patients frequently resulting in significant adverse events, severe injuries, and debilitating medical complications.

110. Further, the collagen components of Defendants' Mesh Products cause hyper-inflammatory responses leading to medical problems including, but not limited to, chronic pain and fibrotic reaction. Defendants Mesh Products cause chronic pain, fibrotic reaction, disability, and infection resulting from hyper-inflammatory responses to Defendants' Mesh Products.

111. Defendants' Mesh Products cause erosion through vaginal epithelium, infection, pain, urinary problems, and recurrence of prolapse and/or incontinence in addition to complications at the time of insertion, which included the perforation of the bowel, bladder, and blood vessels. In addition, Defendants' Mesh Products degrade, fragment, shrink, migrate, and fold after implantation.

112. Defendants' Mesh Products are biologically incompatible with human tissue and stimulate a negative immune response in patients. This negative response promotes inflammation of the pelvic tissue and contributes to the formation of severe adverse reactions to the mesh, such as those experienced by Plaintiffs.

113. Despite having knowledge of these serious side effects, Defendants have continued to market the Mesh Products as safe treatment options for POP and SUI.

114. At all relevant times, Defendants knew or should have known of the risks and complications associated with Defendants' Mesh Products. Defendants knew or should have known that the Mesh Products unreasonably exposed patients to the risk of serious harm while conferring no benefit over available feasible alternatives that do not involve the same risks.

115. At all relevant times, Defendants possessed the knowledge, the means, and the duty to adequately warn regarding the risks associated with the Mesh Products.



EXHIBIT
2
18

**COMPLAINT FOR DAMAGES**

24

116.   At all relevant times, Defendants, their agents, servants, and employees acting in the course and scope of their employment, negligently and recklessly breached their duty to adequately warn regarding the risks associated with the Mesh Products.

117.   At all relevant times, Defendants knew or should have known that the Mesh Products exposed Plaintiffs to unreasonable risk while failing to provide significant improvement in clinical outcomes over alternative treatments which were equally or more effective and did not involve the same risk.

118.   Despite having extensive knowledge of the extreme risks associated with the use of the Mesh Products, as well as the absolute duty to properly and adequately warn foreseeable users, Defendants failed to adequately warn of the risks associated with the Mesh Products.

119.   Defendants knew of the dangerous side effects associated with the Mesh Products. Defendants failed to properly evaluate the risk profile of the Mesh Products or did not properly publish, disclose, and/or disseminate the results of the testing and studies it did conduct. Defendants failed to adequately warn or remedy the risks associated with the Mesh Products, but instead concealed, suppressed and failed to disclose the dangers.

120.   Defendants omitted the risks, dangers, defects, and disadvantages of the Mesh Products, and advertised, promoted, marketed, sold and distributed the Mesh Products as safe medical devices when Defendants knew or should have known that the Mesh Products were not safe for their intended purposes, and that the Products would cause, and did cause, serious medical problems for Plaintiffs.

121.   Contrary to Defendants' representations and marketing, Defendants' Mesh Products have significantly high rates of failure, injury, and complications, fail to perform as intended, and have caused severe and irreversible inj**EXHIBIT**iffs.

**2**

19

122. Defendants failed to adequately disclose, report, and/or disseminate information regarding the propensity of the Mesh Products to fail and cause injury and complications, and have made unfounded representations regarding the efficacy and safety of the Mesh Products through various means and media. Defendants have also underreported information about the injuries caused by the use of the implantation kits and instructions that accompany Defendants' Mesh Products.

123. Defendants failed to adequately test and evaluate the risks and benefits of Defendants' Mesh Products. Further, Defendants failed to design and establish a safe, effective procedure for removal of the Mesh Products, or to determine if a safe, effective procedure for removal of the Mesh Products exists.

124. At all relevant times, feasible, suitable, safer, and more effective alternatives to the Mesh Products existed.

125. At all relevant times, Defendants continued to promote the Mesh Products as safe and effective having conducting no clinical trials to support the efficacy and safety of the Mesh Products.

126. Defendants failed to disclose, train, or disseminate information about the known risks and failed to warn of dangers and risks associated with the Mesh Products of which Defendants knew or should have known.

127. Defendants failed to provide adequate warnings, training, and instructions about the dangers and adverse effects caused by the Mesh Products. Defendants' Mesh Products were defective as marketed due to inadequate warnings, training instructions, labeling and/or inadequate testing.

128. Defendants' Mesh Products were in the same or substantially similar condition as they were when they left Defendants' possession, and in the condition directed by and expected by Defendants.



**EXHIBIT**

**2**

20

129.  Defendants' Mesh Products were at all times utilized and implanted in a manner foreseeable to Defendants.

130.  The injuries, conditions, and complications suffered by those implanted with Defendants' Mesh Products were foreseeable consequences of Defendants' conduct and the dangerous and defective nature of Defendants' Mesh Products.

131.  As a direct and proximate result of Defendants' Mesh Products and/or Defendants' negligence, negligence per se, defective design, defective manufacture, failure to warn, breach of implied warranties, and/or gross negligence, Plaintiffs have suffered and will continue to suffer severe injuries and damages as further described herein.

## V.

## Plaintiffs' Mesh Implants & Resulting Injuries

132.  Plaintiffs incorporate by reference all the above paragraphs as if set forth in full herein.

133.  Plaintiffs bring this action to recover damages resulting from injuries suffered as a direct and proximate result of the implantation of Defendants' Mesh Products.

134.  Plaintiffs' use of Defendants' Mesh Products caused Plaintiffs' injuries and resulting damages.  During Plaintiffs' procedures, Defendants' Mesh Products were used in a manner reasonably foreseeable to Defendants.  Defendants' Mesh Products were defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with the Mesh Products use at the time of their implantation in Plaintiffs.

135.  Plaintiffs have suffered serious injuries and damages as a direct and proximate result of Defendants' Mesh Products.  Plaintiffs' injuries necessitate continued medical treatment for the foreseeable future.

**EXHIBIT**

**2**

21

27

136.    Prior to Plaintiffs' respective surgeries, Defendants knew or should have known of the risks associated with implantation of the Mesh Products and possessed the means to provide adequate warning regarding the risks associated with Defendants' Mesh Products.    Had Plaintiffs been adequately warned that Defendants' Mesh Products could cause serious side effects, they would have not have undergone treatment involving Defendants' Mesh Products.

137.    As a direct and proximate result of Defendants' conduct, Plaintiffs and Plaintiffs' implanting physicians, were unaware, and could not reasonably know, or through the exercise of reasonable diligence could not have known, that the Mesh Products exposed Plaintiffs to the risks and injuries alleged herein.

138.    As a direct and proximate result of Defendants' conduct, Plaintiffs suffered physical injuries and damages. Further, the Plaintiffs have sustained in the past, and will sustain in the future, pain and suffering, mental anguish, emotional distress, disfigurement, physical impairment, embarrassment and humiliation, psychological injury, a reasonable and traumatic fear of an increased risk of additional injuries, progression of existing conditions, and other serious injury and loss.

139.    Plaintiffs also have suffered and will sustain past and future general and special damages, including past and future medical care and treatment, lost wages, and lost earning capacity.

140.    As a direct and proximate result of Defendants' conduct and/or Defendants' Mesh Products, Plaintiffs have incurred, and will continue to incur for the foreseeable future, medical, nursing, diagnostic, hospital, pharmaceutical, rehabilitative, and other related costs and expenses for Plaintiffs' treatment and care, along with lost wages, lost earning capacity, and other damages for which they are entitled to compensation.

141.    Plaintiffs are entitled to punitive damages because Defendants' conduct was reckless and without regard for the Plaintiffs' and **EXHIBIT** safety and welfare. Defendants misled both the

**EXHIBIT**

**2**

22

medical community and the public at large, including the Plaintiffs, by making false representations about the safety of the Mesh Products. Defendants downplayed, understated and/or disregarded its knowledge of the serious risks associated with the Mesh Products. Nevertheless, Defendants continued to market the Mesh Products by providing false and misleading information with regard to their safety and efficacy. Defendants' conduct constitutes a willful, despicable, fraudulent, malicious, oppressive, reckless, and conscious disregard for the rights of Plaintiffs and the public.

142. Defendants are liable both jointly and severally to the Plaintiffs for all damages, punitive damages, and all other relief to which Plaintiffs are entitled to by law or equity.

## VI.

## Plaintiffs' Causes Of Action

143. Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

144. Plaintiffs set forth the following claims in the alternative, such that the sufficiency of this Complaint shall not be defeated by an inconsistency or insufficiency among any one or more of the alternative claims set forth herein.

## Count I: Negligence & Negligence Per Se

145. Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

146. At relevant times, Defendants had a duty to Plaintiffs to exercise reasonable care in designing, manufacturing, marketing, labeling, packaging, sale, and distribution of Defendants' Mesh Products.

147. Defendants are liable to Plaintiffs as a result of Defendants' negligent advertising, analyzing, assembling, designing, distributing, inspecting, labeling, manufacturing,

**EXHIBIT**

**2**

23

marketing, packaging, patenting, producing, processing, promoting, selling, testing, and/or training in the use of Defendants' Mesh Products.

148. Defendants were under a duty to exercise reasonable care in advertising, analyzing, assembling, designing, developing, distributing, inspecting, labeling, manufacturing, marketing, packing, producing, promoting, processing, researching, selling, and testing the Mesh Products.

149. Defendants owed a duty to adequately warn of the risks, dangers, and adverse effects associated with the use of Defendants' Mesh Products.

150. Defendants negligently and carelessly breached the above-described duties to Plaintiffs by:

   a. Failing to design and manufacture the Mesh Products without defects that would result in an unreasonable risk of harm to patients implanted with the Mesh Products;

   b. Failing to exercise reasonable care in testing the Mesh Products prior to marketing, sale, and distribution of the Mesh Products so as to avoid unreasonable risk of harm and injury to patients implanted with the Mesh Products;

   c. Failing to exercise reasonable care in inspecting the Mesh Products prior to distribution to avoid the implantation of the defective Mesh Products in women and exposing them to unreasonable risk or harm.

   d. Failing to ensure the Mesh Products warnings to the medical community, physicians, the Plaintiffs' physicians, and Plaintiffs were accurate and adequate, despite having extensive knowledge of the risks associated with the Mesh Products;

   e. Failing in their obligation to provide relevant information, data and warnings regarding the adverse health risks associated with exposure to the Mesh Products, and/or that there existed safer and more or equally effective alternative methods or treatment options;

   f. Failing to conduct post market safety surveillance and report that information;

   g. Failing to include adequate warnings and/or provide adequate and clinically relevant informat[...]

EXHIBIT

**2**

24

h. Failing to continually monitor, test, and analyze data regarding safety, efficacy, and the implantation practices for the Mesh Products;

i. Failing to review all adverse product event information and to report any information bearing upon the adequacy and/or accuracy of their warnings, efficacy, or safety, including the risks and/or prevalence of side effects caused by the Mesh Products to the appropriate parties;

j. Failing to provide adequate post-marketing warnings and instructions;

k. Failing to disclose the results of the testing and other information in their possession regarding the possibility that the Mesh Products can cause serious and catastrophic side effects;

l. Failing to adequately warn about the dangers of using the Mesh Products;

m. Promoting and marketing the Mesh Products as safe and effective for use with women when, in fact, they were unsafe;

n. Failing to act as a reasonably prudent product manufacturer in advertising, analyzing, assembling, designing, developing, distributing, inspecting, labeling, manufacturing, marketing, packaging, producing, processing, promoting, researching, selling, testing, and/or training in the use of the Mesh Products;

o. Failing to perform adequate and necessary studies to determine and analyze the safety and risks associated with the safety and efficacy of the Mesh Products' use;

p. Continuing to promote the safety and effectiveness of the Mesh Products, while downplaying their risks, even after Defendants knew or should have known of the risks of the Mesh Products;

q. Negligently and carelessly promoting the Mesh Products as safe and effective for use with women when, in fact, they were unsafe;

r. Negligently and carelessly over-promoting the Mesh Products in a zealous and unreasonable way, without regard to the potential danger that they posed to patients; and

s. Negligently and carelessly failing to act as a reasonably prudent product manufacturer, distributor, marketer, promoter, or seller would under same or similar circumstances.

151. In addition, Defendants' negligence and negligence per se resulted in the negligent design and/or manufacture of Defendants' Mesh Products.

EXHIBIT

**2**

25

**COMPLAINT FOR DAMAGES**

152.   Defendants negligently failed to instruct and warn Plaintiffs and/or Plaintiffs' physicians, hospitals, health care professionals, and the general public regarding the risks associated with Defendants' Mesh Products.  Specifically, Defendants did not provide sufficient or adequate warnings regarding:

    a.   The tendency of the Mesh Products to shrink, migrate, fragment, degrade and deform following implantation;

    b.   The propensity of the Mesh Products to cause patients chronic infections;

    c.   The propensity of the Mesh Products to require corrective surgery to remove or modify the placement of the Mesh Products;

    d.   The Mesh Products design defects outlined herein;

    e.   The increased risks associated with the Mesh Products when compared to equally or more effective alternative treatment options;

    f.   The increased risk of complications associated with future corrective surgeries following implantation of the Mesh Products when compared to equally or more effective alternative treatment options;

    g.   The increased risk for multiple future surgeries;

    h.   The tendency of Mesh Products to extrude and erode;

    i.   The propensity of Mesh Products to cause chronic infection and recurrent, intractable, and chronic pain;

    j.   The propensity of the Mesh Products to cause permanent scarring in the vaginal and pelvic region, following implantation;

    k.   The design defects of the Mesh Products which inhibit proper mating with the pelvic and vaginal tissues;

    l.   The propensity of the Mesh Products to cause severe complications and expose patients to many health hazards;

    m.   The propensity of removal of the Mesh Products to necessitate additional surgeries, exposing the patient to greater risk; and/or

    n.   The risk that complete removal of the Mesh Products may not remedy the health issues of the patient.

**EXHIBIT**

**2**

26

153.   Defendants knew or should have known that consumers, such as Plaintiffs, would suffer injury as a result of Defendants' failure to exercise ordinary care, as described above.

154.   Defendants' conduct described herein constitutes negligence *per se*.

155.   As a direct and proximate result of Defendants' negligence and negligence per se, Plaintiffs have sustained permanent injuries and damages as set forth herein.

### Count II: Strict Liability – Design Defect

156.   Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

157.   Defendants are strictly liable to Plaintiffs for injuries and damages suffered as result of the defective design of the Mesh Products.

158.   At all relevant times, Defendants' Mesh Products were not reasonably safe for their intended uses and were defectively designed.

159.   Defendants manufactured, marketed, promoted, distributed, and sold the Mesh Products in the stream of commerce despite the design defects that Defendants knew or should have known of.

160.   Defendants' Mesh Products are defectively designed when compared to safer non-vaginal mesh alternative treatments. Patients who are implanted with Defendants' Mesh Products are exposed to a number of dangerous defects which include, but are not limited to:

    a.   The Mesh Products cause chronic immune, inflammatory, and fibrotic reactions, infections, tissue breakdown, pain, disability, and/or other resulting injuries and sequelae;

    b.   The materials used in the Mesh Products cause chronic immune, inflammatory, and fibrotic reactions, infections, tissue breakdown, pain, disability, and/or other resulting injuries and sequelae;

**EXHIBIT**

**2**

27

c.   The design of the Mesh Products and/or implantation kits requires implantation into and through an area of the body with high levels of bacteria that can adhere to the mesh and/or can injure nerves in the pelvic region causing chronic immune, inflammatory, and fibrotic reactions, infections, tissue breakdown, pain, disability, and/or other resulting injuries and sequelae;

d.   The design of the Mesh Products increase the likelihood of contracture, shrinkage, erosion, and/or folding causing chronic immune, inflammatory, and fibrotic reactions, infections, tissue breakdown, pain, disability, and/or other resulting injuries and sequelae;

e.   The design of the Mesh Product increases the risk of movement, elongation, and/or deformity after implantation causing chronic immune, inflammatory, and fibrotic reactions, infections, tissue breakdown, pain, disability, and/or other resulting injuries and sequelae;

f.   The design of the Mesh Products increases the risk of improper mating to the delicate and sensitive areas where they are implanted causing chronic immune, inflammatory, and fibrotic reactions, infections, tissue breakdown, pain, disability, and/or other resulting injuries and sequelae;

g.   The design of the Mesh Products increases the risk of degradation, erosion, and/or fragmentation causing chronic immune, inflammatory, and fibrotic reactions, infections, tissue breakdown, pain, disability, and/or other resulting injuries and sequelae;

h.   The disintegration of and hyper-inflammatory responses to the collagen components of the Mesh Products cause chronic immune, inflammatory, and fibrotic reactions, infections, tissue breakdown, pain, disability, and/or other resulting injuries and sequelae;

i.   The hardening of the Mesh Products following implantation cause chronic immune, inflammatory, and fibrotic reactions, infections, tissue breakdown, pain, disability, and/or other resulting injuries and sequelae; and/or

j.   The design of the Mesh Products creates a non-anatomic condition in the pelvis causing chronic immune, inflammatory, and fibrotic reactions, infections, tissue breakdown, pain, disability, and/or other resulting injuries and sequelae.

161.   Defendants knew and intended that consumers, including Plaintiffs, would use the Mesh Products, without any inspection for defects, and those using the Mesh Products would rely upon the representations made by Defendants.

**EXHIBIT**

**2**   28

COMPLAINT FOR DAMAGES

34

162.    Prior to the manufacture, sale, and distribution of the Mesh Products, Defendants knew, or should have known, that the Mesh Products were defectively designed.

163.    The Mesh Products were used for the intended purpose and the dangerous defects could not have been discovered through the exercise of due care.

164.    At the time that Defendants manufactured, marketed, promoted, distributed, and sold the Mesh Products, there existed safer and more or equally effective alternative treatment methods.

165.    Defendants are strictly liable to Plaintiffs for designing, manufacturing, marketing, labeling, packaging, selling and/or distributing the defectively designed Mesh Products.

166.    As a direct and proximate result of Defendants' defective design of the Mesh Products, Plaintiffs have sustained permanent injuries and damages as set forth herein.

### Count III: Strict Liability – Manufacturing Defect

167.    Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

168.    Defendants are strictly liable to Plaintiffs for injuries and damages suffered as result of the defective manufacture of the Mesh Products.

169.    At all relevant times, Defendants' Mesh Products were not reasonably safe for their intended uses and were defectively manufactured.

170.    Defendants' Mesh Products were not reasonably safe for their intended uses and were defective as described herein as a matter of law with respect to their manufacture. These manufacturing defects pose unreasonable risks of serious bodily harm to Plaintiffs.

171.    Defendants knew that the Mesh Products would be used by Plaintiffs without inspection for defects, and that there was a reasonable expectation that Defendants' Mesh Products were free of manufacturing defects.

EXHIBIT

**2**

29

**COMPLAINT FOR DAMAGES**

172. Prior to the manufacture, sale, and distribution of the Mesh Products, Defendants knew, or should have known, that the Mesh Products were defectively manufactured.

173. The Mesh Products used for their intended purpose and the manufacturing defects could not have been and were not discovered through the exercise of due care.

174. At all relevant times, there existed safer and more or equally effective alternative treatment methods.

175. Defendants are strictly liable to Plaintiffs for designing, manufacturing, marketing, labeling, packaging, selling and/or distributing the defectively manufactured Mesh Products.

176. As a direct and proximate result of Defendants' defective manufacture of the Mesh Products, Plaintiffs have sustained permanent injuries and damages as set forth herein.

**Count IV: Strict Liability – Failure to Warn**

177. Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

178. At all relevant times, Defendants' Mesh Products were not reasonably safe for their intended uses and were defective as a matter of law due to their lack of appropriate and necessary warnings.

179. Amongst other failures, Defendants did not adequately warn that:

    a. The Mesh Products cause chronic immune, inflammatory, and fibrotic reactions, infections, tissue breakdown, pain, disability, and/or other resulting injuries and sequelae;

    b. The materials used in the Mesh Products cause chronic immune, inflammatory, and fibrotic reactions, infections, tissue breakdown, pain, disability, and/or other resulting injuries and sequelae;

    c. The design of the Mesh Products and/or implantation kits requires implantation into and through an area of the body with high levels of bacteria that can adhere to the mesh and _____ nerves in the pelvic region causing chronic

**EXHIBIT**

**2**

30

immune, inflammatory, and fibrotic reactions, infections, tissue breakdown, pain, disability, and/or other resulting injuries and sequelae;

d. The design of the Mesh Products increase the likelihood of contracture, shrinkage, erosion, and/or folding causing chronic immune, inflammatory, and fibrotic reactions, infections, tissue breakdown, pain, disability, and/or other resulting injuries and sequelae;

e. The design of the Mesh Product increases the risk of movement, elongation, and/or deformity after implantation causing chronic immune, inflammatory, and fibrotic reactions, infections, tissue breakdown, pain, disability, and/or other resulting injuries and sequelae;

f. The design of the Mesh Products increases the risk of improper mating to the delicate and sensitive areas where they are implanted causing chronic immune, inflammatory, and fibrotic reactions, infections, tissue breakdown, pain, disability, and/or other resulting injuries and sequelae;

g. The design of the Mesh Products increases the risk of degradation, erosion, and/or fragmentation causing chronic immune, inflammatory, and fibrotic reactions, infections, tissue breakdown, pain, disability, and/or other resulting injuries and sequelae;

h. The disintegration of and hyper-inflammatory responses to the collagen components of the Mesh Products cause chronic immune, inflammatory, and fibrotic reactions, infections, tissue breakdown, pain, disability, and/or other resulting injuries and sequelae;

i. The hardening of the Mesh Products following implantation cause chronic immune, inflammatory, and fibrotic reactions, infections, tissue breakdown, pain, disability, and/or other resulting injuries and sequelae; and/or

j. The design of the Mesh Products creates a non-anatomic condition in the pelvis causing chronic immune, inflammatory, and fibrotic reactions, infections, tissue breakdown, pain, disability, and/or other resulting injuries and sequelae.

180. At all relevant, times Defendants knew or should have known that the warnings they provided regarding the risks associated with the use of the Mesh Products were inadequate.

181. Plaintiffs, and the Plaintiffs' healthcare providers, did not have the same knowledge as Defendants, and no adequate warning or other clinically relevant information was communicated to Plaintiffs or Plaintiffs' healthcare providers to adequately apprise them of the risks described herein.

**EXHIBIT**

**2**

31

**COMPLAINT FOR DAMAGES**

182.    Defendants had a continuing duty to provide warnings regarding the risks and dangers associated with the Mesh Products as it became or should have become available to Defendants.

183.    Defendants knew or should have known that consumers, and Plaintiffs specifically, would foreseeably and needlessly suffer injury as a result of Defendants' failures to provide adequate warnings.

184.    Through both omissions and affirmative misstatements, Defendants misled Plaintiffs, Plaintiffs' treating physicians, the medical community, and the general public about the risks and benefits of the Mesh Products, which resulted in injury to Plaintiffs.

185.    Despite having inadequate warnings, Defendants continued to aggressively manufacture, market, promote, distribute, and sell the Mesh Products, even after they knew or should have known of the unreasonable risks of from the Mesh Products.

186.    By failing to provide Plaintiffs and the Plaintiff's physicians with adequate, clinically relevant information, and data and warnings regarding the adverse health risks associated with the Mesh Products, Defendants breached their duty of reasonable care and safety.

187.    Defendants are strictly liable to Plaintiffs for designing, manufacturing, marketing, labeling, packaging, selling and/or distributing the Mesh Products with inadequate warnings.

188.    As a direct and proximate result of Defendants' failure to warn, Plaintiffs have sustained permanent injuries and damages as set forth herein.

### Count V: Breach of Implied Warranties

189.    Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

190.    Defendants made implied assurances that the Mesh Products were safe and reasonably fit for their intended purposes.

**EXHIBIT**

**2** 32

**COMPLAINT FOR DAMAGES**

36

191.   Defendants are liable to Plaintiffs for the breach of implied warranties with respect to Defendants' Mesh Products.

192.   Defendants, by directly and indirectly advertising, marketing, and promoting the Mesh Products, and by placing the Mesh Products into the stream of commerce knowing that the Mesh Products would be implanted in women, impliedly warranted that the Mesh Products were safe, merchantable, effective, and reasonably fit for their intended purposes.

193.   Defendants knew or should have known that users of the Mesh Products would reasonably rely on these implied warranties.

194.   Plaintiffs' use of Defendants' Mesh Products was consistent with the purposes for which Defendants directly and indirectly advertised, marketed, and promoted the Mesh Products.

195.   Defendants breached these implied warranties because the Mesh Products implanted in Plaintiffs were unreasonably dangerous and defective and not as Defendants had represented.

196.   As a direct and proximate result of Defendants' breach of implied warranties, Plaintiffs have sustained permanent injuries and damages as set forth herein.

## Count VI: Gross Negligence

197.   Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

198.   At all relevant times, Defendants failed to perform adequate testing to ensure that the Mesh Products were reasonably safe for implantation in patients, including Plaintiffs.

199.   At all relevant times Defendants designed, patented, tested, manufactured, labeled, marketed, sold, and distributed the Mesh Products with actual and/or constructive knowledge that the Mesh Products can shrink, disintegrate and/or degrade inside the body, and cause the other serious medical problems and resulting sequelae.

**EXHIBIT**

**2** 33

**COMPLAINT FOR DAMAGES**

30

200.    Defendants consciously disregarded reports from regulatory agencies, patients, the medical community, and individual health care providers that the Mesh Products did not perform as intended and that the Mesh Products were associated with increased risks of serious injuries and resulting sequelae.

201.    Rather than preforming adequate testing to determine the cause of these injuries, or to rule out defects with the Mesh Products, Defendants chose to continue marketing and selling the Mesh Products, fraudulently, intentionally, and/or recklessly misrepresenting, concealing, and/or suppressing material information regarding the safety and efficacy of the Mesh Products.

202.    Defendants knew or should have known that the Mesh Products were unreasonably dangerous in light of their risks.

203.    Defendants knew and consciously disregarded the fact that the Mesh Products caused debilitating injuries and related sequelae with significantly greater frequency than feasible alternative treatment methods.

204.    Defendants fraudulently, willfully, maliciously, oppressively, consciously, intentionally, and/or recklessly misrepresented, concealed, and/or suppressed material information regarding the safety and efficacy of the Mesh Products so as to minimize the perceived risk of injuries caused by the Mesh Products.

205.    Defendants knew or should have known of the Mesh Products' defective and unreasonably dangerous nature, but continued to manufacture, market, distribute, and sell the Mesh Products so as to maximize sales and profits at the expense of the health and safety of the public, including Plaintiffs.

206.    Defendants continue to fraudulently, willfully, maliciously, oppressively, consciously, intentionally, and/or recklessly misrep**EXHIBIT**, and/or suppress material information regarding

**EXHIBIT**

**2**

34

40

the safety and efficacy of the Mesh Products from the public to promote continued and increased sales of the Mesh Products.

207.   As a direct and proximate result of Defendants' gross negligence, Plaintiffs suffered, and continue to suffer, injuries and damages, as set forth herein.

208.   Furthermore, Defendants have been unjustly enriched as a result of their gross negligence. In addition to the causes of action set forth herein, Plaintiffs assert a claim of unjust enrichment.

209.   Defendants' actions constitute a willful, despicable, fraudulent, malicious, oppressive, reckless, and conscious disregard for the rights of Plaintiffs and the public, justifying an award of punitive damages.

## VII.

### Plaintiffs' Damages

210.   Plaintiffs incorporate all of the above paragraphs as if set forth in full herein.

211.   As a direct and proximate result of Defendants' conduct and Defendants' Mesh Products, Plaintiffs have suffered severe injuries and damages in an amount in excess of the jurisdictional minimum of this Court.

212.   As a direct and proximate result of Defendants' conduct, Plaintiffs suffered physical injuries and damages. Further, the Plaintiffs have sustained in the past, and will sustain in the future, pain and suffering, mental anguish, emotional distress, disfigurement, physical impairment, embarrassment and humiliation, psychological injury, a reasonable and traumatic fear of an increased risk of additional injuries, progression of existing conditions, and other serious injury and loss.

213.   As a direct and proximate result of Defendants' conduct and/or Defendants' Mesh Products, Plaintiffs have incurred, and continue to incur for the foreseeable future, medical,

**EXHIBIT**

**2**

35

**COMPLAINT FOR DAMAGES**

41

nursing, diagnostic, hospital, pharmaceutical, rehabilitative, and other related costs and expenses for Plaintiffs' treatment and care, along with lost wages, lost earning capacity, and other damages.

214.    As Defendants' actions constitute a willful, despicable, fraudulent, malicious, oppressive, reckless, and conscious disregard for the rights of Plaintiffs and the public justifying an award of punitive damages, Plaintiffs sue for an additional amount as exemplary damages.

215.    Accordingly, Plaintiffs sue for special, compensatory, and punitive damages, cost of court, reasonable attorneys' fees, pre-judgment and post-judgment interests as authorized by law on the judgments which enter on Plaintiffs' behalf, and for all other relief to which they each may be entitled in law and/or equity.

## VIII.

### Jury Demand

216.    Plaintiffs' respectfully request trial by jury.

## IX.

### Conclusion

Plaintiffs respectfully request trial by jury and that the Court grant them the following relief against Defendants, both jointly and severely, on all counts of this Complaint, including:

a.      Special and compensatory damages representing fair, just, and reasonable compensation for their respective common law and statutory claims in excess of the jurisdictional minimum of this Court;

b.      Past and future lost wages and lost earning capacity;

c.      Past and future medical expenses;

d.      Past and future disfigurement, physical impairment, mental anguish, pain, and suffering;

e.      Punitive damages;

f.      Cost of court;



36

g.   Reasonable attorneys' fees;

h.   Pre-judgment and post-judgment interests as authorized by law on the judgments which enter on Plaintiffs' behalf; and

i.   Such other relief as is deemed just and appropriate.

Respectfully submitted,

**GIRARDI KEESE**

Thomas V. Girardi, SBN 36603
Amy F. Solomon, SBN 140333
1126 Wilshire Boulevard
Los Angeles, California 90017
Telephone: (213) 977-0211
Facsimile: (213) 481-1554

**ARNOLD & ITKIN LLP**
Kurt B. Arnold
Texas State Bar No: 24036150
Jason A. Itkin
Texas State Bar No: 24032461
Noah M. Wexler
6009 Memorial Drive
Houston, Texas 77007
Telephone: (713) 222-3800
Facsimile: (713) 222-3850

**THE MOSTYN LAW FIRM**
J. Steve Mostyn
State Bar No. 00798389
3810 West Alabama Street
Houston, TX 77027
(713) 861-6616 (Office)
(713) 861-8084 (Facsimile)
**Attorneys For Plaintiffs**

EXHIBIT

**2**

37

**COMPLAINT FOR DAMAGES**

ORIGINAL

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Amy F. Solomon, SBN 140333<br>Thomas V. Girardi, SBN 36603<br>GIRARDI \| KEESE<br>1126 Wilshire Boulevard<br>Los Angeles, CA 90017<br>TELEPHONE NO.: (213)977-0211   FAX NO.: (213)481-1554<br>ATTORNEY FOR *(Name):* Plaintiffs, XOCHILT ROBINSON, et. al., | **FILED**<br>Superior Court Of California<br>County Of Los Angeles<br><br>**DEC 3 0 2013**<br><br>Sherri R. Carter, Executive Officer/Clerk<br>By *Kristina Vargas*, Deputy<br>Kristina Vargas |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 N Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Central District

CASE NAME: XOCHILT ROBINSON, et. al., v. JOHNSON & JOHNSON, et al.,

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: BC531848 |
|---|---|---|---|---|
| [X] Unlimited<br>(Amount demanded exceeds $25,000) | [ ] Limited<br>(Amount demanded is $25,000 or less) | [ ] Counter  [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | JUDGE:<br>DEPT: |

BY FAX

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[X] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is [X] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
a. [ ] Large number of separately represented parties
b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
c. [ ] Substantial amount of documentary evidence
d. [ ] Large number of witnesses
e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [X] monetary b. [ ] nonmonetary; declaratory or injunctive relief c. [X] punitive
4. Number of causes of action *(specify):* Seven (7)
5. This case [ ] is [X] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: December   , 2013

Amy F. Solomon, SBN 140333
*(TYPE OR PRINT NAME)*                                    *(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)*

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.
Page 1 of 2

**EXHIBIT 2**

**44**

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Legal Solutions Plus

Cal. Rules of Court, rules 2.30, 3.220, 3.400-3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)—Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach—Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case—Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief from Late Claim
  Other Civil Petition

**EXHIBIT 2**

ORIGINAL

| SHORT TITLE: XOCHILT ROBINSON, et al., v. JOHNSON & JOHNSON, et al., | CASE NUMBER BC531848 |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

BY FAX

**This form is required pursuant to Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.**

**Item I**. Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? [X] YES CLASS ACTION? [ ] YES LIMITED CASE? [ ] YES TIME ESTIMATED FOR TRIAL 10 [ ] HOURS/ [X] DAYS

**Item II. Indicate** the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet form, find the main Civil Case Cover Sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Local Rule 2.0.

| Applicable Reasons for Choosing Courthouse Location (see Column C below) |
|---|

1. Class actions must be filed in the Stanley Mosk Courthouse, central district.
2. May be filed in central (other county, or no bodily injury/property damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | [ ] A7100 Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | [ ] A7110 Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| **Other Personal Injury/Property Damage/Wrongful Death Tort** | Asbestos (04) | [ ] A6070 Asbestos Property Damage | 2. |
| | | [ ] A7221 Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | [X] A7260 Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | [ ] A7210 Medical Malpractice - Physicians & Surgeons | 1., 4. |
| | | [ ] A7240 Other Professional Health Care Malpractice | 1., 4. |
| | Other<br>Personal Injury<br>Property Damage<br>Wrongful Death<br>(23) | [ ] A7250 Premises Liability (e.g., slip and fall) | 1., 4. |
| | | [ ] A7230 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 4. |
| | | [ ] A7270 Intentional Infliction of Emotional Distress | 1., 3. |
| | | [ ] A7220 Other Personal Injury/Property Damage/Wrongful Death | 1., 4. |

EXHIBIT
2
46

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 1 of 4

LA-CV109

| SHORT TITLE: XOCHILT ROBINSON, et al., v. JOHNSON & JOHNSON, et al., | CASE NUMBER |
| --- | --- |

| A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons - See Step 3 Above |
| --- | --- | --- |
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | | |
| Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1., 3. |
| Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1., 2., 3. |
| Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1., 2., 3. |
| Fraud (16) | ☐ A6013  Fraud (no contract) | 1., 2., 3. |
| Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1., 2., 3. |
| | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 2., 3. |
| **Employment** | | |
| Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1., 2., 3. |
| Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1., 2., 3. |
| | ☐ A6109  Labor Commissioner Appeals | 10. |
| **Contract** | | |
| Breach of Contract/ Warranty (06) (not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2., 5. |
| | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 2., 5., 6. |
| | ☐ A6012  Other Promissory Note/Collections Case | 2., 5. |
| Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
| Other Contract (37) | ☐ A6009  Contractual Fraud | 1., 2., 3., 5. |
| | ☐ A6031  Tortious Interference | 1., 2., 3., 5. |
| | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| **Real Property** | | |
| Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation     Number of parcels _____ | 2. |
| Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2., 6. |
| Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2., 6. |
| | ☐ A6032  Quiet Title | 2., 6. |
| | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| **Unlawful Detainer** | | |
| Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F  Unlawful Detainer-Post-Foreclosure | 2., 6. |
| Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |

**EXHIBIT 2**

47

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

| SHORT TITLE: XOCHILT ROBINSON, et al., v. JOHNSON & JOHNSON, et al., | CASE NUMBER |
|---|---|

| | **A** Civil Case Cover Sheet Category No. | **B** Type of Action (Check only one) | **C** Applicable Reasons See Step 3 Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108 Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115 Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |
| | Writ of Mandate (02) | ☐ A6151 Writ - Administrative Mandamus | 2., 8. |
| | | ☐ A6152 Writ - Mandamus on Limited Court Case Matter | 2. |
| | | ☐ A6153 Writ - Other Limited Court Case Review | 2. |
| | Other Judicial Review (39) | ☐ A6150 Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003 Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007 Construction Defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | ☐ A6006 Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035 Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort Environmental (30) | ☐ A6036 Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014 Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141 Sister State Judgment | 2., 9. |
| | | ☐ A6160 Abstract of Judgment | 2., 6. |
| | | ☐ A6107 Confession of Judgment (non-domestic relations) | 2., 9. |
| | | ☐ A6140 Administrative Agency Award (not unpaid taxes) | 2., 8. |
| | | ☐ A6114 Petition/Certificate for Entry of Judgment on Unpaid Tax | 2., 8. |
| | | ☐ A6112 Other Enforcement of Judgment Case | 2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033 Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030 Declaratory Relief Only | 1., 2., 8. |
| | | ☐ A6040 Injunctive Relief Only (not domestic/harassment) | 2., 8. |
| | | ☐ A6011 Other Commercial Complaint Case (non-tort/non-complex) | 1., 2., 8. |
| | | ☐ A6000 Other Civil Complaint (non-tort/non-complex) | 1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113 Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121 Civil Harassment | 2., 3., 9. |
| | | ☐ A6123 Workplace Harassment | 2., 3., 9. |
| | | ☐ A6124 Elder/Dependent Adult Abuse Case | 2., 3., 9. |
| | | ☐ A6190 Election Contest | 2. |
| | | ☐ A6110 Petition for Change of Name | 2., 7. |
| | | ☐ A6170 Petition for Relief from Late Claim Law | 2., 3., 4., 8. |
| | | ☐ A6100 Oth | 2., 9. |

**EXHIBIT 2**

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION

48

| SHORT TITLE: XOCHILT ROBINSON, et al., v. JOHNSON & JOHNSON, et al., | CASE NUMBER |
|---|---|

**Item III.** Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., **Step 3** on Page 1, as the proper reason for filing in the court location you selected.

| REASON: Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected for this case.<br><br>☐1. ☒2. ☐3. ☐4. ☐5. ☐6. ☐7. ☐8. ☐9. ☐10. | ADDRESS:  818 W SEVENTH ST |
|---|---|
| CITY:<br>LOS ANGELES | STATE:<br>CA | ZIP CODE:<br>90017 |

**Item IV.** *Declaration of Assignment*: I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the _Superior_ courthouse in the _Central_ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., § 392 et seq., and Local Rule 2.0, subds. (b), (c) and (d)].

Dated: _12/30/13_

(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 03/11).

5. Payment in full of the filing fee, unless fees have been waived.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

**EXHIBIT**
**2**

49

**CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION**

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)* | FOR COURT USE ONLY |
|---|---|

**A.MARZ**
**GIRARDI AND KEESE**
**1126 WILSHIRE BLVD. LOS ANGELES, CA 900170000**

TELEPHONE NO.: **(213) 977-0211**    FAX NO.*(Optional):*    **(213) 481-1554**
E-MAIL ADDRESS *(Optional):*
ATTORNEY FOR *(Name):*  :

**Los Angeles County Superior Court - Stanley Mosk**

STREET ADDRESS: **111 N. Hill St.**

MAILING ADDRESS:

CITY AND ZIP CODE: **Los Angeles, CA 90012**

BRANCH NAME: **Central**

PLAINTIFF/PETITIONER: **XOCHILT ROBINSON, ET AL.**

DEFENDANT/RESPONDENT: **JOHNSON**

**PROOF OF SERVICE OF SUMMONS**

**FILED**
Superior Court of California
County of Los Angeles

FEB 05 2014

Sherri R. Carter, Executive Officer/Clerk
CASE NUMBER: ~~Cul Demy~~ Deputy
Raul Sanchez
**BC531848**

Ref. No. or File No.: **29129 - ROBINS**

*(Separate proof of service is required for each party served.)*

D-93

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. **[X]** summons
   b. **[X]** complaint
   c. **[ ]** Alternative Dispute Resolution (ADR) package
   d. **[ ]** Civil Case Cover Sheet *(served in complex cases only)*
   e. **[ ]** cross-complaint
   f. **[X]** other *(specify documents):*
       **See attached Document List**
3. a. Party served *(specify name of party as shown on documents served):*
   **ETHICON, INC., A NEW JERSEY CORPORATION**

   b. **[X]** Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
   **CT CORPORATION SYSTEM, REGISTERED AGENT BY LEAVING WITH JAN LAPINID - PERSON AUTHORIZED TO ACCEPT SERVICE/AGENT**

4. Address where the party was served: **CT CORPORATION SYSTEM**
   **818 WEST 7TH STREET**
   **LOS ANGELES, CA 90017**

5. I served the party *(check proper box)*
   a. **[X]** by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* **1/7/2014**    (2) at *(time):* **2:20 PM**

   b. **[ ]** by substituted service. On *(date):* at *(time):* I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3b):*

      *(1)* **[ ]** **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him of her of the general nature of the papers.

      *(2)* **[ ]** **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      *(3)* **[ ]** **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him of her of the general nature of the papers.

      *(4)* **[ ]** I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., §415.20). I mailed the documents on *(date):* from *(city):*    **or [ ]** a declaration of mailing is attached.

      *(5)* **[ ]** I attach a **declaration of diligence** stating actions taken first to attempt personal service.

**EXHIBIT**
**3**
50

Form Approved for Mandatory Use
Judicial Council of California
POS-010 [Rev. January 1, 2007]

**PROOF OF SERVICE OF SUMMONS**

Code of Civil Procedure, § 417.10

**POS010-1/LA401061424**

Janney & Janney Attorney Service, Inc.
1545 Wilshire Blvd., Suite 311
Los Angeles, CA 90017
Phone: 2136286338   Fax: 2134832576

Continued from Proof of Service

**CLIENT:** GIRARDI AND KEESE

**CLIENT FILE #:** 29129 - ROBINS          **DATE:** January 09, 2014

**SUBJECT:** ETHICON, INC., A NEW JERSEY CORPORATION

**Documents:**

Additional Parties Attachment; Civil Case Cover Sheet; Civil Case
Cover Sheet Addendum & Statement of Location; Notice of Case
Assignment; Amended General Order - Final Status Conference,
Personal Injury ("PI") Courts; Amended General Order Re Personal
Injury Court ("PI") Procedures

**EXHIBIT**

**3**

Janney & Janney
attorney service, inc.

51

Order#: LA401061424 /DocAtt2010

| PETITIONER: XOCHILT ROBINSON, E——— — | CASE NUMBER: |
|---|---|
| RESPONDENT: JOHNSON | BC531848 |

c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):*                  (2) from *(city):*

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed Notice and Acknowledgement of Receipt.) (Code Civ. Proc., § 415.30.)*

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ **by other means** *(specify means of service and authorizing code section):*

    ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

    a. ☐ as an individual defendant.
    b. ☐ as the person sued under the fictitious name of *(specify):*
    c. ☐ as occupant.
    d. ☒ On behalf of *(specify):* **ETHICON, INC., A NEW JERSEY CORPORATION**
        under the following Code of Civil Procedure section:

| | |
|---|---|
| ☒ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☐ other: |

7. **Person who served papers**
    a. Name: **Vincent E. Avila - JANNEY & JANNEY ATTORNEY SERVICE, INC.**
    b. Address: **1545 WILSHIRE BLVD., SUITE 311  LOS ANGELES, CA 90017**
    c. Telephone number: **(213) 628-6338**
    d. **The fee for service was: $ 60.00**
    e. I am:

        (1) ☐ not a registered California process server.
        (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
        (3) ☒ registered California process server:
            (i) ☐ owner    ☐ employee    ☐ independent contractor.
            (ii) Registration No.: **6089**
            (iii) County: **LOS ANGELES**

8. ☒ I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    or

9. ☐ I am a California sheriff or marshal and I certify that the foregoing is true and correct.

    Date: **January 09, 2014**

**JANNEY & JANNEY ATTORNEY SERVICE, INC.**
**1545 WILSHIRE BLVD., SUITE 311**
**LOS ANGELES, CA 90017**
**(213) 628-6338**

    **Vincent E. Avila**            **EXHIBIT**      *(signature)*
    (NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)  **3**    (SIGNATURE)

1  TUCKER ELLIS LLP
   MOLLIE F. BENEDICT SBN 187084
2  mollie.benedict@tuckerellis.com
   JOSHUA J. WES SBN 238541
3  joshua.wes@tuckerellis.com
   515 South Flower Street
4  Forty-Second Floor
   Los Angeles, CA 90071-2223
5  Telephone:  213.430.3400
   Facsimile:  213.430.3409
6

7  Attorneys for Defendant
   ETHICON, INC.

8

9                    **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10                             **COUNTY OF LOS ANGELES**

11  XOCHILT ROBINSON; THERESA BARNES;      )   CASE NO.: BC531848
    PATRICIA GIBBS; KELLY BRADLEY-          )
12  LERMA; JOANN NUNES; PHYLLIS             )
    GOODMAN; DINA GUASE; JUDY MAY;          )   **ANSWER AND DEFENSES OF ETHICON,**
13  WILHELMINA NEWMAN; PAMELA               )   **INC. TO PLAINTIFFS' COMPLAINT FOR**
    STEWART; IRENE TOBIN; CYNTHIA           )   **DAMAGES AND DEMAND FOR JURY**
14  TORTORICI; BONNIE HAND; FLORENCE        )   **TRIAL**
    BUCHANAN; VENITA MASTERS; BIBIANA       )
15  QUIAMBAO; LISHA MCMILLAN; CAROLYN       )   **DEMAND FOR JURY TRIAL**
    BLACKMER; JANE HEWLETT; ILHAM           )
16  DAGON; SANDRA HAMANN; DONNA             )   Judge:  Hon. Samantha P. Jessner
    PEARSON; RUTH GAUNT; BEVERLY            )   Dept:  93
17  TINKHAM; SARA CARMONA; JOYCE            )
    REAVIS; JANICE HIRD; GEORGINA           )   Complaint Filed:  December 30, 2013
18  VOKATY; DAWN CUNNINGHAM; PAMELA         )
    PEELE; MARY EDWARDS; VICKIE             )
19  SKELTON; MARY FRIEL; MARIE PARNELL;     )
    MARIAN MOXLEY; MALLAH BUELL;            )
20  SHIRLEY STEWART; SHIRLENE HUFFMAN;      )
    SUSAN SCHURICHT; VALENTINE              )
21  SCHULER; LINDA BERRY; TAMMY PIAZZA;     )
    MARTHA DAVIS; MARY KATUIN; JUDITH       )
22  FESLER; SHARON LOUGHMAN; TRACY          )
    MULLER; AVA KRUM; LINDA WALTON;         )
23  HILDEGARD MILEUSNIC; MARGARET           )
    DULEY; BOBBIE JO RENUCCI; ANGELA        )
24  MCCASKELL; LAURI KOTZEN; MARIE          )
    WICK; MARCILLE MILLER; SHERRY           )
25  ROBERTS; GWEN PELTIER; MERRY            )
    BREEDEN; MEDINA OMEROVIC; NOLA          )
26  PIOTROSWSKI; LISA MURPHY; SERENA        )
    COOVERT; REGINA WEST; MAIDA NA___       )
27  MARY ORSI AND JADA SPANGLER             )

28                    Plaintiffs,
                                           _____

                                                ANSWER TO COMPLAINT

969405.1

1    v.

2    JOHNSON & JOHNSON, a New Jersey

3    Corporation; ETHICON, INC., a New Jersey
     Corporation; ETHICON, LLC, a Limited Liability

4    Company; and DOES 1 TO 500, inclusive,

5        Defendants.

6

7

8

9

## GENERAL DENIAL

Defendant Ethicon, Inc. ("Ethicon"), by and through its attorneys of record, hereby answers the Complaint for Damages and Demand for Jury Trial ("Complaint") as follows:

By virtue of the provisions of section 431.30 of the California Code of Civil Procedure, Ethicon generally denies each and every allegation in the Complaint that relates to or is directed to Ethicon or any of its alleged agents, servants or employees. Ethicon further denies that Plaintiffs have been damaged to any extent or amount or that Plaintiffs are entitled to any relief whatsoever from Ethicon.

Ethicon additionally denies that there is any law, fact, theory, or contractual or legal relationship under which Plaintiffs are entitled to damages in any amount by this answering Defendant.

## DEFENSES

### FIRST DEFENSE

The Complaint fails to state a cause of action upon which relief can be granted.

### SECOND DEFENSE

The Complaint fails to state a cause of action upon which relief can be granted due to lack of adequate product identification.

### THIRD DEFENSE

Plaintiffs' claims are barred for lack of subject matter jurisdiction.

### FOURTH DEFENSE

Plaintiffs' claims are barred for lack ~~EXHIBIT~~ jurisdiction.

**EXHIBIT 4**

ANSWER TO COMPLAINT

969405.1

TUCKER ELLIS LLP
Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

### FIFTH DEFENSE

Plaintiffs may be barred from bringing some of the claims alleged in the Complaint because Plaintiffs may lack standing and/or capacity to bring such claims.

### SIXTH DEFENSE

Plaintiffs may have failed to join indispensable parties or real parties in interest necessary for the just adjudication of this matter.

### SEVENTH DEFENSE

Venue in this Court is improper, and this matter should be dismissed on intra-state or interstate *forum non conveniens* grounds.

### EIGHTH DEFENSE

Certain of Plaintiffs' claims and remedies and the defenses thereto are governed by the laws of a foreign jurisdiction or the laws of the United States.

### NINTH DEFENSE

Plaintiffs' alleged causes of action have been improperly joined under the applicable Rules of Civil Procedure and the laws of the applicable state.

### TENTH DEFENSE

The improper joinder of Plaintiffs' alleged causes of action violate the procedural and substantive due process rights of Ethicon under the Constitutions of the United States of America, California, and any other state whose law is deemed to apply in this case, as well as the applicable Rules of Civil Procedure and the laws of California, and any other state whose law is deemed to apply in this case.

### ELEVENTH DEFENSE

The improper joinder of Defendants violates the procedural and substantive due process rights of Ethicon under the Constitutions of the United States of America, California, and any other state whose law is deemed to apply in this case.

### TWELFTH DEFENSE

Ethicon is entitled to, and claims the benefit of, all defenses and presumptions set forth in or arising from any rule of law or statute in California and any other state whose law is deemed to apply in

**EXHIBIT 4**

55  3

969405.1

1 | this case.

### THIRTEENTH DEFENSE

To the extent that any of Plaintiffs' claims can be, or are construed as, alleging fraud and/or fraudulent concealment, Ethicon specifically claims all affirmative defenses available to it under the rules and statutes of California and any state whose law is deemed to apply in this case, and under any common law principles of California and any state whose law is deemed to apply in this case.

### FOURTEENTH DEFENSE

Plaintiffs' claims are barred by the doctrine of federal preemption, as established by statute, including the preemption provision of the Medical Device Amendments, 21 U.S.C. § 360k(a), to the federal Food, Drug and Cosmetic Act, 21 U.S.C. §§ 301, et seq., and by state and federal case law, and are barred by the Supremacy Clause of the United States Constitution, because the products at issue are regulated by the U.S. Food and Drug Administration ("FDA") under the Medical Device Amendments, 21 U.S.C. § 360k, et seq., to the federal Food, Drug and Cosmetic Act, 21 U.S.C. §§ 301, et seq., and other federal statutes and regulations.

### FIFTEENTH DEFENSE

At all relevant times, Ethicon was in full compliance with all applicable federal statutes and regulations, including but not limited to the Medical Device Amendments, 21 U.S.C. § 360k, et seq., to the federal Food, Drug and Cosmetic Act, 21 U.S.C. §§ 301, et seq., and other federal statutes and regulations, and Plaintiffs' claims are accordingly barred.

### SIXTEENTH DEFENSE

Plaintiffs' claims against Ethicon are expressly and/or impliedly preempted by federal law, including but not limited to, the regulations promulgated by the FDA and contained in Chapter 21 of the Code of Federal Regulations. *See* 21 U.S.C. § 301 *et seq.*; *see also* Fed. Reg. 3922 (Jan. 24, 2006).

### SEVENTEENTH DEFENSE

Plaintiffs' claims are barred because Ethicon complied with all applicable state and federal statutes regarding the products at issue including the requirements and regulations promulgated by the FDA and contained in Chapter 21 of the Code of Federal Regulations.  In the event that Plaintiffs' claims are not barred, Ethicon is entitled to a presumption that the products at issue are free from any

**EXHIBIT**

**4**

56   4

ANSWER TO COMPLAINT

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

969405.1

defect or defective condition as the plans or design for the products at issue or the methods and techniques of manufacturing, inspecting, and testing the products at issue were in conformity with government standards established for the industry that were in existence at the time the plans or designs for the products at issue or the methods and techniques of manufacturing, inspecting, and testing the products at issue were adopted.

### EIGHTEENTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the deference that federal and state constitutional law and federal and state common law give to discretionary actions by the FDA under the Federal Food, Drug & Cosmetic Act, 21 U.S.C. § 301 *et seq.*, and regulations promulgated there under.

### NINETEENTH DEFENSE

Plaintiffs' claims are governed and barred, in whole or in part, by Sections 2, 4, and 6 of The Restatement (Third) of Torts (including the comments thereto) because Ethicon complied with all applicable statutes and with the requirements and regulations of the FDA.

### TWENTIETH DEFENSE

Any claims by Plaintiffs relating to alleged communications with regulatory agencies in the United States government are barred in whole or in part by operation of applicable law, including the First Amendment rights of Ethicon to petition the government.

### TWENTY-FIRST DEFENSE

Plaintiffs' claims regarding warnings and labeling are barred in whole or in part by the doctrine of primary jurisdiction, in that the FDA is charged under the law with determining the content of warnings and labeling for medical devices.

### TWENTY-SECOND DEFENSE

Plaintiffs cannot state a claim with regard to warnings and labeling for medical devices because the remedy sought by Plaintiffs is subject to the exclusive regulation of FDA.

### TWENTY-THIRD DEFENSE

Plaintiffs' claims for punitive and exemplary damages are barred because the products at issue were manufactured and labeled in accordance with the terms of FDA's clearance of the products at issue.

**EXHIBIT**

**4**

969405.1

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

**TWENTY-FOURTH DEFENSE**

Plaintiffs' claims are barred in whole or in part by Plaintiffs' failure to assert a safer design for any of the products at issue.

**TWENTY-FIFTH DEFENSE**

Plaintiffs' claims are barred in whole or in part because the products at issue provided a benefit to users of such products and greatly outweighed any risk created by using such products, any risk could not have been avoided through the use of the highest standards of scientific and technical knowledge available at the time, the benefit provided to users could not be achieved in another manner with less risk, and adequate warnings concerning the risk were provided.

**TWENTY-SIXTH DEFENSE**

Ethicon made no express or implied representations or warranties of any kind to Plaintiffs, nor did Plaintiffs rely on any representations or warranties made by Ethicon to others. To the extent Plaintiffs relied upon any representations or warranties, such reliance was unjustified.

**TWENTY-SEVENTH DEFENSE**

Any express or implied warranties alleged to have been made by Ethicon were disclaimed.

**TWENTY-EIGHTH DEFENSE**

Ethicon did not make nor did it breach any express or implied warranties and/or breach any warranties created by law. To the extent that Plaintiffs relied on any theory of breach of warranty, such claims are barred by applicable law, by the lack of privity between Plaintiffs and Ethicon, and/or by Plaintiffs' failure to give Ethicon timely notice of the alleged breach of warranty and an opportunity to cure. Ethicon further specifically pleads as to any breach of warranty claim all affirmative defenses available to Ethicon under the Uniform Commercial Code, as enacted in California or any other state whose law is deemed to apply in this case, and under the common law principles of California and any state whose law is deemed to apply in this case.

**TWENTY-NINTH DEFENSE**

The injuries and damages allegedly suffered in this action, which are denied, were not foreseeable to Ethicon given the state of scientific knowledge and state-of-the-art at the time of the

**EXHIBIT**

**4**

ANSWER TO COMPLAINT

969405.1

alleged injuries. At all times relevant, the products at issue conformed to state-of-the-art specifications and state-of-scientific knowledge for such products at that time, as well as all applicable statutes and regulations, including those of FDA.

### THIRTIETH DEFENSE

Plaintiffs knowingly and voluntarily assumed any and all risks associated with the use of the products at issue in this case and thus the "last clear chance" and assumption of the risk doctrines bar in whole or in part the damages that Plaintiffs seeks to recover herein.

### THIRTY-FIRST DEFENSE

Plaintiffs' claims are barred, in whole or in part, because Ethicon acted in good faith at all relevant times and gave adequate warnings of all known or reasonably knowable risks associated with the use of its products.

### THIRTY-SECOND DEFENSE

At all relevant times herein, the products in question were manufactured and distributed with proper warnings, information, cautions, and instructions in conformity with generally recognized and prevailing standards in existence at the time.

### THIRTY-THIRD DEFENSE

Plaintiffs' inadequate warning claims are barred because the alleged risk of which Plaintiffs claim is open, obvious, and/or a matter of common knowledge.

### THIRTY-FOURTH DEFENSE

Plaintiffs' claims are barred in whole or in part because the products at issue were consistent with and/or exceeded consumer expectations.

### THIRTY-FIFTH DEFENSE

Plaintiffs' claims are barred in whole or in part because the products at issue were at all times properly prepared, packaged, and distributed, and were not defective or unreasonably dangerous.

### THIRTY-SIXTH DEFENSE

Adequate and complete warnings and instructions were provided with the products at issue. The products at issue were neither defective nor unreasonably dangerous when used according to their Instructions for Use.

ANSWER TO COMPLAINT

969405.1

### THIRTY-SEVENTH DEFENSE

At all relevant times, the warnings and instructions accompanying the products at issue were governed by and conformed with applicable federal statutes, rules and regulations; therefore, warnings and instructions relating to the products were presumptively adequate.

### THIRTY-EIGHTH DEFENSE

Plaintiffs' causes of action are barred by the learned intermediary doctrine.

### THIRTY-NINTH DEFENSE

Ethicon is not liable to Plaintiffs because the end users of the products at issue, Plaintiffs' physician(s), were sophisticated users of the products.

### FORTIETH DEFENSE

Ethicon states that the sole proximate cause of the injuries and/or damages alleged by Plaintiffs was the actions, omissions, or negligence of a person or persons, other than Ethicon, for whose actions, omissions, or negligence Ethicon is in no way liable. Plaintiffs are not, therefore, entitled to recover from Ethicon in this action. As to Plaintiffs or to any other entity or person whose conduct or intervening negligence resulted in the alleged injuries and/or damages of Plaintiffs, if any, Ethicon expressly pleads the doctrines of assumption of risk, contributory negligence, comparative fault and/or comparative negligence, as well as the provisions of any applicable comparative fault and/or comparative negligence and/or contributory negligence statute, law or policy of the applicable states.

### FORTY-FIRST DEFENSE

The injuries and damages allegedly suffered in this action, which are denied, may have been caused, in whole or in part, by Plaintiffs' own fault, which bars or proportionately reduces Ethicon's liability, if any, for Plaintiffs' alleged damages.

### FORTY-SECOND DEFENSE

The Plaintiffs voluntarily and unreasonably chose to encounter known dangers.

### FORTY-THIRD DEFENSE

The liability of Ethicon, if any, for Plaintiffs' non-economic loss must be apportioned in accordance with the provisions of the law of the applicable states.

**EXHIBIT**

**4**

60 8

ANSWER TO COMPLAINT

### FORTY-FOURTH DEFENSE

In the event Ethicon is held liable to Plaintiffs, which liability is expressly denied, and any other co-defendants are also held liable, Ethicon is entitled to a percentage contribution of the total liability from said co-defendants in accordance with principles of equitable indemnity and comparative contribution and pursuant to any applicable contribution or apportionment statute, law or policy of the applicable states.

### FORTY-FIFTH DEFENSE

There is no causal relationship between Ethicon's conduct and the injuries and damages alleged by Plaintiffs in the Complaint.

### FORTY-SIXTH DEFENSE

At all times mentioned herein, Plaintiffs were negligent, careless and at fault and conducted themselves so as to contribute substantially to their alleged injuries, losses, and damages. Said negligence, carelessness and fault of Plaintiffs bars in whole or in part the damages which Plaintiffs seek to recover herein.

### FORTY-SEVENTH DEFENSE

Plaintiffs' alleged injuries, losses, or damages attributable to the use of the products at issue in this case, if any, were solely caused by and attributable to the abnormal, unforeseeable, unintended, unreasonable, and improper use or misuse which was made of said products.

### FORTY-EIGTH DEFENSE

Plaintiffs' alleged injuries, losses, or damages attributable to the use of the products at issue in this case, if any, were not legally caused by the products at issue, but instead were legally caused by intervening and superseding causes or circumstances.

### FORTY-NINTH DEFENSE

Plaintiffs' alleged injuries, losses, or damages attributable to the products at issue in this case, if any, were caused by the acts or omissions of third parties for which Ethicon has no legal responsibility.

### FIFTIETH DEFENSE

Ethicon expressly denies any third party engaging in the acts alleged by Plaintiffs was acting as Ethicon's agent or servant, at the instruction of Ethicon, or within its control. Therefore, Plaintiffs'

**EXHIBIT**

**4**

ANSWER TO COMPLAINT

969405.1

TUCKER ELLIS LLP
Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

claims, to the extent they seek to recover for the acts or omissions of such third parties, are barred in whole or in part as a matter of law.

### FIFTY-FIRST DEFENSE

Plaintiffs' causes of action are barred because the injuries and damages allegedly suffered in this action, which are denied, were due to an allergic, idiosyncratic or idiopathic reaction to the products at issue in this case, or by an unforeseeable illness, unavoidable accident, or preexisting condition, and/or another unrelated medical, genetic or environmental condition, disease or illness, without any negligence or culpable conduct by Ethicon.

### FIFTY-SECOND DEFENSE

Plaintiffs' claims are or may be barred by their failure to comply with conditions precedent to their right to recover.

### FIFTY-THIRD DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the doctrine of avoidable consequences.

### FIFTY-FOURTH DEFENSE

The claims of Plaintiffs may be barred, in whole or in part, from recovery, due to spoliation of evidence and the failure to properly preserve evidence necessary to the determination of the claims.

### FIFTY-FIFTH DEFENSE

Plaintiffs' claims against Ethicon are barred by the doctrines of equitable estoppel, laches, consent, waiver, informed consent, release, unclean hands, res judicata, and collateral estoppel. Additionally, if any Plaintiff have or has filed bankruptcy during the relevant time period of the events alleged in the Complaint or files for bankruptcy at some point in the future, the claims of any such Plaintiff may be "property of the bankruptcy estate" which should be prosecuted by the bankruptcy trustee rather than Plaintiffs, or, if not disclosed by Plaintiffs on the schedules and/or statement of financial affairs, may be barred by the doctrine of judicial estoppel.

### FIFTY-SIXTH DEFENSE

Some or all of Plaintiffs' claims may be barred by the statutes of limitations, prescription, and/or statues of repose of the applicable states.

**EXHIBIT 4**

62  10

ANSWER TO COMPLAINT

969405.1

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

### FIFTY-SEVENTH DEFENSE

To the extent Plaintiffs' claims are based on alleged misrepresentations or omissions made to the FDA, such claims are barred by *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001).

### FIFTY-EIGHTH DEFENSE

Plaintiffs' alleged damages, if any, are barred in whole or in part by Plaintiffs' failure to mitigate such damages.

### FIFTY-NINTH DEFENSE

The sale, labeling and marketing of the products at issue in this litigation is not, and was not, likely to mislead or deceive the public.

### SIXTIETH DEFENSE

The products at issue were altered after the products left the control, custody and possession of Ethicon, and said alteration relieves Ethicon of any and all liability.

### SIXTY-FIRST DEFENSE

Any strict liability cause of action for relief is subject to the limitations set forth in Restatement (Second) of Torts, Section 402A, comment k.

### SIXTY-SECOND DEFENSE

Plaintiffs' claims are barred in whole or in part under Section 402A, comment j and k of the Restatement (Second) of Torts.

### SIXTY-THIRD DEFENSE

Plaintiffs' claims are barred, in whole or in part, to the extent Plaintiffs have released, settled, entered into an accord and satisfaction or otherwise compromised their claims by any means.

### SIXTY-FOURTH DEFENSE

Any recovery by Plaintiffs must be reduced or offset by all amounts paid, payable by, or available from collateral sources.

### SIXTY-FIFTH DEFENSE

Plaintiffs' Complaint fails to state a claim upon which relief can be granted as to costs, attorney's fees, expert fees, expenses, pre-judgment interest, post-judgment interest, refund, rescission, unjust enrichment, disgorgement or restitution.

**EXHIBIT**

**4**

63 11

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

969405.1

TUCKER ELLIS LLP
Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

1

**SIXTY-SIXTH DEFENSE**

2   The Complaint fails to state facts sufficient to entitle Plaintiffs to an award of punitive or

3   exemplary damages.

4

**SIXTY-SEVENTH DEFENSE**

5   No act or omission of Ethicon was malicious, oppressive, willful, wanton, reckless, or grossly

6   negligent, and therefore any award of punitive damages is barred.

7

**SIXTY-EIGHTH DEFENSE**

8   Plaintiffs' claims for pain and suffering are barred because they violate Ethicon's rights to

9   procedural and substantive due process and equal protection as guaranteed by the Constitutions of the

10  United States and the applicable states.

11

**SIXTY-NINTH DEFENSE**

12  The imposition of punitive or exemplary damages would violate Ethicon's constitutional rights,

13  including but not limited to those under the due process clauses in the Fifth and Fourteenth Amendments

14  to the Constitution of the United States,  and the equivalent or correlative applicable provisions in the

15  Constitutions, common law, public policy, applicable statutes and court rules of the applicable states to

16  these amendments and the excessive fines clause in the Eighth Amendment to the Constitution of the

17  United States and the double jeopardy clause in the Fifth Amendment to the Constitution of the United

18  States.  To the extent that punitive damages awarded to any Plaintiffs are (1) imposed by a jury that is

19  not provided standards of sufficient clarity for determining the appropriateness, and the appropriate size,

20  of such a punitive damages award; is not adequately and clearly instructed on the limits on punitive

21  damages imposed by the principles of deterrence and punishment; is not expressly prohibited from

22  awarding punitive damages, or determining the amount of an award thereof, in whole or in part, on the

23  basis of invidious discriminatory characteristics, including the corporate status, wealth, or state of

24  residence of defendant; or is permitted to award punitive damages under a standard for determining

25  liability for such damages which is vague and arbitrary and does not define with sufficient clarity the

26  conduct or mental state which makes punitive damages permissible; (2) are not subject to independent

27  de novo review by the trial and appellate courts for reasonableness and the furtherance of legitimate

28  purposes on the basis of objective legal standards and in conformity with the United States Constitution

**EXHIBIT 4**

ANSWER TO COMPLAINT

969405.1

as amended or any applicable State constitution as amended; (3) imposed where state law is impermissibly vague, imprecise, or inconsistent; (4) subject to no predetermined limit, such as a maximum multiple of compensatory damages or a maximum amount; or (5) imposed on the basis of anything other than Ethicon's conduct within the State where each Plaintiff resides, or in any other way subjecting Ethicon to impermissible multiple punishment for the same alleged wrong.

### SEVENTIETH DEFENSE

Ethicon specifically incorporates by reference all standards of limitations regarding the determination and enforceability of punitive damage awards as applied to the state and federal courts of the applicable states under the Due Process clause of the Fourteenth Amendment to the United States Constitution.

### SEVENTY-FIRST DEFENSE

With respect to Plaintiffs' demand for punitive damages, Ethicon specifically incorporates by reference all standards of limitations regarding the determination and enforceability of punitive damage awards that arise under *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996); *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424 (2001); *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408 (2003); *Philip Morris USA v. Williams*, 549 U.S. 346 (2007), and their progeny, as applied by the federal courts of appeals, together with all such standards applicable under any other state's law.

### SEVENTY-SECOND DEFENSE

Ethicon asserts the provisions of all applicable statutory caps on damages of any sort, including punitive, non-economic or exemplary damages, under the laws of California or of any state whose law is deemed to apply in this case.

### SEVENTY-THIRD DEFENSE

Ethicon specifically pleads as to Plaintiffs' claims for punitive and/or exemplary damages, all affirmative defenses available to Ethicon under the rules and statutes of California or any state whose law is deemed to apply in this case, and under any common law principles of California or any state whose law is deemed to apply in this case.

**EXHIBIT 4**

### SEVENTY-FOURTH DEFENSE

Ethicon specifically pleads as to Plaintiffs' strict product liability claims, all affirmative defenses

ANSWER TO COMPLAINT

969405.1

TUCKER ELLIS LLP
Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

available to Ethicon under the rules and statutes of California or any state whose law is deemed to apply in this case, and under any common law principles of California or any state whose law is deemed to apply in this case.

### SEVENTY-FIFTH DEFENSE

Ethicon specifically pleads as to Plaintiffs' negligence claims all affirmative defenses available to Ethicon under the rules and statutes of California or any state whose law is deemed to apply in this case, and under any common law principles of California or any state whose law is deemed to apply in this case.

### SEVENTY-SIXTH DEFENSE

Ethicon hereby gives notice that it intends to rely upon and incorporate by reference any affirmative defenses that may be asserted by any co-defendant in this lawsuit.

### SEVENTY-SEVENTH DEFENSE

Ethicon reserves the right to assert any additional defenses and matters in avoidance, which may be disclosed during the course of additional investigation and discovery.

### DEMAND FOR JURY TRIAL

Ethicon specifically requests and demands a trial by jury as to all issues so triable.

WHEREFORE, Defendant Ethicon, Inc. prays that:

(1)    Plaintiffs take nothing by reason of the Complaint;

(2)    the Complaint be dismissed in its entirety and that a Judgment against Plaintiffs and in favor of Ethicon, Inc. be entered;

(3)    Ethicon, Inc. be awarded its costs and expenses; and

(4)    this Court award Ethicon, Inc. any other and general or specific relief as this Court may deem just and proper.



EXHIBIT

**4**

66  14

ANSWER TO COMPLAINT

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

969405.1

DATED: February 3, 2014          TUCKER ELLIS LLP

By:
  Mollie F. Benedict
  Joshua J. Wes
  Attorneys for Defendant
  ETHICON, INC.

**EXHIBIT**

**4**

969405.1

## PROOF OF SERVICE

*Xochilt Robinson, et al. v. Ethicon, Inc., et al.*
Los Angeles County Superior Court Case No. BC 531848

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles. I am over the age of eighteen years and not a party to the within entitled action. My business address is 515 South Flower Street, Forty Second Floor Los Angeles, CA 90071.

On February 3, 2014, I served the foregoing document(s) described as **ANSWER AND DEFENSES OF ETHICON, INC. TO PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL** on the interested party(ies) in this action as follows:

**[See Attached Service List]**

**(X)**    **BY MAIL:** By placing a true copy thereof enclosed in a sealed envelope(s) addressed as above, and placing each for collection and mailing on that date following ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the U.S. Postal Service in Los Angeles, California, in a sealed envelope with postage fully prepaid.

**( )**    **BY OVERNIGHT DELIVERY:** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed as noted below. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

**( )**    **BY FACSIMILE:** Based on agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed below. The telephone number of the sending fax machine was 213.430.3409. The sending facsimile machine issued a transmission report confirming the transmission was complete and without error. A copy of that report is attached.

**( )**    **BY E-MAIL OR ELECTRONIC TRANSMISSION**: Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

**(X)**    **STATE**: I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**( )**    **FEDERAL**: I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 3, 2014, at Los Angeles, California.

EXHIBIT
**4**

CYNTHIA M. HARRIS

PROOF OF SERVICE

969405.1

Tucker Ellis LLP
Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

## SERVICE LIST

*Xochilt Robinson, et al. v. Ethicon, Inc., et al.*
Los Angeles County Superior Court Case No. BC 531848

Thomas V. Giradi                          ***Attorneys for Plaintiffs***
Amy F. Solomon
GIRARDI KEESE
1126 Wilshire Boulevard
Los Angeles, CA  90017
Tel: (213) 977-0211
Fax: (213) 481-1554

Kurt B. Arnold                            ***Attorneys for Plaintiffs***
Jason A. Atkin
Noah M. Wexler
ARNOLD & PORTER
1401 McKinney Street, Suite 2550
Houston, TX  77010
Tel: (713) 222-3800
Fax: (713) 222-3850

J. Steve Mostyn                           ***Attorneys for Plaintiffs***
THE MOSTYN LAW FIRM
3810 West Alabama Street
Houston, TX  77027
Tel: (713) 861-6616
Fax: (713) 861-8084

TUCKER ELLIS LLP
Cleveland ◆ Columbus ◆ Denver ◆ Los Angeles ◆ San Francisco

**EXHIBIT**

**4**

SERVICE LIST

969405.1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

---

------------------------------------------------------------- x

IN RE ETHICON, INC., PELVIC REPAIR
SYSTEM PRODUCTS LIABILITY
LITIGATION

------------------------------------------------------------- 

This Document Applies To All Actions

------------------------------------------------------------- x

:    CIVIL ACTION NO. 2:12-md-02327
:
:    MDL No. 2327
:
:    Judge Joseph R. Goodwin
:

---

## MOTION TO AMEND FIRST AMENDED MASTER LONG FORM COMPLAINT AND JURY DEMAND AND AMENDED MASTER SHORT FORM COMPLAINT

Plaintiffs in the above-styled MDL proceeding move the Court for leave to amend their First Amended Master Long Form Complaint and Amended Master Short Form Complaint.

### I. INTRODUCTION

Plaintiffs seek leave to amend their First Amended Master Long Form Complaint[1] to remove, revise and/or add the following:

1) Remove paragraph 5 to exclude Defendant Ethicon, LLC;
2) Add more specificity to paragraphs 18, 24, 40, 50, and 51;
3) Add paragraphs 28, 30, 141 (a) – (f), 155 (a) – (f), 161 (a) – (f), 162, 256 (a) – (f); and
4) Add Count XIX, Negligent Training.

Plaintiffs obtained information necessary to plead their fraud claims with greater specificity from their review of numerous depositions and thousands of documents produced in the litigation to date. Plaintiffs also discovered new evidence to support a claim for negligent training.

The proposed amended complaint necessitates changes to the Amended Master Short Form Complaint.[2] In particular, the short form complaint should exclude contents about

---

[1]    The proposed amended long form complaint is attached as Appendix A.

**EXHIBIT 5**

Defendant Ethicon, LLC and include Count XIX on negligent training. The proposed revised short form complaint also includes Defendant, Cook because the Court indicated this defendant should be added.[3]

## II. PROCEDURAL HISTORY

On August 21, 2012, Plaintiffs filed their Master Long Form Complaint and Jury Demand. Plaintiffs inadvertently omitted paragraphs on jurisdiction and venue and on August 28, 2012, with Defendants' agreement, Plaintiffs filed their First Amended Master Long Form Complaint and Jury Demand.

Plaintiffs also filed their Master Short Form Complaint on August 21, 2012. On May 29, 2013, the Court entered PTO No. 50 allowing Plaintiffs to amend their Short Form Complaint to remove defendants that had been dismissed without prejudice. These companies are Endo Pharmaceuticals Inc., American Medical Systems Holdings, Inc. and Endo Health Solutions Inc. (collectively referred to as the "Endo Entities") along with Coloplast A/S, Coloplast Manufacturing US, LLC, and Porges S.A.

Plaintiffs have neither sought nor been ordered to make any other changes to the long form or short form complaints.

## III. ARGUMENT

The Court should freely grant leave to amend "when justice so requires." FED. R. CIV. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Supreme Court has held that:

If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason-such as undue delay,

---

[2]     The proposed amended short form complaint is attached as Appendix B.

[3]     Plaintiffs have consulted with Defendant, Ethicon, Inc. Ethicon opposes the filing of the proposed Second Amended Master Long Form Complaint.

EXHIBIT
5

bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.-the leave sought should, as the rules require, be "freely given."

*Id.*

The Supreme Court found that "the grant or denial of an opportunity to amend is within the discretion of the district court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Id.*

The Fourth Circuit has held that "'a lack of prejudice would alone ordinarily warrant granting leave to amend and that mere delay absent any resulting prejudice or evidence of dilatoriness was not sufficient justification for denial.'" *Burton v. U.S.*, 199 F.R.D. 194, 200 (S.D.W. Va. 2001) (*citing Ward Electronics Service, Inc. v. First Commercial Bank*, 819 F.2d 496, 497 (4th Cir. 1987). The court held further "that district courts have the discretion 'to deny leave to amend based upon a balancing of the equities, including whether the non-moving party will be prejudiced, whether additional discovery will be required, and whether the court's docket will be strained.'" *Id.*

In this case, no grounds exist to deny Plaintiffs' motion for leave to amend the First Amended Master Long Form Complaint and Amended Short Form Complaints. Plaintiffs seek leave to amend to add additional factual allegations that have been uncovered during the initial phase of discovery. Further, Plaintiffs seek leave to add an additional count for negligent failure to train. Defendants voluntarily assumed a duty by educating physicians on its products and procedures because they knew training was necessary to protect the patients who would have their devices permanently implanted in their bodies, and by doing so, Defendants were required



EXHIBIT
5

to exercise reasonable care in conducting such training.  Defendants' failure to exercise reasonable care in their training of implanting physicians caused harm to the Plaintiffs.

Plaintiffs have not unduly delayed and are not acting in bad faith in seeking to amend their First Amended Complaint at this time to add these allegations.  Defendant will not be prejudiced by the filing of the Second Amended Master Long Form Complaint and Jury Demand, no additional discovery will be required, and the Court's docket will not be strained by this amendment.

Plaintiffs advised Defendants of their intent to file this motion, and provided them with a copy of the proposed amended complaint.  Defendants have indicated that they will likely oppose this motion.

### IV. CONCLUSION

Plaintiffs have demonstrated that their request for leave to amend is not accompanied by prejudice, delay, or bad faith. Thus, Plaintiffs request that the Court grant Plaintiffs' Motion for Leave to File the Second Amended Master Long Form Complaint and Jury Demand and Second Amended Short Form Complaint.

**EXHIBIT**
**5**

Dated:  October 22, 2013

Respectfully submitted,

/s/ D. Renee Baggett

D. RENEE BAGGETT

Aylstock, Witkin, Kreis and Overholtz, PLC
17 E. Main Street, Suite 200
Pensacola, FL 32563
850-202-1010
850-916-7449
Rbaggett@awkolaw.com

/s/ Thomas P. Cartmell

THOMAS P. CARTMELL

Wagstaff & Cartmell LLP
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
816-701-1102
Fax 816-531-2372
tcartmell@wcllp.com
http://www.wagstaffcartmell.com/

*Plaintiffs' Co-Lead Counsel*

**EXHIBIT**
**5**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA
## CHARLESTON DIVISION

----------------------------------------------------------- x

**IN RE ETHICON, INC., PELVIC REPAIR** :    **CIVIL ACTION NO. 2:12-md-02327**
**SYSTEM PRODUCTS LIABILITY** :
**LITIGATION** :    **MDL No. 2327**

----------------------------------------------------------- :

This Document Applies To All Actions    :    Judge Joseph R. Goodwin

----------------------------------------------------------- x

## CERTIFICATE OF SERVICE

     I hereby certify that on October 22, 2013, I electronically filed the foregoing document

with the Clerk of the court using CM/ECF system which will send notification of such filing to

the CM/ECF participants registered to receive service in this MDL.

                       /s/ D. Renee Baggett
                       D. RENEE BAGGETT
                       Aylstock, Witkin, Kreis and Overholtz, PLC
                       17 E. Main Street, Suite 200
                       Pensacola, FL 32563
                       P: 850-202-1010
                       F: 850-916-7449
                       Rbaggett@awkolaw.com

**EXHIBIT**
**5**

# APPENDIX A

EXHIBIT
**5**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

IN RE: ETHICON, INC., PELVIC REPAIR       MDL NO. 2327
SYSTEMS PRODUCTS LIABILITY LITIGATION
----------------------------------------------------------

THIS DOCUMENT RELATES TO ALL CASES
-------------------------------------------------

## SECOND AMENDED MASTER LONG FORM COMPLAINT AND JURY DEMAND

     Plaintiffs, by and through counsel, bring this Second Amended Master Long Form Complaint ("Amended Master Complaint") as an administrative device to set forth potential claims individual Plaintiffs may assert against Defendants in this litigation. By operation of the Order of this Court, all allegations pled herein are deemed pled in any previously filed Complaint and any Short-Form Complaint hereafter filed. Accordingly, Plaintiffs allege as follows:

### I.     PARTIES

**A.**    **Plaintiffs**

    1.    Plaintiffs include women who had one or more of Defendants' Pelvic Mesh Products (defined below) inserted in their bodies to treat medical conditions, primarily pelvic organ prolapse and stress urinary incontinence.

    2.    Plaintiffs also include the spouses and intimate partners of the aforesaid women, as well as others with standing to file claims arising from Defendants' Products.

**EXHIBIT**
**5**
77

B.    **Defendants**

3.    Defendant, Johnson & Johnson ("J&J") is a corporation, and according to its website, the world's largest and most diverse medical device and diagnostics company, with its worldwide headquarters located at One Johnson & Johnson Plaza, New Brunswick, New Jersey.  Johnson & Johnson organizes its subsidiary businesses into individual Business Units to coordinate the development, manufacture, testing, marketing promotion, training, distribution and sale of its' pelvic floor repair products.  Within J&J there are three sectors, medical devices and diagnostics, pharmaceutical, and consumer.  Within the medical devices and diagnostic sector are "Business Units" including the "Ethicon Franchise."  The Ethicon Franchise was charged by J&J with the design, development, promotion, marketing, testing, training, distribution and sale of the pelvic floor repair products at issue in this case.  The Company Group Chairman and Worldwide Franchise Chairman for the Ethicon Franchise, Gary Pruden, is employed by J&J.  The companies which comprise the Ethicon Franchise are thus controlled by J&J and include, but are not limited to, Ethicon Inc., Ethicon LLC, Ethicon LTD.

4.    Defendant, Ethicon, Inc., is a wholly owned subsidiary of Defendant Johnson & Johnson located in Somerville, New Jersey.

5.    Defendants, JOHN DOES 1-20 (fictitious names), are entities and/or persons who are liable to Plaintiffs, but who have not yet been identified despite reasonable due diligence on the part of Plaintiffs.

6.    At all times relevant herein, Defendants were engaged in the business of placing medical devices into the stream of commerce by designing, manufacturing, testing, training, marketing, promoting, packaging, labeling, and/or selling such devices, including the Prolene Mesh/Prolene Soft Mesh, Gynemesh, Gynemesh PS, TVT, TVT-Obturator (TVT-O),

**EXHIBIT**

**5**

2

78

TVT-SECUR (TVT-S), TVT Exact, TVT Abbrevo, Prolift, Prolift +M, Prosima and other pelvic mesh products unknown at the present (hereinafter collectively referred to as "Pelvic Mesh Products" or the "Products"). Defendants manufacture, market, advertise, promote and sell Pelvic Mesh Products worldwide. As a result of the coordinated activities of all Defendants named above, Plaintiff was implanted with a defective pelvic floor repair product.

7. Defendants had a legal duty to insure the safety and effectiveness of their pelvic mesh products by conducting adequate and well controlled studies on their products prior to marketing. Defendants deliberately chose to manipulate the only studies that were conducted on their products and by so doing provided doctors and patients with false and misleading information about the safety and effectiveness of their pelvic mesh products. Furthermore, Defendants made a conscious decision to forego performing studies and creating registries that would have provided doctors and patients in the United States with accurate information regarding the lack of proof of the safety and effectiveness of their pelvic mesh products.

## II. DEFENDANTS' PELVIC MESH PRODUCTS

8. In or about October, 2002, Defendants began to manufacture, market and sell a product known as Gynemesh, for the treatment of medical conditions in the female pelvis, primarily pelvic organ prolapse and stress urinary incontinence. All references to Gynemesh include all variations of or names used for Gynemesh, including but not limited to Gynemesh PS.

9. Gynemesh was derived from a product known as Prolene Mesh, which was used in the treatment of medical conditions in the female pelvis, primarily pelvic organ prolapse and stress urinary incontinence. Prolene Mesh was derived from Defendants' Prolene mesh hernia product, and was and is utilized in the treatment of medical conditions in the female



EXHIBIT
**5**
3

pelvis, primarily pelvic organ prolapse and stress urinary incontinence. All references to Prolene Mesh include all variations of Prolene Mesh, including but not limited to Prolene Soft Mesh.

10.     On or about January 1, 2005, without seeking FDA clearance, the Defendants began to market and sell a product known as the Prolift System, for the treatment of medical conditions in the female pelvis, primarily pelvic organ prolapse and stress urinary incontinence. The Prolift System was and is offered as an anterior, posterior, or total repair system, and all references to the Prolift and/or Prolift System include by reference all variations.

11.     On or about May, 2008, the Defendants began to market and sell a product known as Prolift+M System, for the treatment of medical conditions in the female pelvis, primarily pelvic organ prolapse and stress urinary incontinence. The Prolift+M System was and is offered as an anterior, posterior, or total repair system, and all references to the Prolift+M and/or Prolift +M System include by reference all variations.

12.     On or about March 2010, Defendants began to market and sell a product known as Prosima System, for the treatment of medical conditions in the female pelvis, primarily pelvic organ prolapse and stress urinary incontinence. The Prosima was and is offered as an anterior, posterior, or total repair system, and all references to Prosima include by reference all variations.

13.     The Defendants market and sell a product known as TVT, for the treatment of stress urinary incontinence in females. The TVT has been and is offered in multiple and significant variations including, but not limited to, the TVT, TVT-Obturator (TVT-O), TVT-SECUR (TVT-S), TVT Exact and TVT Abbrevo.   All references to TVT include by reference all variations.

**EXHIBIT**

**5**

14.     As stated above, the products known as Prolene Mesh, Gynemesh, Prolift, Prosima, Prolift+M, and  TVT, as well as any as yet unidentified pelvic mesh products designed and sold for similar purposes, inclusive of the instruments and procedures for implantation, are collectively referenced herein as Defendants' "Pelvic Mesh Products" or the "Products".

15.     Defendants' Pelvic Mesh Products were designed, patented, manufactured, labeled, marketed, sold and distributed by the Defendants, at all times relevant herein.

### III.     FACTUAL BACKGROUND

16.     Surgical mesh products have been used to repair abdominal hernias since the 1950s.  In the 1970s, gynecologists began using surgical mesh products designed for hernia repair for abdominal repair to surgically repair prolapsed organs.  In the 1990s, gynecologists began using this surgical mesh for the surgical treatment of pelvic organ prolapse ("POP") and stress urinary incontinence ("SUI").  Manufacturers, including Defendants, began to modify the mesh used in hernia repair to be used as products specifically intended to correct POP an SUI. Today, defendants sell pelvic mesh "kits" which can include not only the surgical mesh, but also tissue fixation anchors and insertion tools. The Products manufactured by Defendants are considered Class II medical devices.

17.     Defendants' Pelvic Mesh Products are targeted for women who suffer from pelvic organ prolapse and stress urinary incontinence as a result of the weakening or damage caused to the walls of the vagina. These products are specifically promoted to physicians and patients as an innovative, minimally invasive procedure with minimal local tissue reactions, minimal tissue trauma and minimal pain while correcting vaginal prolapse, stress urinary incontinence, pelvic organ prolapse and/or rectocele.



EXHIBIT

**5**

18.     Moreover, these Pelvic Mesh Products contain polypropylene mesh. Despite claims that this material is inert, the scientific evidence shows that this mesh material is biologically incompatible with human tissue and promotes an immune response in a large subset of the population receiving Defendants' Pelvic Mesh Products. This immune response promotes degradation of the polypropylene mesh, as well as the pelvic tissue, and can contribute to the formation of severe adverse reactions to the mesh.  Defendants knew when they first began using polypropylene mesh in the hernia applications that the material should not be exposed to strong oxidizers such as hydrogen peroxide.  Defendants also knew that hydrogen peroxide is created in the human body as a response to any kind of inflammatory reaction.  Despite this knowledge, Defendants chose to continue using polypropylene for its pelvic mesh products, knowing that the mesh would degrade over time.  Worse yet, Defendants affirmatively and falsely stated to physicians and to patients that the polypropylene would not degrade in the human body.

19.     At various times, Defendants sought and obtained Food and Drug Administration ("FDA") clearance to market the Pelvic Mesh Products under Section 510(k) of the Medical Device Amendment. Section 510(k) allows marketing of medical devices if the device is deemed substantially equivalent to other legally marketed predicate devices marketed prior to May 28, 1976.  This clearance process did not require Defendants to prove the safety or efficacy of the Pelvic Mesh Products and, thus, a formal review of the safety and efficacy of the Pelvic Mesh Products was never conducted with regard to the Products.   In the case of the Prolift product, Defendants marketed and sold the product for human implantation for over two years without the necessary clearance under Section 510(k)

20.     Defendants' Pelvic Mesh Products have been and continue to be marketed to the medical community and directly to patients as safe, effective, reliable, medical devices;

**EXHIBIT**

**5**

6

82

implanted by safe and effective, minimally invasive surgical techniques for the treatment of medical conditions, primarily vaginal vault prolapse, stress urinary incontinence, pelvic organ prolapse and/or rectocele, and as safer and more effective as compared to the traditional products and procedures for treatment, and other competing Pelvic Mesh Products.

21.     The Defendants have marketed and sold the Pelvic Mesh Products to the medical community at large and directly to patients through carefully planned, multifaceted marketing campaigns and strategies. These campaigns and strategies include, but are not limited to, aggressive marketing to health care providers at medical conferences, hospitals, private offices, and include the provision of valuable cash and non-cash benefits to health care providers. Defendants also utilized documents, patient brochures, and websites, offering exaggerated and misleading expectations as to the safety and utility of the Pelvic Mesh Products.  Defendants' further engaged in direct-to-consumer marketing specifically designed to drive consumers to seek out these products for implantation into their bodies.

22.     At all times relevant to this action, Defendants intentionally, recklessly and/or negligently concealed, suppressed, omitted, and misrepresented the risks, dangers, defects, and disadvantages of the Pelvic Mesh Products and advertised, promoted, marketed, sold and distributed the Pelvic Mesh Products as a safe medical device when, in fact, Defendants knew that the Pelvic Mesh Products were not safe for their intended purposes and that the Pelvic Mesh Products would cause, and did cause, serious medical problems, and in some patients, catastrophic and permanent injuries.

23.     For example, Defendants described in its Patient Brochures, Instructions for Use, and other marketing materials, that the known complications for its Pelvic Mesh Products were consistent with any surgical procedure of an implantable medical device and

EXHIBIT
**5**

described such occurrences as "rare" and "small" when in fact Defendants knew or should have known that the complications were not "rare nor small" but common, permanent, and debilitating as is evident in the medical literature as well as in Defendants own internal data.

24.    Contrary to Defendants' representations and marketing to the medical community and to the patients themselves, the Defendants' Pelvic Mesh Products have high malfunction, failure, injury, and complication rates, fail to perform as intended, require frequent and often debilitating re-operations, and have caused severe and irreversible injuries, conditions, and damage to a significant number of women, including the Plaintiffs, making them defective under the law. The Products' defects include, but are not limited to, the following:

    a.  the use of polypropylene material in the mesh itself and the immune reaction that results, causing adverse reactions and injuries;

    b.  in the case of the Prolift + M, the use of polypropylene in combination with monocryl, a partially dissolvable mesh that increases the immune reaction and inflammatory response;

    c.  the design of the Pelvic Mesh Products to be inserted transvaginally into an area of the body with high levels of bacteria, yeast, and fungus that adhere to the mesh causing immune reactions and subsequent tissue breakdown and adverse reactions and injuries;

    d.  the procedure itself, which is a part of the Pelvic Mesh Products, requires to the physician to insert the device "blindly," resulting in nerve damage and damage to other internal organs;

    e.  biomechanical issues with the design of the mesh that create strong amounts of friction between the mesh and the underlying tissue that subsequently cause that tissue to degrade resulting in injury;

    f.  the lack of porosity in the mesh resulting in the formation of a scar plate that prohibits tissue in-growth, resulting in mesh contraction, nerve damage, pain, and erosion of the mesh into other organs, and failure of the device;

    g.  the use and design of anchors in the Pelvic Mesh Products which when placed correctly are likely to pass through and injure major nerve routes in the pelvic region;

EXHIBIT

**5**

84

    h.  degradation of the mesh itself over time which causes the internal tissue to degrade resulting in injury;

    i.  particle loss and or "shedding" of the mesh both during implantation and following implantation that results in additional undesirable complications including an increased inflammatory response and a migration of those particles resulting in injury.

    j.  the welding and heating of the mesh itself during production which creates a toxic substance that contributes to the degradation of the mesh and host tissue alike;

    k.  the design of trocars, as devices to insert the Pelvic Mesh Products into the vagina, are defective because the device requires tissue penetration in nerve rich environments which results frequently in the destruction of nerve endings causing pain and other injuries;

    l.  the propensity of the mesh for "creep", or to gradually elongate and deform when subject to prolonged tension inside the body;

    m.  the propensity of the mesh to contract, retract, and/or shrink inside the body;

    n.  the inelasticity of the mesh, causing them to be improperly matted to the delicate and sensitive areas of the vagina and pelvis where they are implanted, and causing pain upon normal daily activities that involve movement in the pelvic region (e.g., intercourse, defecation, walking); and

    o.  the creation of a non-anatomic condition in the pelvis leading to chronic pain and functional disabilities when the mesh is implanting according to the manufacturer's instructions.

        25.    Upon information and belief, the Defendants have consistently underreported and withheld information about the propensity of Defendants' Pelvic Mesh Products to fail and cause injury and complications, and have misrepresented the efficacy and safety of the Pelvic Mesh Products, through various means and media, actively and intentionally misleading the FDA, the medical community, patients, and the public at large.



85

26.     Defendants have further deliberately chosen to forego the conduct of studies and registries to avoid reporting obligations that would be mandated under the federal regulations upon receipt of adverse event information.

27.     Despite the chronic underreporting of adverse events associated with the Defendants' Pelvic Mesh Products, the underreporting of events associated with similarly designed competitor products, and Defendants' deliberately avoiding the conduct of studies and registries to avoid the reporting of adverse events, eventually enough complaints were recorded for the FDA to issue a public health notification regarding the dangers of these devices.

28.     By 2008, the FDA became aware of potential safety issues with urogynecologic surgical mesh products through postmarket surveillance of the MAUDE database for medical device reports (MDRs), concerns raised by clinical community and citizens, and the published literature.

29.     On October 20, 2008, the Food and Drug Administration ("FDA") issued a Public Health Notification that described over 1,000 complaints (otherwise known as "adverse events") that had been reported over a three-year period relating to Pelvic Mesh Products. Although the FDA notice did not identify the transvaginal mesh manufacturers by name, a review of the FDA's MAUDE database indicates that the Defendants are one of the manufacturers of the Pelvic Mesh Products that are the subject of the notification.

30.     On October 21, 2008, Defendants prepared a document to help its sales force respond to the FDA Public Health Notification entitled: FDA Notification About Use of Surgical Mesh to Treat Pelvic Organ Prolapse and Stress Urinary Incontinence Standby for Media/Analyst inquiries. An internal email to Defendant's sales, marketing, regulatory, clinical and medical teams, informed   members of the FDA notifications and instructed not to

EXHIBIT
5

proactively initiate conversations with customers about the notice and, instead, prepared a "standby statement" for them to use if asked about it. In answer to a question about the frequency of complications due to Ethicon mesh devices, the planned "answer" was evasive in the extreme, providing no quantitative information despite Ethicon's knowledge of the frequency and severity of complications that occurred during the procedure and, "if pressed" sales reps were instructed to say the following: "Our TVT family of devices has been used in more than 1 million patients worldwide. Our PROLIFT product has been used in more than 100,000 patients. The reported complication rate is less than 1% for each device." However, the frequency of vaginal mesh exposure with the Prolift procedure alone is an average across studies of at least 10%. Defendants further affirmatively and falsely stated to physician and patients that all of the risks identified in the 2008 safety alert were previously disclosed and warned of in the product labeling for Defendants' mesh products, and that no new risks had been identified.

31. On July 13, 2011, the FDA issued a Safety Communication:" UPDATE on Serious Complications Associated with Transvaginal Placement of Surgical Mesh for Pelvic Organ Prolapse." Therein, the FDA advised that it had conducted an updated analysis of adverse events reported to the FDA and complications reported in the scientific literature and concluded that surgical mesh used in transvaginal repair of Pelvic Organ Prolapse was an area of "continuing serious concern." (emphasis added) The FDA concluded that serious complications associated with surgical mesh for transvaginal repair of Pelvic Organ Prolapse, were "not rare." These serious complications include, but are not limited to neuromuscular problems, vaginal scarring/shrinkage and emotional problems. Many of the serious complications required medical and surgical treatment and hospitalization.

**EXHIBIT**

**5**

32.     The literature review performed by the FDA found that erosion of mesh through the vagina was the most common and consistently reported mesh-related complication and that such erosions can require multiple surgeries to repair and can be debilitating for some women, with no guarantee that multiple surgeries will resolve the complication.

33.     The FDA concluded in its Safety Communication that it was not clear that transvaginal repair of Pelvic Organ Prolapse with mesh or repair of SUI with mesh kits are more effective than traditional non mesh repair of pelvic organ prolapse. Further, the FDA conducted a systematic review of the published scientific literature from 1996-2011 and concluded that based thereon, that transvaginal pelvic organ prolapse repair with mesh "does not improve symptomatic results or quality of life over traditional non mesh repair."  The FDA concluded that "a mesh procedure may put the patient at risk for requiring additional surgery or for the development of new complications. Removal of the mesh due to mesh complications may involve multiple surgeries and significantly impair the patient's quality of life. Complete removal of mesh may not be possible."

34.     The information contained in the FDA's Public Health Notification of October 2008 and the FDA Safety Communication of July 13 2011, was known or knowable to Defendants and was not disclosed in oral or written communications, direct to consumer advertising in the form of patient brochures, instructions for use, or labeling.

35.     In fact, at the time Defendants began marketing each of its Pelvic Mesh Products, Defendants were aware that its Pelvic Mesh Products were associated with each and every one of the adverse events communicated by the FDA in its July 13, 2011 Safety Communication.

**EXHIBIT**

**5**

12

36.    In a December 2011 Joint Committee Opinion, the American College of Obstetricians and Gynecologists ("ACOG") and the American Urogynecologic Society ("AUGS") also identified physical and mechanical changes to the mesh inside the body as a serious complication associated with vaginal mesh, stating:

> There are increasing reports of vaginal pain associated with changes that can occur with mesh (contraction, retraction, or shrinkage) that result in taut sections of mesh . . .  Some of these women will require surgical intervention to correct the condition, and some of the pain appears to be intractable.

37.    Defendants knew or should have known about the Products' risks and complications identified in the FDA Safety Communication and the ACOG/AUGS Joint Committee Opinion.

38.    Defendants also knew or should have known that:  (1) some of the predicate products for the Pelvic Mesh Products had high failure and complication rates, resulting in the recall of some of these predicate devices (including a medical device known as Protogen device); (2) that there were and are differences between the Defendants' Pelvic Mesh Products and some or all of the predicate products, rendering them unsuitable for designation as predicate products; (3) that significant differences exist and existed between the Pelvic Mesh Products and their predecessor and predicate products, such that the disclosures to the FDA were and are incomplete and misleading; and (4) that the Pelvic Mesh Products were and are causing numerous patients severe injuries and complications.

39.    The Defendants suppressed this information and failed to accurately and completely disseminate or share this and other critical information with the FDA, health care providers, and the patients. As a result, the Defendants actively and intentionally misled and continue to mislead the public, including the medical community, health care providers and patients, into believing that the Pelvic Mesh Products and the procedures for implantation were

EXHIBIT
5

13

and are safe and effective, leading to the prescription for and implantation of the Pelvic Mesh Products into Plaintiff.

      40.    Defendants' Pelvic Mesh Products are also defective due to Defendants' failure to adequately warn or instruct the female Plaintiffs named in the Short Form Complaint and/or her health care providers of risks and complications including, but not limited to, the following:

    a.  the Products' propensities to contract, retract, and/or shrink inside the body;

    b.  the Products' propensities for degradation, fragmentation and/or creep;

    c.  the Products' inelasticity preventing proper mating with the pelvic floor and vaginal region;

    d.  the Products' lack of porosity in preventing proper mating with the pelvic floor and vaginal region.

    e.  the rate and manner of mesh erosion or extrusion;

    f.  the risk of chronic inflammation resulting from the Products;

    g.  the risk of chronic infections resulting from the Products;

    h.  the risk of permanent vaginal or pelvic scarring as a result of the Products;

    i.  the risk of permanent vaginal shorting as a result of the Products;

    j.  the risk of recurrent, intractable pelvic pain and other pain resulting from the Products;

    k.  the need for corrective or revision surgery to adjust or remove the Products;

    l.  the severity of complications that could arise as a result of implantation of the Products;

    m.  the hazards associated with the Products;

    n.  the Products' defects described herein;

**EXHIBIT**
**5**

o.  treatment of pelvic organ prolapse and stress urinary incontinence with the Products is no more effective than feasible available alternatives;

p.  treatment of pelvic organ prolapse and stress urinary incontinence with the Products exposes patients to greater risk than feasible available alternatives;

q.  treatment of pelvic organ prolapse and stress urinary incontinence with the Products makes future surgical repair more difficult than feasible available alternatives;

r.  use of the Products puts the patient at greater risk of requiring additional surgery than feasible available alternatives;

s.  removal of the Products due to complications may involve multiple surgeries and may significantly impair the patient's quality of life; and

t.  complete removal of the Products may not be possible and may not result in complete resolution of the complications, including pain; and

u.  the fact that neither pelvic organ prolapse, nor stress urinary incontinence, are life threatening conditions, and that other options, including non-surgical options, were available and superior alternatives to the use of the Products.

These risks and complications were known to Ethicon through the TVM internal study reports, the medical literature and consultants.  In fact, the erosion and shrinkage problems were significant enough that Defendants tried finding ways to address them.  Specifically, one of Defendants' Experts, Professor M. Cosson remarked that "polypropylene meshes might not be improvable in terms of shrinkage, we may need a completely new material."  Other of Defendants' own consultants informed Ethicon that all heavy weight meshes shrink over time, and that there was no use for heavyweight meshes (such as those used in the TVT products), anywhere in the human body.

41.  Defendants also failed to perform or rely on proper and adequate testing and research in order to determine and evaluate the risks and benefits of their Pelvic Mesh Products.

EXHIBIT

**5**

15

42. Defendants failed to design and establish a safe, effective procedure for removal of the Pelvic Mesh Products. Therefore, in the event of a failure, injury, or complications, it is impossible to easily and safely remove the Pelvic Mesh Products.

43. Feasible and suitable alternative designs as well as suitable alternative procedures and instruments for implantation have existed at all times relevant as compared to the Defendants' Pelvic Mesh Products.

44. The Pelvic Mesh Products were at all times utilized and implanted in a manner foreseeable to the Defendants, as Defendants generated the instructions for use, created the procedures for implanting the devices, and trained the implanting physicians.

45. Furthermore, the Defendants provided incomplete, insufficient, inadequate, and misleading training and information to physicians, in order to increase the number of physicians utilizing the Pelvic Mesh Products, and thus increase the sales of the Pelvic Mesh Products, and also leading to the dissemination of inadequate and misleading information to patients, including Plaintiff.

46. Specifically, and by way of example and not limitation, Defendants, through the use of "thought leaders," physicians, sales representatives and other agents and/or servants, voluntarily and actively sought to "train" physicians and other health care providers, including Plaintiffs' physicians, on the Pelvic Mesh Products. The purpose of these professional training programs was to teach physicians how to safety and effectively use the Pelvic Mesh Products and educate physicians on the potential adverse effects and adverse outcomes associated with the Products. These professional training programs included information and instruction supplied with the Instructions for Use, information provided as an adjunct to the Instructions for Use (e.g., "Key Procedural Steps"), information provided in hands-on or in-

EXHIBIT
5
16
92

service lab programs (e.g., preceptorship programs), cadaver training sessions, information provided through slide decks, Powerpoint presentations, surgical technique documents, instructional DVDs, webcasts, and clinical articles. And, if a physician requested additional training, Defendants provided that training. Upon information and belief, one or more of these professional training programs was provided by the Defendants' for all of the Pelvic Mesh Products. Plaintiffs aver that, from the totality of the circumstances such training was woefully incomplete, insufficient, inadequate, and misleading.

47. The Pelvic Mesh Products implanted into the Plaintiffs were in the same or substantially similar condition as they were when they left the possession of Defendants, and in the condition directed by and expected by the Defendants.

48. Plaintiffs and Plaintiffs' physicians foreseeably used and implanted the Pelvic Mesh Products, and did not misuse or alter the Pelvic Mesh Product in an unforeseeable manner.

49. The injuries, conditions, and complications suffered by women who have been implanted with Defendants' Pelvic Mesh Products include, but are not limited to, mesh erosion, mesh contraction, infection, fistula, inflammation, scar tissue, organ perforation, dyspareunia (pain during sexual intercourse), inability to engage in sexual relations, urinary problems, inability to void, blood loss, neuropathic and other acute and chronic nerve damage and pain, pudendal nerve damage, shortening of the vagina, pelvic floor damage, chronic pelvic pain, urinary and fecal incontinence, prolapse of organs, and in many cases the women have been forced to undergo intensive medical treatment, including but not limited to, operations to locate and remove mesh, operations to attempt to repair pelvic organs, tissue, and nerve damage, the



EXHIBIT
5

17
93

use of pain control and other medications, injections into various areas of the pelvis, spine, and the vagina, and operations to remove portions of the female genitalia.

50. The medical and scientific literature studying the effects of polypropylene pelvic mesh, like Defendants' Pelvic Mesh Products, have examined each of these injuries, conditions, and complications and determined that they are in fact casually related to the mesh itself and do not often implicate errors related to the implantation of the devices.

Defendants misrepresented to the medical and healthcare community, Plaintiffs, the FDA, and the public that the Pelvic Mesh Products had been tested and were found to be safe and effective for the purposes of treating incontinence and/or prolapse. Yet, in response to FDA's request of Ethicon, during the 510(k) (K071512) review, to provide a clinical evaluation for the PROLIFT, Ethicon replied as shown below, along with FDA's request and rationale:

> "..This complex procedure is proposed to be done in a 'blind' manner through the use of the specialized surgical tools provided in the Gynecare System. Due to the complexity of this procedure and potential high risk for organ perforation, bench testing is not sufficient to demonstrate device safety and efficacy. Please provide a clinical evaluation of your proposed Prolift System to support your Indications for Use."

"…Ethicon believes that the results of pre-clinical, benchtop testing, and cadaver evaluations, provide evidence of substantial equivalence of the PROLIFT Systems to the currently marketed GYNEMESH and demonstrate that surgeons can use the device without problems."."

51. In the case of the Prolift device, Defendants misrepresented to the Plaintiffs, to the Plaintiffs' physicians, and to the medical community at large, that such product had been properly cleared for marketing by the FDA when in fact no such clearance had been sought or obtained. Specifically, Ethicon made statements in its "standby statement" to the FDA Public Health Notification under the heading of Product Background, where it claimed that "Gynecare Prolift was introduced to the **EXHIBIT** DA clearance in 2005 to treat prolapse."

**EXHIBIT**
**5**
18
94

This is, plainly false and misleading. Prolift was NOT cleared by the FDA before its launch in 2005. In fact, Ethicon didn't received FDA clearance to market Prolift until May 2008. This claim stands in reckless disregard for the truth and serves to perpetuate the misimpression of physicians and patients that Prolift had been legally marketed at its launch in March 2005.

52. These representations were made by Defendants with the intent of inducing the medical community, Plaintiff, and the public, to recommend, prescribe, dispense, and purchase the Pelvic Mesh Products for use as a means of treatment for stress urinary incontinence and/or prolapse, all of which evinced an indifference to the health, safety, and welfare of Plaintiff.

53. Defendants failed to undertake their duties to properly know the qualities of their Pelvic Mesh Products and in representations to Plaintiffs and/or to Plaintiffs' healthcare providers, and concealed and intentionally omitted the following material information from their IFUs and other marketing materials:

    a. That the Pelvic Mesh Products were not as safe as other products and procedures available to treat incontinence and/or prolapse;

    b. That the Pelvic Mesh Products were not as effective as other products and procedures available to treat incontinence and/or prolapsed;

    c. That the risk of adverse events with the Pelvic Mesh Products was higher than with other products and procedures available to treat incontinence and/or prolapse;

    d. That the risk of adverse events with the Pelvic Mesh Products were not adequately tested and were known by Defendants;

    e. That the limited clinical testing revealed the Pelvic Mesh Products had a higher risk of adverse effects, in addition to, and above and beyond those associated with other products and procedures available to treat incontinence and/or prolapse;

    f. That Defendants failed to follow up on the adverse results from clinical studies and buried and/or misrepresented those findings;

EXHIBIT
5
19

g. That Defendants were aware of dangers in the Pelvic Mesh Products in addition to and above and beyond those associated with other products and procedures available to treat incontinence and/or prolapse;

h. That the Pelvic Mesh Products were dangerous and caused adverse side effects, including but not limited to higher incidence of erosion and failure, at a much more significant rate than other products and procedures available to treat incontinence and/or prolapse;

i. That patients needed to be monitored more regularly than usual while using the Pelvic Mesh Products and that in the event the Pelvic Mesh Products needed to be removed that the procedures to remove them had a very high failure rate and/or needed to be performed repeatedly; Thus:

j. That the Pelvic Mesh Products were manufactured negligently;

k. That the Pelvic Mesh Products were manufactured defectively; and

l. That the Pelvic Mesh Products were designed negligently, and designed defectively.

54.     Defendants were under a duty to disclose to Plaintiffs and Plaintiffs' physicians, the defective nature of the Pelvic Mesh Products, including, but not limited to, the heightened risks of erosion, failure and permanent injury.

55.     Defendants had sole access to material facts concerning the defective nature of the Pelvic Mesh Products and their propensity to cause serious and dangerous side effects and hence, cause dangerous injuries and damage to persons who used the Pelvic Mesh Products.

56.     Defendants' concealment and omissions of material fact concerning the safety of the Pelvic Mesh Products were made to cause the Plaintiffs, the Plaintiffs' physicians and healthcare providers to purchase, prescribe, and/or dispense the Pelvic Mesh Products; and/or to mislead Plaintiffs and Plaintiffs' physicians into reliance and cause Plaintiffs to have the Pelvic Mesh Products implanted into their bodies.

**EXHIBIT**

**5**

20

96

57.     At the time these representations were made by Defendants, and at the time Plaintiffs used the Pelvic Mesh Products, Plaintiffs were unaware of the falsehood of these representations, and reasonably believed them to be true.

58.     Defendants knew and had reason to know that the Pelvic Mesh Products could and would cause severe and grievous personal injury to the users of the Pelvic Mesh Products, and that they were inherently dangerous in a manner that exceeded any purported, inaccurate, or otherwise downplayed warnings.

59.     In reliance upon these false representations, Plaintiffs were induced to, and did use the Pelvic Mesh Products, thereby sustaining severe and permanent personal injuries and damages. Defendants knew or had reason to know that Plaintiffs and Plaintiffs' physicians and other healthcare providers had no way to determine the truth behind Defendants' concealment and omissions, and that these included material omissions of facts surrounding the use of the Pelvic Mesh Products, as described in detail herein.

60.     As a result of Defendants' limited research and testing, Defendants distributed false information, including but not limited to assuring Plaintiffs, the public, and Plaintiffs' healthcare providers and physicians, that the Pelvic Mesh Products were safe for use as a means of providing relief from stress urinary incontinence and/or prolapse and were as safe or safer than other products and/or procedures available and on the market. Further, Defendants misrepresented to the Plaintiffs and to the Plaintiffs' physicians that the Pelvic Mesh Products were more effective than other means of treatment for these conditions for which they were implanted.  As a result of Defendants' research and testing, or lack thereof, Defendants intentionally omitted, concealed and suppressed certain results of testing and research to healthcare professionals, Plaintiffs, and the public at large.

**EXHIBIT**

**5**

21

61. Defendants had a duty when disseminating information to the public to disseminate truthful information and a parallel duty not to deceive the public, Plaintiffs, Plaintiffs' healthcare providers, and the FDA.

62. The information distributed to the public, the medical community, the FDA, and Plaintiffs by Defendants included, but was not limited to, reports, press releases, advertising campaigns, television commercials, print advertisements, billboards and other commercial media containing material representations, which were false and misleading, and contained omissions and concealment of the truth about the dangers of the use of the Pelvic Mesh Products.

63. Defendants intentionally made material misrepresentations to the medical community and public, including Plaintiffs, regarding the safety of the Pelvic Mesh Products specifically, that the Pelvic Mesh Products did not have dangerous and/or serious adverse health safety concerns, and that the Pelvic Mesh Products were as safe as other means of treating vaginal vault prolapse, stress urinary incontinence, pelvic organ prolapse or rectocele.

64. Defendants intentionally failed to inform the public, including Plaintiffs, of the high failure rate including erosion, the difficulty of removing the mesh, and the risk of permanent injury.

65. Defendants chose to over-promote the safety, efficacy and benefits of the Pelvic Mesh Products instead.

66. Defendants' intent and purpose in making these misrepresentations was to deceive the public, the medical community, and Plaintiffs; to gain the confidence of the public, the medical community, and Plaintiffs; to falsely assure them of the quality and fitness for use of the Pelvic Mesh Products; and induce Plaintiffs, the public and the medical community to

**EXHIBIT**
**5**
22

request, recommend, prescribe, dispense, purchase, and continue to use the Pelvic Mesh Products.

67.     Defendants made claims and representations in its documents submitted to the FDA and its reports to the public and to healthcare professionals and in advertisements that the Pelvic Mesh Products did not present serious health risks.

68.     These representations, and others made by Defendants, were false when made and/or were made with the pretense of actual knowledge when such knowledge did not actually exist, and were made recklessly and without regard to the true facts.

69.     These representations, and others made by Defendants, were made with the intention of deceiving Plaintiffs, Plaintiffs' healthcare professionals and other members of the healthcare community, and were made in order to induce Plaintiffs, and Plaintiffs' healthcare professionals, to rely on misrepresentations, and caused Plaintiffs to purchase, rely, use, and request the Pelvic Mesh Products, and caused her healthcare professionals to dispense, recommend, or prescribe the Pelvic Mesh Products.

70.     Defendants recklessly and/or intentionally falsely represented the dangerous and serious health and safety concerns inherent in the use of the Pelvic Mesh Products to the public at large, for the purpose of influencing the sales of Pelvic Mesh Products known to be dangerous and defective, and/or not as safe as other alternatives. Defendants utilized direct-to-consumer advertising to market, promote, and advertise the Pelvic Mesh Products.

71.     At the time the representations were made, Plaintiffs and Plaintiffs' healthcare providers did not know the truth about the dangers and serious health and/or safety risks inherent in the use of the Pelvic Mesh Products. Plaintiffs did not discover the true facts about the dangers and serious health and/or safety risks, nor did Plaintiffs discover the false

**EXHIBIT**
**5**
23

representations of Defendants, nor would Plaintiffs with reasonable diligence have discovered the true facts or Defendants' misrepresentations.

72.     Had Plaintiffs known the true facts about the dangers and serious health and/or safety risks of the Pelvic Mesh Products, or in the case of the Prolift System, that the Defendants had not sought nor obtained FDA clearance for the product, Plaintiffs would not have purchased, used, or relied on Defendants' Pelvic Mesh Products.

73.     At all times relevant herein, the Pelvic Mesh Products were widely advertised and promoted by the Defendants as a safe and effective treatment for vaginal vault prolapse, stress urinary incontinence, pelvic organ prolapse or rectocele. Defendants minimized the risks posed to rectocele and vaginal prolapse patients with implantation of the Pelvic Mesh Products.

74.     At all times relevant to this action, Defendants knew that the Pelvic Mesh Products were not safe for the patients for whom they were prescribed and implanted, because the mesh eroded and otherwise malfunctioned, and therefore failed to operate in a safe and continuous manner, causing injuries including, but not limited to, erosion, extrusion, infection, sepsis, chronic foreign body invasion, dense adhesions and worsening dyspareunia. Removal of eroded or infected mesh brings a high rate of life-threatening complications including permanent disfigurement and hemorrhage. Removal can require multiple surgical interventions in the operating theater for complete removal and results in scarring on fragile compromised pelvic tissue and muscles.

75.     Defendants failed to design and establish a safe, effective procedure for removal of the Products, or to determine if a safe, effective procedure for removal of the Products exists.

**EXHIBIT**
**5**
24

76.     At all relevant times herein, Defendants continued to promote Pelvic Mesh Products as safe and effective even when no clinical trials had been done supporting long or short term efficacy.

77.     In doing so the Defendants concealed the known risks and failed to warn of known or scientifically knowable dangers and risks associated with the Pelvic Mesh Products for treatment of vaginal vault prolapse, stress urinary incontinence, pelvic organ prolapse or rectocele.

78.     At all relevant times herein, Defendants failed to provide sufficient warnings and instructions that would have put Plaintiffs and the general public on notice of the dangers and adverse effects caused by implantation of the Pelvic Mesh Products system including, but not limited to, mesh erosion, dense adhesions, worsening dyspareunia, chronic pain, infection, sepsis, permanent disfigurement and multiple surgeries for mesh removal.

79.     The Pelvic Mesh Products as designed, manufactured, distributed sold and/or supplied by Defendants were defective as marketed due to inadequate warnings, instructions, labeling and/or inadequate testing in the presence of Defendants' knowledge of lack of pelvic health safety.

80.     At all times herein mentioned, the employees, agents, officers and/or directors of the Defendants named herein participated in, authorized and/or directed the production and promotion of the aforementioned Pelvic Mesh Products when they knew of the hazards and dangerous propensities of said Pelvic Mesh Products, and thereby actively participated in the tortuous conduct that resulted in the injuries suffered by Plaintiffs.

EXHIBIT

5

25

## IV.   FRAUDULENT CONCEALMENT

81.    Defendants' failure to document or follow up on the known defects in its product, and concealment of known defects, constitutes fraudulent concealment that equitably tolls applicable statutes of limitation.

82.    Defendants are estopped from relying on the statute of limitations defense because Defendants actively concealed the defects, suppressing reports, failing to follow through on FDA notification requirements, and failing to disclose known defects to physicians. Instead of revealing the defects, Defendants continued to represent its Pelvic Mesh Products as safe for their intended use.

83.    Defendants are and were under a continuing duty to disclose the true character, quality, and nature of risks and dangers associated with their Pelvic Mesh Products. Because of Defendants' concealment of the true character, quality and nature of their Pelvic Mesh Products, Defendants are estopped from relying on any statute of limitations defense.

84.    Defendants furthered this fraudulent concealment through a continued and systematic failure to disclose information to Plaintiffs, physicians and the public.

85.    Defendants' acts before, during and/or after the act causing Plaintiffs' injury prevented Plaintiffs from discovering the injury or cause thereof.

86.    Defendants' conduct, as described in the preceding paragraphs, amounts to conduct purposely committed, which Defendants must have realized was dangerous, heedless and reckless, without regard to the consequences or the rights and safety of Plaintiffs.

87.    Defendants' conduct, as described in the preceding paragraphs, also amounts to a continuing tort, and continues up through and including the date of the filing of Plaintiffs' Complaint.

**EXHIBIT**
**5**
26

# V. **CAUSES OF ACTION**

## **COUNT I**

## **NEGLIGENCE**

88.     Paragraphs 1-87 of the Master Complaint are hereby incorporated by reference as if fully set forth herein.

89.     Defendants had a duty to individuals, including Plaintiffs, to exercise reasonable and ordinary care in the manufacture, design, labeling, packaging, testing, instruction, warning, selling, marketing, distribution, and training related to its Pelvic Mesh Products.

90.     Defendants breached their duty of care and were negligent as described herein in the design, manufacture, labeling, warning, instruction, training, selling, marketing, and distribution of the Pelvic Mesh Products in one or more of the following respects:

    a.  Failing to design the Products so as to avoid an unreasonable risk of harm to women in whom the Products were implanted, including Plaintiffs;

    b.  Failing to manufacture the Products so as to avoid an unreasonable risk of harm to women in whom the Products were implanted, including Plaintiffs;

    c.  Failing to use reasonable care in the testing of the Products so as to avoid an unreasonable risk of harm to women in whom the Products were implanted, including Plaintiffs;

    d.  Failing to use reasonable care in inspecting the Products so as to avoid unreasonable risk of harm to women in whom the Products were implanted, including Plaintiffs;

    e.  Failing to use reasonable care in training its employees and health care providers related to the use of the Products so as to avoid unreasonable risk of harm to women in whom the Products were implanted, including Plaintiffs;

    f.  Failing to use reasonable care in instructing and/or warning health care providers, the FDA and the public as set forth herein of risks associated

**EXHIBIT**

**5**

27

103

with the Products, so as to avoid unreasonable risk of harm to women in whom the Products were implanted, including Plaintiffs;

g. Failing to use reasonable care in marketing and promoting the Products, so as to avoid unreasonable risk of harm to women in whom the Products were implanted, including Plaintiffs;

h. In negligently and carelessly promoting the use of the Pelvic Mesh Products to physicians who had not received sufficient training to master the techniques necessary for implantation of the device into the Plaintiffs;

i. Otherwise negligently or carelessly designing, manufacturing, marketing, distributing, warning, labeling studying, testing or selling the Pelvic Mesh Products, and;

j. In the case of the Prolift System, failing to use reasonable care in seeking and obtaining FDA clearance prior to marketing and selling the device for implantation into the human body.

91.     Failed to conduct post-market vigilance, or surveillance, by:

a. Monitoring or acting on findings in the scientific and medical literature; and

b. Monitoring or investigating and evaluating reports in the FDA adverse event databases for their potential significance for defendants' Pelvic Mesh Products.

92.     Failed to comply with manufacturer requirements of the Medical Device Reporting (MDR) Regulations, specifically:

a. Failed to report MDRs (Medical Device [adverse event] Reports); and

b. Failed to investigate reports of serious adverse events.

93.     As a direct and proximate result of Defendants' negligence, Plaintiffs have been injured, often catastrophically, sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and consortium, economic loss and damages including, but not limited to medical expenses, lost income, other damages, and/or death.

**EXHIBIT**

**5**

WHEREFORE, Plaintiffs demand judgment against Defendants, and each of them, individually, jointly, severally and in the alternative, and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT II

## STRICT LIABILITY – MANUFACTURING DEFECT

94.     Paragraphs 1-87 of the Master Complaint are hereby incorporated by reference as if fully set forth herein.

95.     The Pelvic Mesh Product implanted in Plaintiffs was not reasonably safe for its intended use and was defective with respect to its manufacture, as described herein, in that Defendants deviated materially from their design and manufacturing specifications and/or such design and manufacture posed an unreasonable risk of harm to Plaintiffs in whom the Pelvic Mesh Products were implanted.

96.     The Defendants' Pelvic Mesh Products are inherently dangerous and defective, unfit and unsafe for their intended and reasonably foreseeable uses, and do not meet or perform to the expectations of patients and their health care providers.

97.     The Pelvic Mesh Products create risks to the health and safety of the patients that are far more significant and devastating than the risks posed by other products and procedures available to treat the corresponding medical conditions, and which far outweigh the utility of the Pelvic Mesh Products.

98.     Defendants have intentionally and recklessly manufactured, the Pelvic Mesh Products with wanton and willful disregard for the rights and health of the Plaintiffs and



EXHIBIT
5
29

others, and with malice, placing their economic interests above the health and safety of the Plaintiffs and others.

99.     As a direct and proximate result of the Defendants' defective manufacture of the Pelvic Mesh Products, Plaintiffs have been injured, often catastrophically, sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and consortium, economic loss and damages including, but not limited to medical expenses, lost income, other damages, and/or death.

100.    The Defendants are strictly liable in tort to the Plaintiffs for their wrongful conduct.

WHEREFORE, Plaintiffs demand judgment against Defendants of compensatory damages, punitive damages, interest, attorneys' fees, costs of suit, and such further relief as the Court deems equitable and just.

## COUNT III

## STRICT LIABILITY – FAILURE TO WARN

101.    Paragraphs 1-87 of the Master Complaint are hereby incorporated by reference as if fully set forth herein.

102.    The Defendants failed to properly and adequately warn and instruct the Plaintiffs and their health care providers as to the proper candidates, and the safest and most effective methods of implantation and use of the Defendants' Pelvic Mesh Products.

103.    The Defendants failed to properly and adequately warn and instruct the Plaintiffs and their health care providers as to the risks and benefits of the Defendants' Pelvic Mesh Products, given the Plaintiffs' conditions and need for information.


EXHIBIT
5
30

104.   The Defendants failed to properly and adequately warn and instruct the Plaintiffs and their health care providers with regard to the inadequate research and testing of the Pelvic Mesh Products, and the complete lack of a safe, effective procedure for removal of the Pelvic Mesh Products.

105.   In addition, the Pelvic Mesh Products were defective due to the lack of necessary and appropriate warnings regarding, but not limited to, the following:

    a.   the Products' propensities to contract, retract, and/or shrink inside the body;

    b.   the Products' propensities for degradation, fragmentation, disintegration and/or creep;

    c.   the Products' inelasticity preventing proper mating with the pelvic floor and vaginal region;

    d.   the rate and manner of mesh erosion or extrusion;

    e.   the risk of chronic inflammation resulting from the Products;

    f.   the risk of chronic infections resulting from the Products;

    g.   the risk of permanent vaginal or pelvic scarring as a result of the Products;

    h.   the risk of recurrent, intractable pelvic pain and other pain resulting from the Products;

    i.   the need for corrective or revision surgery to adjust or remove the Products;

    j.   the severity of complications that could arise as a result of implantation of the Products;

    k.   the hazards associated with the Products;

    l.   the Products' defects described herein;

    m.   treatment of pelvic organ prolapse and stress urinary incontinence with the Products is no more effective than feasible available alternatives;



EXHIBIT
5
31

n.   treatment of pelvic organ prolapse and stress urinary incontinence with the Products exposes patients to greater risk than feasible available alternatives;

o.   treatment of pelvic organ prolapse and stress urinary incontinence with the Products makes future surgical repair more difficult than feasible available alternatives;

p.   use of the Products puts the patient at greater risk of requiring additional surgery than feasible available alternatives;

q.   removal of the Products due to complications may involve multiple surgeries and may significantly impair the patient's quality of life; and

r.   complete removal of the Products may not be possible and may not result in complete resolution of the complications, including pain.

106.   The Defendants intentionally, recklessly, and maliciously misrepresented the safety, risks, and benefits of the Defendants' Pelvic Mesh Products, understating the risks and exaggerating the benefits in order to advance their own financial interests, with wanton and willful disregard for the rights and health of the Plaintiffs.

107.   As a direct and proximate result of the Pelvic Mesh Products' aforementioned defects, Plaintiffs have been injured, often catastrophically, sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and consortium, economic loss and damages including, but not limited to medical expenses, lost income, other damages, and/or death.

108.   The Defendants are strictly liable in tort to the Plaintiffs for their wrongful conduct.

WHEREFORE, Plaintiffs demand judgment against Defendants of compensatory damages, punitive damages, interest, attorneys' fees, costs of suit, and such further relief as the Court deems equitable and just.

**EXHIBIT**

**5**

32

## COUNT IV

## STRICT LIABILITY – DEFECTIVE PRODUCT

109.    Paragraphs 1-87 of the Master Complaint are hereby incorporated by reference as if fully set forth herein. At the time of Plaintiffs'' injuries, the Defendants' Pelvic Mesh Products were defective and unreasonably dangerous to foreseeable consumers, patients, and users, including Plaintiffs, and the warnings labels, and instructions were deficient.

110.    The Defendants' Pelvic Mesh Products are inherently dangerous and defective, unfit and unsafe for their intended and reasonably foreseeable uses, and do not meet or perform to the expectations of patients and their health care providers.

111.    Plaintiffs from Alaska, Arizona, California, District of Columbia, Florida, Hawaii, Illinois, Iowa, Maryland, Massachusetts, Minnesota, Missouri, Nebraska, Nevada, New Hampshire, Minnesota, New Mexico, New York, North Dakota, Oklahoma, Oregon, Rhode Island, Utah, Vermont, Washington, D.C., West Virginia, Wisconsin, Wyoming and such other states where the common law, the *Restatement of Torts (Second)* and/or the *Restatement of Torts (Third)* are adopted, bring strict product liability claims under the common law, *Section 402A of the Restatement of Torts (Second), and/or Restatement of Torts (Third))* against Defendants.

112.    Plaintiffs from jurisdictions that provide a statutory cause of action for strict liability assert each of these claims against Defendants.

113.    As a proximate result of the Defendants' design, manufacture, marketing, sale, and distribution of the Pelvic Mesh Products, Plaintiffs have been injured, often catastrophically, and sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and consortium, economic damages, and death.



EXHIBIT
**5**
33

WHEREFORE, Plaintiffs demand judgment against Defendants, and each of them, individually, jointly, severally and in the alternative, and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT V
## STRICT LIABILITY – DESIGN DEFECT

114. Plaintiffs incorporate by reference paragraphs 1-87 of this Complaint as if fully set forth herein.

115. The Pelvic Mesh Product implanted in Plaintiffs was not reasonably safe for its intended use and was defective as described herein with respect to its design. As previously stated, the Products' design defects include, but are not limited to:

    a. the use of polypropylene material and/or collagen material in the Products and the immune reaction that results from such material, causing adverse reactions and injuries;

    b. the design of the Products to be inserted into and through an area of the body with high levels of bacteria that adhere to the mesh causing immune reactions and subsequent tissue breakdown and adverse reactions and injuries;

    c. biomechanical issues with the design of the Products, including, but not limited to, the propensity of the Products to contract or shrink inside the body, that in turn cause surrounding tissue to be inflamed, become fibrotic, and contract, resulting in injury;

    d. the use and design of arms and anchors in the Products, which, when placed in the women, are likely to pass through contaminated spaces and injure major nerve routes in the pelvic region;

    e. the propensity of the Products for "creep," or to gradually elongate and deform when subject to prolonged tension inside the body;

    f. the inelasticity of the Products, causing them to be improperly mated to the delicate ___ve areas of the pelvis where they are

**EXHIBIT**
**5**
34

110

implanted, and causing pain upon normal daily activities that involve movement in the pelvis (e.g., intercourse, defecation);

g. the propensity of the Products for degradation or fragmentation over time, which causes a chronic inflammatory and fibrotic reaction, and results in continuing injury over time;

h. the propensity of the Products for particle loss or "shedding", which causes a chronic inflammatory response and fibrotic reaction, and results in continuing injury over time; the lack of porosity of the Products, which leads to fibrotic bridging and results in continuing injury over time; and

i. the creation of a non-anatomic condition in the pelvis leading to chronic pain and functional disabilities when the mesh is implanting according to the manufacturers' instructions.

116. As a direct and proximate result of the Product's aforementioned defects as described herein, Plaintiffs experienced significant mental and physical pain and suffering, have sustained permanent injury, have undergone medical treatment and will likely undergo future medical treatment and procedures, has suffered financial or economic loss, including, but not limited to, obligations for medical services and expenses, lost income, other damages, and death.

117. Defendants are strictly liable to Plaintiffs for designing a defective product.

WHEREFORE, Plaintiffs demand judgment against Defendants, and each of them, individually, jointly, severally and in the alternative, and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.



EXHIBIT
5
35

## COUNT VI

## COMMON LAW FRAUD

118.    Plaintiffs incorporate by reference paragraphs 1-87 of this Complaint as if fully set forth herein.

119.    Defendants falsely and fraudulently represented and continue to represent to the medical and healthcare community, Plaintiffs, and the public that the Pelvic Mesh Products had been tested and were found to be safe and effective.

120.    The representations made by Defendants were, in fact, false.    When Defendants made their representations, Defendants knew and/or had reason to know that those representations were false, and Defendants willfully, wantonly, and recklessly disregarded the inaccuracies in their representations and the dangers and health risks to users of the Pelvic Mesh Products.

121.    These representations were made by Defendants with the intent of defrauding and deceiving the medical community, Plaintiffs, and the public, and also inducing the medical community, Plaintiffs, and the public, to recommend, prescribe, dispense, and purchase the Pelvic Mesh Products for use as a means of treatment for stress urinary incontinence and/or prolapse, all of which evinced a callous, reckless, willful, and depraved indifference to the health, safety, and welfare of Plaintiffs.

122.    In representations to Plaintiffs and/or to Plaintiffs' healthcare providers, Defendants fraudulently concealed and intentionally or recklessly omitted the following material information:

     a)  That the Defendants' Pelvic Mesh Products were not as safe as other products and procedures available to treat incontinence and/or prolapse;

**EXHIBIT**

**5**

56

b) That the Defendants' Pelvic Mesh Products were more effective than other products and procedures available to treat incontinence and/or prolapse;

c) That the risk of adverse events with the Defendants' Pelvic Mesh Products was higher than with other products and procedures available to treat incontinence and/or prolapse;

d) The Defendants' Pelvic Mesh Products were not adequately tested;

e) That the limited clinical testing revealed the Defendants' Pelvic Mesh Products had a higher risk of adverse effects, in addition to, and above and beyond those associated with other products and procedures available to treat incontinence and/or prolapse;

f) That Defendants deliberately failed to follow up on the adverse results from clinical studies and formal and informal reports from physicians and other healthcare providers and buried and/or misrepresented those findings;

g) That Defendants deliberately chose to forego studies that might reveal the true rate of adverse events or otherwise necessitate the need to reveal information as to adverse events to the Plaintiff, the medical community, or the regulatory authorities;

h) That Defendants were aware of dangers in the Defendants' Pelvic Mesh Products in addition to and above and beyond those associated with other products and procedures available to treat incontinence and/or prolapse;

i) That the Defendants' Pelvic Mesh Products were defective, and that they caused dangerous and adverse side effects, including but not limited to higher incidence of erosion and failure, at a much more significant rate than other products and procedures available to treat incontinence and/or prolapse;

j) That patients needed to be monitored more regularly than usual while using the Defendants' Pelvic Mesh Products and that in the event the products needed to be removed that the procedures to remove them had a very high failure rate and/or needed to be performed repeatedly;

k) That the Defendants' Pelvic Mesh Products were manufactured negligently;

l) That the Defendants' Pelvic Mesh Products were manufactured defectively;

**EXHIBIT**

**5**

37

113

m) That the Defendants' Pelvic Mesh Products were designed negligently, and designed defectively; and

n) In the case of the Prolift System, that the Defendants' had not sought nor obtained FDA clearance at the time it began marketing and selling the product.

123. Defendants were under a duty to disclose to Plaintiffs and their physicians, the defective nature of the Defendants' Pelvic Mesh Products, including, but not limited to, the heightened risks of erosion, failure, and permanent injury.

124. Defendants had sole access to material facts concerning the defective nature of the products and their propensity to cause serious and dangerous side effects and hence, cause dangerous injuries and damage to persons who used the Defendants' Pelvic Mesh Products.

125. Defendants' concealment and omissions of material fact concerning the safety of the Products were made purposefully, willfully, wantonly, and/or recklessly to mislead, to cause Plaintiffs' physicians and healthcare providers to purchase, prescribe, and/or dispense the Pelvic Mesh Products; and/or to mislead Plaintiffs into reliance and cause Plaintiffs to use the Defendants' Pelvic Mesh Products.

126. At the time these representations were made by Defendants, and at the time Plaintiffs used the Pelvic Mesh Products, Plaintiffs were unaware of the falsehood of these representations, and reasonably believed them to be true.

127. Defendants knew and had reason to know that the Defendants' Pelvic Mesh Products could and would cause severe and grievous personal injury to the users of the Defendants' Pelvic Mesh Products, and that they were inherently dangerous in a manner that exceeded any purported, inaccurate, or otherwise displayed warnings.

**EXHIBIT**
**5**
58

128.    In reliance upon these false representations, Plaintiffs were induced to, and did use the Pelvic Mesh Products, thereby sustaining severe and permanent personal injuries and damages. Defendants knew or had reason to know that Plaintiffs and their physicians and other healthcare providers had no way to determine the truth behind Defendants' concealment and omissions, and that these included material omissions of facts surrounding the use of the Defendants' Pelvic Mesh Products, as described in detail herein.

129.    Plaintiffs reasonably relied on revealed facts which foreseeably and purposefully suppressed and concealed facts that were critical to understanding the real dangers inherent in the use of the Defendants' Pelvic Mesh Products.

130.    Having knowledge based upon Defendants' research and testing, or lack thereof, Defendants blatantly and intentionally distributed false information, including but not limited to assuring Plaintiffs, the public, and Plaintiffs' healthcare providers and physicians, that the Defendants' Pelvic Mesh Products were safe for use as a means of providing relief from stress urinary incontinence and/or prolapse and were as safe or safer than other products and/or procedures available and on the market.  As a result of Defendants' research and testing, or lack thereof, Defendants intentionally omitted, concealed and suppressed certain results of testing and research to healthcare professionals, Plaintiffs, and the public at large.

131.    Defendants had a duty when disseminating information to the public to disseminate truthful information; and a parallel duty not to deceive the public, Plaintiffs, Plaintiffs' healthcare providers, and the United States Food and Drug Administration ("FDA").

132.    The information distributed to the public, the medical community, the FDA, and Plaintiffs, by Defendants included, but was not limited to websites, information presented at medical and professional meetings, information disseminated by sales

**EXHIBIT**

**5**

39

representatives to physicians and other medical care providers, reports, press releases, advertising campaigns, television commercials, print advertisements, billboards and other commercial media containing material representations, which were false and misleading, and contained omissions and concealment of the truth about the dangers of the use of the Defendants' Pelvic Mesh Products.

133. Defendants intentionally made material misrepresentations to the medical community and public, including Plaintiffs, regarding the safety of the Defendants' Pelvic Mesh Products specifically that the Products did not have dangerous and/or serious adverse health safety concerns, and that the Defendants' Pelvic Mesh Products were as safe or safer than other means of treating stress urinary incontinence and/or prolapse.

134. Defendants intentionally failed to inform the public, including Plaintiffs, of the high failure rate including erosion, the difficulty or impossibility of removing the mesh, and the risk of permanent injury.

135. Defendants chose to over-promote the purported safety, efficacy and benefits of the Defendants' Pelvic Mesh Products instead.

136. Defendants' intent and purpose in making these misrepresentations was to deceive and defraud the public, the medical community, and Plaintiffs; to gain the confidence of the public, the medical community, and Plaintiffs; to falsely assure them of the quality and fitness for use of the Products; and induce Plaintiffs, the public and the medical community to request, recommend, prescribe, dispense, purchase, and continue to use the Defendants' Pelvic Mesh Products.

137. Defendants made claims and representations in its documents submitted to the FDA and its reports to the public and to healthcare professionals and in advertisements that

EXHIBIT
**5**
40

the Defendants' Pelvic Mesh Products had innovative beneficial properties and did not present serious health risks.

138.   These representations, and others made by Defendants, were false when made and/or were made with the pretense of actual knowledge when such knowledge did not actually exist, and were made recklessly and without regard to the true facts.

139.   These representations, and others made by Defendants, were made with the intention of deceiving and defrauding Plaintiffs, Plaintiffs' healthcare professionals and other members of the healthcare community, and were made in order to induce Plaintiffs, and their respective healthcare professionals, to rely on misrepresentations, and caused Plaintiffs to purchase, rely, use, and request the Defendants' Pelvic Mesh Products and their healthcare professionals to dispense, recommend, or prescribe the Defendants' Pelvic Mesh Products.

140.   Defendants recklessly and/or intentionally falsely represented the dangerous and serious health and safety concerns inherent in the use of the Defendants' Pelvic Mesh Products to the public at large, for the purpose of influencing the sales of products known to be dangerous and defective, and/or not as safe as other alternatives.

141.   The following are examples of how Defendants suppressed, concealed, omitted and/or misrepresented information to Plaintiffs, the medical community, to regulatory bodies, and/or the general public:

   a.   A recent study published in *Obstetrics & Gynecology* in 2010, and
        authored by Iglesia et al., had to be halted early due to a predetermined
        stopping criteria for vaginal mesh erosion at a median follow-up of 9.7
        month (range, 2.4-26.7 months).  The study found an erosion rate of
        15.6% with no difference in overall objective and subjective cure rates.
        However, instead of using the findings of this study to warn surgeons
        about the potentially higher rate of complications associated with its mesh
        devices, Defendants undertook instead to undermine and refute the
        findings in order to avoid negatively impacting its ability to market its
        products.

**EXHIBIT**

**5**

41

117

b. Defendants made claims in its IFUs and other marketing materials that its mesh had bidirectional elasticity when, in fact, Defendants were instructed by the FDA to remove this statement from its marketing materials due to the lack of sufficient evidence to support the statement.

c. Defendants made claims in its IFUs and other marketing materials that its mesh does not degrade and is inert.  When asked by the United Kingdom regulatory agency, MHRA, about whether or not its mesh degrades, Defendants stated that "there have been no observations of fiber degradation in complaints received and/or products returned" when they knew that there had been four reports of degradation or absorption. Even the manufacturer of the polypropylene used by Ethicon in its meshes suggested in its MSDS that its polypropylene must not be used for permanent implantation in the human body based in part on the fact that oxidizers and peroxides, both of which are created by the human body in response to any kind of inflammatory reaction, can degrade polypropylene.

d. Defendants made claims in its IFUs and other marketing materials that its mesh has been proven safe and effective, despite the fact that there was almost no data to support the TVT's use in pelvic surgery prior to its being launched.  Since the launch of TVT, Ethicon has relied primarily on its own studies while ignoring studies that question the safety and efficacy of its products.  Good evidence that Ethicon is cherry-picking the results of specific studies is demonstrated by its failure to cite to studies in its IFUs and other marketing materials that are critical of their products.  (ex: Richter et al., *Retropubic versus Transobturator Midurethral Slings for Stress Incontinence*, New England Journal of Medicine, 362;22; Anger et al., Complications of sling surgery among female Medicare beneficiaries, Obstet Gynecol, 2007 Mar; 109(3)707-14; Novara et al., *Critical Assessment of Pelvic Floor Surgical Reconstruction, European Association of Urology*, 4(2006) 202-213; and Sung et al. *Comparison of Retropubic versus Transobturator Approach to Midurethral slings: A Systematic Review and Meta-Analysis*, Am J Obstet Gyncol. 2007 July; 197(1):3-11.)

e. Defendants made claims in its IFUs and other marketing materials that "Animal studies show that implantation of Gynecare Gynemesh PS mesh elicits a minimum to slight inflammatory reaction which is transient..." when Ethicon knew that the foreign body reaction and inflammatory response to its mesh would transition into a more chronic phase that stays for the duration of the life of the patient.

f. Defendants made claims in their Patient Brochures and other marketing materials that "transient leg pain lasting 24 to 48 hours may occur and can

**EXHIBIT**

**5**

42

118

usually be managed with mild analgesics" even though they knew that persistent leg pain was a known complication that could be severe and lifelong.

142.     Defendants willfully and intentionally failed to disclose the truth, failed to disclose material facts and made false representations, for the purpose of deceiving and lulling Plaintiffs, as well as their healthcare professionals, into a false sense of security, so that Plaintiffs and their healthcare providers would rely on Defendants' representations, and Plaintiffs would request and purchase the Defendants' Pelvic Mesh Products, and that their healthcare providers would dispense, prescribe, and recommend the Defendants' Pelvic Mesh Products.

143.     Defendants utilized direct-to-consumer advertising to market, promote, and advertise the Defendants' Pelvic Mesh Products.

144.     At the time the representations were made, Plaintiffs and their healthcare providers did not know the truth about the dangers and serious health and/or safety risks inherent in the use of the Defendants' Pelvic Mesh Products.  Plaintiffs did not discover the true facts about the dangers and serious health and/or safety risks, nor did Plaintiffs discover the false representations of Defendants, nor would Plaintiffs with reasonable diligence have discovered the true facts or Defendant's misrepresentations.

145.     Had Plaintiffs known the true facts about the dangers and serious health and/or safety risks of the Defendants' Pelvic Mesh Products, Plaintiffs would not have purchased, used, or relied on Defendants' Pelvic Mesh Products.

146.     Defendants' wrongful conduct constitutes fraud and deceit, and was committed and perpetrated willfully, wantonly, and/or purposefully on Plaintiffs.

147.     As a direct and proximate result of Defendants' conduct, Plaintiffs experienced significant mental and physical pain and suffering, have sustained permanent injury,

**EXHIBIT**
**5**
43

have undergone medical treatment and will likely undergo future medical treatment and procedures, have suffered financial or economic loss, including, but not limited to, obligations for medical services and expenses, lost income, other damages, and death.

WHEREFORE, Plaintiffs demand judgment against Defendants, and each of them, individually, jointly, severally and in the alternative, and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT VII

## FRAUDULENT CONCEALMENT

148.     Plaintiffs incorporate by reference paragraphs 1-87 of this Complaint as if fully set forth herein.

149.     Plaintiffs from Alabama, Arizona, California, Colorado, Delaware, Georgia, Illinois, Iowa, Kansas, Maine, Maryland, Michigan, Mississippi, Missouri, Nebraska, New York, Oklahoma, Oregon, Pennsylvania, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia and Wisconsin and any other states that recognize such a cause of action bring this fraudulent concealment claim under the common law.

150.     Throughout the relevant time period, Defendants knew that their Pelvic Mesh Products were defective and unreasonably unsafe for their intended purpose.

151.     Defendants fraudulently concealed from and/or failed to disclose to or warn Plaintiffs, their physicians and the medical community that their Pelvic Mesh Products were defective, unsafe, unfit for the purposes intended, and that they were not of merchantable quality.

EXHIBIT

**5**

44

152. Defendants were under a duty to Plaintiffs to disclose and warn of the defective nature of the Products because:

    a) Defendants were in a superior position to know the true quality, safety and efficacy of the Defendants' Pelvic Mesh Products;

    b) Defendants knowingly made false claims about the safety and quality of the Defendants' Pelvic Mesh Products in the documents and marketing materials Defendants provided to the FDA, physicians, and the general public; and

    c) Defendants fraudulently and affirmatively concealed the defective nature of the Defendants' Pelvic Mesh Products from Plaintiffs.

153. The facts concealed and/or not disclosed by Defendants to Plaintiffs were material facts that a reasonable person would have considered to be important in deciding whether or not to purchase and/or use the Defendants' Pelvic Mesh Products.

154. Defendants intentionally concealed and/or failed to disclose the true defective nature of the Products so that Plaintiffs would request and purchase the Defendants' Pelvic Mesh Products, and that her healthcare providers would dispense, prescribe, and recommend the Defendants' Pelvic Mesh Products, and Plaintiffs justifiably acted or relied upon, to her detriment, the concealed and/or non-disclosed facts as evidenced by her purchase of the Defendants' Pelvic Mesh Products.

155. The following are examples of how Defendants suppressed, concealed, omitted and/or misrepresented information to Plaintiffs, the medical community, to regulatory bodies, and/or the general public:

    a. A recent study published in *Obstetrics & Gynecology* in 2010, and authored by Iglesia et al., had to be halted early due to a predetermined stopping criteria for vaginal mesh erosion at a median follow-up of 9.7 month (range, 2.4-26.7 months). The study found an erosion rate of 15.6% with no difference in overall objective and subjective cure rates. However, instead of using the findings of this study to warn surgeons about the potentially higher rate of complications associated with its mesh devices, Defendants undertook instead to undermine and refute the

EXHIBIT

5

45

findings in order to avoid negatively impacting its ability to market its products.

b. Defendants made claims in its IFUs and other marketing materials that its mesh had bidirectional elasticity when, in fact, Defendants were instructed by the FDA to remove this statement from its marketing materials due to the lack of sufficient evidence to support the statement.

c. Defendants made claims in its IFUs and other marketing materials that its mesh does not degrade and is inert. When asked by the United Kingdom regulatory agency, MHRA, about whether or not its mesh degrades, Defendants stated that "there have been no observations of fiber degradation in complaints received and/or products returned" when they knew that there had been four reports of degradation or absorption. Even the manufacturer of the polypropylene used by Ethicon in its meshes suggested in its MSDS that its polypropylene must not be used for permanent implantation in the human body based in part on the fact that oxidizers and peroxides, both of which are created by the human body in response to any kind of inflammatory reaction, can degrade polypropylene.

d. Defendants made claims in its IFUs and other marketing materials that its mesh has been proven safe and effective, despite the fact that there was almost no data to support the TVT's use in pelvic surgery prior to its being launched. Since the launch of TVT, Ethicon has relied primarily on its own studies while ignoring studies that question the safety and efficacy of its products. Good evidence that Ethicon is cherry-picking the results of specific studies is demonstrated by its failure to cite to studies in its IFUs and other marketing materials that are critical of their products. (ex: Richter et al., *Retropubic versus Transobturator Midurethral Slings for Stress Incontinence*, New England Journal of Medicine, 362;22; Anger et al., Complications of sling surgery among female Medicare beneficiaries, Obstet Gynecol, 2007 Mar; 109(3)707-14; Novara et al., *Critical Assessment of Pelvic Floor Surgical Reconstruction, European Association of Urology*, 4(2006) 202-213; and Sung et al., *Comparison of Retropubic versus Transobturator Approach to Midurethral slings: A Systematic Review and Meta-Analysis*, Am J Obstet Gyncol. 2007 July; 197(1):3-11.)

e. Defendants made claims in its IFUs and other marketing materials that "Animal studies show that implantation of Gynecare Gynemesh PS mesh elicits a minimum to slight inflammatory reaction which is transient..." when Ethicon knew that the foreign body reaction and inflammatory response to its mesh would transition into a more chronic phase that stays for the duration of the life of the patient.

EXHIBIT

**5**

46

122

f.   Defendants made claims in their Patient Brochures and other marketing
materials that "transient leg pain lasting 24 to 48 hours may occur and can
usually be managed with mild analgesics" even though they knew that
persistent leg pain was a known complication that could be severe and
lifelong.

156.   Defendants, by concealment or other action, intentionally prevented
Plaintiffs and Plaintiffs' physicians and other healthcare providers from acquiring material
information regarding the lack of safety and effectiveness of the Defendants' Pelvic Mesh
Products, and are subject to the same liability to Plaintiffs for Plaintiffs' pecuniary losses, as
though Defendants had stated the non-existence of such material information regarding the
Defendants' Pelvic Mesh Products' lack of safety and effectiveness and dangers and defects, and
as though Defendants had affirmatively stated the non-existence of such matters that Plaintiffs
were thus prevented from discovering the truth.   Defendants therefore have liability for
fraudulent concealment under all applicable law, including, *inter alia*, *Restatement (Second) of
Torts* § 550 (1977).

157.   As a proximate result of the Defendants' conduct, Plaintiffs have been
injured, and sustained severe and permanent pain, suffering, disability, impairment, loss of
enjoyment of life, loss of care, comfort, and consortium, economic damages, and death.

WHEREFORE, Plaintiffs demand judgment against Defendants, and each of them,
individually, jointly, severally and in the alternative, and requests compensatory damages,
punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as
the Court deems equitable and just.

EXHIBIT
5
47

## COUNT VIII

## CONSTRUCTIVE FRAUD

158.     Plaintiffs incorporate by reference paragraphs 1-87 of this Complaint as if fully set forth herein.

159.     Defendants are in a unique position of knowledge concerning the quality, safety and efficacy of the Defendants' Pelvic Mesh Products, which knowledge is not possessed by Plaintiffs or their physicians, and Defendants thereby hold a position of superiority over Plaintiffs and their physicians.

160.     Despite their unique and superior knowledge regarding the defective nature of the Defendants' Pelvic Mesh Products, Defendants continue to suppress, conceal, omit, and/or misrepresent information to Plaintiffs, the medical community, and/or the FDA, concerning the severity of risks and the dangers inherent in the intended use of the Defendants' Pelvic Mesh Products, as compared to other products and forms of treatment.

161.     The following are examples of how Defendants suppressed, concealed, omitted and/or misrepresented information to Plaintiffs, the medical community, to regulatory bodies, and/or the general public:

    a.   A recent study published in *Obstetrics & Gynecology* in 2010, and authored by Iglesia et al., had to be halted early due to a predetermined stopping criteria for vaginal mesh erosion at a median follow-up of 9.7 month (range, 2.4-26.7 months).  The study found an erosion rate of 15.6% with no difference in overall objective and subjective cure rates. However, instead of using the findings of this study to warn surgeons about the potentially higher rate of complications associated with its mesh devices, Defendants undertook instead to undermine and refute the findings in order to avoid negatively impacting its ability to market its products.

    b.   Defendants made claims in its IFUs and other marketing materials that its mesh had bidirectional elasticity when, in fact, Defendants were instructed by the FDA to remove the statement from its marketing materials due to the lack of sufficient evidence to support the statement.

EXHIBIT
5

48

c. Defendants made claims in its IFUs and other marketing materials that its mesh does not degrade and is inert. When asked by the United Kingdom regulatory agency, MHRA, about whether or not its mesh degrades, Defendants stated that "there have been no observations of fiber degradation in complaints received and/or products returned" when they knew that there had been four reports of degradation or absorption. Even the manufacturer of the polypropylene used by Ethicon in its meshes suggested in its MSDS that its polypropylene must not be used for permanent implantation in the human body based in part on the fact that oxidizers and peroxides, both of which are created by the human body in response to any kind of inflammatory reaction, can degrade polypropylene.

d. Defendants made claims in its IFUs and other marketing materials that its mesh has been proven safe and effective, despite the fact that there was almost no data to support the TVT's use in pelvic surgery prior to its being launched. Since the launch of TVT, Ethicon has relied primarily on its own studies while ignoring studies that question the safety and efficacy of its products. Good evidence that Ethicon is cherry-picking the results of specific studies is demonstrated by its failure to cite to studies in its IFUs and other marketing materials that are critical of their products. (ex: Richter et al., *Retropubic versus Transobturator Midurethral Slings for Stress Incontinence*, New England Journal of Medicine, 362;22; Anger et al., Complications of sling surgery among female Medicare beneficiaries, Obstet Gynecol, 2007 Mar; 109(3)707-14; Novara et al., *Critical Assessment of Pelvic Floor Surgical Reconstruction, European Association of Urology*, 4(2006) 202-213; and Sung et al., *Comparison of Retropubic versus Transobturator Approach to Midurethral slings: A Systematic Review and Meta-Analysis*, Am J Obstet Gyncol. 2007 July; 197(1):3-11.)

e. Defendants made claims in its IFUs and other marketing materials that "Animal studies show that implantation of Gynecare Gynemesh PS mesh elicits a minimum to slight inflammatory reaction which is transient..." when Ethicon knew that the foreign body reaction and inflammatory response to its mesh would transition into a more chronic phase that stays for the duration of the life of the patient.

f. Defendants made claims in their Patient Brochures and other marketing materials that "transient leg pain lasting 24 to 48 hours may occur and can usually be managed with mild analgesics" even though they knew that persistent leg pain was a known complication that could be severe and lifelong.

**EXHIBIT**

**5**

49

162.     These representations were all false and Plaintiffs and the medical community relied on this misinformation.

163.     Defendants have concealed and suppressed material information, including limited clinical testing, that would reveal that the Defendants' Pelvic Mesh Products had a higher risk of adverse effects, in addition to, and exceeding those associated with alternative procedures and available devices.  Instead, Defendants have misrepresented the safety and efficacy of the Products.

164.     Upon information and belief, Defendants' misrepresentations are designed to induce physicians and Plaintiffs to prescribe, dispense, recommend and/or purchase the Defendants' Pelvic Mesh Products.  Plaintiffs and the medical community have relied upon Defendants' representations.

165.     Defendants took unconscionable advantage of their dominant position of knowledge with regard to Plaintiffs and their medical providers and engaged in constructive fraud in their relationship with Plaintiffs and their medical providers.  Plaintiffs reasonably relied on Defendants' representations.

166.     As a proximate result of the Defendants' conduct, Plaintiffs have been injured, and sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and consortium, economic damages, and death.

WHEREFORE, Plaintiffs demand judgment against Defendants, and each of them, individually, jointly, severally and in the alternative, and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.



**EXHIBIT**

**5**

50

# COUNT IX

## NEGLIGENT MISREPRESENTATION

167.     Plaintiffs incorporate by reference paragraphs 1-87 of this Complaint as if fully set forth herein. Defendants had a duty to accurately and truthfully represent to the medical and healthcare community, Plaintiffs, and the public, that the Pelvic Mesh Products had not been adequately tested and found to be safe and effective for the treatment of incontinence and prolapse.  The representations made by Defendants, in fact, were false.

168.     Defendants failed to exercise ordinary care in the representations concerning the Pelvic Mesh Products while they were involved in their manufacture, sale, testing, quality assurance, quality control, and distribution in interstate commerce, because Defendants negligently misrepresented the Pelvic Mesh Products' high risk of unreasonable, dangerous, adverse side effects.

169.     Defendants breached their duty in representing that the Defendants' Pelvic Mesh Products have no serious side effects different from older generations of similar products and/or procedures to Plaintiffs, Plaintiffs' physicians, and the medical and healthcare community.

170.     As a foreseeable, direct and proximate result of the negligent misrepresentation of Defendants as set forth herein, Defendants knew, and had reason to know, that the Pelvic Mesh Products had been insufficiently tested, or had not been tested at all, and that they lacked adequate and accurate warnings, and that they created a high risk, and/or higher than acceptable risk, and/or higher than reported and represented risk, of adverse side effects, including, erosion, pain and suffering, surgery to remove the products, and other severe and personal injuries, which are permanent and lasting in nature.

**EXHIBIT**

**5**

51

171.    As a direct and proximate result of the Defendants' conduct, Plaintiffs have been injured, and sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and consortium, economic damages, <u>and death</u>.

WHEREFORE, Plaintiffs demand judgment against Defendants, and each of them, individually, jointly, severally and in the alternative, and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

<u>COUNT X</u>

<u>NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS</u>

172.    Plaintiffs incorporate by reference paragraphs 1-87 of this Complaint as if fully set forth herein.

173.    Defendants carelessly and negligently manufactured, designed, developed, tested, labeled, marketed and sold the Defendants' Pelvic Mesh Products to Plaintiffs, carelessly and negligently concealing the harmful effects of the Defendants' Pelvic Mesh Products from Plaintiffs, and carelessly and negligently misrepresented the quality, safety and efficacy of the products.

174.    Plaintiffs were directly impacted by Defendants' carelessness and negligence, in that Plaintiffs have sustained and will continue to sustain emotional distress, severe physical injuries and/or death, economic losses, and other damages as a direct result of the decision to purchase the Pelvic Mesh Products sold and distributed by Defendants.

175.    As a direct and proximate result of the Defendants' conduct, Plaintiffs have been injured, and sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and consortium, economic damages, and death.

**EXHIBIT**

**5**

52

WHEREFORE, Plaintiffs demand judgment against Defendants, and each of them, individually, jointly, severally and in the alternative, and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT XI

## BREACH OF EXPRESS WARRANTY

176.     Plaintiffs incorporate by reference paragraphs 1-87 of this Complaint as if fully set forth herein.

177.     At all relevant and material times, Defendants manufactured, distributed, advertised, promoted, and sold the Defendants' Pelvic Mesh Products.

178.     At all relevant times, Defendants intended that the Defendants' Pelvic Mesh Products be used in the manner that Plaintiffs in fact used them and Defendants expressly warranted that each product was safe and fit for use by consumers, that each product was of merchantable quality, that their side effects were minimal and comparable to other pelvic mesh products, and that they were adequately tested and fit for their intended use.

179.     At all relevant times, Defendants were aware that consumers, including Plaintiffs, would use the Pelvic Mesh Products; which is to say that Plaintiffs were foreseeable users of the Defendants' Pelvic Mesh Products.

180.     Plaintiffs and/ or their implanting physicians were at all relevant times in privity with Defendants.

181.     The Defendants' Pelvic Mesh Products were expected to reach and did in fact reach consumers, including Plaintiffs and their implanting physicians, without substantial change in the condition in which it was manufactured and sold by Defendants.

EXHIBIT
**5**
53

182.    Defendants breached various express warranties with respect to the Pelvic Mesh Products including the following particulars:

a)  Defendants represented to Plaintiffs and their physicians and healthcare providers through its labeling, advertising, marketing materials, detail persons, seminar presentations, publications, notice letters, and regulatory submissions that the Defendants' Pelvic Mesh Products were safe and fraudulently withheld and concealed information about the substantial risks of serious injury and/or death associated with using the Pelvic Mesh Products;

b)  Defendants represented to Plaintiffs and their physicians and healthcare providers that the Defendants' Pelvic Mesh Products were as safe, and/or safer than other alternative procedures and devices, that complications are rare,  and fraudulently concealed information, which demonstrated that the Products were not safer than alternatives available on the market and that complications were not, in fact, rare; and

c)  Defendants represented to Plaintiffs and their physicians and healthcare providers that the Defendants' Pelvic Mesh Products were more efficacious than other alternative medications and fraudulently concealed information, regarding the true efficacy of the products.

183.    In reliance upon Defendants' express warranties, Plaintiffs were implanted with the Defendants' Pelvic Mesh Products as prescribed and directed, and therefore, in the foreseeable manner normally intended, recommended, promoted, and marketed by Defendants.

184.    At the time of making such express warranties, Defendants knew or should have known that the Defendants' Pelvic Mesh Products do not conform to these express representations because the Defendants' Pelvic Mesh Products were not safe and had numerous serious side effects, many of which are common and Defendants did not accurately warn about, thus making the Defendants' Pelvic Mesh Products unreasonably unsafe for their intended purpose.

185.    Members of the medical community, including physicians and other healthcare professionals, as well as Plaintiffs and the Public relied upon the representations and

**EXHIBIT**

**5**

54

warranties of Defendants in connection with the use recommendation, description, and/or dispensing of the Defendants' Pelvic Mesh Products.

186.    Defendants breached their express warranties to Plaintiffs in that the Defendants' Pelvic Mesh Products were not of merchantable quality, safe and fit for their intended uses, nor were they adequately tested.

187.    Defendants' breaches constitute violations of common law principles and the statutory provisions of the Plaintiffs' respective states.

188.    As a direct and proximate result of the Defendants' conduct, Plaintiffs have been injured, and sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and consortium, economic damages, and death.

WHEREFORE, Plaintiffs demand judgment against Defendants, and each of them, individually, jointly, severally and in the alternative, and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

### COUNT XII

### BREACH OF IMPLIED WARRANTY

189.    Plaintiffs incorporate by reference paragraphs 1-87 of this Complaint as if fully set forth herein.

190.    At all relevant and material times, Defendants manufactured, distributed, advertised, promoted, and sold the Defendants' Pelvic Mesh Products.

191.    At all relevant times, Defendants intended that the Defendants' Pelvic Mesh Products be implanted for the purposes and in the manner those Plaintiffs or Plaintiffs'



EXHIBIT
**5**
55

implanting physicians in fact used they and Defendants impliedly warranted each product to be of merchantable quality, safe and fit for such use, even though they were not adequately tested.

192.    Defendants were aware that consumers, including Plaintiffs or Plaintiffs' physicians, would implant the Defendants' Pelvic Mesh Products in the manner directed by the instructions for use; which is to say that Plaintiffs or Plaintiffs' Decedents were foreseeable users of the Defendants' Pelvic Mesh Products.

193.    Plaintiffs and/or their physicians were at all relevant times in privity with Defendants.

194.    The Defendants' Pelvic Mesh Products were expected to reach and did in fact reach consumers, including Plaintiffs or Plaintiffs' physicians, without substantial change in the condition in which they were manufactured and sold by Defendants.

195.    Defendants breached various implied warranties with respect to the Defendants' Pelvic Mesh Products, including, but not limited to,  the following particulars:

a)    Defendants represented through their labeling, advertising, marketing materials, detail persons, seminar presentations, publications, notice letters, and regulatory submissions that the Defendants' Pelvic Mesh Products were safe and fraudulently withheld and concealed information about the substantial risks of serious injury and/or death associated with using the Pelvic Mesh Products;

b)    Defendants represented that the Defendants' Pelvic Mesh Products were safe, and/or safer than other alternative devices or procedures and that complications were rare, and fraudulently concealed information, which demonstrated that the Defendants' Pelvic Mesh Products were not as safe or safer than alternatives available on the market; and

c)    Defendants represented that the Defendants' Pelvic Mesh Products were more efficacious than alternative pelvic mesh products and procedures and fraudulently concealed information, regarding the true efficacy of the Defendants' Pelvic Mesh Products.



EXHIBIT
5

196. In reliance upon Defendants' implied warranty, Plaintiffs used the Pelvic Mesh Products as prescribed and in the foreseeable manner normally intended, recommended, promoted, and marketed by Defendants.

197. Defendants breached their implied warranty to Plaintiffs in that the Defendants' Pelvic Mesh Products were not of merchantable quality, safe and fit for their intended use, or adequately tested, in violation of Common Law principles and the statutory provisions of the Plaintiffs' respective states.

198. As a direct and proximate result of the Defendants' conduct, Plaintiffs have been injured, and sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and consortium, economic damages, and death.

WHEREFORE, Plaintiffs demand judgment against Defendants, and each of them, individually, jointly, severally and in the alternative, and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT XIII

## VIOLATION OF CONSUMER PROTECTION LAWS

199. Plaintiffs incorporate by reference paragraphs 1-87 of this Complaint as if fully set forth herein.

200. Plaintiffs purchased and used the Defendants' Pelvic Mesh Products primarily for personal use and thereby suffered ascertainable losses as a result of Defendants' actions in violation of the consumer protection laws.

201. Had Defendants not engaged in the deceptive conduct described herein, Plaintiffs would not have purchased and/or paid for the Defendants' Pelvic Mesh Products, and would not have incurred related medical costs and injury.

EXHIBIT
5

202.    Defendants engaged in wrongful conduct while at the same time obtaining, under false pretenses, moneys from Plaintiffs for the Pelvic Mesh Products that would not have been paid had Defendants not engaged in unfair and deceptive conduct.

203.    Unfair methods of competition or deceptive acts or practices that were proscribed by law, including the following:

a) Representing that goods or services have characteristics, ingredients, uses benefits or quantities that they do not have;

b) Advertising goods or services with the intent not to sell them as advertised; and,

c) Engaging in fraudulent or deceptive conduct that creates a likelihood of confusion or misunderstanding.

204.    Plaintiffs were injured by the cumulative and indivisible nature of Defendants' conduct.  The cumulative effect of Defendants' conduct directed at patients, physicians and consumers was to create demand for and sell the Defendants' Pelvic Mesh Products.  Each aspect of Defendants' conduct combined to artificially create sales of the Defendants' Pelvic Mesh Products.

205.    Defendants have a statutory duty to refrain from unfair or deceptive acts or trade practices in the design, labeling, development, manufacture, promotion, and sale of the Defendants' Pelvic Mesh Products.

206.    Had Defendants not engaged in the deceptive conduct described above, Plaintiffs would not have purchased and/or paid for the Products, and would not have incurred related medical costs.

207.    Defendants' deceptive, unconscionable, or fraudulent representations and material omissions to patients, physicians and consumers, including Plaintiffs, constituted unfair



EXHIBIT
5

58

134

and deceptive acts and trade practices in violation of the state consumer protection statutes listed below.

208. Defendants' actions, as complained of herein, constitute unfair competition or unfair, unconscionable, deceptive or fraudulent acts, or trade practices in violation of state consumer protection statutes, as listed below.

209. Defendants have engaged in unfair competition or unfair or deceptive acts or trade practices or have made false representations in violation of the statutory provisions of the Plaintiffs' respective states.

210. Under the applicable statutes to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising, Defendants are the suppliers, manufacturers, advertisers, and sellers, who are subject to liability under such legislation for unfair, deceptive, fraudulent and unconscionable consumer sales practices.

211. Defendants violated the statutes that were enacted in these states to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising, by knowingly and falsely representing that the Defendants' Pelvic Mesh Products were fit to be used for the purpose for which they were intended, when in fact they were defective and dangerous, and by other acts alleged herein. These representations were made in marketing and promotional materials.

212. The actions and omissions of Defendants alleged herein are uncured or incurable deceptive acts under the statutes enacted in the states to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising.

**EXHIBIT**

**5**

59

213.    Defendants had actual knowledge of the defective and dangerous condition of the Defendants' Pelvic Mesh Products and failed to take any action to cure such defective and dangerous conditions.

214.    Plaintiffs and the medical community relied upon Defendants' misrepresentations and omissions in determining which product and/or procedure to undergo and/or perform (if any).

215.    Defendants' deceptive, unconscionable or fraudulent representations and material omissions to patients, physicians and consumers, constituted unfair and deceptive acts and practices.

216.    By reason of the unlawful acts engaged in by Defendants, and as a direct and proximate result thereof, Plaintiffs have suffered ascertainable losses and damages.

217.    As a direct and proximate result of Defendants' violations of the states' consumer protection laws, Plaintiffs have sustained economic losses, injuries and other damages and are entitled to statutory and compensatory damages in an amount to be proven at trial.

WHEREFORE, Plaintiffs demand judgment against Defendants, and each of them, individually, jointly, severally and in the alternative, and requests restitution and disgorgement of profits, together with interest, cost of suit, attorneys' fees, and all such other and further relief as this Court deems just and proper.

## COUNT XIV

## GROSS NEGLIGENCE

218.    Plaintiffs incorporate by reference paragraphs 1-87 of this Complaint as if fully set forth herein.



EXHIBIT
**5**
60

136

219.    The wrongs done by Defendants were aggravated by the kind of malice, fraud, and grossly negligent disregard for the rights of others, the public, and Plaintiffs for which the law would allow, and which Plaintiffs will seek at the appropriate time under governing law for the imposition of exemplary damages, in that Defendants' conduct, including the failure to comply with applicable Federal standards: was specifically intended to cause substantial injury to Plaintiffs; or when viewed objectively from Defendants' standpoint at the time of the conduct, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and Defendants were actually, subjectively aware of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others; or included a material representation that was false, with Defendants, knowing that it was false or with reckless disregard as to its truth and as a positive assertion, with the intent that the representation is acted on by Plaintiffs.

220.    Plaintiffs relied on the representation and suffered injury as a proximate result of this reliance.

221.    Plaintiffs therefore will seek to assert claims for exemplary damages at the appropriate time under governing law in an amount within the jurisdictional limits of the Court.

222.    Plaintiffs also allege that the acts and omissions of named Defendants, whether taken singularly or in combination with others, constitute gross negligence that proximately caused the injuries to Plaintiffs.  In that regard, Plaintiffs will seek exemplary damages in an amount that would punish Defendants for their conduct and which would deter other manufacturers from engaging in such misconduct in the future.

WHEREFORE, Plaintiffs demand judgment against Defendants, and each of them, individually, jointly, severally and in the alternative, and requests compensatory damages,

EXHIBIT
5

137

together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT XV

## UNJUST ENRICHMENT

223.    Plaintiffs incorporate by reference paragraphs 1-87 of this Complaint as if fully set forth herein. Defendants are and at all times relevant were the manufacturers, sellers, and/or suppliers of the Defendants' Pelvic Mesh Products.

224.    Plaintiffs paid for the Defendants' Pelvic Mesh Products for the purpose of treatment of stress urinary incontinence and/ or pelvic organ prolapse or other similar conditions.

225.    Defendants have accepted payment by Plaintiffs and others on Plaintiffs' behalf for the purchase of the Defendants' Pelvic Mesh Products.

226.    Plaintiffs have not received the safe and effective medical devices for which they paid.

227.    It would be inequitable for Defendants to keep this money since Plaintiffs did not in fact receive a safe and effective medical device as represented by Defendants

WHEREFORE, Plaintiffs demand judgment against Defendants, and each of them, individually, jointly, severally and in the alternative, and requests compensatory damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.



EXHIBIT
**5**
62

# COUNT XVI

## LOSS OF CONSORTIUM

228.    Plaintiffs incorporate by reference paragraphs 1-87 of this Complaint as if fully set forth herein.

229.    At all relevant times hereto, Plaintiffs had spouses (hereafter referred to as "Spouse Plaintiffs") and/or family members (hereafter referred to as "Family Member Plaintiffs") who have suffered injuries and losses as a result of the Pelvic Mesh Products and Plaintiffs' injuries.

230.    For the reasons set forth herein, Spouse Plaintiffs and/or Family Member Plaintiffs have necessarily paid and have become liable to pay for medical aid, treatment, monitoring, medications, and other expenditures and will necessarily incur further expenses of a similar nature in the future as a proximate result of Defendants' misconduct.

231.    For the reasons set forth herein, Spouse Plaintiffs and/or Family Member Plaintiffs have suffered and will continue to suffer the loss of their loved one's support, companionship, services, society, love and affection.

232.    For all Spouse Plaintiffs, Plaintiffs allege that their marital relationship was impaired and depreciated, and the marital association between husband and wife has been altered.

233.    Spouse Plaintiffs and/or Family Member Plaintiffs have suffered great emotional pain and mental anguish.

234.    As a direct and proximate result of Defendants' wrongful conduct, Spouse Plaintiffs, Family Member Plaintiffs, and/or intimate partners of the aforesaid women, have sustained and will continue to sustain severe physical injuries, severe emotional distress,

**EXHIBIT**

**5**

economic losses and other damages for which they are entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial. Defendants are liable to Spouse Plaintiffs, Family Member Plaintiffs, and intimate partners jointly and severally for all general, special and equitable relief to which Spouse Plaintiffs, Family Member Plaintiffs, and intimate partners are entitled by law.

WHEREFORE, Plaintiffs demand judgment against Defendants, and each of them, individually, jointly, severally and in the alternative, and requests compensatory damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT XVII

## PUNITIVE DAMAGES

235. Plaintiffs incorporate by reference paragraphs 1-87 of this Complaint as if fully set forth herein.

236. Defendants sold their Products to Plaintiffs' healthcare providers and other healthcare providers throughout the United States without doing adequate testing to ensure that the Products were reasonably safe for implantation in the female pelvic area.

237. Defendants sold the Products to Plaintiffs' health care providers and other health care providers throughout the United States in spite of their knowledge that their Products can shrink, disintegrate and/or degrade inside the body, and cause the other problems heretofore set forth in this complaint, thereby causing severe and debilitating injuries suffered by the Plaintiffs.

238. At all times relevant hereto, Defendants knew or should have known that the Defendants' Pelvic Mesh Products were inherently dangerous with respect to the risks of

**EXHIBIT**
**5**
64

140

erosion, failure, pain and suffering, loss of life's enjoyment, remedial surgeries and treatments in an effort to cure the conditions proximately related to the use of the product, as well as other severe and personal injuries which are permanent and lasting in nature.

239. At all times material hereto, Defendants attempted to misrepresent and did misrepresent facts concerning the safety of the Defendants' Pelvic Mesh Products.

240. Defendants' misrepresentations included knowingly withholding material information from the medical community and the public, including Plaintiffs, concerning the safety and efficacy of the Defendants' Pelvic Mesh Products.

241. At all times material hereto, Defendants knew and intentionally and/or recklessly disregarded the fact that the Defendants' Pelvic Mesh Products cause debilitating and potentially lethal side effects with greater frequency than safer alternative methods products and/or procedures and/or treatment.

242. At all times material hereto, Defendants knew and intentionally and/or recklessly disregarded the fact that the Defendants' Pelvic Mesh Products cause debilitating and potentially lethal side effects with greater frequency than safer alternative products and/or methods of treatment and recklessly failed to advise healthcare providers, the public and the FDA of same.

243. At all times material hereto, Defendants intentionally misstated and misrepresented data and continue to misrepresent data so as to minimize the true and accurate risk of injuries and complications caused by the Defendants' Pelvic Mesh Products.

244. Notwithstanding the foregoing, Defendants continue to aggressively market the Defendants' Pelvic Mesh Products to consumers, without disclosing the true risk of side effects and complications.

**EXHIBIT**
**5**
65

245.    Defendants knew of the Defendants' Pelvic Mesh Products defective and unreasonably dangerous nature, but continued to manufacture, produce, assemble, market, distribute, and sell the Defendants' Pelvic Mesh Products so as to maximize sales and profits at the expense of the health and safety of the Public, including Plaintiffs, in conscious and/or reckless disregard of the foreseeable harm caused by the Defendants' Pelvic Mesh Products.

246.    Defendants continue to intentionally conceal and/or recklessly and/or grossly negligently fail to disclose to the public, including Plaintiffs, the serious side effects of the Defendants' Pelvic Mesh Products in order to ensure continued and increased sales.

247.    Defendants' intentionally, reckless and/or grossly negligent failure to disclose information deprived Plaintiffs of necessary information to enable them to weigh the true risks of using the Defendants' Pelvic Mesh Products against their benefits.

248.    As a direct and proximate result of the foregoing acts and omissions, Plaintiffs have required and will require health care and services, and have incurred medical, health care, incidental, and related expenses.  Plaintiffs are informed and believe and further allege that Plaintiffs will in the future be required to obtain further medical care and/or hospital care and medical services.

249.    Defendants have engaged in conduct entitling Plaintiffs to an award of punitive damages pursuant Common Law principles and the statutory provisions of the Plaintiffs' respective states.

250.    Defendants' conduct as described herein shows willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which raises the presumption of conscious indifference to consequences, thereby justifying an award of punitive damages.



EXHIBIT
5
66

WHEREFORE, Plaintiffs demand judgment against Defendants, and each of them, individually, jointly, severally and in the alternative, and requests compensatory damages, together with interest, costs of suit, attorneys' fees, punitive damages, and such further relief as the Court deems equitable and just.

## COUNT XVIII

## DISCOVERY RULE AND TOLLING

251.    Plaintiffs incorporate by reference paragraphs 1-87 of this Complaint as if fully set forth herein.

252.    Plaintiffs assert all applicable state statutory and common law rights and theories related to the tolling or extension of any applicable statute of limitations, including equitable tolling, class action tolling, delayed discovery, discovery rule, and fraudulent concealment.

253.    Plaintiffs plead that the discovery rule should be applied to toll the running of the statute of limitations until Plaintiffs knew, or through the exercise of reasonable care and diligence should have known, of facts indicating that Plaintiffs had been injured, the cause of the injury, and the tortious nature of the wrongdoing that caused the injury.

254.    Despite diligent investigation by Plaintiffs into the cause of their injuries, including consultations with Plaintiffs' medical providers, the nature of Plaintiffs' injuries and damages, and their relationship to the Products was not discovered, and through reasonable care and due diligence could not have been discovered, until a date within the applicable statute of limitations for filing Plaintiffs' claims. Therefore, under appropriate application of the discovery rule, Plaintiffs' suit was filed well within the applicable statutory limitations period.



EXHIBIT
**5**
67

255.     The running of the statute of limitations in this cause is tolled due to equitable tolling.  Defendant(s) are estopped from asserting a statute of limitations defense due to Defendants' fraudulent concealment, through affirmative misrepresentations and omissions, from Plaintiffs and Plaintiffs' physicians of the true risks associated with the Products.

256.     The following are examples of how Defendants suppressed, concealed, omitted and/or misrepresented information to Plaintiffs, the medical community, to regulatory bodies, and/or the general public:

    a.  A recent study published in *Obstetrics & Gynecology* in 2010, and authored by Iglesia et al., had to be halted early due to a predetermined stopping criteria for vaginal mesh erosion at a median follow-up of 9.7 month (range, 2.4-26.7 months).  The study found an erosion rate of 15.6% with no difference in overall objective and subjective cure rates.  However, instead of using the findings of this study to warn surgeons about the potentially higher rate of complications associated with its mesh devices, Defendants undertook instead to undermine and refute the findings in order to avoid negatively impacting its ability to market its products.

    b.  Defendants made claims in its IFUs and other marketing materials that its mesh had bidirectional elasticity when, in fact, Defendants were instructed by the FDA to remove this statement from its marketing materials due to the lack of sufficient evidence to support the statement.

    c.  Defendants made claims in its IFUs and other marketing materials that its mesh does not degrade and is inert.  When asked by the United Kingdom regulatory agency, MHRA, about whether or not its mesh degrades, Defendants stated that "there have been no observations of fiber degradation in complaints received and/or products returned" when they knew that there had been four reports of degradation or absorption. Even the manufacturer of the polypropylene used by Ethicon in its meshes suggested in its MSDS that its polypropylene must not be used for permanent implantation in the human body based in part on the fact that oxidizers and peroxides, both of which are created by the human body in response to any kind of inflammatory reaction, can degrade polypropylene.

    d.  Defendants made claims in its IFUs and other marketing materials that its mesh has been proven safe and effective, despite the fact that there was almost no data to support the TVT's use in pelvic surgery prior to its being

EXHIBIT
5
68

144

launched. Since the launch of TVT, Ethicon has relied primarily on its own studies while ignoring studies that question the safety and efficacy of its products. Good evidence that Ethicon is cherry-picking the results of specific studies is demonstrated by its failure to cite to studies in its IFUs and other marketing materials that are critical of their products. (ex: Richter et al., *Retropubic versus Transobturator Midurethral Slings for Stress Incontinence*, New England Journal of Medicine, 362;22; Anger et al., Complications of sling surgery among female Medicare beneficiaries, Obstet Gynecol, 2007 Mar; 109(3)707-14; Novara et al., *Critical Assessment of Pelvic Floor Surgical Reconstruction, European Association of Urology*, 4(2006) 202-213; and Sung et al., *Comparison of Retropubic versus Transobturator Approach to Midurethral slings: A Systematic Review and Meta-Analysis*, Am J Obstet Gyncol. 2007 July; 197(1):3-11.)

e. Defendants made claims in its IFUs and other marketing materials that "Animal studies show that implantation of Gynecare Gynemesh PS mesh elicits a minimum to slight inflammatory reaction which is transient..." when Ethicon knew that the foreign body reaction and inflammatory response to its mesh would transition into a more chronic phase that stays for the duration of the life of the patient.

f. Defendants made claims in their Patient Brochures and other marketing materials that "transient leg pain lasting 24 to 48 hours may occur and can usually be managed with mild analgesics" even though they knew that persistent leg pain was a known complication that could be severe and lifelong.

As a result of Defendants' fraudulent concealment, Plaintiffs and Plaintiffs' physicians were unaware, and could not have known or have learned through reasonable diligence that Plaintiffs had been exposed to the risks alleged herein and that those risks were the direct and proximate result of the wrongful acts and omissions of the Defendant(s).

WHEREFORE, Plaintiffs demand judgment against Defendants, and each of them, individually, jointly, severally and in the alternative, and requests compensatory damages, together with interest, costs of suit, attorneys' fees, punitive damages, and such further relief as the Court deems equitable and just.



EXHIBIT
5
69

## COUNT XIX

## NEGLIGENT TRAINING

257. Plaintiffs incorporate by reference paragraphs 1-87 of this Complaint as if fully set forth herein.

258. Defendants voluntarily assumed duties to train physicians, including Plaintiffs' physicians, to use the Pelvic Mesh Products to perform medical procedures for the treatment of medical conditions in the female pelvis, primarily pelvic organ prolapse and stress urinary incontinence.

259. By assuming this duty, Defendants had an obligation to the Plaintiffs, as purchasers and end-users of the Pelvic Mesh Products, to ensure that Plaintiffs' physicians were adequately trained, educated and/or instructed to determine the appropriateness and efficacy of the Products implanted in Plaintiffs during their medical care and treatment.

260. The Defendants breached these duties by and through their agents, servants and/or employees, acting within the course and scope of their employment, by doing or failing to do one or more of the following:

    a. Generally failing to use reasonably care in training, educating and/or instructing physicians interested in performing procedures for the treatment of medical conditions in the female pelvis, primarily pelvic organ prolapse and stress urinary incontinence, as to the appropriateness for such a procedure;

    b. Generally failing to use reasonably care in training, educating and/or instructing physicians as to the risks associated with the Products, so as to avoid unreasonable risk of harm to women in whom the Products were implanted, including Plaintiffs;

    c. Generally failing to use reasonably care in training, educating and/or instructing physicians regarding the proper techniques necessary for implantation of the Products into the Plaintiffs;

    d. Specifically impl **EXHIBIT** training program which is defective, inadequate and deficient in that it fails to adequately and reasonably train, educate

**EXHIBIT 5**

70

and/or instruct physicians as to which patients are appropriate candidates for the Pelvic Mesh Products and which are not;

e.      Specifically failing to use reasonable care in training, educating and/or instructing physicians that the Pelvic Mesh Products had not been adequately tested to establish the safety and efficacy of their pore size;

f.      Specifically failing to use reasonable care in training, educating and/or instructing physicians that the Pelvic Mesh Products had not been found to be safe and effective for the purposes of treating incontinence and/or prolapse;

g.      Specifically failing to use reasonable care in training, educating and/or instructing physicians that Defendants had done no premarket testing regarding the degradation of polypropylene;

h.      Specifically failing to use reasonable care in training, educating and/or instructing physicians that the Pelvic Mesh Products are weakened through heat and stress during the manufacturing process;

i.      Specifically failing to use reasonable care in training, educating and/or instructing physicians that Defendants had not conducted adequate testing to determine whether the Pelvic Mesh Products would deform or curl under stress;

j.      Specifically failing to use reasonable care in training, educating and/or instructing physicians regarding the difficulty in removing the Pelvic Mesh Products in the event removal was necessary, or how to try to get the Products out of the body;

k.      Specifically failing to use reasonable care in training, educating and/or instructing physicians regarding the possibility of excessive mesh contraction, retraction, and/or shrinkage inside the body resulting in surrounding nerve damage;

l.      Specifically failing to use reasonable care in training, educating and/or instructing physicians regarding the possibility for Product degradation or fragmentation;

m.      Specifically failing to use reasonable care in training, educating and/or instructing physicians regarding the possibility that the Product could "creep," or to gradually elongate and deform when subject to prolonged tension inside the body;

n.      Specifically failing to use reasonable care in training, educating and/or instructing physicians regarding the inelasticity of the Products, causing the Products to be improperly matted to the delicate and sensitive areas of the vagina and pelvis where they are implanted, and causing pain upon normal daily

**EXHIBIT**

**5**

147

activities that involve movement in the pelvic region (e.g., intercourse, defecation, walking); and

o.     Specifically failing to use reasonable care in training, educating and/or instructing physicians regarding the possibility of permanent vaginal or rectal nerve damage.

261.    At the time the Pelvic Mesh Products were sold to consumers, including to Plaintiffs, Defendants had actual or constructive knowledge that the training, education and/or instruction provided to physicians, including Plaintiffs' physicians, was woefully incomplete and inadequate.

262.    As a direct and proximate result of Defendants' negligence, Plaintiffs have been injured, often catastrophically, sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and consortium, economic loss and damages including, but not limited to medical expenses, lost income, other damages, and/or death.

WHEREFORE, Plaintiffs demand judgment against Defendants, and each of them, individually, jointly, severally and in the alternative, and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## V.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendants, and each of them, individually, jointly and severally and requests compensatory damages, together with interest, cost of suit, attorneys' fees, and all such other relief as the Court deems just and proper as well as:



**EXHIBIT 5**

72

1. Compensatory damages to Plaintiffs for past, present, and future damages, including, but not limited to, pain and suffering for severe and permanent personal injuries sustained by Plaintiffs, health and medical care costs, together with interest and costs as provided by law;

2. Restitution and disgorgement of profits;

3. Reasonable attorneys' fees;

4. The costs of these proceedings;

5. All ascertainable economic damages;

6. Punitive damages;

7. Survival damages (if applicable);

8. Wrongful death damages (if applicable); and

9. Such other and further relief as this Court deems just and proper.

Dated: _____, 2013

Respectfully submitted,

_____

D. RENEE BAGGETT

Aylstock, Witkin, Kreis and Overholtz, PLC
17 E. Main Street, Suite 200
Pensacola, FL 32563
850-202-1010
850-916-7449
Rbaggett@awkolaw.com



EXHIBIT
5

THOMAS P. CARTMELL

Wagstaff & Cartmell LLP
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
816-701-1102
Fax 816-531-2372
tcartmell@wcllp.com

*Plaintiffs' Co-Lead Counsel*

**EXHIBIT**

**5**

74

150

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury as to all issues.

Respectfully submitted,

Dated: _____, 2013

_____

D. RENEE BAGGETT

Aylstock, Witkin, Kreis and Overholtz, PLC
17 E. Main Street, Suite 200
Pensacola, FL 32563
850-202-1010
850-916-7449
Rbaggett@awkolaw.com

THOMAS P. CARTMELL

Wagstaff & Cartmell LLP
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
816-701-1102
Fax 816-531-2372
tcartmell@wcllp.com

*Plaintiffs' Co-Lead Counsel*



EXHIBIT
**5**

# APPENDIX B

### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

*MDL No. 2327*
*In Re Ethicon Inc., Pelvic Repair System Products Liability Litigation*

_____

### __AMENDED SHORT FORM COMPLAINT__

Come now the Plaintiff(s) named below, and for Complaint against the Defendants named below, incorporate The Master Complaint in MDL No. 2327 by reference. Plaintiff(s) further show the court as follows:

1. Female Plaintiff

   _____

2. Plaintiff's Spouse (if applicable)

   _____

3. Other Plaintiff and capacity (i.e., administrator, executor, guardian, conservator)

   _____

4. State of Residence

   _____

5. District Court and Division in which venue would be proper absent direct filing.

   _____

   _____

6. Defendants (Check Defendants against whom Complaint is made):

   ( )   Ethicon, Inc.

   ( )   Johnson & Johnson

   ( )   American Medical Systems, Inc.

**EXHIBIT**
**5**
153

( )     Boston Scientific Corporation, Inc.

( )     C. R. Bard, Inc. ("Bard")

( )     Sofradim Production SAS ("Sofradim")

( )     Tissue Science Laboratories Limited ("TSL")

( )     Mentor Worldwide LLC

( )     Coloplast Corp.

( )     Cook

7.  Basis of Jurisdiction

( )     Diversity of Citizenship

( )     Other: _____

A.  Paragraphs in Master Complaint upon which venue and jurisdiction lie:

_____

_____

_____

B.  Other allegations of jurisdiction and venue:

_____

_____

_____

_____

8.  Defendants' products implanted in [EXHIBIT] eck products implanted in Plaintiff)

**EXHIBIT**

**5**

2

154

( )    Prolift

( )    Prolift +M

( )    Gynemesh/Gynemesh PS

( )    Prosima

( )    TVT

( )    TVT-Oturator (TVT-O)

( )    TVT-SECUR (TVT-S)

( )    TVT-Exact

( )    TVT-Abbrevo

( )    Other

_____

_____

9.  Defendants' Products about which Plaintiff is making a claim.  (Check applicable products):

( )    Prolift

( )    Prolift +M

( )    Gynemesh/Gynemesh PS

( )    Prosima

( )    TVT

( )    TVT-Oturator (TVT-O)

( )    TVT-SECUR (TVT-S)

( )    TVT-Exact

( )    TVT-Abbrevo

( )    Other

_____

**EXHIBIT**

**5**

3

10. Date of Implantation as to Each Product:

_____

_____

_____

11. Hospital(s) where Plaintiff was implanted (including City and State):

_____

_____

12. Implanting Surgeon(s):

_____

_____

13. Counts in the Master Complaint brought by Plaintiff(s):

    ( )     Count I – Negligence

    ( )     Count II – Strict Liability – Manufacturing Defect

    ( )     Count III – Strict Liability – Failure to Warn

    ( )     Count IV – Strict Liability – Defective Product

    ( )     Count V – Strict Liability – Design Defect

    ( )     Count VI – Common Law Fraud

    ( )     Count VII – Fraudulent Concealment

    ( )     Count VIII – Constructive Fraud

    ( )     Count IX – Negligent Misrepresentation

    ( )     Count X – Negligent Infliction of Emotional Distress

    ( )     Count XI – Breach of Express Warranty

    ( )     Count XII – Breach of Implied Warranty

**EXHIBIT**

**5**

( )     Count XIII – Violation of Consumer Protection Laws

( )     Count XIV – Gross Negligence

( )     Count XV – Unjust Enrichment

( )     Count XVI – Loss of Consortium

( )     Count XVII – Punitive Damages

( )     Count XVIII – Discovery Rule and Tolling

( )     Count XIX – Negligent Training

( )     Other Count(s) (Please state factual and legal basis for other claims below):

_____

_____

_____

_____


                                                 _____

                                               Attorneys for Plaintiff

Address and bar information:                       _____

_____

_____                       _____

_____

_____

**EXHIBIT**

**5**

157

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

IN RE:  ETHICON, INC.,
      PELVIC REPAIR SYSTEM
      PRODUCTS LIABILITY LITIGATION

MDL No. 2327

--------------------------------------------------

THIS DOCUMENT RELATES TO ALL CASES

### PRETRIAL ORDER # 118
(**Revised** Short Form Complaint and Amended Short Form Complaint
re: Addition of Neomedic Entities and Removal of Ethicon, LLC)

I recently entered PTO # 117 dismissing Ethicon, LLC pursuant to the agreement of the parties.  In addition, with the assignment of the Neomedic MDL by the Judicial Panel on Multidistrict Litigation, MDL 2511, four Neomedic entities have been added to the Short Form and Amended Short Form Complaints.  As a result, attached are a **revised** (1) Short Form Complaint (Exhibit A); and a **revised** (2) Amended Short Form Complaint (Exhibit B) that reflect the above revisions to the Short Form and Amended Short Form Complaints in this MDL.

It is **ORDERED** as follows:

(1) While PTO ##s 15, 26, 29, 50 and 79 remain in force and effect where applicable, parties filing Short Form Complaints in new cases or Amended Short Form Complaints in existing cases, where appropriate, **must use the revised forms attached to this PTO and located on the court's website beginning no later than June 5, 2014**.

**EXHIBIT**
**6**

The court **DIRECTS** the Clerk to file a copy of this order in 2:12-md-2327 and it shall apply to each member related case previously transferred to, removed to, or filed in this district, which includes counsel in all member cases up to and including civil action number 2:14-cv-17014. In cases subsequently filed in this district, a copy of the most recent pretrial order will be provided by the Clerk to counsel appearing in each new action at the time of filing of the complaint. In cases subsequently removed or transferred to this court, a copy of the most recent pretrial order will be provided by the Clerk to counsel appearing in each new action upon removal or transfer. It shall be the responsibility of the parties to review and abide by all pretrial orders previously entered by the court. The orders may be accessed through the CM/ECF system or the court's website at www.wvsd.uscourts.gov.

ENTER: May 29, 2014

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

**EXHIBIT**
**6**
2

Case 2:12-cv-05922 JGS Document 1 of 14 Filed 05/27/14 Page 1 of 14 PageID #:400
Case 2:12-cv-05922 JGS Document 1 of 14 Filed 05/27/14 Page 156 of 396 PageID #:25346
Öç@aaÂÔ

PRINT FORM       RESET FORM

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

## *In Re: Ethicon Inc., Pelvic Repair System Products Liability Litigation*
## *MDL No. 2327*

**Civil Action No.** _____

---

### AMENDED SHORT FORM COMPLAINT

Come now the Plaintiff(s) named below, and for their Complaint against the Defendants

named below, incorporate The First Amended Master Complaint in MDL No. 2327 by reference.

Plaintiff(s) further show the court as follows:

1. Female Plaintiff

   _____

2. Plaintiff's Spouse (if applicable)

   _____

3. Other Plaintiff and capacity (i.e., administrator, executor, guardian, conservator)

   _____

4. State of Residence

   _____

5. District Court and Division in which venue would be proper absent direct filing.

   _____

   _____

6. Defendants (Check Defendants against whom Complaint is made):

   ☐  A.  Ethicon, Inc.

   ☐  B.  Johnson & Johnson

**EXHIBIT**
**6**
160

Revised: 5/28/14

☐ C.  American Medical Systems, Inc. ("AMS")

☐ D.  Boston Scientific Corporation

☐ E.  C. R. Bard, Inc. ("Bard")

☐ F.  Sofradim Production SAS ("Sofradim")

☐ G.  Tissue Science Laboratories Limited ("TSL")

☐ H.  Mentor Worldwide LLC

☐ I.  Coloplast Corp.

☐ J.  Cook Incorporated

☐ K.  Cook Biotech, Inc.

☐ L.  Cook Medical, Inc.

☐ M.  Desarrollo e Investigación Médica Aragonesa, S.L. ("DIMA")

☐ N.  Neomedic International, S.L.

☐ O.  Neomedic Inc.

☐ P.  Specialties Remeex International, S.L.

7.  Basis of Jurisdiction

☐ Diversity of Citizenship

☐ Other: _____

A.  Paragraphs in Master Complaint upon which venue and jurisdiction lie:

_____

_____

_____

**EXHIBIT**

**6**

2

B. Other allegations of jurisdiction and venue:

8. Defendants' products implanted in Plaintiff  (Check products implanted in Plaintiff)

☐ Prolift

☐ Prolift +M

☐ Gynemesh/Gynemesh PS

☐ Prosima

☐ TVT

☐ TVT-Obturator (TVT-O)

☐ TVT-SECUR (TVT-S)

☐ TVT-Exact

☐ TVT-Abbrevo

☐ Other

9. Defendants' Products about which Plaintiff is making a claim.  (Check applicable products):

☐ Prolift

☐ Prolift +M

☐ Gynemesh/Gynemesh PS

☐ Prosima

☐ TVT

**EXHIBIT 6**

3

☐ TVT-Obturator (TVT-O)

☐ TVT-SECUR (TVT-S)

☐ TVT-Exact

☐ TVT-Abbrevo

☐ Other

_____

_____

10. Date of Implantation as to Each Product:

_____

_____

_____

11. Hospital(s) where Plaintiff was implanted (including City and State):

_____

_____

12. Implanting Surgeon(s):

_____

_____

13. Counts in the Master Complaint brought by Plaintiff(s):

☐ Count I – Negligence

☐ Count II – Strict Liability – Manufacturing Defect

☐ Count III – Strict Liability – Failure to Warn

☐ Count IV – Strict Liability ~~product~~

**EXHIBIT**

**6**

4

☐ Count V – Strict Liability – Design Defect

☐ Count VI – Common Law Fraud

☐ Count VII – Fraudulent Concealment

☐ Count VIII – Constructive Fraud

☐ Count IX – Negligent Misrepresentation

☐ Count X – Negligent Infliction of Emotional Distress

☐ Count XI – Breach of Express Warranty

☐ Count XII – Breach of Implied Warranty

☐ Count XIII – Violation of Consumer Protection Laws

☐ Count XIV – Gross Negligence

☐ Count XV – Unjust Enrichment

☐ Count XVI – Loss of Consortium

☐ Count XVII – Punitive Damages

☐ Count XVIII – Discovery Rule and Tolling

☐ Other Count(s) (Please state factual and legal basis for other claims below):

**EXHIBIT**

**6**

5

s/
_____
Attorney(s) for Plaintiff

Address, phone number, email address and bar information:

**EXHIBIT**

**6**

6

165

PRINT FORM    RESET FORM

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

## *In Re: Ethicon Inc., Pelvic Repair System Products Liability Litigation*
## *MDL No. 2327*

### Civil Action No. _____

---

### **SHORT FORM COMPLAINT**

Come now the Plaintiff(s) named below, and for their Complaint against the Defendants

named below, incorporate The First Amended Master Complaint in MDL No. 2327 by reference.

Plaintiff(s) further show the court as follows:

1. Female Plaintiff

2. Plaintiff's Spouse (if applicable)

3. Other Plaintiff and capacity (i.e., administrator, executor, guardian, conservator)

4. State of Residence

5. District Court and Division in which venue would be proper absent direct filing.

6. Defendants (Check Defendants against whom Complaint is made):

☐  A.  Ethicon, Inc.

☐  B.  Johnson & Johnson

**EXHIBIT**

**6**

Revised: 5/28/14

☐    C.   American Medical Systems, Inc. ("AMS")

☐    D.   Boston Scientific Corporation

☐    E.   C. R. Bard, Inc. ("Bard")

☐    F.   Sofradim Production SAS ("Sofradim")

☐    G.   Tissue Science Laboratories Limited ("TSL")

☐    H.   Mentor Worldwide LLC

☐    I.   Coloplast Corp.

☐    J.   Cook Incorporated

☐    K.   Cook Biotech, Inc.

☐    L.   Cook Medical, Inc.

☐    M.   Desarrollo e Investigación Médica Aragonesa, S.L. ("DIMA")

☐    N.   Neomedic International, S.L.

☐    O.   Neomedic Inc.

☐    P.   Specialties Remeex International, S.L.

7.   Basis of Jurisdiction

☐    Diversity of Citizenship

☐    Other: _____

A.   Paragraphs in Master Complaint upon which venue and jurisdiction lie:

_____

_____

_____

**EXHIBIT**

**6**

B. Other allegations of jurisdiction and venue:

8.  Defendants' products implanted in Plaintiff  (Check products implanted in Plaintiff)

☐   Prolift

☐   Prolift +M

☐   Gynemesh/Gynemesh PS

☐   Prosima

☐   TVT

☐   TVT-Obturator (TVT-O)

☐   TVT-SECUR (TVT-S)

☐   TVT-Exact

☐   TVT-Abbrevo

☐   Other

9.  Defendants' Products about which Plaintiff is making a claim.  (Check applicable products):

☐   Prolift

☐   Prolift +M

☐   Gynemesh/Gynemesh PS

☐   Prosima

☐   TVT

**EXHIBIT**

**6**

3

☐     TVT-Obturator (TVT-O)

☐     TVT-SECUR (TVT-S)

☐     TVT-Exact

☐     TVT-Abbrevo

☐     Other

_____

_____

10. Date of Implantation as to Each Product:

_____

_____

_____

11. Hospital(s) where Plaintiff was implanted (including City and State):

_____

_____

12. Implanting Surgeon(s):

_____

_____

13. Counts in the Master Complaint brought by Plaintiff(s):

☐     Count I – Negligence

☐     Count II – Strict Liability – Manufacturing Defect

☐     Count III – Strict Liability – Failure to Warn

☐     Count IV – Strict Liability – Defective Product

**EXHIBIT 6**

4

☐ Count V – Strict Liability – Design Defect

☐ Count VI – Common Law Fraud

☐ Count VII – Fraudulent Concealment

☐ Count VIII – Constructive Fraud

☐ Count IX – Negligent Misrepresentation

☐ Count X – Negligent Infliction of Emotional Distress

☐ Count XI – Breach of Express Warranty

☐ Count XII – Breach of Implied Warranty

☐ Count XIII – Violation of Consumer Protection Laws

☐ Count XIV – Gross Negligence

☐ Count XV – Unjust Enrichment

☐ Count XVI – Loss of Consortium

☐ Count XVII – Punitive Damages

☐ Count XVIII – Discovery Rule and Tolling

☐ Other Count(s) (Please state factual and legal basis for other claims below):

**EXHIBIT 6**

5

**s/**
_____
Attorney(s) for Plaintiff

Address, phone number, email address and bar information:

**EXHIBIT**

**6**

6

171

TUCKER ELLIS LLP
MOLLIE F. BENEDICT SBN 187084
mollie.benedict@tuckerellis.com
JOSHUA J. WES SBN 238541
joshua.wes@tuckerellis.com
LAUREN H. BRAGIN SBN 286414
lauren.bragin@tuckerellis.com
515 South Flower Street
Forty-Second Floor
Los Angeles, CA 90071-2223
Telephone:  213.430.3400
Facsimile:  213.430.3409

Attorneys for Defendant
ETHICON, INC.

# IN THE UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| XOCHILT ROBINSON; THERESA BARNES; PATRICIA GIBBS; KELL BRADLEY-LERMA; JOANN NUNES PHYLLIS GOODMAN; DINA GUASE; JUDY MAY; WILHELMINA NEWMAN; PAMELA STEWART; IRENE TOBIN; CYNTHIA TOTORICI; BONNIE HAND; FLORENCE BUCHANAN; VENITA MASTERS; BIBIANA QUIAMBAO; LISHA McMILLIAN; CAROLYN BLACKMER; JANE HEWLETT; ILHAM DAGON; SANDRA HAMANN; DONNA PEARSON; RUTH GAUNT; BEVERLY TINKHAM; SARA CARMONA; JOYCE REAVIS; JANICE HIRD; GEORGINA VOKATY; DAWN CUNNINGHAM; PAMELA PEELE; MARY EDWARDS; VICKIE SKELTON; MARY FRIEL; MARIE PARNELL; MARIAN MOXLEY;MALLAH BUELL; SHIRLEY STEWART; SHIRLENE HUFFMAN; SUSAN SCHURICHT; VALENTINE, | Case No. <br><br> [Removal from Superior Court of California, Los Angeles County Case No. BC531848] <br><br> **NOTICE OF REMOVAL UNDER 28 U.S.C. § 1441(B) (DIVERSITY) OF DEFENDANT ETHICON, INC.** <br><br> State Action Filed:  December 30, 2013 <br><br> [Filed concurrently with Declaration of Joshua J. Wes, Notice of Related Cases and Pendency of Other Action or Proceeding, and Certification as to Interested Parties] |

**EXHIBIT 7**

172

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(B) (DIVERSITY)

969522.1

TUCKER ELLIS LLP
Cleveland ◆ Columbus ◆ Denver ◆ Los Angeles ◆ San Francisco

1  SCHULER; LINDA BERRY; TAMMY           )
2  PIAZZA; MARTHA DAVIS; MARY            )
   KATUIN; JUDITH FESLER; SHARON         )
3  LOUGHMAN; TRACY MULLER;               )
   AVA KRUM; LINDA WALTON;               )
4  HILDEGARD MILEUSNIC;                  )
   MARGARET DULEY; BOBBIE JO             )
5  RENUCCI; ANGELA MCCASKELL;            )
   LAURI KOTZEN; MARIE WICK;             )
6  MARCILLE MILLER; SHERRY               )
   ROBERTS; GWEN PELTIER; MERRY          )
7  BREEDEN; MEDINA OMEROVIC;             )
   NOLA PIOTROSWSKI; LISA                )
8  MURPHY; SERENA COOVERT;               )
   REGINA WEST; MAIDA NAQUIN;            )
9  MARY ORSI AND JADA SPANGLER,          )
                                         )
10                    Plaintiffs,        )
11                                       )
   v.                                    )
12                                       )
   JOHNSON & JOHNSON, a New Jersey       )
13 Corporation; ETHICON, INC., a New     )
   Jersey Corporation; ETHICON, LLC, a   )
14 Limited Liability company; and DOES 1 )
   through 500, inclusive,               )
15                                       )
                      Defendants.        )
16                                       )
                                         )
17                                       )
18                                       )
19                                       )

20 **TO THE CLERK OF THE CENTRAL DISTRICT OF CALIFORNIA:**

21        PLEASE TAKE NOTICE that Defendant Ethicon, Inc. ("Ethicon"), by and

22 through undersigned counsel, hereby removes this action from the Superior Court of the

23 State of California, County of Los Angeles, to the United States District Court for the

24 Central District of California pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.  The United

25 States District Court for the Central District of California has original subject matter

26 jurisdiction of this civil action pursuant to 28 U.S.C. § 1332(a) because there is complete

27 diversity among all properly joined and served parties and the amount in controversy

28 exceeds $75,0000.00, exclusive of interest and costs.

**EXHIBIT**

**7**

173   2

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(B) (DIVERSITY)

969522.1

*TUCKER ELLIS LLP*
Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

PLEASE TAKE FURTHER NOTICE that (a) as explained in more detail below the products that are the subject matter of this action are subject to MDL litigation pending in the Southern District of West Virginia, where over 14,000 cases are pending against Ethicon, and that because this District Court has subject matter jurisdiction under 28 U.S.C. § 1332(a), Ethicon will promptly tag this case for transfer from this District Court to the Southern District of West Virginia; and (b) the issues raised by Ethicon's Notice of Removal regarding jurisdictional manipulation through the misjoinder of non-diverse plaintiffs, sham joinder, and *Tapscott* misjoinder of parties and claims are raised and fully briefed in other cases already transferred from the Central District of California to the Southern District of West Virginia, and therefore, Ethicon will promptly move for a stay of these proceedings in the interests of judicial economy, efficiency and consistency so that the MDL Court can decide the issue of remand, if it arises.

In support of removal, Ethicon further states:

1.      On or about December 30, 2013, 67 Plaintiffs from 33 states ("Plaintiffs") filed a Complaint, styled *Robinson et al. v. Johnson & Johnson et al.,* in the Superior Court of the State of California, County of Los Angeles, Case No. BC531848.  Pursuant to 28 U.S.C. § 1446(a), a true and correct copy of all process, pleadings, and orders served upon and by Ethicon, including the Summons, Complaint, and Answer to Complaint, are attached as Exhibit A to the Declaration of Joshua J. Wes in Support of Removal ("Wes Decl."), filed concurrently herewith.   Plaintiffs assert claims for negligence; negligence per se; strict liability – design defect; strict liability – manufacturing defect; strict liability – failure to warn; breach of implied warranties; and gross negligence.  (Compl. ¶¶ 145-209.)

2.      The Plaintiffs' claims involve different products, different surgeons, different medical conditions, different states, and different state laws, and each one of the 67 plaintiffs allege monetary relief claims against Defendants in excess of $75,000, exclusive of interest and costs.  In an attempt to manipulate the jurisdiction of this court through the misjoinder of non-diverse plaintiffs and exalt form over substance, counsel

EXHIBIT 7

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

1  has joined three New Jersey Plaintiffs in this lawsuit. Joinder of these three non-diverse

2  plaintiffs is a mere artifice to try to evade the original subject matter jurisdiction of this

3  Court granted by the United States Constitution, Art. III, § 2, cl. 1 as implemented by

4  Congress in 28 U.S.C. § 1332(a) (diversity jurisdiction).

5       3.     Thousands of pelvic mesh product liability cases have been filed in federal

6  district courts across the country that are based upon diversity jurisdiction and allege

7  injuries similar to those claimed by Plaintiffs in this case, allegedly arising from the

8  implantation of various mesh products.  Accordingly, the United States Judicial Panel for

9  Multidistrict Litigation ("JPML") has established six separate Multi-District Litigations

10  ("MDLs") for claims related to different manufacturers' mesh products - five in the

11  United States District Court for the Southern District of West Virginia and one in the

12  United States District Court for the Middle District of Georgia.  *See, e.g.*, *In re: Ethicon,*

13  *Inc. Pelvic Repair Sys. Prods. Liab. Litig.*, 2012 WL 432533 (J.P.M.L. Feb. 7, 2012)

14  (granting centralization of Ethicon MDL No. 2327 ("Ethicon MDL")).   Discovery is

15  proceeding in the Ethicon MDL, and the first bellwether trial is scheduled for February of

16  2014.

I.  **REMOVAL IS PROPER BECAUSE THIS COURT HAS ORIGINAL**

18     **SUBJECT MATTER JURISDICTION PURSUANT TO 28 U.S.C. § 1332(a).**

19       4.     This Court has diversity jurisdiction pursuant to 28 U.S.C. §1332(a) because

20  this is a civil action between citizens of different states in which the amount in

21  controversy exceeds $75,000, exclusive of interest and costs.

A.      **The Amount in Controversy Requirement Is Satisfied.**

23       5.     Pursuant to 28 U.S.C. § 1446(c)(2)(B), removal is proper if the court finds,

24  by a preponderance of the evidence, that the amount in controversy exceeds $75,000.00,

25  exclusive of interest and costs.[1]

26  ―――――――――――――――――――――――――――――

27  [1] The preponderance of the evidence **EXHIBIT** as announced in the Federal Courts Jurisdiction
and Venue Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat. 758.  According to the House Report
accompanying the bill, "circuits have adopted differing standards governing the burden of showing that

28  the amount in controversy is satisfied. The 'sum claimed' and 'legal certainty' standards that govern the
amount in controversy requirement when a plaintiff originally files in Federal court have not translated

**7**

175    4

969522.1

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

6.      It is facially evident from the Complaint that as to each Plaintiff, the amount in controversy exceeds $75,000.00. *See Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373 (9th Cir. 1997).  A removing defendant need only show that the amount in controversy "more likely than not" exceeds the jurisdictional minimum of $75,000.00. *Sanchez v. Monumental Life Ins. Co.,* 102 F.3d 398, 404 (9th Cir. 1996).  When the amount in controversy is not specified in the complaint, the court may consider the facts alleged in the complaint as well as in the notice of removal. *See Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1031 (N.D. Cal. 2002).

7.      Plaintiffs allege that each one has suffered "severe injuries and damage" and that has "sustained in the past, and will sustain in the future, pain and suffering, mental anguish, emotional distress, disfigurement, physical impairment, embarrassment and humiliation, psychological injury, a reasonable and traumatic fear of an increased risk of additional injuries, progression of existing conditions, and other serious injury and loss." (Compl. ¶ 212.)  They seek damages for past and future medical expenses, as well as lost wages, lost earning capacity, and other damages. (Compl. ¶ 213.)

8.      It is plain based on these allegations that the amount in controversy exceeds the $75,000 jurisdictional threshold. *See, e.g., In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 296 (S.D.N.Y. 2001) (finding that a complaint alleging various injuries from taking a prescription drug "obviously asserts a claim exceeding $75,000"). *See, e.g., McPhail v. Deere Co.*, 529 F.3d 947, 955 (10th Cir. 2008) (citing *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999) (amount in controversy established by "alleged damages for property, travel expenses, and emergency ambulance trip, a six day stay in the hospital, pain and suffering, humiliation and her temporary inability to do housework.")).

well to removal, where the plaintiff often may not have been permitted to assert in state court a sum claimed or, if asserted, may not be bound ... ep. No. 112-10, at 15 (2011).  Accordingly, "the defendants do not need to prove to a legal certainty that the amount in controversy requirement has been met. Rather, defendants may simply allege or assert that the jurisdictional threshold has been met." *Id.* at 16.

**EXHIBIT 7**

176   5

969522.1

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

9.   In addition, Plaintiffs seek punitive or exemplary damages and attorneys' fees. (Compl. ¶ 214-15.) "It is well established that punitive damages are part of the amount in controversy in a civil action." *Gibson v. Chrysler Corp.,* 261 F.3d 927, 945 (9th Cir. 2001).

10.   Other cases brought by plaintiffs alleging similar severe pain, infection, and corrective surgeries have resulted in verdicts in excess of $75,000.00, exclusive of interest and costs. (Wes Decl. ¶ 4, Exhibits B and C.) Given the similarity between the injuries alleged in other cases and the injuries alleged by Plaintiffs here, and based on defense counsel's experience defending products liability actions, it is facially evident from the Complaint that each Plaintiff has placed in excess of $75,000.00 in controversy, exclusive of interest and costs. (*Id.*)

11.   Thus, on the face of Complaint, the amount in controversy for each Plaintiff exceeds $75,000, exclusive of interest and costs, and this jurisdictional requirement is satisfied.

**B.   Complete Diversity of Citizenship Exists Between the Properly Joined Plaintiffs and the Properly Joined and Served Defendants**

12.   For purposes of determining its citizenship under 28 U.S.C. § 1332(c)(1), Defendant Johnson & Johnson is a citizen of the State of New Jersey because it is incorporated in the State of New Jersey and has its principal place of business in New Brunswick, New Jersey. (Wes Decl. ¶ 5)

13.   For purposes of determining its citizenship under 28 U.S.C. § 1332(c)(1), Defendant Ethicon, Inc. is a citizen of the State of New Jersey because it is incorporated in the State of New Jersey and has its principal place of business in Somerville, New Jersey. (Wes Decl. ¶ 6)

14.   The citizenship of the John Doe defendants shall not be considered for purposes of determining diversity jurisdiction, as these are fictitious defendants. See 28 U. S. C. § 1441(b) ("[i]n determining whether a civil action is removable on the basis of

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

**EXHIBIT**

**7**

177   6

1  the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued

2  under fictitious names shall be disregarded.").

3       15.    Notice Pursuant to Fed. R. Civ. P. 44.1 of the Applicability of Foreign Law

4  with Respect to the Citizenship of the Members of Ethicon LLC:  Defendant, Ethicon

5  LLC, is, and was at the time the state action was commenced, a limited liability company

6  organized under the laws of the State of Delaware. (Wes Decl. ¶ 7)  For purposes of

7  determining the citizenship of Ethicon LLC, it is a citizen of each state of which its

8  members are citizens.  *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894 (9th

9  Cir. 2006).  The only members of Ethicon LLC are (a) Ethicon PR Holdings and (b) EES

10  Holdings de Mexico, S. de R.L. de C.V.  Ethicon PR Holdings is, and was at the time the

11  state action was commenced, a Private Unlimited Company organized under the laws of

12  Ireland with its principal place of business in County Cork, Ireland.  (Wes Decl. ¶ 7)

13  The laws of Ireland apply to whether Ethicon PR Holdings is a juridical entity.  *See*

14  *Stiftung v. Plains Marketing, L.P.,* 603 F.3d 295, 298-99 (5th Cir. 2010); *Baja Dev. LLC*

15  *v. TSD Loreto Partners*, No. 09-756, 2010 WL 1758242, *4 (D. Ariz., Apr. 30, 2010).

16  Pursuant to Section 18.2 of The Companies Act, 1963 of the Republic of Ireland;

17  *Salomon v. A. Salomon & Co Ltd.,* [1897] A.C. 22, and *Foss v. Harbottle,* 2 Hare 461, 67

18  E.R. 189 (1843),  Ethicon PR Holdings is a juridical entity under the laws of Ireland that

19  is entitled to sue and be sued in its own name.  EES Holdings de Mexico, S. de R.L. de

20  C.V. is, and was at the time the state action was commenced, a Sociedad de

21  Responsabilidad Limitada de Capital Variable organized under the laws of Mexico with

22  its principal place of business in Juarez, Chihuahua, Mexico.  (Wes Decl. ¶ 7)  The laws

23  of Mexico apply to whether EES Holdings de Mexico, S. de R.L. de C.V. is a juridical

24  entity.  *See Stiftung,* 603 F.3d at 298-99; *Baja Dev. LLC,* No. 09-756, 2010 WL 1758242,

25  *4.  Pursuant to Articles 1(III), and 2 of the General Mercantile Corporations Law and

26  Articles 25(III), & 26-28 of the Federal Civil Code of the Republic of Mexico,  EES

27  Holdings de Mexico, S. de R.L. de C.V. is a juridical entity under the laws of Mexico that

28  is entitled to sue and be sued in its own name.

**EXHIBIT**

**7**

**TUCKER ELLIS LLP**
Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(B) (DIVERSITY)

969522.1

16.     The 67 Plaintiffs listed in the Complaint are citizens of 33 different states: Alabama, Arizona, Arkansas, California, Colorado, Florida, Georgia, Illinois, Indiana, Iowa, Kansas, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Mississippi, Nevada, New Jersey, New Mexico, New York, North Carolina, Ohio, Oregon, Pennsylvania, Rhode Island, South Carolina, Texas, Vermont, Virginia, Washington, Wisconsin, and Wyoming.  (Compl. ¶¶ 3-69.)  Out of these 67 Plaintiffs, only 3 are alleged to be citizens of the State of New Jersey.  (Compl. ¶¶ 13-15.)

17.     As explained below, the three New Jersey Plaintiffs are fraudulently or improperly misjoined.  Accordingly, their presence should be ignored for purposes of federal jurisdiction, and their claims should be severed and remanded to California state court.

**C.    The Inclusion of the Three New Jersey Plaintiffs in the Complaint Is a Sham That Constitutes Improper Jurisdictional Manipulation, and Does Not Deprive Defendants of Their Right of Removal to Federal District Court Under 28 U.S.C § 1332(a).**

18.     Congress first implemented the Federal constitutional grant of diversity jurisdiction by its passage of the Judiciary Act of 1789, 1 Stat. 78, 11.  The federal courts have had jurisdiction over suits between citizens of different states ever since.

19.     The Supreme Court has long recognized the federal constitutional right of a non-resident defendant to elect to defend itself in federal court.  The Article III grant of diversity jurisdiction "was not to be exercised exclusively for the benefit of parties who might be plaintiffs, and would elect the national forum, but also for the protection of defendants who might be entitled to try their rights, or assert their privileges, before the same forum." *Martin v. Hunter's Lessee*, 14 U.S. (1 Wheat.) 304, 348 (1816)) (Story, J.).  "[T]his constitutional privilege . . . may be considered [to be the] most valuable. *** The right of choosing an impartial tribunal is a privilege of no small practical importance . . . to corporations themselves that they should enjoy the same privileges, in other States, where local prejudices or jealousy might injuriously affect them." *Marshall v. Baltimore*

**EXHIBIT**

**7**

179   8

969522.1

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

1 & O.R.R., 57 U.S. 314, 328-29 (1854).[2]  Thus, foreign corporations, such as Defendants,

2 have a "federal constitutional right . . . to resort to the federal courts" through the exercise

3 of their federal right of removal.  *See Terral v. Burke Constr. Co.*, 257 U.S. 529, 532-33

4 (1922); *followed, Bethel v. Atlantic C.L.R.R.,* 81 F.2d 60, 64 (4th Cir. 1936).

5      20.    Given the importance of this federal constitutional right, the Supreme Court

6 has called for federal courts to be "vigilant" to detect improper devices that attempt to

7 prevent its exercise:

8     While the plaintiff, in good faith may proceed in the state courts upon a
    cause of action which he alleges to be joint, it is equally true that the *Federal*

9     *courts should not sanction devices intended to prevent a removal to a*
    *Federal court where one has that right*, and should be equally vigilant to

10     protect the right to proceed in the Federal court as to permit the state courts,

11     in proper cases, to retain their own jurisdiction.

12 *Wecker v. Nat'l Enameling & Stamping Co.*, 204 U.S. 176, 185-86 (1907) (emphasis

13 added); *see also Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 397 & n.2 (1981)

14 (recognizing "'defendant's right to a federal forum'") (quoting 14 C. WRIGHT, A.

15 MILLER, & E. COOPER, *Federal Practice and Procedure* § 3722, at pp. 564-66 (1976)).

16 The inclusion or designation of a party to a suit "although fair on its face, may be shown

17 by a petition for removal to be only a sham or fraudulent device to prevent a removal; but

18 the showing must consist of a statement of facts rightly leading to that conclusion apart

19 from the pleader's deductions." *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97-98

20 (1921).  Without limitation, this means that Defendants' "right of removal" cannot be

21 defeated by the fraudulent joinder of a party "having no real connection with the

22 controversy." *Chesapeake & O. R. Co. v. Cockrell*, 232 U.S. 146, 152 (1914).

23

24 _____

25    [2] *See also Bank of United States v. Deveaux,* 9 U.S. 61, 87 (1809) ("However true the fact may
be, that the state tribunals will administer justice as impartially as those of the nation, to parties of every

26 description, it is not less true that the constitution itself either entertains apprehensions on this subject, or
views with such indulgence the possible fears and apprehensions of suitors, that it has established

27 national tribunals for the decision of controversies between aliens and a citizen, or between citizens of

28 different states."), *overruled on other grounds, Louisville, C. & C.R.R. v. Letson,* 43 U.S. 497, 558
(1844).

EXHIBIT

7

969522.1

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

21.     Accordingly, the United States Supreme Court does not permit either plaintiffs or defendants to engage in manipulative attempts to create or to defeat the diversity jurisdiction of the federal district courts.  The Supreme Court and the federal appellate courts have, rather, consistently disregarded and struck down, for diversity jurisdiction purposes, manipulative artifices such as (1) the naming of unnecessary parties, *see Salem Trust Co. v. Mfrs. Fin. Co.*, 264 U.S. 182, 189 (1924); (2) the improper alignment of a party to create or defeat diversity, *see City of Indianapolis v. Chase Nat'l Bank,* 314 U.S. 63 (1941); (3) collusive assignments to manufacture or thwart diversity, *see Kramer v. Caribbean Mills, Inc.*, 394 U.S. 823, 826-30 (1969); (4) the naming of nominal parties, *Navarro Savings Ass'n v. Lee,* 446 U.S. 458, 460, 461 (1980); (5) practices permissible under state law but nonetheless sham attempts to defeat diversity jurisdiction, *see Hertz Corp. v. Friend,* 559 U.S. 77, 97 (2010); and (6) the filing of non-binding stipulations related to the amount in controversy, *see Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1350 (2013).  The Supreme Court has never suggested that a federal court's power to protect its diversity jurisdiction is limited to detecting and defeating these particular artifices, and within the past month, it reaffirmed the principle that its decisions "interpret[] the diversity jurisdiction statute to require courts in certain contexts to look behind the pleadings to ensure that parties are not improperly creating or destroying diversity jurisdiction." *Mississippi ex rel. Hood v. Au Optronics Corp.,* 134 S. Ct. 736, 2104 U.S. Lexis 645, *22 (U.S., Jan. 14, 2014) (citing *Wecker v. Nat'l Enameling & Stamping Co.*, 204 U.S. 176, 185-86 (1907)).

22.     A defendant's "right of removal" cannot be defeated by the joinder of a party "having no real connection with the controversy." *Chesapeake & O. R. Co. v. Cockrell*, 232 U.S. 146, 152 (1914).  While ordinarily "'a court will not interfere with the consequences of a plaintiff's selection in naming parties,'" this is not the case where "'the plaintiff has impermissibly manufactured diversity or used an unacceptable device to defeat diversity.'" *Slater v. Republic Vanguard Ins. Co.*, 650 F.3d 1132, 1135 (8th Cir. 2011) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 93 (2005)).  Joinders that

TUCKER ELLIS LLP
Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

EXHIBIT
7

are "unilateral attempts to destroy the federal courts' diversity jurisdiction over matters that the courts [are] in a suitable position to decide" require that "a trial court should look with particular care at such motive in removal cases . . . ." *Desert Empire Bank v. Ins. Co. of N. Amer.,* 623 F.2d 1371, 1376-77 (9th Cir. 1980) (citing with approval *Carter v. Seaboard C.R.R.,* 318 F. Supp. 368, 372-73 (D.S.C. 1970) (claims of sham joinder to defeat diversity apply to misjoinder of plaintiffs as well as defendants)).

23. "The right of removal depends upon the case disclosed by the pleadings when the petition therefor is filed . . . ." *See Salem Trust Co.,* 264 U.S. at 189. As Justice Holmes explained, citing *Salem Trust:* "When a defendant seeks to remove a suit . . . [,] he is entitled to contend that a party joined by the plaintiff is not a necessary party and therefore does not make the removal impossible by defeating the jurisdiction." *Lee v. Lehigh Valley Coal Co.,* 267 U.S. 542, 543 (1925).

24. The claims of the 67 Plaintiffs against Defendants are severable and not joint: each Plaintiff alleges a separate claim against Defendants based on an entirely different set of facts, and no Plaintiff is a necessary party to any other Plaintiff's case. *See* Part I.D., *infra.* Indeed one of the Plaintiffs named in the Complaint has identical claims to those alleged here that are the subject of a tolling agreement and a short form complaint served on Defendants in the proceedings styled, *In re: Ethicon, Inc. Pelvic Repair System Products Liability Litigation MDL No. 2327,* pending against Defendants in the United States District Court for the Southern District of West Virginia. *See* Short Form Complaint served in *Bibiana Quiambao et al. v. Ethicon, Inc., et al.* (MDL 2327), a copy of which is attached to the Declaration of Joshua J. Wes filed concurrently herewith as Exhibit D.[3] As this Short Form Complaint filed on behalf of Ms. Quiambao shows, each Plaintiff named in this Complaint has her own individual "case or controversy" against Defendants, *see* U.S. Const. art. III, and each Plaintiff is the real party in interest for her individual claims. *See* Fed. R. Civ. 17. Put differently, Plaintiff Xochilt

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

---

[3] The *Quiamboa* complaint has been served but not filed. (Wes Decl. ¶ 8.) It must be filed in the Ethicon MDL proceeding on or before February 14, 2014. (*Id.*)

**EXHIBIT 7**

1  Robinson does not have standing to prosecute the alleged claims of any other plaintiff
2  named in her Complaint.  Neither will any plaintiff be bound by a judgment against
3  another plaintiff.  "Early in its history, [the Supreme] Court established that the "citizens"
4  upon whose diversity a plaintiff grounds jurisdiction must be real and substantial parties
5  to the controversy."  *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460 (1980) (citing
6  *Marshall, supra*).  The diverse Plaintiffs' inclusion of the non-diverse Plaintiffs in their
7  suit does not pass muster under this standard.  Thus, the Court "must disregard" the
8  presence of the non-diverse Plaintiffs as "nominal or formal parties and rest jurisdiction
9  only upon the citizenship of real parties to the controversy.'"  *Id.*

10      25.    To the extent that their separate claims may be joined under the California
11  or Federal Rules of Civil Procedure into a single proceeding, those procedural rules of
12  joinder of parties "do not extend or limit" the subject matter jurisdiction of the Federal
13  district courts.  *See* Fed. R. Civ. Pro. 82.  Thus, any such procedural rule must yield to 28
14  U.S.C. § 1332(a).  More fundamentally, the Complaint alleges no facts that show or even
15  suggest that the claims of the New Jersey plaintiffs have any substantive nexus with the
16  State of California or its state courts.  The three New Jersey plaintiffs are the putative
17  "poison pill" that the 64 Plaintiffs whose citizenship is diverse from Defendants are
18  improperly using to try and deprive Defendants of their legal right to defend themselves
19  in this Federal district court.

20      26.    "So long as federal diversity jurisdiction exists * * * the need for its
21  assertion may well be greatest when the plaintiff tries hardest to defeat it.  The plaintiff
22  who chooses to sue a noncitizen defendant in a state court may be motivated by the hope
23  that the out-of-state defendant will be at a substantial disadvantage in that court, and the
24  likelihood of such motivation increases with the lengths to which the plaintiff will go to
25  prevent removal to a federal forum."  American Law Institute, *Study of the Division of
26  Jurisdiction Between State and Federal Courts*, Commentary on Proposed § 1307 at 104
27  (September 25, 1965 Official Draft). **EXHIBIT** ucker, supra, and its progeny, the
28  citizenship of the three New Jersey plaintiffs should be disregarded because of the other

**7**

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

1   64 plaintiffs' attempt to defeat this Court's original subject matter jurisdiction under 28

2   U.S.C. 1332(a).

3        27.    To this end, federal courts have the inherent authority to police their

4   jurisdiction and act as necessary to protect it.  Under Federal Rule 21, "[m]isjoinder of

5   parties is not a ground for dismissing an action.  On motion or on its own, the court may

6   at any time, on just terms, add or drop a party.  The court may also sever any claim

7   against a party." Fed. R. Civ. P. 21.  "In fact, if the nondiverse defendants are severable

8   and their dismissal will not prejudice the remaining defendants, the jurisdiction of the

9   court should be retained, and the suit dismissed as to the nondiverse defendants." *See*

10  *also Hardaway v. Checkers Drive-In Restaurants, Inc.*, 483 F. App'x 854, 855 (4th Cir.

11  2012).  "[I]t is well settled that Rule 21 invests district courts with authority to allow a

12  dispensable nondiverse party to be dropped at any time. . . ." *Newman–Green, Inc. v.*

13  *Alfonzo–Larrain*, 490 U.S. 826, 832 (1989) ("Almost every modern Court of Appeals

14  faced with this issue has concluded that it has the authority to dismiss a dispensable

15  nondiverse party by virtue of Rule 21. . . . Furthermore, we have ourselves exercised a

16  similar authority under Rule 21.").  Accordingly, this Court should sever the three New

17  Jersey plaintiffs from these proceedings. *See* Fed. R. Civ. Pro. 21 ("On motion or own its

18  own, the court may at any time, on just terms, add or drop a party.")

19  **D.    In the Alternative, the Three New Jersey Plaintiffs Are Fraudulently
        Misjoined in This Case and The Court Should Sever Their Claims and
20      Remand Their Claims to State Court.**

21        28.    Federal diversity jurisdiction exists "where diversity is destroyed only

22  through misjoinder of parties." *Asher v. 3M Co.*, No. 04-CV-522-KKC, 2005 WL

23  1593941, at *7 (E.D. Ky. June 30, 2005) (citing *Tapscott v. MS Dealer Serv. Corp.*, 77

24  F.3d 1353, 1360 (11th Cir. 1996), *abrogated on other grounds by, Cohen v. Office Depot*,

25  204 F.3d 1069 (11th Cir. 2000)).  "[F]raudulent misjoinder of plaintiffs is no more

26  permissible than fraudulent misjoinder of defendants to circumvent diversity

27  jurisdiction." *In re Benjamin Moore & Co.*, 318 F.3d 626, 630-31 (5th Cir. 2002).

28

**EXHIBIT**

**7**

184   13

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(B) (DIVERSITY)

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

29.     The Ninth Circuit has referred to the misjoinder of parties as an artifice to defeat diversity jurisdiction in three decisions, including, most recently, *California Dump Truck Owners Ass'n v. Cummins Engine Co.,* 24 F. App'x727 (9th Cir. 2001); *see also Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313 (9th Cir. 1998); *Thomas v. Great N. Rwy.,* 147 F. 83, 84 (9th Cir. 1906) (misjoinder of defendants).  In *Cummins Engine,* the appellate court cited *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), *abrogated on other grounds by, Cohen v. Office Depot*, 204 F.3d 1069 (11th Cir. 2000), and stated that it would "assume, without deciding, that this circuit would accept the doctrines of fraudulent and egregious joinder as applied to plaintiffs." *Cummins Engine,* 24 F. App'x at 727, *7.

30.     Other federal appellate courts and numerous trial courts have recognized the validity of and the vital need for the fraudulent misjoinder rule and following the Eleventh Circuit's lead have adopted this doctrine, including in circumstances nearly identical to those presented here.[4]  According to Wright & Miller, the doctrine "may represent a third type of fraudulent joinder . . . . The three [types] hold the promise of providing strong protection for the defendant's statutory right to remove."  Charles Alan Wright et al., 14B FED. PRAC. & PROC. JURIS. § 3723 (4th ed.)  As one court put it, "[t]he premise which underlies the concept of fraudulent misjoinder is that diverse defendants ought not to be deprived of their right to a federal forum by such a contrivance as this." *Reed v. Am. Med. Sec. Group, Inc.*, 324 F. Supp. 2d 798, 805 (S.D. Miss. 2004).

[4]      *See, e.g., Keune v. Merck & Co.* (*In re Propecia (Finasteride) Prod. Liab. Litig.)*, 2013 U.S. Dist. LEXIS 117375, *71 (E.D.N.Y. May 17, 2013) (denying remand where "[t]here is no basis for joining, in a single action, fifty-four plaintiffs from twenty-four jurisdictions who purchased different products at different times from unidentified sources."), *report and recommendation adopted*, 2013 U.S. Dist. LEXIS 118155 (E.D.N.Y. June 6, 2013); *Welch v. Merck Sharpe & Dohme Corp.*, MDL NO. 2243, No. 11-3045, 2012 U.S. Dist. LEXIS 48114 (D.N.J. Apr. 3, 2012) (recognizing and finding fraudulent misjoinder where the lawsuit joined 91 plaintiffs from 28 states in Missouri state court where only three Plaintiffs were Missouri citizens); *In re Benjamin Moore & Co.*, 318 F.3d 626, 630-31 (5th Cir. 2002) (noting "fraudulent misjoinder of plaintiffs is no more permissible than fraudulent misjoinder of defendants to circumvent diversity jurisdiction"); *Greene v. Wyeth*, 344 F. Supp. 2d 674, 684-85 (D. Nev. 2004) ("[T]his Court agrees with the Fifth and Eleventh Circuits that the [fraudulent misjoinder] rule is a logical extension of the established . . . that a plaintiff may not fraudulently join a defendant in order to defeat diversity jurisdiction in federal court.") (internal citations omitted); *Grennell v. W. S. Life Ins. Co.*, 298 F. Supp. 2d 390, 396 (S.D.W. Va. 2004) (holding that diversity jurisdiction cannot be defeated "through . . . joining nondiverse plaintiffs").

**EXHIBIT 7**

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(B) (DIVERSITY)

969522.1

TUCKER ELLIS LLP
Cleveland ◆ Columbus ◆ Denver ◆ Los Angeles ◆ San Francisco

31.     Plaintiffs' claims are misjoined because they do not meet federal or California's joinder rules as they do not involve the same transaction or occurrence. *See* FED. R. CIV. PROC. 20; *see also* Cal. Code Civ. Proc. § 378(a).  Plaintiffs allege absolutely no factual connection among their claims, aside from the basic fact they each were implanted with one or more of a number of different pelvic mesh products.

**1.  The Claims of 67 Unrelated Plaintiffs Related to the Implantation of Numerous Different Products Do Not Arise from the Same Transaction or Occurrence**

32.     The Complaint does not disclose what product(s) each Plaintiff was allegedly implanted with, alleging only that the implanted medical devices are "Mesh Products [which] were designed primarily for the purposes of treating pelvic organ prolapse ("POP") and stress urinary incontinence ("SUI")."  (Compl. ¶ 105).  The implanted products could therefore be any combination of one or more of the following Ethicon transvaginal mesh products:  Prolift, Prolift +M, Gynemesh, Prosima, TVT, TVT-O, TVT-S, TVT-Exact, or TVT-Abbrevo.  These products are prescription Class II medical devices regulated by the United States Food & Drug Administration under the Food, Drug & Cosmetic Act, as amended, *see* 21 U.S.C. § 301 *et seq.,* and each product has its own unique packaging and labeling. Each one of these devices has been implanted in distinct surgeries by different surgeons or physicians around the country.  The claims of these 67 Plaintiffs are therefore distinct in significant ways such that they cannot plausibly arise from the same transaction, occurrence, or series of transactions or occurrences:

a.     **Different products**:  Plaintiffs are joined together despite the fact that their Complaint alleges claims arising from the implantation of various unnamed products.  The transvaginal mesh devices are all distinct products that were developed and introduced over the course of several different years, involved separate and distinct regulatory clearances, and which have distinct labeling. *See, e.g.*, *In re Diet Drugs*, No. Civ. A. 98-20478, 1999 WL 554584, *3 (E.D. Pa. July 16, 1999) (pleading went "well

**EXHIBIT 7**

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(B) (DIVERSITY)

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

TUCKER ELLIS LLP

Cleveland ◆ Columbus ◆ Denver ◆ Los Angeles ◆ San Francisco

1   beyond mere misjoinder" where plaintiffs "attempt[ed] to join persons from seven

2   different states into one civil action who have absolutely no connection to each other

3   except that they each ingested fenfluramine, Redux (dexfenfluramine), phentermine or

4   some combination of those drugs"); *Stinnette v. Medtronic, Inc.*, No. H-09-03854, 2010

5   WL 767558, *2 (S.D. Tex. Mar. 3, 2010) (claims improperly joined because "[i]f the

6   plaintiffs were prescribed different models of Medtronic's devices . . . and these different

7   models each malfunctioned in some way, then the inquiry necessarily focuses on

8   different transactions or occurrences.").

9        b.   **Different alleged injuries**:  The Complaint does not allege injuries specific

10   to each Plaintiff.  Rather, it alleges that the products in general cause "chronic pain,

11   fibrotic reaction, disability, and infection" as well as "erosion through vaginal epithelium,

12   infection, pain, urinary problems, and recurrence of prolapse and/or incontinence in

13   addition to . . . perforation of the bowel, bladder, and blood vessels." (Compl. ¶¶ 110-

14   11).  This is a broad array of injuries that Plaintiffs have failed to attribute to any specific

15   product, let alone any single Plaintiff.  *See Welch v. Merck Sharpe & Dohme Corp.*, MDL

16   NO. 2243, No. 11-3045, 2012 U.S. Dist. LEXIS 48114, at *3 (D.N.J. Apr. 3, 2012)

17   (finding fraudulent misjoinder where "[e]ach Plaintiff broadly alleges 'a long bone

18   fracture" but "no Plaintiff actually identifies which long bone was fractured, the type of

19   fracture sustained, or how the fracture occurred"); *see also In re Rezulin Prods. Liab.

20   Litig.*, 168 F. Supp. 2d at 146 (holding plaintiffs misjoined where "they do not allege

21   injuries specific to each of them so as to allow the Court to determine how many

22   plaintiffs, if any, share injuries in common"); *Simmons v. Wyeth Laboratories, Inc.*, 1996

23   U.S. Dist. LEXIS 15950, Nos. 96 CV 6631, 6686, 6728, 6730, 1996 WL 617492 (E.D.

24   Pa. Oct. 24, 1996) (plaintiffs misjoined where they "do not allege the exact nature of their

25   injuries or damages, other than averring that plaintiffs experience one or more of

26   numerous injuries and side effects."); *see also Farmers Ins. Exchange v. Adams*, 170

27   Cal.App.3d 712 (Cal. App. 1985) *disapproved on another ground in Garvey v. State

28   Farm Fire & Casualty Co.*, 48 Cal.3d 39, 411 n.10 (1989 (finding it "improper to label

**EXHIBIT**

**7**

187        16

1  the damage herein to innumerable types of structures, occurring at widely separated

2  locations within the state, resulting from a myriad of causes, and under various conditions

3  as the `same transaction or occurrence' within the meaning of Code of Civil Procedure

4  section 379.").

5      c.    **Different medical histories of Plaintiffs:**  In addition to the varying alleged

6  injuries purportedly related to Plaintiffs' use of the pelvic mesh at issue in this litigation,

7  each one of the Plaintiffs has a unique medical history, which includes the highly

8  individualized conditions and symptoms their surgeries were intended to treat, as well as

9  their unique gynecological, urological, and other medical histories. *See Boschert v.*

10  *Pfizer,* No. 4:08-cv-1714, 2009 WL 1342142, 2009 U.S. Dist. LEXIS 41261, *3-5 (E.D.

11  Mo. May 14, 2009) (holding plaintiffs misjoined where the only commonality was the

12  drug ingested and citing cases holding misjoinder where plaintiffs "had different

13  exposures to the drug, different injuries, and different medical histories" and where

14  plaintiffs had many differences "including their unique medical histories").

15      d.    **Different physicians and surgical procedures:**  Additionally, the pelvic

16  mesh products for each of the Plaintiffs were likely implanted by different physicians, for

17  different medical reasons, at different times, and at different medical facilities across the

18  country.  Further, the surgeons likely practiced different implantation techniques,

19  performed different concomitant procedures such as hysterectomies, and conveyed

20  different warnings to their patients.  These are important differences in Plaintiffs'

21  individualized claims that make joinder particularly inappropriate here. *See, e.g., Hyatt v.*

22  *Organon, U.S.A., Inc.,* No. 4:12CV1248, 2012 U.S. Dist. LEXIS 146905, 53 (E.D. Mo.

23  Oct. 10, 2012) (plaintiffs misjoined where "[e]ach Plaintiff was injured at different times

24  in different states allegedly from their use of NuvaRing that was presumably prescribed

25  by different healthcare providers"); *Alday v. Organon United States,* No. 4:09-cv-1415,

26  2009 WL 3531802, 2009 U.S. Dist. LEXIS 100031 (E.D. Mo. Oct. 27, 2009) (same); *In*

27  *re Rezulin Prods. Liab. Litig.,* 168 F. Supp. 2d 136, 145-46 (S.D.N.Y. 2001) (prescription

28  drug plaintiffs' claims fraudulently misjoined where they did not "allege that they

**EXHIBIT 7**

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(B) (DIVERSITY)

969522.1

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

1  received Rezulin from the same source or that they were exposed to Rezulin for similar

2  periods of time" and where they alleged "different injuries"); *Chaney v. Gate Pharm.* (*In*

3  *re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*), No.

4  Civ. A. 98-20478, 1999 WL 554584, at *3-4 (E.D. Pa. July 16, 1999) ("[t]he claims of

5  plaintiffs who have not purchased or received diet drugs from an identical source, such as

6  a physician, hospital or diet center, do not satisfy the transaction or occurrence

7  requirement" and "go[] well beyond mere misjoinder.").

8      e.   **Different dates of the implant**:  Though Plaintiffs have not specifically

9  alleged dates of implantation, it is likely that their surgeries have occurred over the

10  course of years.  The warnings, labels and marketing materials for these products

11  changed over time, as well as the relevant literature available at the time of the implant.

12  *See, e.g., Alday,* 2009 WL 3531802, 2009 U.S. Dist. LEXIS 100031 at *20 (plaintiffs

13  misjoined where "[e]ach Plaintiff was injured at different times in different states

14  allegedly from their use of NuvaRing that was presumably prescribed by different

15  healthcare providers"); *In re Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d at 145-46

16  (prescription drug plaintiffs' claims fraudulently misjoined where they did not "allege

17  that they received Rezulin from the same source or that they were exposed to Rezulin for

18  similar periods of time" and where they alleged "different injuries").

19      f.    In sum, there is no apparent connection among Plaintiffs' claims, beyond the

20  fact they allege they were implanted at some point in time with one or more "Mesh

21  Products."  *See, e.g., Welch,* 2012 U.S. Dist. LEXIS at 48114 (finding fraudulent

22  misjoinder under Missouri law and observing "there is evidence that Plaintiffs structured

23  their complaint in order to defeat diversity jurisdiction" where the lawsuit joined 91

24  plaintiffs from 28 states in Missouri state court and only three Plaintiffs were Missouri

25  citizens; moreover, the claims were not properly joined because it was "impossible to

26  determine how the Plaintiffs share any connection"); *Greene v. Wyeth*, 344 F. Supp. 2d

27  674, 684 (D. Nev. 2004) (holding plaintiffs fraudulently misjoined because "the ingestion

28  of medication among various Plaintiffs alone cannot constitute the 'same transaction or

EXHIBIT

**7**

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(B) (DIVERSITY)

969522.1

Tucker Ellis LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

occurrence.'"").  It is like saying that a claim regarding the seat belt restraint system of a 2002 Ford car and a claim regarding the air bag restraint system of a 2012 Ford truck arise from the same transaction or occurrence because they both involve the safety restraint devices used in motor vehicles.  This superficial commonality is grossly inadequate to satisfy the same transaction or occurrence requirement of the California joinder rules.  Cal. Code Civ. Proc. § 378(a); *compare Moe v. Anderson*, 207 Cal. App. 4th 826, 847 (2012) (affirming demurrer without leave to amend where plaintiffs' sexual harassment claims against defendant doctor could not properly be joined because assaults took place on different dates and therefore did not arise out of same transaction or series of transactions, even if negligence claims against doctor's employer were properly joined), *and Farmers Ins. Exch. v. Adams*, 170 Cal. App. 3d 712, 723 (1985) (holding that damage homeowners experienced from heavy storm in Northern California did not arise out of same transaction or occurrence because storm caused damage to "innumerable types of structures…at widely separated locations from within the state," making joinder of defendant insureds' claims inappropriate) (disapproved on other grounds by *Garvey v. State Farm Fire & Cas. Co.*, 48 Cal. 3d 395, 411 fn.10 (1989)), *with Anaya v. Superior Court*, 160 Cal. App. 3d 228 (1984) (allowing joinder where plaintiffs' claims all arose out of the same chemical exposure at a single location against a single oil company defendant).

33.     Moreover, the erroneous joinder of these various claims will not serve to promote the efficient resolution of these claims.  Rather, the result will be quite the opposite.  For each case, the court will need to apply the "governmental interest" approach to determine what state's laws will apply.  *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 87-88 (2010).  Accordingly, the product liability laws of potentially 33 or more different states will apply to this case, and 33 sets of jury instructions will be required.  *See Boschert v. Pfizer, Inc.*, Civ. No. 08-1714, 2009 U.S. Dist. LEXIS 41261, 2009 WL 1383183 (E.D. Mo. May 14, 2009) (granting severance in part because "four sets of jury instructions would be required to encompass the laws from four different

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(B) (DIVERSITY)

969522.1

**EXHIBIT 7**

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

states"). As the court observed in *Chaney*, "[t]he joinder of several plaintiffs who have no connection to each other in no way promotes trial convenience or expedites the adjudication of the asserted claims. Rather, the joinder of such unconnected, geographically diverse plaintiffs that present individual circumstances material to the final outcome of their respective claims would obstruct and delay the adjudication process." *Chaney v. Gate Pharm.* (*In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*), No. Civ. A. 98-20478, 1999 WL 554584, at *3-4 (E.D. Pa. July 16, 1999).

34.     Accordingly, this Court should disregard the citizenship of the New Jersey Plaintiffs and sever them from the proceeding.

**2.     Egregiousness Is Not Required for a Showing of Fraudulent Misjoinder; However, Plaintiffs' Intent to Evade Federal Subject Matter Jurisdiction Is Plain.**

35.     Egregiousness is not strictly required for a showing of fraudulent misjoinder of plaintiffs.[5] As the Fifth Circuit has explained, "[i]f these requirements [Rule 20 of the Federal Rules of Civil Procedure] are not met, joinder is improper even if there is no fraud in the pleadings and the plaintiff does have the ability to recover against each of the defendants." *Crockett v. R.J. Reynolds Tobacco Co.,* 436 F.3d 529, 533 (5th Cir. 2006)

---

[5] As United States District Judge Kaplan of the Southern District of New York has held, the reason for the egregiousness requirement is not compelling in the context of misjoinder of *plaintiffs*, and thus egregiousness is not required.   *In re Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d 136, 147 (S.D.N.Y. 2001).   In his decision, Judge Kaplan noted that "[a]rguably a plaintiff's right to choose among defendants and claims -- the principal reason for imposing a strict standard of fraudulent joinder to effect removal -- is not compromised where claims of co-plaintiffs are severed or dismissed. This is not to say the cost and efficiency benefits to joined plaintiffs are immaterial; they simply do not carry the same weight when balanced against the defendant's right to removal."   *Id.*; *accord, Grennell v. W. S. Life Ins. Co.*, 298 F. Supp. 2d 390, 396 (S.D. W. Va. 2004) (adopting the reasoning of *Rezulin*).   In addition, to "the cost and efficiency benefits to joined plaintiffs" identified in *In re Rezulin Prods. Liab. Litig., supra,* another court following the *Rezulin* opinion has noted that a federal district court should be mindful "of the right of the plaintiff to choose the defendant and forum for his or her claim."   *Grennell v. W. S. Life Ins. Co.*, 298 F. Supp. 2d 390, 396 (S.D. W. Va. 2004).   Removal of this case and transferring it to the Ethicon MDL or, in the alternative, severing the claims of the non-diverse Plaintiffs and remanding their claims to state court, will not run afoul of either one of these factors.

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

**EXHIBIT**

**7**

20

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(B) (DIVERSITY)

969522.1

(footnote omitted and *citing Tapscott,* 77 F.3d at 1360); *see Greene*, 344 F. Supp. 2d at 685 (rejecting requirement of "egregious" misjoinder in order for fraudulent misjoinder rule to apply: "In so holding, the Court rejects the notion that Plaintiffs have committed an egregious act or a fraud upon the Court.  In [the Ninth] [C]ircuit, fraudulent joinder is a term of art which "does not impugn the integrity of plaintiffs or their counsel and does not refer to an intent to deceive.")  In any event, Plaintiffs' joinder constitutes an egregious attempt to deprive Defendants of their right to federal court jurisdiction.  The Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), gives federal district courts jurisdiction over a "civil action . . . in which monetary claims for relief of 100 or more persons are proposed to be tried jointly on the grounds that the plaintiffs' claims involve common questions of law or fact . . . ."  *See* 28 U.S.C. § 1332(d)(11)(B)(i).  The attorneys here have engaged in a pattern of filing lawsuits nearly identical to the instant case, all plainly devised to avoid both traditional diversity jurisdiction and the Class Action Fairness Act.

| Case Name | Central District Case No. | Number of plaintiffs | Number of non-diverse plaintiffs |
|---|---|---|---|
| *Clavesilla et al. v. Johnson & Johnson et al.* | 2:13-CV-6284 JGB (SPx) | 97 | 2 |
| *Miller et al. v. Johnson & Johnson et al.* | 2:13-CV-6285 JGB (SPx) | 55 | 2 |
| *Moses et al. v. Johnson & Johnson et al.* | 2:13-CV-6288- JGB (SPx) | 76 | 2 |
| *Ruiz et al. v. Johnson & Johnson et al.* | 2:13-CV-6289 JGB (SPx) | 65 | 2 |
| *Robinson v. Johnson & Johnson et al.* | To Be Assigned | 67 | 3 |

*Clavesilla, Miller, Moses,* and *Ruiz* were all removed to this Court on the basis of jurisdictional manipulation, sham joinder and fraudulent misjoinder.  The Honorable

**EXHIBIT 7**

192    21

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

969522.1

1  Jesus G. Bernal stayed proceedings in each case, and the Judicial Panel on Multidistrict

2  Litigation has since transferred all four cases to the Ethicon MDL.

3      36.    Moreover, on the face of the Complaint, the issue of impermissible

4  manipulation of jurisdiction to attempt to defeat Defendants' statutory right of removal is

5  plainly raised where three New Jersey Plaintiffs elect to file their claims against two

6  Defendants who are organized under the laws of the State of New Jersey and have their

7  principal places of business in New Jersey, with many of their key documents and

8  witnesses located there, all the way across the country in California despite the fact that

9  most, if not all, of the evidence is located in and witnesses pertinent to their claims reside

10  in New Jersey, and there is presently a consolidated mesh litigation pending before

11  Honorable Carol E. Higbee, Presiding Judge Civil, in the Superior Court of New Jersey

12  Law Division, Atlantic County, New Jersey.

13      37.    Only 11 of 67 Plaintiffs in this case have any apparent connection to the

14  State of California.  (Compl. ¶¶ 3-12, 55.)  The non-California diverse Plaintiffs, rather

15  than filing suit far from home in a jurisdiction with no evident connection to their claims,

16  could have filed suit in their own home states, in New Jersey, or in the Ethicon MDL.

17      38.    Even though Los Angeles County is approximately 2,700 miles away, has no

18  connection to their claims, and even though coordinated pelvic mesh litigation is pending

19  in their home state, and voluminous and substantial discovery has already occurred in that

20  tribunal, the New Jersey Plaintiffs have nonetheless elected to join a multi-party lawsuit

21  in Los Angeles County, California.  The Complaint contains no allegation that shows that

22  the claims of these New Jersey Plaintiffs or for that matter that the claims of any other

23  plaintiffs who are not residents of California have any factual or otherwise substantive

24  connection to the State of California or that there are any impediments to the claims of

25  these New Jersey Plaintiffs being heard in the coordinated proceedings in New Jersey.

26  To the contrary, no plaintiff interested in obtaining redress for grievance – the only

27  legitimate purpose for filing a lawsuit – would have taken this course.  Only one

28  conclusion is possible: these non-diverse Plaintiffs have joined in this action for the sole

EXHIBIT

**7**

193   22

969522.1

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

1    purpose of defeating federal diversity jurisdiction.  But, and in any event, severing and

2    remanding the non-diverse New Jersey Plaintiffs to state court pursuant to Federal Rule

3    of Civil Procedure 21 will not deprive them of the forum of their choice or any costs and

4    efficiencies of being temporarily joined until their cases are severed as required by law.

5    *See, e.g.*, *Greene v. Wyeth*, 344 F. Supp. 2d 674, 685 (D. Nev. 2004) ("the Court is

6    inclined to sever claims where the joinder is procedurally inappropriate and clearly

7    accomplishes no other objective than the manipulation of the forum, and where the rights

8    of the parties and interest of justice is best served by severance").  Such a ruling

9    simultaneously will uphold Defendants' statutory right of removal.

10       39.    In this case, plaintiffs whose actions have no connection whatsoever to the

11   State of California are seeking to use the procedural mechanism of permissive joinder to

12   file a suit they could not likely have filed individually under the doctrine of forum non

13   conveniens.  *See Stangvik v. Shiley, Inc.*, 54 Cal.3d 744, 753 (Cal. 1991) (explaining that

14   "a foreign plaintiff's choice deserves less deference than the choice of a resident").  This

15   runs counter to the well-settled principle that procedural rules addressing permissive

16   joinder may not be used to limit the Congressional grant of diversity jurisdiction found in

17   28 U.S.C. § 1332(a).  *See* Advisory Comm. Note, FED. R. CIV. P. 20 (1937) ("The

18   provisions of this rule for the joinder of parties are subject to Rule 82."); FED. R. CIV. 82

19   ("These rules do not extend or limit the jurisdiction of the district courts or the venue of

20   actions in those courts.").  Indeed, when "a Federal court is properly appealed to in a case

21   over which it has by law jurisdiction, it is its *duty* to take such jurisdiction." *England v.*

22   *Louisiana State Bd. of Med. Exam'rs*, 375 U.S. 411, 415 (1964) (emphasis added)

23   (quoting *Willcox v. Consolidated Gas Co.*, 212 U.S. 19, 40 (1909)).  Or, as the Supreme

24   Court put it on another occasion, federal courts have a "virtually unflagging obligation ...

25   to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v.*

26   *United States*, 424 U.S. 800, 821 (1976).

27       40.    Under these circumstances and in the light of the command of the United

28   States Supreme Court set forth in its decisions such as *Au Optronics* and *Wecker, supra*,

**EXHIBIT 7**

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(B) (DIVERSITY)

969522.1

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

1   the District Court clearly has the authority to sever the New Jersey plaintiffs under Fed.

2   R. Civ. P. Rules 20 and 21 on the grounds that they have been improperly joined and

3   their citizenship shall therefore not be considered for purposes of determining whether

4   diversity jurisdiction exists.

5       41.     Accordingly, this Court should disregard the citizenship of the three New

6   Jersey Plaintiffs under fraudulent misjoinder jurisprudence.  The Court should sever the

7   non-diverse Plaintiffs' cases and remand them to state court while exercising jurisdiction

8   over the overwhelming majority of Plaintiffs who *are* diverse from Defendants.

9   Alternatively, the Court can stay this action and let the MDL Court address any severance

10  and remand after transfer of this case to MDL No. 2327.

## II.   ETHICON HAS SATISFIED THE PROCEDURAL AND VENUE REQUIREMENTS FOR REMOVAL

12

13      42.     Pursuant to 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders

14  served upon and by Ethicon, Inc. are attached as Exhibit A to the Declaration of Joshua J.

15  Wes.

16      43.     Los Angeles County, California, is located within the Central District of

17  California, Western Division, *see* 28 U.S.C. § 84(c)(2), and, venue for this action is

18  proper in this Court under 28 U.S.C. § 1441(a) because the Central District of California,

19  Western Division, is the "district and division embracing the place where such action is

20  pending."

21      44.     Ethicon, Inc. was served with a copy of the Complaint on January 7, 2014.

22  Therefore, this Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b).

23      45.     The remaining Defendants have not yet been served.  *Emrich v. Touche Ross*

24  *& Co.*, 846 F.2d 1190, 1193 n.1 (9th Cir. 1988) (consent to remove of unserved

25  defendants not required); *Salveson v. W. States Bankcard Ass'n*, 731 F.2d 1423, 1429

26  (9th Cir. 1984) (same).

27      46.     No previous application has been made for the relief requested herein.

28

**EXHIBIT**

**7**

195    24

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(B) (DIVERSITY)

969522.1

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

47.   Immediately following the filing of this Notice of Removal, written notice of the filing of this Notice will be delivered to Plaintiffs' counsel, as required by 28 U.S.C. § 1446(d).

48.   Ethicon will promptly file a copy of this Notice with the Clerk of Court in the Superior Court of the State of California, County of Los Angeles, as required by 28 U.S.C. § 1446(d).

49.   By removing this action to this Court, Ethicon does not waive any defenses, objections, or motions available under state or federal law.  Ethicon expressly reserves the right to move for dismissal of some or all of Plaintiffs' claims pursuant to Rule 12 of the Federal Rules of Civil Procedure.

WHEREFORE, Ethicon gives notice that the matter bearing civil action number BC531848 in the Superior Court of the State of California, County of Los Angeles, is removed to this Court pursuant to 28 U.S.C. §§ 1441 et seq.  Defendants request that this Court retain jurisdiction for all further proceedings in this matter until such time as it is transferred to the Ethicon MDL.

DATED:  February 5, 2014            Tucker Ellis LLP


                                    By:   /s/ Joshua J. Wes
                                          _____
                                          Joshua J. Wes
                                          Attorney for Defendant
                                          ETHICON, INC.

**EXHIBIT**

**7**

196   25

969522.1

## CERTIFICATE OF SERVICE

I, Cynthia M. Harris, declare that I am a citizen of the United States and a resident of Los Angeles, California or employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Tucker Ellis LLP, 515 South Flower Street, Forty-Second Floor, Los Angeles, California 90071-2223.

On **February 5, 2014,** I served the following: **NOTICE OF REMOVAL UNDER 28 U.S.C. § 1441(B) (DIVERSITY) OF DEFENDANT ETHICON, INC.** on the interested parties in this action by:

**(X)** **ELECTRONICALLY VIA ECF:** the above-entitled document to be served electronically through the United States District Court, Central District ECF website, addressed to all parties appearing on the Court's ECF service list. A copy of the "Filing Receipt" page will be maintained with the original document in our office.

**(X)** **U. S. MAIL:** I placed a copy in a separate envelope, with postage fully prepaid, addressed as follows:

Thomas V. Girardi
Amy F. Solomon
GIRARDI KEESE
1126 Wilshire Boulevard
Los Angeles, CA 90017
*Attorneys for Plaintiffs*

Kurt B. Arnold, Esq.
Jason A. Itkin, Esq.
Noah M. Wexler, Esq.
ARNOLD & ITKIN
1401 McKinney Street, Suite 2550
Houston, TX 77010
*Attorneys for Plaintiffs*

J. Steve Mostyn, Esq.
THE MOSTYN LAW FIRM
3810 West Alabama Street
Houston, TX 77027
*Attorneys for Plaintiffs*

for collection and mailing on the below indicated day following the ordinary business practices at Tucker Ellis LLP. I certify I am familiar with the ordinary business practices of my place of employment with regard to collection for mailing with the United States Postal Service. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit or mailing affidavit.

(X)   I declare that I am employed in the office of the Bar of this Court at whose direction the service was made.

Executed on **February 5, 2014,** at Los Angeles, California

/s/ Cynthia M. Harris

**EXHIBIT**

**7**

CYNTHIA M. HARRIS

CERTIFICATE OF SERVICE

969522.1

TUCKER ELLIS & WEST LLP
Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 13-6276 PA (RZx) | Date | August 29, 2013 |
|---|---|---|---|
| Title | Shannon Muller, et al. v. American Medical Systems, et al. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Paul Songco | Not Reported | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**     IN CHAMBERS - COURT ORDER

Before the Court is a Notice of Removal filed by defendants American Medical Systems, Inc., American Medical Systems Holdings, Inc., Endo Pharmaceuticals, Inc., and Endo Health Solutions, Inc. ("Defendants"). Defendants assert that this Court has jurisdiction over the action brought against them by plaintiffs Shannon Muller, et al. ("Plaintiffs") based on the Court's diversity jurisdiction. See 28 U.S.C. § 1332.

Federal courts are courts of limited jurisdiction, having subject matter jurisdiction only over matters authorized by the Constitution and Congress. See, e.g., Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377, 114 S. Ct. 1673, 1675, 128 L. Ed. 2d 391 (1994). A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a). A removed action must be remanded to state court if the federal court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). "The burden of establishing federal jurisdiction is on the party seeking removal, and the removal statute is strictly construed against removal jurisdiction." Prize Frize, Inc. v. Matrix (U.S.) Inc., 167 F.3d 1261, 1265 (9th Cir. 1999). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).

In attempting to invoke this Court's diversity jurisdiction, Defendants must prove that there is complete diversity of citizenship between the parties and that the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. To establish citizenship for diversity purposes, a natural person must be a citizen of the United States and be domiciled in a particular state. Kantor v. Wellesley Galleries, Ltd., 704 F.2d 1088, 1090 (9th Cir. 1983). Persons are domiciled in the places they reside with the intent to remain or to which they intend to return. See Kanter v. Warner-Lambert Co., 265 F.3d 853, 857 (9th Cir. 2001). "A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state." Id. For the purposes of diversity jurisdiction, a corporation is a citizen of any state where it is incorporated and of the state where it has its principal place of business. 28 U.S.C. § 1332(c); see also Indus. Tectonics, Inc. v. Aero Alloy, 912 F.2d 1090, 1092 (9th Cir. 1990).

**EXHIBIT 8**

198

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 13-6276 PA (RZx) | Date | August 29, 2013 |
|---|---|---|---|
| Title | Shannon Muller, et al. v. American Medical Systems, et al. | | |

The sixty-six (66) plaintiffs in this action allege injuries from the surgical implantation of one or more AMS pelvic surgical mesh devices. For purposes of diversity, Plaintiffs are citizens of Massachusetts, Ohio, Virginia, California, Indiana, New Jersey, New Mexico, Texas, Georgia, Alabama, Kentucky, Tennessee, Utah, West Virginia, Florida, and Louisiana; Plaintiff Redethia Davis is a citizen of Delaware and Plaintiff Patricia Zeiber is a citizen of Pennsylvania; American Medical Systems, Inc. is a citizen of Delaware and Minnesota; American Medical Systems Holdings, Inc. is a citizen of Delaware and Minnesota; Endo Pharmaceuticals, Inc. is a citizen of Delaware and Pennsylvania; and Endo Health Solutions, Inc. is a citizen of Delaware and Pennsylvania.

The Ninth Circuit has recognized an exception to the complete diversity requirement where a non-diverse defendant has been "fraudulently joined." Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1067 (9th Cir. 2001). If a plaintiff "fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent." McCabe v. Gen. Foods Corp., 811 F.2d 1336, 1339 (9th Cir. 1987). If the Court finds that the joinder of a non-diverse defendant is fraudulent, that defendant's presence in the lawsuit is ignored for the purposes of determining diversity. See, e.g., Morris, 236 F.3d at 1067.

"There is a presumption against finding fraudulent joinder, and defendants who assert that plaintiff has fraudulently joined a party carry a heavy burden of persuasion." Plute v. Roadway Package Sys., Inc., 141 F. Supp. 2d 1005, 1008 (N.D. Cal. 2001). A claim of fraudulent joinder should be denied if there is any possibility that the plaintiff may prevail on the cause of action against the in-state defendant. See id. at 1008, 1012. "The standard is not whether plaintiffs will actually or even probably prevail on the merits, but whether there is a possibility that they may do so." Lieberman v. Meshkin, Mazandarani, 1996 WL 732506, at *3 (N.D. Cal. Dec. 11, 1996). A court should remand a case "unless the defendant shows that the plaintiff 'would not be afforded leave to amend his complaint to cure [the] purported deficiency.'" Padilla v. AT&T Corp., 697 F. Supp. 2d 1156, 1159 (C.D. Cal. 2009) (quoting Burris v. AT&T Wireless, Inc., 2006 WL 2038040, at *2 (N.D. Cal. July 19, 2006)).

Here, Defendants argue that the citizenship of two plaintiffs, Redethia Davis and Patricia Zeiber, should be ignored for diversity purposes based on fraudulent misjoinder. In order for Plaintiffs to join their claims into a single action, the claims must (1) arise out of "the same transaction, occurrence, or series of transactions or occurrences;" and (2) contain "any question of law or fact common to all" plaintiffs. Fed. R. Civ. P. 20(a). Defendants cite Eleventh and Fifth Circuit cases in support of the doctrine of fraudulent misjoinder. "Misjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action." Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1360 (11th Cir. Ala. 1996), abrogated on other grounds, Cohen v. Office Depot, Inc., 204 F.3d 1069 (11th Cir. 2000); accord In re Benjamin Moore & Co., 318 F.3d 626, 630-31 (5th Cir. 2002) (recognizing that misjoinder of plaintiffs "not be allowed to 'circumvent diversity jurisdiction"). The Eleventh Circuit further stated, "[w]e do not hold that mere misjoinder is fraudulent joinder, but we do agree with the district court that appellants' attempt to join these parties is so egregious as to constitute fraudulent joinder." Tapscott, 77 F.3d at 1360. However, other than the

**EXHIBIT**

**8**

**199**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 13-6276 PA (RZx) | Date | August 29, 2013 |
|---|---|---|---|
| Title | Shannon Muller, et al. v. American Medical Systems, et al. | | |

Eleventh and Fifth Circuits, no other circuit court has adopted the fraudulent misjoinder doctrine; the Ninth Circuit has not expressly adopted it.  See Caouette v. Bristol-Myers Squibb Co., 2012 U.S. Dist. LEXIS 113980, 28-33 (N.D. Cal. Aug. 10, 2012).

Several district courts "have criticized Tapscott, arguing that questions of joinder under state law do not implicate federal subject matter jurisdiction, federal jurisdiction is to be narrowly construed, and the fraudulent misjoinder doctrine has created an unpredictable and complex jurisdictional rule." In re Prempro Prods. Liab. Litig., 591 F.3d 613, 621-22 (8th Cir. 2010) (citing cases); see also In re Yasmin & Yaz Mktg., Sales Pracs. & Prods. Liab. Litig., 779 F. Supp. 2d 846, 854-55 (S.D. Ill. 2011) (citing cases). "Many of these courts also opine that the better approach is for parties to seek severance in state court prior to removal." Id. at 855; see also Caouette, 2012 U.S. Dist. LEXIS at 28-33.

Even if the Court were to adopt the doctrine of fraudulent misjoinder and conclude that plaintiffs' claims are not properly joined in this action, it is not clear that the joinder is egregious or grossly improper.  See Tapscott, 77 F.3d at 1360; Prempro, 591 F.3d at 622-24 ("absent evidence that plaintiffs' misjoinder borders on a 'sham,' [the Court] decline[s] to apply Tapscott to the instant case"). Defendants have failed to carry their heavy burden of persuasion to demonstrate that the plaintiffs were fraudulently joined.  Thus, defendants have not met their burden to establish complete diversity of citizenship between the parties.  Accordingly, the Court remands this action to the Los Angeles County Superior Court, Case No. BC515042, for lack of federal subject matter jurisdiction.  See 28 U.S.C. § 1447(c).

IT IS SO ORDERED.



EXHIBIT

8

200



**TERRY NAFISI**
District Court Executive and
Clerk of Court

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**
312 North Spring Street, Room G-8
Los Angeles, CA 90012
Tel: (213) 894-3535

Date:     August 30, 2013

**SOUTHERN DIVISION**
411 West Fourth Street, Suite 1053
Santa Ana, CA 92701-4516
(714) 338-4750

**EASTERN DIVISION**
3470 Twelfth Street, Room 134
Riverside, CA 92501
(951) 328-4450

Clerk, Los Angeles Superior Court
Central District
Stanley Mosk Courthouse
111 North Hill Street
Los Angeles, CA  90012

Re:   Case Number:  CV 13-06276 PA (RZx)

       Previously Superior Court Case No.  BC515042

       Case Name:  Shannon Muller, et al. v. American Medical Systems, Inc., et al.

Dear Sir / Madam:
       Pursuant to this Court's ORDER OF REMAND issued on 8/29/2013 _____, the
above-referenced case is hereby remanded to your jurisdiction.

       Attached is a certified copy of the ORDER OF REMAND and a copy of the docket sheet from this
Court.

       Please acknowledge receipt of the above by signing the enclosed copy of this letter and returning it
to our office.  Thank you for your cooperation.

                                        Respectfully,

                                        Clerk, U. S. District Court

                                        By: G. Kami _____
                                            Deputy Clerk
                                                213-894-0747

                                        ☒ Western   ☐ Eastern   ☐ Southern Division

*cc: Counsel of record*

==================================================================================
Receipt is acknowledged of the documents described herein.

                              **EXHIBIT**
                              **8**            Superior Court

                                          By: _____
_____
Date                                           Deputy Clerk

                                201

CV - 103 (09/08)          **LETTER OF TRANSMITTAL - REMAND TO SUPERIOR COURT (CIVIL)**

E-Filed – **JS-6**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-6344-GHK (PLAx) | | Date | October 10, 2013 |
|---|---|---|---|---|
| Title | *Marie Howe, et al. v. Coloplast Corp., et al.* | | | |

**Presiding: The Honorable**   **GEORGE H. KING, CHIEF U.S. DISTRICT JUDGE**

| Beatrice Herrera | N/A | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:   Attorneys Present for Defendants:

None   None

**Proceedings:**   **(In Chambers) Remand Order**

On September 11, 2013, we ordered Defendants to show cause why the above-captioned matter should not be remanded to state court for lack of subject matter jurisdiction. We noted that Defendants' Notice of Removal ("NOR") asserted that we have subject matter jurisdiction under 28 U.S.C. § 1332 based upon diversity of citizenship, but that, as Defendants acknowledged in their NOR, diversity does not exist on the face of the complaint, as two plaintiffs are citizens of the same states as two defendants. We further explained that we were not inclined to adopt the "fraudulent misjoinder" doctrine, which Defendants requested we adopt, to dismiss the two non-diverse Plaintiffs.

On September 25, 2013, Defendants timely filed a response to our OSC. In their Response, Defendants again requested we adopt the doctrine of fraudulent misjoinder, or alternatively, that we either defer ruling on the remand question until a determination has been made in their pending request to the MDL Panel to transfer this action to the Southern District of West Virginia or transfer this action to Judge Bernal, who has related cases pending before him. We decline to do any of the foregoing.

As a court of limited jurisdiction, *see Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994), we must determine the issue of subject matter jurisdiction before reaching the merits of a case. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). The removing party bears the burden of establishing the existence of federal subject matter jurisdiction, and if there is any doubt as to whether removal was proper, remand is required. 28 U.S.C. § 1447(c); *Duncan v. Stuetzie*, 76 F.3d 1480, 1485 (9th Cir. 1996). We need not postpone such a ruling merely because an MDL transfer motion has been filed. *See Totola Restaurants, L.P. v. Kimberly-Clark Corp.*, 987 F. Supp. 1186, 1188-89 (N.D. Cal. 1997). "To stay this case pending a decision by the MDL Panel would waste judicial and other resources and would not promote the efficient administration of justice." *Stone v. Baxter Int'l, Inc.*, 2009 WL 236116, at *2 (D. Neb. Jan. 30, 2009). Further, "a determination of the fraudulent misjoinder issues raised in this case requires an application and analysis of Ninth Circuit law, and this Court is in as good a position, if not better, to apply the law of this circuit than a court in West Virginia." *Goodwin v. Kojian*, 2013 WL 1528966, at *3 (C.D. Cal. Apr. 12, 2013).

**EXHIBIT**
**8**

202

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 13-6344-GHK (PLAx) | Date | October 10, 2013 |
|---|---|---|---|
| Title | *Marie Howe, et al. v. Coloplast Corp., et al.* | | |

As we explained in our OSC, the Ninth Circuit has recognized an exception to the complete diversity requirement where a nondiverse defendant has been "fraudulently joined." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1997). Under the "fraudulent joinder" doctrine, a district court may disregard the citizenship of a nondiverse defendant if it is obvious that the plaintiffs have failed to state a claim against that defendant. *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). The Ninth Circuit has not, however, recognized the doctrine of "fraudulent misjoinder," which permits the court to ignore the citizenship of nondiverse parties when there is no real connection among the plaintiffs' claims, such that plaintiffs' joinder of the parties is "so egregious as to constitute fraudulent joinder." *See Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), abrogated on other grounds by *Cohen v. Office Depot*, 204 F.3d 1069 (11th Cir. 2011). This doctrine has only been recognized by the Fifth and Eleventh Circuits. *See Id.* at 1360; *accord In re Benjamin Moore & Co.*, 318 F.3d 626, 630-31 (5th Cir. 2002).

Even if we were to adopt the doctrine of fraudulent misjoinder, it is not clear that the joinder in this case is "so egregious as to constitute fraudulent joinder." *See Tapscott*, 77 F.3d at 1360; *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 624 ("[A]bsent evidence that plaintiffs' misjoinder borders on a 'sham,' we decline to apply *Tapscott* to the present case." (citation omitted)). Thus, Defendants have not met their burden to establish complete diversity of citizenship between the parties. Accordingly, this case is hereby **REMANDED** to the state court from which it was removed. In light of the foregoing, Plaintiffs' Motion to Remand (Dkt. 22), currently noticed for hearing on November 4, 2013, is **DENIED as moot**, and the hearing date is **VACATED**.

**IT IS SO ORDERED.**

|  | -- | : | -- |
|---|---|---|---|
| Initials of Deputy Clerk | | Bea | |

**EXHIBIT**

**8**

203



**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
WESTERN DIVISION
312 North Spring Street, Room G-8
Los Angeles, CA 90012
Tel: (213) 894-3535

**SOUTHERN DIVISION**
411 West Fourth Street, Suite 1053
Santa Ana, CA 92701-4516
(714) 338-4750

**EASTERN DIVISION**
3470 Twelfth Street, Room 134
Riverside, CA 92501
(951) 328-4450

**TERRY NAFISI**
District Court Executive and
Clerk of Court

Date: October 10, 2013

Name & Address
Los Angeles County Superior Court
111 N. Hill Street
Los Angeles, CA 90012

Re:    Case Number: _CV13-6344-GHK(PLAx)_

     Previously Superior Court Case No. _BC515057_

     Case Name: _Marie Howe -v- Coloplast Corp_

Dear Sir / Madam:
     Pursuant to this Court's ORDER OF REMAND issued on _October 10, 2013_, the above-referenced case is hereby remanded to your jurisdiction.

     Attached is a certified copy of the ORDER OF REMAND and a copy of the docket sheet from this Court.

     Please acknowledge receipt of the above by signing the enclosed copy of this letter and returning it to our office.  Thank you for your cooperation.

Respectfully,

Clerk, U. S. District Court

By: _Brent Pacillas_
     Deputy Clerk  213-894-

     ☒ Western   ☐ Eastern   ☐ Southern Division

*cc: Counsel of record*

=================================================================================
Receipt is acknowledged of the documents described herein.

     Clerk, Superior Court

**EXHIBIT**
**8**
**204**

By: _____
     Deputy Clerk

_____
Date

CV - 103 (09/08)    **LETTER OF TRANSMITTAL - REMAND TO SUPERIOR COURT (CIVIL)**

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 13-06308 DMG (PJWx) | | Date | October 8, 2013 |
|---|---|---|---|---|

| Title | *Sheila Dekalb, et al. v. C.R. Bard, Inc., et al.* | | Page | 1 of 8 |
|---|---|---|---|---|

Present: The Honorable   DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| VALENCIA VALLERY | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS—ORDER GRANTING PLAINTIFFS' MOTION TO REMAND AND DENYING AS MOOT DEFENDANT'S MOTION TO STAY CASE [Doc. ## 13, 14]**

## I.
## INTRODUCTION

On July 12, 2013, 93 Plaintiffs ("Plaintiffs") filed a Complaint in Los Angeles County Superior Court against Defendants C.R. Bard, Inc., Sofradim Production SAS, and Tissue Science Laboratories Limited, relating to injuries which they allege arose from implantation of defective pelvic mesh products. [Doc. # 1, Exh. A.] The Complaint alleges six state law causes of action for: (1) Negligence and Negligence Per Se; (2) Design Defect; (3) Manufacturing Defect; (4) Failure to Warn; (5) Breach of Implied Warranties; and (6) Gross Negligence.

On August 28, 2013, Defendant C.R. Bard, Inc. ("Defendant") removed the action to this Court, asserting subject matter jurisdiction on the basis of diversity of citizenship, 28 U.S.C. § 1332, 28 U.S.C. § 1441, and 28 U.S.C. § 1446.[1] [Doc. # 1.]

Defendant contends that the instant case is related to Multidistrict Litigation ("MDL") pending in the Southern District of West Virginia. (Not. of Removal ¶ 5; *see also id.*, Exh. C.) On August 30, 2013, Defendant submitted to the United States Judicial Panel on Multidistrict Litigation ("JPML") a Notice of Potential Tag-Along, seeking an order to transfer the action to MDL No. 2187. (Mot. for Stay at 3 [Doc. # 13].)

On September 4, 2013, Defendant filed a Motion to Stay all proceedings pending a decision on transfer by the JPML. [Doc. # 13.] On September 16, Plaintiffs filed an opposition

---

[1] Defendant was served the Complaint on July 29, 2013. (Not. of Removal ¶ 10 [Doc. # 1].) Defendants Sofradim Production SAS and Tissue Science Laboratories Limited apparently had not yet been served at the time of removal, but they consented to removal. (*Id.* ¶ 11.)

EXHIBIT
**8**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 13-06308 DMG (PJWx)** | Date | October 8, 2013 |
|---|---|---|---|

| Title | *Sheila Dekalb, et al. v. C.R. Bard, Inc., et al.* | Page | 2 of 8 |
|---|---|---|---|

to Defendant's Motion to Stay. [Doc. # 25.] On September 20, Defendant filed a reply. [Doc. # 26.]

On September 6, 2013, Plaintiffs filed a Motion to Remand the case to Los Angeles County Superior Court.[2] [Doc. # 14.] On September 13, 2013, Defendant filed an opposition to the motion. [Doc. # 24.]

The Motion to Stay and Motion to Remand were originally scheduled for hearing on October 4, 2013. [Doc. ## 13, 14.] On October 2, 2013, the Court deemed these matters suitable for decision without oral argument. [Doc. # 27.] *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. For the reasons set forth below, Plaintiffs' Motion to Remand is **GRANTED**, Defendant's Motion to Stay Case is **DENIED** as moot, and this action is **REMANDED** to Los Angeles County Superior Court.

## II.
## DISCUSSION

### A.     The Court First Decides the Motion to Remand

Defendant argues that the Court should address the Motion to Stay first and decline to rule on Plaintiffs' Motion to Remand (Mot. to Stay at 3-4) or, alternatively, the Court should deny Plaintiffs' Motion to Remand and grant the Motion to Stay.[3] (Opp'n to Mot. to Remand at 7.) Defendant contends that this Court has discretion to first consider the Motion to Stay based on *Sinochem International Co. v. Malaysia International Shipping Co.*, 549 U.S. 422, 127 S. Ct. 1184 (2007),[4] and notes that several district courts in this circuit have granted motions to stay while motions to remand have been pending. (*Id.* at 2-7.) Defendant contends that the MDL court is in the best position to decide pending jurisdictional issues in order to promote judicial efficiency and consistency and to prevent inconsistent rulings on the same jurisdictional issue. (Mot. to Stay at 8.)

---

[2] Plaintiffs request expedited consideration of their motion (Mot. to Remand at 1, 11, 22), but they did not file an *ex parte* application under Local Rule 7-19.

[3] In its opposition to Plaintiffs' motion to remand, Defendant argues in the alternative that the Court should sever the New Jersey Plaintiffs, remand their claims, and stay the claims of the remaining Plaintiffs. (Opp'n to Mot. to Remand at 1 n.1.)

[4] The *Sinochem* Court held that "where subject matter or personal jurisdiction is difficult to determine, and *forum non conveniens* considerations weigh heavily in favor of dismissal," a court may dismiss on the ground of *forum non conveniens* without first addressing the jurisdictional issues. *Sinochem*, 549 U.S. at 435-36.

**EXHIBIT**
**8**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 13-06308 DMG (PJWx) | Date | October 8, 2013 |
|---|---|---|---|

| Title | *Sheila Dekalb, et al. v. C.R. Bard, Inc., et al.* | Page | 3 of 8 |

The Ninth Circuit has made clear that *Sinochem* does not "change the Supreme Court's command that [courts] address subject matter jurisdiction at the outset in the 'mine run of cases,' and reach other issues first only where the jurisdictional issue is 'difficult to determine,' and the other ground is relatively 'less burdensome.'" *Potter v. Hughes*, 546 F.3d 1051, 1061 (9th Cir. 2008) (quoting *Sinochem*, 549 U.S. at 436).

Defendant is correct that some district courts in this circuit have granted motions to stay in the context of a pending decision on transfer to an MDL court before ruling on a motion to remand, using the approach of the Northern District of California district court in *Conroy v. Fresh Del Monte Produce, Inc.*, 325 F. Supp. 2d 1049, 1053 (N.D. Cal. 2004).[5] (Opp'n. to Mot. to Remand at 3-5.) *See, e.g., Vest v. Allied Packing and Supply, Inc.*, No. C 11-00061, 2011 WL 333241, at *2 (N.D. Cal. Jan. 31, 2011); *but see Jones v. Bristol-Myers Squibb Co.*, No. C 13-2415, 2013 WL 3388659, at *4 (July 8, 2013). The *Conroy* court noted that "[t]he decision to grant or deny a temporary stay of proceedings pending a ruling on the transfer of the matter to the MDL court lies" within the discretion of a district court, and it reasoned that "[o]ften, deference to the MDL court for resolution of a motion to remand provides the opportunity for the uniformity, consistency, and predictability in litigation that underlies the MDL system." *Conroy*, 325 F. Supp. 2d at 1053. The court used a three-part test to determine whether to address a motion to remand or a motion to stay pending a ruling on transfer to the MDL court: (1) "the court should give preliminary scrutiny to the merits of the motion to remand" because the venue statute, 28 U.S.C. § 1404(a), limits transfer of a civil action to "a venue where the case could have been brought originally" and therefore "questions regarding subject matter jurisdiction must be resolved before any such transfer"; (2) "if the jurisdictional issue appears factually or legally difficult, the court should determine whether identical or similar jurisdictional issues have been raised in other cases that have been or may be transferred to the MDL proceeding"; (3) "if the jurisdictional issue is both difficult and similar or identical to those in cases transferred or likely to be transferred, the court should stay the action." *Id.*, citing *Meyers v. Bayer AG*, 143 F. Supp.2d 1044, 1048-49 (E.D. Wis. 2001).

The Ninth Circuit has not expressly adopted the *Conroy* court's approach, *see Jones*, 2013 WL 3388659, at *4, and the cases cited by Defendant are not binding on this Court. Moreover, several courts in this district have considered motions to remand before motions to stay in the context of a pending decision on transfer to an MDL court. *See Carpenters Pension*

---

[5] Defendant also argues that "[c]ourts ~~have . . . appl[ied]~~ the three-factor test set forth in *Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1360 (C.D. Cal. 1997)." In *Rivers*, however, there was no pending motion to remand and the court used the three-factor test merely to determine whether to grant the stay. *See Rivers*, 980 F. Supp. at 1360.

**EXHIBIT 8**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 13-06308 DMG (PJWx) | Date | October 8, 2013 |
|---|---|---|---|

| Title | *Sheila Dekalb, et al. v. C.R. Bard, Inc., et al.* | Page | 4 of 8 |

*Trust For S. California v. Ebbers*, 299 B.R. 610, 615 (C.D. Cal. 2003); *Shelton v. DePuy Orthopaedics, Inc.*, CV 11-08082, 2011 WL 6001630 (C.D. Cal. Dec. 1, 2011); *Andrews v. Bayer Corp.*, CV 09-08762, 2010 WL 234808 (C.D. Cal. Jan. 12, 2010); *but see Sanchez v. DePuy Orthopaedics Inc.*, 2:11-CV-07867, 2011 WL 7092289 (C.D. Cal. Nov. 21, 2011).

 The Court does not consider the jurisdictional issue in this action to be "difficult to determine" or outside the "mine run of cases," and thus Supreme Court and Ninth Circuit precedent suggest that the Court should consider Plaintiffs' Motion to Remand first. Moreover, even if this Court were to apply the *Conroy* test, it would not be necessary to proceed beyond the first step as the jurisdictional issue does not appear "factually or legally difficult." *See Goodwin v. Kojian*, SACV 13-325, 2013 WL 1528966, at *2 (Apr. 12, 2013) ("Here, a preliminary assessment [under *Conroy*] of Plaintiff's MTR suggests that removal was improper, and thus, the Court must promptly complete its consideration of Plaintiff's MTR and remand if necessary.").

 Defendant urges the Court to adopt the analysis of three district courts in this circuit that granted motions to stay and either denied or terminated with prejudice motions to remand in cases involving pelvic mesh. (Opp'n to Mot. to Remand, Exh. A.) As Plaintiffs point out, however, courts in this circuit are not of one mind as to whether to address a motion to stay or motion to remand first in pelvic mesh cases. *Compare Perry v. Luu*, No. 1:13-cv-729, 2013 WL 3354446, at *3 (E.D. Cal. July 3, 2013) (addressing motion to remand before motion to stay pending determination by JPML in pelvic mesh case), *and Goodwin*, 2013 WL 1528966, at *3 (same), *with Kelly Pecoraro and Michael Pecoraro v. Frances Sanghei-Kim, et al.*, EDCV 13-00987 (C.D. Cal.) (considering motion to stay pending determination by JPML before motion to remand in pelvic mesh case), *and Diane Thomas-Lanska, et al. v. Antoine A. Hanna, et al.*, CV 13-1434 (C.D. Cal.). While none of these cases are binding on this Court, the Court finds most persuasive the cases reaching the jurisdictional issue first.

 Thus, this Court turns first to Plaintiffs' Motion to Remand.

**B.**  **The Court Lacks Subject Matter Jurisdiction**

 "The burden of establishing federal subject matter jurisdiction falls on the party invoking removal." *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 944 (9th Cir. 2009) (citing *Toumajian v. Frailey*, 135 F.3d 648, 652 (9th Cir. 1998)). There is a "strong presumption against removal jurisdiction," and courts must reject it "if there is any doubt as to the right of removal in the first instance." *Hawaii ic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1107 (9th Cir. 2010) (quoting *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (*per curiam*) (internal quotation marks omitted)).

**EXHIBIT**
**8**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 13-06308 DMG (PJWx) | Date | October 8, 2013 |
|---|---|---|---|

| Title | *Sheila Dekalb, et al. v. C.R. Bard, Inc., et al.* | Page | 5 of 8 |

Diversity jurisdiction under 28 U.S.C. § 1332 requires complete diversity: every plaintiff must be diverse from every defendant. *See Lincoln Property Co. v. Roche*, 546 U.S. 81, 89, 126 S. Ct 606, 163 L. Ed.2d 415 (2005). The Ninth Circuit has recognized an exception to the complete diversity requirement in the doctrine of fraudulent joinder. *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001). "Joinder of a non-diverse defendant is deemed fraudulent, and the defendant's presence in the lawsuit is ignored for purposes of determining diversity, 'if the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state.'" *Id.* (quoting *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987)).

Plaintiffs contend that complete diversity is lacking on the face of the Complaint. (Mot. to Remand at 12.) The Complaint is brought on behalf of 93 Plaintiffs[6] from 21 states, including three Plaintiffs from New Jersey.[7] (Not. of Removal ¶ 21.) Defendant is a corporation organized under the laws of New Jersey with its principal place of business in New Jersey. Therefore, for purposes of diversity jurisdiction, Defendant is a "citizen" of New Jersey. 28 U.S.C. § 1332(c)(1). Because Defendant and three Plaintiffs are citizens of New Jersey, diversity is lacking on the face of the Complaint.

Defendant does not suggest that complete diversity exists on the face of the Complaint, or that the fraudulent joinder exception is applicable. Rather, Defendant argues that this Court has jurisdiction under the "fraudulent misjoinder" doctrine, relying on a line of authority beginning with the Eleventh Circuit's decision in *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1359-60 (11th Cir. 1996), *abrogated on other grounds*, *Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). (Not. of Removal ¶¶ 20, 25-35; Opp'n. to Mot. to Remand at 7-15.) *Tapscott* involved two putative classes of plaintiffs, each of which sued a different group of defendants based on "wholly distinct" transactions. *Tapscott*, 77 F.3d at 1360. Defendant Lowe's, the representative of one defendant class, removed the case to federal court on the basis of diversity jurisdiction, and the district court disregarded the citizenship of the second class of

---

[6] The Complaint alleges that it is brought on behalf of 94 Plaintiffs (Compl. ¶ 1), but only 93 Plaintiffs are named (*see id.* ¶¶ 3-95), and Plaintiffs' briefing in this Court refers to 93 Plaintiffs. (*See* Mot. to Remand at 1.)

[7] Twenty-three Plaintiffs are from California; 10 Plaintiffs are from Texas; 8 Plaintiffs are from Pennsylvania; 7 Plaintiffs are from Indiana; 5 Plaintiffs are from Ohio; 4 Plaintiffs are from Georgia; 4 Plaintiffs are from Illinois; 4 Plaintiffs are from Oregon; 4 Plaintiffs are from Tennessee; 3 Plaintiffs are from Kansas; 3 Plaintiffs are from New Jersey; 3 Plaintiffs are from Oklahoma; 3 Plaintiffs are from Utah; 2 Plaintiffs are from Louisiana; 2 Plaintiffs are from Nevada; 2 Plaintiffs are from Virginia; 2 Plaintiffs are from West Virginia; 1 Plaintiff is from Colorado; 1 Plaintiff is from Florida; 1 Plaintiff is from Kentucky; and 1 Plaintiff is from Missouri. (Compl. ¶¶ 3-95.)

EXHIBIT 8

CIVIL MINUTES—GENERAL

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 13-06308 DMG (PJWx) | Date | October 8, 2013 |
|---|---|---|---|

| Title | *Sheila Dekalb, et al. v. C.R. Bard, Inc., et al.* | Page | 6 of 8 |
|---|---|---|---|

defendants, asserted jurisdiction, and severed and remanded the remainder of the action. *Id.* at 1355, 1360. The Eleventh Circuit affirmed the district court's orders, holding that where a plaintiff's attempt to defeat diversity by joining parties is "so egregious as to constitute fraudulent joinder," a court could disregard the fraudulently joined parties in order to assert diversity jurisdiction. *Id.* at 1360. The court noted that it "d[id] not hold that mere misjoinder is fraudulent joinder." *Id.*

The "fraudulent misjoinder" doctrine has received a "tepid" response outside the Eleventh Circuit. *See Early v. Northrup Grumman Corp.*, 2:13-CV-3130, 2013 WL 3872218, at *2 (C.D. Cal. July 24, 2013). While the Fifth Circuit adopted the doctrine in a one-paragraph opinion, *see In re Benjamin Moore & Co.*, 309 F.3d 296, 298 (5th Cir. 2002), the other circuit courts to consider the doctrine have not formally adopted it. *See, e.g., California Dump Truck Owners Ass'n v. Cummins Engine Co., Inc.*, 24 Fed. App'x. 727, 729 (9th Cir. 2001) ("For purposes of discussion we will assume, without deciding, that this circuit would accept the doctrines of fraudulent and egregious joinder as applied to plaintiffs."); *Lafalier v. State Farm Fire and Cas. Co.*, 391 Fed. App'x. 732, 739 (10th Cir. 2010); *In re Prempro Products Liability Litigation*, 591 F.3d 613 (8th Cir. 2010).

District courts in this circuit have criticized the "fraudulent misjoinder" doctrine. *See Osborn v. Metro. Life Ins. Co.*, 341 F. Supp.2d 1123, 1127-28 (E.D. Cal. 2004) (opining that "the last thing the federal courts need is more procedural complexity" associated with fraudulent misjoinder doctrine, noting the doctrine raises "unnecessary difficulties," such as uncertainty as to whether the federal or state joinder rules should apply, and suggesting the state court was competent to determine the issue of misjoinder); *Lopez v. Pfeffer*, 13-CV-03341, 2013 WL 5367723, at *3 (N.D. Cal. Sept. 25, 2013) (noting that defendant was entitled to litigate in MDL only if court had subject matter jurisdiction and court was "in just as good a position or better" than MDL court to resolve jurisdictional issue; *Early*, 2013 WL 3872218, at *2 - *3 (noting "the doctrine raises more questions than answers" because it is not clear when joinder is so egregious or otherwise inappropriate to require application of doctrine, and concluding that the doctrine "flips [the maxim that § 1441 should be narrowly construed] on its head by making cases removable that by § 1441's plain terms should not be, effectively increasing the jurisdiction of federal courts beyond what the rules envision"); *Perry v. Luu*, 1:13-CV-00729, 2013 WL 3354446, at *5 (E.D. Cal. July 3, 2013) (noting court was "confounded" by the "circular logic" of fraudulent misjoinder doctrine which "requires the Court first—in full recognition of the lack of diversity jurisdiction—sever part of the case and *only then* find it has jurisdiction" while "the authority to sever misjoined claims or parties under Rule 20 *presumes* the Court has jurisdiction to act" (emphasis in original)).

**EXHIBIT**

**8**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 13-06308 DMG (PJWx)** | Date | October 8, 2013 |
|---|---|---|---|

| Title | *Sheila Dekalb, et al. v. C.R. Bard, Inc., et al.* | Page | 7 of 8 |

It appears that two district courts in this circuit have used "fraudulent misjoinder" to exercise diversity jurisdiction, *see Sutton v. Davol*, 251 F.R.D. 500, 503-05 (E.D. Cal. 2008); *Greene v. Wyeth*, 344 F. Supp.2d 674, 684-85 (D. Nev. 2004).[8] Many other courts in this circuit have declined to decide whether the doctrine is good law, finding that it would not control their respective cases. *See, e.g., Ramirez v. Our Lady of Lourdes Hosp. at Pasco*, 2:13-CV-01108, 2013 WL 5373213, at \*3 - \*4 (W.D. Wash. Sept. 25, 2013); *Caouette v. Bristol-Myers Squibb Co.*, C-12-1814, 2012 WL 3283858, at \*6 - \*7 (N.D. Cal. Aug. 10, 2012); *Selman v. Pfizer, Inc.* 11-CV-1400, 2011 WL 6655354, at \*12 - \*13 (D. Or. Dec. 16, 2011).

Having considered both sides' arguments regarding the fraudulent misjoinder doctrine, this Court concludes that it must apply the traditional standards governing the existence *vel non* of diversity jurisdiction. Defendant identifies no precedent binding on this Court to support its contention that "fraudulent misjoinder" doctrine applies. The Ninth Circuit has not formally adopted the doctrine, and under Ninth Circuit precedent, 28 U.S.C. § 1441 is to be strictly construed and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus*, 980 F.2d at 566; *see also Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252.

Defendant has not met its burden of establishing that the Court has diversity jurisdiction over this case. Defendant fails to demonstrate that the New Jersey Plaintiffs were joined merely in order to defeat diversity jurisdiction. While Defendant accuses Plaintiffs of "blatant forum shopping" due to the joinder of three New Jersey Plaintiffs (Opp'n to Mot. to Remand at 15), Defendant's arguments suggest only that Plaintiffs' pleading is generally deficient as to all 93 Plaintiffs.[9] Thus, because complete diversity was destroyed by the presence of the New Jersey Plaintiffs, this Court lacks jurisdiction over this action.

---

[8] In these cases involving the alleged fraudulent misjoinder of defendants, the courts considered misjoinder under federal law and one of the courts used a standard lower than the egregiousness standard articulated in *Tapscott*. *See Greene*, 344 F. Supp.2d at 685.

[9] Specifically, Defendant contends: (1) "Plaintiffs' Complaint alleges claims arising from unidentified Bard products designed for the treatment of POP and SI. *No Plaintiff* identifies which product she received, if any"; (2) "The Complaint *does not allege injuries specific to each Plaintiff*, but rather lists various alleged dangers of polypropylene mesh in general"; (3) "*Each Plaintiff* has a unique medical history, which includes the highly individualized conditions and symptoms their symptoms were designed to treat, as well as their unique gynecological, urological, and other medical information"; (4) "The pelvic mesh products *for the 93 Plaintiffs* were undoubtedly implanted by different physicians, for different medical reasons, at different times, and at different medical facilities around the country; (5) "Plain[tiffs] [vari]ed when their surgeries occurred. It is likely that they occurred over a number of years given the potential range of products available to physicians, beginning in 2000." (Not. of Remand at 13-16 (emphasis added).)

**EXHIBIT 8**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 13-06308 DMG (PJWx) | Date | October 8, 2013 |

| Title | *Sheila Dekalb, et al. v. C.R. Bard, Inc., et al.* | Page | 8 of 8 |

### III.
### CONCLUSION

In light of the foregoing, Plaintiffs' Motion to Remand is **GRANTED**, Defendant's Motion to Stay Case is **DENIED** as moot, and this action is hereby **REMANDED** to Los Angeles County Superior Court.

**IT IS SO ORDERED.**

---

To the extent that Defendant argues that allegedly deficient pleading as to *all* plaintiffs is evidence of fraudulent misjoinder of only *some* plaintiffs, it fails to cite any binding Ninth Circuit precedent in support of this conclusion.

**EXHIBIT 8**

CV-90 | **CIVIL MINUTES—GENERAL** | Initials of Deputy Clerk vv



**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**
312 North Spring Street, Room G-8
Los Angeles, CA 90012
Tel: (213) 894-3535

**SOUTHERN DIVISION**
411 West Fourth Street, Suite 1053
Santa Ana, CA 92701-4516
(714) 338-4750

**EASTERN DIVISION**
3470 Twelfth Street, Room 134
Riverside, CA 92501
(951) 328-4450

**TERRY NAFISI**
District Court Executive and
Clerk of Court

Re:   Case Number: _____

     Previously Superior Court Case No. _____

     Case Name: _____

Dear Sir / Madam:
     Pursuant to this Court's ORDER OF REMAND issued on _____, the above-referenced case is hereby remanded to your jurisdiction.

     Attached is a certified copy of the ORDER OF REMAND and a copy of the docket sheet from this Court.

     Please acknowledge receipt of the above by signing the enclosed copy of this letter and returning it to our office. Thank you for your cooperation.

                    Respectfully,

                    Clerk, U. S. District Court

                    By: _____
                        Deputy Clerk

                    ☐ Western   ☐ Eastern   ☐ Southern Division

*cc: Counsel of record*

===========================================================================
Receipt is acknowledged of the documents described herein.

                        Superior Court

**EXHIBIT**
**8**

                    By: _____

_____
Date                         Deputy Clerk

213

CV - 103 (09/08)         **LETTER OF TRANSMITTAL - REMAND TO SUPERIOR COURT (CIVIL)**

*REMAND/JS-6*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 13-6343-GW(JEMx) | Date | October 16, 2013 |
|---|---|---|---|
| Title | *Cheryl Mauck, et al. v. Boston Scientific Corporation, et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | None Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):**     **RULINGS ON: (1) PLAINTIFFS' MOTION TO REMAND AND REQUEST FOR EXPEDITED CONSIDERATION [18], (2) DEFENDANT BOSTON SCIENTIFIC CORPORATION'S MOTION TO STAY ALL PROCEEDINGS PENDING A TRANSFER BY THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION [23], AND (3) MOTION TO DISMISS PLAINTIFFS' COMPLAINT [26]**

Boston Scientific Corporation ("BSC") removed this action on August 29, 2013, arguing that the 73 plaintiffs from 20 different states led by Cheryl Mauck (collectively "Plaintiffs") had been fraudulently misjoined in state court such that this Court could ignore the fact that three of the plaintiffs – Jennie Foley, Rosemarie Lambert and Audrey Aho – are of non-diverse citizen-ship vis-a-vis BSC. Plaintiffs now move to remand, whereas BSC moves to stay the action pending the resolution of an effort to have the action transferred to an MDL proceeding in the Southern District of West Virginia.[1] That MDL proceeding now includes approximately 8,000 cases against BSC. *See* Awong Decl. (Docket No. 24) ¶ 9. BSC also moves to dismiss, but the Court will not address that motion – either the case will be stayed pending resolution of the MDL-transfer proceedings or it will be remanded to state court. The

---

[1] BSC provided notice to the MDL panel of this "tag-a[long]"... [a] Conditional Transfer Order was issued September 13, 2013. *See* Awong Decl. (Docket No. 24) ¶ 6 & Exh. A.

**EXHIBIT**

**8**

214    Initials of Preparer    JG

REMAND/JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-6343-GW(JEMx) | Date | October 16, 2013 |
|---|---|---|---|
| Title | *Cheryl Mauck, et al. v. Boston Scientific Corporation, et al.* | | |

Court finds the matter suitable for resolution on the briefs, and therefore vacates the October 21, 2013, hearing date.

As both parties recognize, district courts – including courts within this District – have taken different approaches to the question of whether subject matter jurisdiction must be resolved prior to transfer to a pending MDL. In similar circumstances involving medical product liability actions against DePuy Orthopaedics, Inc., this Court has stayed proceedings due to impending MDL-transfer proceedings. *See, e.g.*, *Stone v. DePuy Orthopaedics, Inc.*, CV 13-1265, Docket No. 30 (Apr. 18, 2013); *Liebscher v. DePuy Orthopaedics, Inc.*, CV No. 12-6832, Docket No. 25 (Aug. 31, 2012). It took that approach to allow the MDL proceeding to resolve issues raised by remand motions in a way that is universally applicable to all the cases raising the same jurisdictional issue, thereby avoiding duplication of work and the possibility of inconsistent rulings. If the same judicial economy can be realized here – *i.e.*, if the MDL already has other cases raising the exact same removal/jurisdictional issues which it must resolve – the Court would adopt the same course.

Neither party has addressed what law the MDL applies with respect to any removal/jurisdictional issues it must resolve. The Court will presume that the MDL must apply Ninth Circuit law – to the extent there is any – concerning "fraudulent misjoinder" to any cases transferred to it from district courts within the Ninth Circuit.[1] *Cf. In re Nucorp Energy Secs. Litig.*, 772 F.2d 1486, 1491-92 (9th Cir. 1985). As such, the Court is concerned with whether the MDL already must resolve this issue *in one or more cases transferred to it from a district court within the Ninth Circuit*. Only Exhibit B to the Awong Declaration concerns Central District of California cases that have been transferred to the BSC MDL. *See* Awong Decl. (Docket No. 24) ¶ 9. However, that exhibit only reflects Conditional Transfer Orders for those cases; those orders say nothing about whether the jurisdictional issue raised in this case is now before – or has ever been before – the judge handling the MDL proceeding. Exhibits C-

---

[1] The parties agree that the "fraudulent misjoinder" doctrine is of varied levels of acceptance across the Circuits, meaning that resolution of the issue in a case removed within, for instance, the _____ Circuit would not necessarily result in the same resolution with respect to a case removed within, for instance, the Ninth Circuit.

**EXHIBIT**

**8**

215

Initials of Preparer    JG

**REMAND/JS-6**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-6343-GW(JEMx) | Date | October 16, 2013 |
|---|---|---|---|
| Title | *Cheryl Mauck, et al. v. Boston Scientific Corporation, et al.* | | |

F reflect other cases transferred to the same judge handling BSC's MDL, but those cases concern a different MDL proceeding (albeit another one involving the same type of medical product at issue here). *See id.* ¶¶ 10-14. In any event, the jurisdictional/removal issues raised in those four rulings concerned fraudulent joinder *of a non-diverse defendant*, *see id.*, Exhs. C-E, or application of the "forum defendant rule," *id.*, Exh. F, not an alleged fraudulent misjoinder *of plaintiffs*. *Rubio v. Arndal*, No. 1:13-cv-0027-LJO-BAM, 2013 U.S. Dist. LEXIS 29149, *11 (C.D. Cal. Mar. 4, 2013), on which BSC also relies, similarly considers the distinct issue of fraudulent joinder of a non-diverse *defendant*.

In other words, BSC has failed to demonstrate that there will be any judicial efficiency gained by staying this matter so that the MDL proceeding can resolve the jurisdictional issue. As a result, this Court will proceed to resolve the jurisdictional issue. As other courts have noted, the Ninth Circuit has never adopted the "fraudulent misjoinder of plaintiffs" basis for ignoring the citizenship of non-diverse plaintiffs. *See, e.g.*, *Muller v. Am. Med. Sys.*, CV 13-6276 PA (RZx), 2013 U.S. Dist. LEXIS 124747, *5-6 (C.D. Cal. Aug. 29, 2013); *see also Goodwin v. Kojian*, 2013 U.S. Dist. LEXIS 53403, 2013 U.S. Dist. LEXIS 53403, *11-12 (C.D. Cal. Apr. 12, 2013). Absent a clear indication that it must do so, neither will this Court.

Removal jurisdiction is to be narrowly-construed, and doubts about its propriety are to be resolved in favor of remand. *See, e.g.*, *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1107 (9th Cir. 2010). As such, diversity jurisdiction is lacking here. The Court grants Plaintiffs' motion to remand and denies BSC's motion to stay. The motion to dismiss is moot.

**EXHIBIT**

**8**

216

Initials of Preparer    JG

_____ : _____



**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**
312 North Spring Street, Room G-8
Los Angeles, CA 90012
Tel: (213) 894-3535

**SOUTHERN DIVISION**
411 West Fourth Street, Suite 1053
Santa Ana, CA 92701-4516
(714) 338-4750

**EASTERN DIVISION**
3470 Twelfth Street, Room 134
Riverside, CA 92501
(951) 328-4450

**TERRY NAFISI**
District Court Executive and
Clerk of Court

Date: October 18, 2013

Los Angeles County Superior Court
Stanley Mosk Courthouse
111 North Hill Street
Los Angeles, CA 90012

Re:  Case Number:  CV 13-6343-GW(JEMx)

Previously Superior Court Case No.  BC515043

Case Name:  Cheryl Mauck et al v. Boston Scientific Corporation et al

Dear Sir / Madam:

Pursuant to this Court's ORDER OF REMAND issued on  October 16, 2013 , the above-referenced case is hereby remanded to your jurisdiction.

Attached is a certified copy of the ORDER OF REMAND and a copy of the docket sheet from this Court.

Please acknowledge receipt of the above by signing the enclosed copy of this letter and returning it to our office.  Thank you for your cooperation.

Respectfully,

Clerk, U. S. District Court

By:  P. Lopez phyllis_lopez@cacd.uscourts.gov
Deputy Clerk      213-894-

☒ Western   ☐ Eastern   ☐ Southern Division

*cc: Counsel of record*

Receipt is acknowledged of the documents described herein.

Clerk, Superior Court

**EXHIBIT 8**

By:

_____
Date

_____
Deputy Clerk

217

CV - 103 (09/08)            **LETTER OF TRANSMITTAL - REMAND TO SUPERIOR COURT (CIVIL)**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 13-06321 BRO (AJWx) | Date | October 21, 2013 |
|---|---|---|---|
| Title | SHERRY PATE, ET AL. V. BOSTON SCIENTIFIC CORP. | | |

| Present: The Honorable | **BEVERLY REID O'CONNELL, United States District Judge** |
|---|---|

| Renee A. Fisher | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**     (IN CHAMBERS)

## ORDER GRANTING PLAINTIFFS' MOTION TO REMAND, AND VACATING DEFENDANT'S MOTION TO STAY AND MOTION TO DISMISS

Pending before the Court are three separate motions: (1) Plaintiffs Sherry Pate, et al.'s motion to remand (Dkt. No. 18); Defendant Boston Scientific's motion to stay (Dkt. No. 23); and (3) Defendant Boston Scientific's motion to dismiss (Dkt. No. 26). For the following reasons Plaintiffs' motion to remand is GRANTED. Because the Court remanded the suit, it VACATES Defendant's motion for stay and motion to dismiss.

## I.     FACTUAL BACKGROUND

Defendant Boston Scientific Corporation is an entity incorporated under the laws of Delaware, and headquartered in Boston, Massachusetts. (Notice Removal Ex. A ("Compl.") ¶ 68.) Apparently, Defendant designs, manufactures, and distributes various medical and surgical devices, including pelvic mesh products that are the focus of this lawsuit. (*See* Compl. ¶ 70.)

Defendant designed the particular mesh products primarily as a treatment for pelvic organ prolapse and stress urinary incontinence. (Compl. ¶ 100.) Pelvic organ prolapse is a medical condition resulting from weakened or stretched tissues that support a female's lower abdominal organs. (Compl. ¶ 101.) As a treatment for the condition, Defendant designs, manufactures, and distributes its mesh products to be surgically inserted and implanted to reinforce a patient's pelvic region. (Compl. ¶ 101.) Stress urinary incontinence is a medical condition involving incontinence during physical

EXHIBIT
**8**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | **CV 13-06321 BRO (AJWx)** | | Date | October 21, 2013 |
|----------|---------------------------|--|------|------------------|
| Title | SHERRY PATE, ET AL. V. BOSTON SCIENTIFIC CORP. | | | |

activity. (Compl. ¶ 102.) Defendant designs, manufactures, and distributes its mesh products to be implanted in a patient's pelvic area in order to provide support to the patient's urethra, thus preventing incontinence. (*See* Compl. ¶ 102.)

Plaintiffs are sixty-five women medical patients who were treated using Defendant's mesh products. (*See* Compl. ¶¶ 2–67, 90, 128–134.) Following their respective medical procedures, Plaintiffs experienced serious side effects and injuries, requiring additional procedures, and causing severe and lasting pain. (Compl. ¶¶ 129–134.) Apparently, Plaintiffs' adverse side effects were caused due to the material of which Defendant's mesh products are made: composed biological and non-absorbable synthetic materials. (*See* Compl. ¶ 104.) Evidently, certain scientific evidence has indicated the possibility that those materials are biologically incompatible with human tissue, resulting in a negative immune response and inflammation of a patient's pelvic tissue. (Compl. ¶ 104.)

Consequently, on July 12, 2013, Plaintiffs jointly initiated a civil lawsuit against Defendant by filing a complaint with the Superior Court of California, County of Los Angeles. (*See* Compl.) Shortly thereafter, on August 28, 2013, Defendant removed the action to this Court, pursuant to 28 U.S.C. §§ 1441 and 1446, alleging this Court has original jurisdiction pursuant to 28 U.S.C. § 1332. (Dkt. No. 1.) Plaintiffs objects to Defendant's removal, contending jurisdiction under 28 U.S.C. § 1332 does not lie because the parties are not entirely diverse. (*See* Dkt. No. 18.) Accordingly, on September 13, 2013, Plaintiff filed a motion to remand the action to the Superior Court. (Dkt. No. 18.)

Apparently, Defendant is involved in myriad cases involving its mesh products. (*See* Dkt. No. 23, Def.'s Mot. Stay.) Thus, there is a multidistrict litigation proceeding, established in the Southern District of West Virginia, to coordinate all federal product liability actions involving Defendant's mesh products. (Def.'s Mot Stay 1.) At some point, Defendant applied to transfer this case to the multidistrict litigation proceeding, and on September 13, 2013, a conditional transfer order was issued. (Def.'s Mot. Stay 3; Awong Decl. ¶ 6, Ex. A.) Accordingly, on September 23, 2013, Defendant filed a motion to stay this case pending the transfer to the multidistrict litigation proceeding. (Dkt. No. 23.)

EXHIBIT

**8**

LINK:

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 13-06321 BRO (AJWx) | Date | October 21, 2013 |
|---|---|---|---|
| Title | SHERRY PATE, ET AL. V. BOSTON SCIENTIFIC CORP. | | |

Additionally, Defendant has moved to dismiss the complaint for failure to state a claim.  (Dkt. No. 26.)

## II.    LEGAL STANDARD

Whether a defendant may rightfully remove a case from a state court to a federal district court is entirely governed by statutory authorization by Congress.  *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979.)  Under 28 U.S.C. § 1441, a civil action may be removed to the district court only if that court has original jurisdiction over the issues alleged in the state court complaint.[1]  Because federal courts are courts of limited jurisdiction, they possess original jurisdiction only as authorized by the Constitution and federal statute.  *See, e.g.*, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

Pursuant to 28 U.S.C. § 1331, a federal district court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  A case "arises under" federal law if a plaintiff's "well-pleaded complaint establishes either that federal law creates the cause of action" or that the plaintiff's "right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties."  *Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 13 (1983).  Because a defense is not part of a plaintiff's properly pleaded claim, *see Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987), jurisdiction may not properly be based on an anticipated defense created by federal law, *see Franchise Tax Bd.*, 463 U.S. at 14.  Accordingly, "a case may not be removed to federal court on the basis of a federal defense, . . . even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case."  *Franchise Tax Bd.*, 463 U.S. at 14.

Original jurisdiction may also be established pursuant to 28 U.S.C. § 1332.  Under § 1332, a federal district court has "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and

---

[1] Although inapplicable in this case, 28 U.S.C. § 1443 provides another means for removing a state court action to a federal district court.

**EXHIBIT 8**

220

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 13-06321 BRO (AJWx) | | Date | October 21, 2013 |
|---|---|---|---|---|
| Title | SHERRY PATE, ET AL. V. BOSTON SCIENTIFIC CORP. | | | |

costs, and" the dispute is between "citizens of different states."[2]  The Supreme Court has interpreted the statute to require "complete diversity of citizenship," meaning it requires "the citizenship of each plaintiff [to be] diverse from the citizenship of each defendant." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 67–68 (1996).

Section 1441 also limits removal to cases where none of the defendants "properly joined and served . . . is a citizen of the State in which such action is brought."  28 U.S.C. § 1441(b)(2).  Nevertheless, this so-called "forum defendant rule" is a "procedural, or non-jurisdictional," limitation on removal jurisdiction, and therefore may be waived. *Lively v. Wild Oats Markets Inc.*, 456 F.3d 933, 939 (9th Cir. 2006).

In determining whether removal in a given case is proper, a court should "strictly construe the removal statute against removal jurisdiction"; "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."  *Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir. 1992).  As such, the removing party bears a heavy burden of establishing proper removal to and original jurisdiction in the district court in order to rebut the strong presumption against removal jurisdiction.  *See id.*

## III.  REQUEST FOR JUDICIAL NOTICE

A court may properly take judicial notice of: (1) material which is included as part of the complaint or relied upon by the complaint; and (2) matters in the public record. *See Tellabs Inc. v. Makor Issues & Rights Ltd.,* 551 U.S. 308, 322 (2007) ; *Lee v. City of Los Angeles,* 250 F.3d 668, 688–69 (9th Cir. 2001). Under Federal Rule of Evidence 201(b), a "judicially noticed fact must be one not subject to reasonable dispute in that it is either: (1) generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Further, a court "shall take judicial notice if requested by a party and supplied with the necessary information." *See* Fed.R.Evid. 201(d); *Mullis v. U. S. Bankr. Court for Dist. of Nevada*, 828 F.2d 1385, 1388 n. 9 (9th Cir.1987).

**EXHIBIT**

**8**

---

[2] Diversity of citizenship may also be established on other grounds that are not relevant here.  *See* 28 U.S.C. § 1332.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-06321 BRO (AJWx) | Date | October 21, 2013 |
|---|---|---|---|
| Title | SHERRY PATE, ET AL. V. BOSTON SCIENTIFIC CORP. | | |

Here, Defendant filed a Request for Judicial Notice, asking this Court to take judicial notice of exhibits A through K of the Awong Declaration. Exhibits A through K, are orders from courts throughout the United States and are properly judicially noticeable under Federal Rule of Evidence 201. Therefore, to the extent necessary to rule on the pending motions, the Court has considered all Defendants' judicially noticeable exhibits.

## IV. DISCUSSION

The Court will consider the motions in the order they were filed: first, Plaintiffs' motion to remand the action; second, Defendant's motion to stay the action pending a transfer to the multidistrict litigation proceeding; and, third, Defendant's motion to dismiss for failure to state a claim.

In their motion, Plaintiffs contend Defendants have inappropriately removed this action to federal court. (*See generally* Pls.' Mot.) They assert that jurisdiction cannot possibly be based on 28 U.S.C. § 1332 because the parties are not completely diverse. (Pls.' Mot 12:6–17.) Indeed, three of the plaintiffs are not diverse with Defendant: Plaintiffs Josephine Penza and Valerie Scheibner are residents and citizens of Massachusetts, and Plaintiff Denise Hutchinson is a resident and citizen of Delaware, (Compl. ¶¶ 9–11.) Defendant is headquartered in Massachusetts, and incorporated in Delaware. (Compl. ¶ 68.) Therefore, jurisdiction in this matter cannot properly lie based on 28 U.S.C. § 1332. And after reviewing their complaint, it is readily apparent to the Court that Plaintiffs have alleged no federal causes of action; therefore, jurisdiction cannot properly lie based on 28 U.S.C. § 1331, either.

Yet, Defendant believes this action is rightly before the Court.[3] (Def.'s Opp'n 7.) According to Defendant, the three non-diverse plaintiffs have been "fraudulently misjoined," and should therefore be severed, leaving only diverse plaintiffs. (*See* Def.'s Opp'n 7–8.) Fraudulent misjoinder is a concept originating in the Eleventh Circuit. *See Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353 (11th Cir. 1996). It appears to be

---

[3] Defendant also contends the Court should stay the action pending a possible transfer to multidistrict litigation proceedings, and thus not decide whether remand is necessary. (Def.'s Opp'n 4.) Nevertheless, if there is no subject matter jurisdiction over this case in a federal court, it cannot be heard in this Court, nor can it be heard in another federal district where the multidistrict litigation proceeds. Therefore, the Court will properly consider Plaintiffs' motion to remand before considering Defendant's motion to stay.

CIVIL MINUTES – GENERAL

EXHIBIT 8

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | **CV 13-06321 BRO (AJWx)** | | Date | October 21, 2013 |
|---|---|---|---|---|
| Title | SHERRY PATE, ET AL. V. BOSTON SCIENTIFIC CORP. | | | |

related to the legal doctrine of fraudulent joinder. *Osborn v. Metropolitan Life Ins. Co.*, 341 F. Supp. 2d 1123, 1127 (E.D. Cal. 2004). Fraudulent joinder of a non-diverse defendant is an exception to the requirement for complete diversity among the parties in a suit whose federal subject matter jurisdiction is based upon 28 U.S.C. § 1332. *Morris v. Princess Cruises Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001). Fraudulent joinder is a term of art, and does not describe plaintiff's subjective intent. *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir.1987). It exists, and therefore the non-diverse defendant is ignored for purposes of determining diversity of the parties, if the plaintiff "fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." *Id.* at 1339; *accord Ritchey v. Upjohn Drug Co.*, 139 F.2d 564, 566 (9th Cir. 1998). Because the removal statute in general is narrowly construed, thus favoring remand, the doctrine of fraudulent joinder is likewise narrowly construed: "[i]n borderline situations, where it is doubtful whether the complaint states a cause of action against the resident defendant, the doubt is ordinarily resolved in favor of the retention of the cause in state court." *Albi v. Street & Smith Publ'ns*, 140 F.2d 310, 312 (9th Cir. 1944). Indeed, a Court should reject removal, and remand the action to state court, unless the plaintiff is unable to state a claim against the non-diverse defendant, and "has no reasonable ground for supposing" it could. *Id.* Therefore, if any *possibility* exists that a plaintiff may prevail against the non-diverse defendant, fraudulent joinder must be rejected, and the case must be remanded. *Plute v. Roadway Package Sys., Inc.*, F. Supp. 2d 1005, 1008, 1012 (N.D. Cal. 2001).

Fraudulent misjoinder differs from fraudulent joinder. Under the Federal Rules of Civil Procedure, there are two requirements for "[p]ersons [to] join in one action as plaintiffs": (1) "they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of occurrences"; and (2) "any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a). Misjoinder occurs when multiple plaintiffs attempt to join separate claims that are not sufficiently related to warrant joinder. *See Geffen v. Gen. Elec. Co.*, 575 F. Supp. 2d 865, 869 (E.D. Ohio 2008). *Fraudulent* misjoinder occurs when misjoinder is "so egregious as to constitute fraudulent joinder," thus warranting a severance of the improperly joined claims. *See Tapscott* 77 F.3d at 1360. Yet the Court would note that "[m]isjoinder is not a ground for dismissing an action," and "the court

**EXHIBIT**
**8**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 13-06321 BRO (AJWx) | Date | October 21, 2013 |
|----------|------------------------|------|------------------|
| Title | SHERRY PATE, ET AL. V. BOSTON SCIENTIFIC CORP. | | |

*may* at any time, on just terms, add or drop a party," or "sever any claim against a party." Fed. R. Civ. P. 21 (emphasis added).[4]

Although the Ninth Circuit has acknowledged the concept of fraudulent misjoinder in an unpublished decision, it has not yet elected to adopt the doctrine. *Cal. Dump Truck Owners Ass'n v. Cummins Engine Co. Inc.*, 24 Fed. App'x 727, 729 (9th Cir. 2001);[5] *Osborn*, 341 F. Supp. 2d at 1127; *Caouette v. Bristol-Meyers Squibb Co.*, No. C-12-1814, 2012 WL 3283858 (N.D. Cal. Aug. 10, 2012). The Court need not decide whether to adopt the doctrine in this case. Even were fraudulent misjoinder a viable doctrine within the Ninth Circuit, in the Court's view, Defendant would not have met its heavy burden in demonstrating that removal was proper. The Court reiterates that "[f]ederal jurisdiction must be rejected if there is *any doubt* as to the right of removal in the first instance," and consequently Defendant bears a heavy burden of establishing proper removal to and original jurisdiction in this Court. *Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir. 1992) (emphasis added). And, as articulated by the Eleventh Circuit in *Tapscott*, mere misjoinder is not fraudulent joinder; it only rises to the level of fraudulent joinder if it is sufficiently egregious.[6] *Tapscott*, 77 F.3d at 1360. Therefore, whereas fraudulent joinder

---

[4] The Court notes the permissive nature of Rule 21 and finds it telling of the standard, if one actually exists, for circumstances where dropping a party or severing a claim would be mandatory. Because Rule 21 is permissive, such a standard would of necessity be very demanding.

[5] Although the Ninth Circuit did not in fact adopt the doctrine of fraudulent misjoinder in *California Dump Truck Owners Association*, it did apply the doctrine in that case: "For purposes of discussion we will assume, without deciding, that this circuit would accept the doctrines of fraudulent and egregious joinder as applied to plaintiffs." 24 Fed. App'x at 729.

[6] The Court notes Defendant's contention that misjoinder need not be egregious to be fraudulent. (Def.'s Opp'n 13–14.) And the Court is mindful of the district court cases cited by Defendant in support of its contention. (*See id.*) Yet, the Court rejects Defendant's argument in this respect. The court in *Tapscott* was clear: "We do not hold that mere misjoinder is fraudulent joinder, but we do agree with the district court that Appellants' attempt to join these parties is *so egregious as to constitute fraudulent joinder*." 77 F.3d at 1360 (emphasis added). If the Eleventh Circuit did not intend egregiousness to be the standard for fraudulent misjoinder, it could have selected one of myriad other terms to use in that sentence instead of "egregious." Moreover, the standard for fraudulent joinder is also very demanding: a court should reject removal and remand the action to state court unless the plaintiff is unable to state a claim against the non-diverse defendant, and "has no reasonable ground for supposing" it could. *Albi v. Street & Smith Publ'ns*, 140 F.2d 310, 312 (9th Cir. 1944). Therefore, logically then, the standard for fraudulent misjoinder would be similarly demanding. In any case, the Ninth Circuit has not adopted the doctrine of fraudulent misjoinder. As such, the Court is in no position to be altering the standard for a concept it would be borrowing from the Eleventh Circuit. This is especially true because, as noted above, a Ninth Circuit panel has in fact acknowledged the doctrine, without actually adopting it for the circuit, and applied it in the case before it. *Cal. Dump Truck Owners Ass'n v. Cummins Engine Co. Inc.*, 24 Fed. App'x 727, 729 (9th Cir. 2001). That panel specifically referred to the doctrine as "egregious joinder of plaintiffs." *Id.* (internal quotation marks omitted). Although the panel's decision is not binding, it is the only Ninth Circuit guidance available at this time, and the Court is unwilling to disregard it.

EXHIBIT

8

220

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 13-06321 BRO (AJWx) | | Date | October 21, 2013 |
|---|---|---|---|---|
| Title | SHERRY PATE, ET AL. V. BOSTON SCIENTIFIC CORP. | | | |

must be proven by clear and convincing evidence, *Hamilton Materials Inc. v. Dow Chemical Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007), the Court interprets the corollary, that fraudulent misjoinder must also be proven by clear and convincing evidence.

In its opposition, Defendant contends Plaintiffs' "complaint alleges absolutely no factual connection among [P]laintiffs' claims, except that each was allegedly implanted with different pelvic mesh products manufactured by [Defendant]." (Def.'s Opp'n 11.) Yet, in the Court's view, Defendant oversimplifies Plaintiffs' claims. Indeed, Plaintiffs allege Defendant breached its duty to them by: "[f]ailing to design and manufacture the Mesh Products without defects," (Compl. ¶145(a)); "[f]ailing to exercise reasonable care in testing the Mesh Products prior to [their] marketing, sale, and distribution," (Compl. ¶ 145(b)); and "[f]ailing to include adequate warnings," (Compl. ¶ 145(c)). Additionally, Plaintiffs assert that "Defendant's Mesh Products are defectively designed," and therefore Defendant is strictly liable to them. (Compl. ¶ 155.) Moreover, Plaintiffs were injured when Defendant's mesh products were implanted into them. (Compl. ¶¶ 130, 133.) Defendant fails to explain why it cannot be said that Plaintiffs are "assert[ing a] right to relief . . . with respect to or arising out of the same . . . series of transactions or occurrences." Fed. R. Civ. P. 20. Instead, it merely asserts it has manufactured many different mesh products and therefore it is not plausible that Plaintiffs' claims arise out of the same transactions or occurrences. (Def.'s Opp'n 12.) Yet, Defendant's speculation does not rise to the level of clear and convincing evidence. Even if the Court were to accept Defendant's assertion that it is not plausible—and it is not clear that accepting Defendant's assertion would be appropriate—it is still *possible* that Plaintiffs' claims do arise out of the same transactions or occurrences. Without any kind of showing that Plaintiffs' are improperly joined, Defendant's efforts do not meet the requisite clear and convincing evidence standard.

Additionally, in the Court's view, Defendant's argument in favor of severing only the non-diverse plaintiffs' claims is inconsistent when based on the doctrine of fraudulent misjoinder. According to Defendant, Plaintiffs' claims do not arise out of the same transactions or occurrences, and are therefore fraudulently misjoined. It is not clear whether severance under fraudulent misjoinder would be permissive or mandatory. But, in either case, the Court is not persuaded that Plaintiffs have improperly joined their claims in a single lawsuit.

EXHIBIT
**8**

225

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-06321 BRO (AJWx) | Date | October 21, 2013 |
|---|---|---|---|
| Title | SHERRY PATE, ET AL. V. BOSTON SCIENTIFIC CORP. | | |

Accordingly, Plaintiffs' motion to remand is GRANTED.  As such, Defendants' motion to stay and motion to dismiss are VACATED as moot.

## V. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' motion to remand. Defendant's motion to stay and motion to dismiss are VACATED as moot.

**IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer | rf |

**EXHIBIT**
**8**



**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**
312 North Spring Street, Room G-8
Los Angeles, CA 90012
Tel: (213) 894-3535

**SOUTHERN DIVISION**
411 West Fourth Street, Suite 1053
Santa Ana, CA 92701-4516
(714) 338-4750

**EASTERN DIVISION**
3470 Twelfth Street, Room 134
Riverside, CA 92501
(951) 328-4450

**TERRY NAFISI**
District Court Executive and
Clerk of Court

Date: October 23, 2013

Name & Address
Los Angeles County Superior Court
111 N. Hill Street
Los Angeles, CA 90012

Re:   Case Number:  CV12-6321-BRO(AJWx)

        Previously Superior Court Case No.  BC515037

        Case Name:  Sherry Pate -v- Boston Scientific Corporation

Dear Sir / Madam:
        Pursuant to this Court's ORDER OF REMAND issued on October 21, 2013        , the
above-referenced case is hereby remanded to your jurisdiction.

        Attached is a certified copy of the ORDER OF REMAND and a copy of the docket sheet from this
Court.

        Please acknowledge receipt of the above by signing the enclosed copy of this letter and returning it
to our office.  Thank you for your cooperation.

                                        Respectfully,

                                        Clerk, U. S. District Court

                                By: Brent Pacillas

                                        Deputy Clerk   213-894-

                                        ☒ Western   ☐ Eastern   ☐ Southern Division

*cc: Counsel of record*

===========================================================================================

Receipt is acknowledged of the documents described herein.

                        **EXHIBIT**                    Superior Court

                        **8**           By:

Date                                    Deputy Clerk

                                        227

CV - 103 (09/08)        **LETTER OF TRANSMITTAL - REMAND TO SUPERIOR COURT (CIVIL)**

Thomas v. Girardi, SBN 36603
Amy F. Solomon, SBN 140333
Amanda H. Kent, SBN 258298
GIRARDI | KEESE
1126 Wilshire Boulevard
Los Angeles, California 90017
Telephone: (213) 977-0211
Facsimile: (213) 481-1554

Kurt B. Arnold Texas SBN 24036150
Jason A. Itkin Texas SBN 24032461
Noah M. Wexler SBN 24060816
Caj D. Boatright SBN 24036237
ARNOLD & ITKIN LLP
6009 Memorial Drive
Houston, Texas 77007
Telephone: (713) 222-3800
Facsimile: (713) 222-3850

J. Steve Mostyn SBN 00798389
The Mostyn Law Firm
3810 West Alabama Street
Houston, TX 77027
Telephone: (713) 861-6616
Facsimile: (713) 861-8084
Attorney(s) For: Plaintiff(s)

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| XOCHIL T ROBINSON, et al | CASE NO. 2:14-cv-00899-SVW-AGR |
| | [Assigned to Hon. Stephen V. Wilson] |
| Plaintiff(s), | |
| | **NOTICE OF MOTION AND MOTION** |
| vs. | **TO REMAND AND REQUEST FOR** |
| | **EXPEDITED CONSIDERATION;** |
| JOHNSON & JOHNSON, et al | **MEMORANDUM OF POINTS AND** |
| | **AUTHORITIES; [PROPOSED] ORDER** |
| Defendant(s). | |
| | DATE:      March 17, 2014 |
| | TIME:      1:30 P.M. |
| | CTRM:      6 |
| | JUDGE      Hon. Stephen V. Wilson |

**EXHIBIT**

**9**

MOTION TO REMAND

# **TABLE OF CONTENTS**

I.    INTRODUCTION.................................................................................1

II.   FACTS ............................................................................................3

III.  ARGUMENTS AND AUTHORITIES...................................................7

    1.    The jurisdictional analysis is a threshold issue that merits immediate consideration.................................................................7

    2.    Since August 2013, five Central District Court Judges have remanded multi-plaintiff vaginal mesh cases implicating the precise jurisdictional issues raised here............................................12

    3.    Diversity jurisdiction is lacking based on the face of Plaintiffs' Original Complaint .....................................................................14

    4.    The fraudulent misjoinder doctrine – the primary basis for Defendants' removal of this case – has not been adopted by the Ninth Circuit or the Central District of California and is inapplicable ........................................................................14

    5.    Even assuming the fraudulent misjoinder doctrine is viable here, Defendants' cannot satisfy their heavy burden to prove that the New Jersey Plaintiffs were fraudulently misjoined and removal is proper .........................................................................17

        a.    There is a strong presumption against removal jurisdiction and Defendants bear a heavy burden to prove that removal is proper........................................................18

        b.    Defendants cannot satisfy their heavy burden to prove that the out-of-state Plaintiffs were fraudulently misjoined ........................................................................19

IV.   CONCLUSION ...............................................................................24

**EXHIBIT**

**9**

MOTION TO REMAND

## TABLE OF AUTHORITIES

**Cases**

*Aaron v. Merck & Co., Inc.,*
  2005 WL 5792361 (C.D. Cal. July 26, 2005) ................................................5,16

*Abrego v. Dow Chem. Co.,*
  443 F.3d 676  (9th Cir. 2006) ................................................18

*Alaniz v. Merck & Co., Inc.,*
  2005 WL 6124308 (C.D. Cal. June 3, 2005) ................................................16

*Albright v. Gates,*
  362 F.2d 928 (9th Cir. 1966). ................................................21

*Atwell, et al. v. Boston Scientific Corporation,*
  2013 WL 136471 (E.D. Mo. Jan. 10 2013) ................................................ 9, 21, 23

*Brannen, et al. v. Ethicon, Inc., et al.,*
  4:12CV1429 RWS (E.D. Mo. Aug. 14, 2012) ................................9, 10, 20, 21

*Calif. ex. rel. Lockyer v. Dynegy, Inc.,*
  375 F.3d 831 (9th Cir. 2004) ................................................18

*Cauoette v. Bristol-Myers Squibb,*
  2012 WL 3283858 (N.D. Cal. Aug. 10, 2012) ................................................19

*Duncan v. Stuetzle,*
  76 F.3d 1480 (9th Cir. 1996) ................................................18

*Flores v. Chevron Corp.,*
  2011 WL 2160420 (C.D. Cal May 31, 2011) ................................................4,15

*Gaus v. Miles, Inc.,*
  980 F.2d 564 (9th Cir. 1992) ................................................18

*Goodwin v. Kojian,*
  2013 WL 1528966 (C.D. Cal. Apr. 12, 2013). ................................11,15,16,17

*Hamilton Materials, Inc. v. Down Chem. Corp.,*
  494 F.3d 1203 (9th Cir.2007) ................................................18

*HVAC Sales, Inc. v. Zurich Am. Ins. Grp.,*
  No. 04–03615 RMW, 2005 WL 2216950 (N.D. Cal. July 25, 2005) ................................16

*In re Prempo Products Liability Litigation,*
  591 F.3d 613 (8th Cir. 2010) ................................................5,19

*League to Save Lake Tahoe v. Tahoe Regional Planning Agency,*
  558 F.2d 914 (9th Cir. 1977) ................................................20

*Lincoln Property Co. v. Roche,*
  546 U.S. 81 (2005) ................................................14

*Moore v. New York Cotton Exchange,*
  270 U.S. 593  (1926) ................................................21

**EXHIBIT**

**9**

ii

MOTION TO REMAND

*Moore–Thomas v. Alaska Airlines, Inc.*,
   553 F.3d 1241 (9th Cir. 2009) .................................................................18
*N.C. ex rel. Jones v. Pfizer, Inc.*,
   2012 WL 1029518 (N.D. Cal. March 26, 2012) ..............................16
*Osborn v. Metro Life Ins. Co.*,
   341 F.Supp.2d 1123 (E.D. Cal. 2004) ..............................................16, 17
*Padilla v. AT & T Corp.*,
   697 F.Supp.2d 1156 (C.D.Cal.2009) ...............................................18
*Perry v. Luu*,
   2013 WL 3354446 (E.D. Cal. July 3, 2013) ....................................10,15,17
*Sutton v. Davol, Inc.*,
   251 F.R.D. 500 (E.D. Cal. May 28, 2008) .......................................16
*Tapscott v. MS Dealer Service Corp.*,
   77 F.3d 1353 (11th Cir. 1996) ...........................................................5,16
*United Mine Workers of America v. Gibbs*,
   383 U.S. 715 (1966) ...........................................................................20


**Statutes**
28 U.S.C. § 1332(c)(1) .........................................................................14
28 U.S.C. § 1407 ..................................................................................5
Cal. Civ. Code, § 378 ...........................................................................15,19,20


**Rules**
 Fed. R. Civ. P. 20 ................................................................................15


**Other Authorities**
*Federal Practice and Procedure*, § 1653, at 415 (3d ed. 2001)................20

EXHIBIT

**9** iii

MOTION TO REMAND

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Plaintiffs' simple, straightforward motion to remand should be granted because:

1) Complete diversity is plainly lacking as some Plaintiffs and some Defendants are residents of the same states;

2) Since August 2013, five Central District Judges, including the Chief Judge, have remanded near identical multi-plaintiff vaginal mesh complaints containing the exact same claims and allegations, and implicating the precise jurisdictional issue raised here (in one instance, *sua sponte*);

3) The fraudulent misjoinder doctrine – Defendants' primary basis for removal – has not been adopted by the Ninth Circuit or the Central District of California and is inapplicable; and

4) Even if the doctrine is viable here, Defendants do not come close to satisfying their heavy burden to prove that joinder of the non-diverse Plaintiffs is so "egregious" that it "borders on a sham." Rather, joinder of Plaintiffs' claims is highly appropriate under both the California and federal permissive joinder statutes.

Plaintiffs also respectfully request that the jurisdictional issue be decided on an expedited basis, as a threshold matter, pursuant to U.S. Supreme Court, Ninth Circuit, and Central District of California case law. Plaintiffs therefore respectfully request this Court to remand the case to the state court in which it was appropriately filed on an expedited basis.

///

///

///

///

///

EXHIBIT

**9** 1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Each of the sixty-seven Plaintiffs in this case is a female who suffered from pelvic organ prolapse and/or stress urinary incontinence. Each of sixty-seven Plaintiffs was vaginally implanted with a surgical mesh kit designed, manufactured, marketed, and sold by Defendants to treat her condition. Each of the sixty-seven Plaintiffs has experienced severe and debilitating problems associated with the surgical mesh kit implanted in her.

Facing similar injuries caused by the same defective products produced by a common manufacturer, Plaintiffs joined together to file this suit. Ten Plaintiffs are from California. More importantly for purposes of this motion, three Plaintiffs are from New Jersey, the state of corporate residence for Johnson and Johnson and Ethicon, Inc. Diversity jurisdiction is clearly lacking. Nonetheless, Defendants removed this case on that very basis, alleging that all Plaintiffs were "fraudulently misjoined," a doctrine that has not been adopted by the Ninth Circuit or this District. However, even if the doctrine is viable here, Defendants do not, because they cannot, satisfy their heavy burden to prove that Plaintiffs' joinder is "egregious." In fact, given the significant legal and factual issues common to all Plaintiffs, joinder under Federal of Civil Procedure 20 and California Code of Civil Procedure § 378 is entirely appropriate.

The true motive behind Defendants' Notice of Removal in light of the clear absence of diversity jurisdiction comes into focus when considering their simultaneous

**EXHIBIT**

**9**    2

---

MOTION TO REMAND

233

efforts to transfer it to the MDL - Defendants' end game.  Indeed, Defendants' strategy is to convince this Court to delay ruling on the threshold jurisdictional matter prior to the JPML's transfer determination.  Plaintiffs respectfully submit that that the Court should instead follow the guidance of the Supreme Court and the Ninth Circuit, promptly evaluate whether it has subject matter jurisdiction (which is lacking), and remand this case to state court.

## II.
## FACTS

On December 30, 2013, sixty-seven Plaintiffs who suffered from POP and/or SUI, and had been vaginally implanted with the same surgical mesh kits designed, manufactured, marketed, and sold by the same company[1], joined together to file this suit. *See* Plaintiffs' Original Complaint at ¶¶91-97, 105-131.  Consistent with the FDA's determination that the "serious complications" associated with the vaginal implantation of Defendants' surgical mesh kits are "not rare" and "mesh used in transvaginal mesh repair introduces risks not present in traditional non-mesh surgery," each Plaintiff was seriously injured as a result of her implant. *See id.* at ¶¶105-42.  The liability facts underlying each Plaintiff's claims are identical. *See id.*; *see also* ¶¶91-97.  Defendants' failure to adequately design, test, label, and warn about their surgical mesh products, underpinned by Defendants' knowledge that such products should not be vaginally implanted, is common to each Plaintiff's claims. *See id.*; *see also* ¶¶105-31; 145-215.  As such, the liability

---

[1]All of the Defendants share a direct corporate relationship. *See* Plaintiffs' Original Complaint at ¶¶70-76.

**EXHIBIT**

**9** ₃

discovery in this case for all Plaintiffs will be identical. *See id.* at ¶96. Plaintiffs' injuries and damages also involve common questions of law and fact: each Plaintiff suffered from POP and/or SUI, each was vaginally implanted with Defendants' surgical mesh kit, each suffered serious complications following implantation, and each of their injuries and damages arose from and was caused by the same conduct of Defendants. *See id.* at ¶¶105-131, 145-215.

Ten Plaintiffs reside in California. *See id.* at ¶¶3-12. Three Plaintiffs reside in New Jersey, as does J&J and Ethicon. *See id.* at ¶¶13-15, 70-76. Defendants concede as much. But, despite the clear absence of diversity between the parties, Defendants removed the case on diversity grounds, contending that Plaintiffs were "fraudulently misjoined" because their claims do not involve common questions of law and fact, and do not arise out of the same transaction, occurrence, or series of transactions or occurrences. (Doc. # 1 at pp.6-24).[2] The fraudulent misjoinder doctrine originated in the Eleventh Circuit, has not been adopted by the Ninth Circuit or the Central District of California, and can be established only by showing that the joinder of Plaintiffs is so "egregious" that it "borders on a sham." *See Flores v. Chevron Corp.*, 2011 WL 2160420, at **4-5 (C.D. Cal May 31, 2011) (acknowledging that the Ninth Circuit has "neither discussed nor adopted the

---

[2] Defendants even attempt to parse their fraudulent joinder argument into two separate jurisdictional concepts, in essence, getting two bites at the apple. However, both hinge squarely on whether Defendants can satisfy their heavy burden to prove that the plaintiffs were improperly joined, a task they cannot achieve – particularly in light of their repeated representations to the JPML that the claims should be consolidated into one proceeding.

EXHIBIT

**9**

4

Eleventh Circuit's holding in *Tapscott*," and refusing to sever parties based on the doctrine); *Aaron v. Merck & Co., Inc.*, 2005 WL 5792361, at *3 (C.D. Cal. July 26, 2005) (holding that "the Court declines to adopt and apply the theory set forth in *Tapscott* to this case"); *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996); *In re Prempo Products Liability Litigation*, 591 F.3d 613, 620-24 (8th Cir. 2010).

Ironically, and directly contrary to their fraudulent misjoinder argument, Defendants' are simultaneously attempting to transfer Plaintiffs' claims to the Ethicon transvaginal mesh MDL in West Virginia, in essence joining Plaintiffs' case with other vaginal mesh cases due to the common issues among the Plaintiffs' claims, the near identical discovery they entail, and the judicial efficiencies created by litigating them together. *See* Defendants' Response to Plaintiffs' Motion for Transfer to the Southern District of West Virginia Pursuant to 28 U.S.C. § 1407 (Doc. # 39 in MDL 2327 – *In re Ethicon, Inc. Women's Pelvic Repair Products Liability Litigation*) attached hereto as Exhibit A at ¶¶2-5, 6 (exhibits omitted). When that MDL was formed, Defendants admitted that the "plaintiffs have asserted similar claims in all actions involving Ethicon's pelvic mesh products." *Id.* at ¶2. More importantly, Defendants took the position that consolidation of the claims

> will promote the just and efficient conduct of these actions, will serve the convenience of all parties and witnesses and will promote the interests of justice. The transfer of these cases will conserve judicial resources, reduce litigation costs, avoid potentially inconsistent retrial scheduling orders and substantive rulings, and will eliminate unnecessary duplicative discovery.

EXHIBIT

**9** 5

MOTION TO REMAND

236

*See* Exhibit A at ¶6 (admitting to plaintiffs' allegations in ¶6 their motion to transfer (Doc. #1 in MDL 2327), which is attached as Exhibit B) (exhibits omitted); *see also* Defendant Ethicon's Response in Opposition to Motion to Vacate CTO-1 as to Poole (Doc. # 168 in MDL 2327) attached hereto as Exhibit C at p.2 (contending that the mesh cases against Ethicon share common questions of law and fact and their consolidation will promote the just and efficient conduct of the litigation). Defendants' pleadings – when attempting to establish the MDL and transfer cases to it -- run directly counter to their contention in the Notice of Removal that "there is no apparent connection among Plaintiffs' claims, beyond the fact they allege they were implanted at some point in time with one or more Mesh Products" and "joinder of these various claims will not serve to promote the efficient resolution of these claims." (Doc #1 at pp.18-19). Defendants' diametrically opposed arguments cannot be squared and expose the weakness of their fraudulent misjoinder argument.

Defendants' real strategy is clear – seek to delay this Court's jurisdictional analysis in hopes that the case will be transferred to the MDL first. In fact, before Plaintiffs were even allowed to file the instant motion to remand under the local rules of this Court, Defendants had already conceded that they would promptly file a tag-along notice with the JPML, hoping to obtain transfer to the MDL before this Court has a chance to determine if

**EXHIBIT**

**9**.

diversity jurisdiction exists.[3]  With diversity jurisdiction plainly lacking, Plaintiffs file this Motion to Remand along with a request to consider the remand issue on an expedited basis.  Plaintiffs respectfully request the Court to consider and grant their Motion to Remand on an expedited basis, and send the case back to the state court in which it was properly filed.

## III.

## ARGUMENTS AND AUTHORITIES

1.    **The jurisdictional analysis is a threshold issue that merits immediate consideration.**

Plaintiffs respectfully submit that their motion to remand should be decided as a threshold issue according to the U.S. Supreme Court, the Ninth Circuit, and District Courts around the country.  It is axiomatic that "[w]ithout jurisdiction, [a] court cannot proceed at all in any case. Jurisdiction is power to declare the law, and when it ceases to exist, **the _only_ function remaining to the court is that of announcing the fact and dismissing the cause.**" *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94 (1998) (emphasis added). The requirement that jurisdiction be established as a threshold matter "spring[s] from the nature and limits of the judicial power of the United States[,]" and is "inflexible and without exception." *Id.* (quoting *Mansfield, C. & L.M.R. Co. v. Swan,* 111 U.S. 379, 382

---

[3] To further support their efforts to delay adjudication of the motion to remand, Defendants have also expressed their intent to file a tenuous motion to stay, which as set forth in Subsection 1. below, should be denied immediately so that the threshold jurisdictional matter can be determined on an expedited basis.

EXHIBIT

**9**
7

(1884)).  Based on these principles, "federal courts normally must resolve questions of subject matter jurisdiction before reaching other threshold issues." *Potter v. Hughes*, 546 F.3d 1051, 1061 (9th Cir. 2008); *see also Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994) (holding that since district courts are "courts of limited jurisdiction," they have an obligation to assure themselves of jurisdiction); *Gen. Atomic Co. v. United Nuclear Corp.*, 655 F.2d 968, 968–69 (9th Cir. 1981).

This is true even when a defendant has a removed a case to federal court and is seeking transfer of the matter to a federal MDL.  As the JPML has established in its own procedural rules, the presence of a conditional transfer issued by the panel "does not affect or suspend orders and pretrial proceedings in any pending federal district court action and does not limit the pretrial jurisdiction of that court." Rule of Procedure 2.1(d) of the United States Judicial Panel on Multidistrict Litigation.  The Panel has conveyed the import of its rules to federal district courts around the country, explaining that district courts are free to rule on motions to remand prior to a transfer order becoming effective: "the Panel would like to emphasize that your jurisdiction continues until transfer to the MDL – if the Panel so orders – becomes effective.  **You should feel free to rule on any pending motions, including, but not limited to motions for remand to state court.**" *T.F., et al. v. Pfizer, Inc.*, 2012 WL 3000229, at fn. 3 (E.D. Mo. July 23, 2012) (letter from the Chairman of the JPML [The Honorable John G. Heyburn, II] to the Honorable Judge Perry of the Eastern District of Missouri) (emphasis added).

**EXHIBIT**

**9**

With this guidance, federal courts in California and elsewhere have refused to delay remand rulings pending potential transfer orders to a federal MDL. For instance, in *T.F., et al. v. Pfizer*, Judge Perry explained:

> I will not stay ruling on remand.   "A putative transferor court need not automatically postpone rulings on pending motions, or in any way generally suspend proceedings, merely on grounds that an MDL transfer motion has been filed." *Tortola Restaurants, L.P. v. Kimberly-Clark Corp.*, 987 F.Supp. 1186, 1188-89 (N.D. Cal 1997).   "This is especially true where, as here, the pending motion is one for remand and goes to the Court's subject matter jurisdiction." *See Thompson v. Apple, Inc.*, 2011 WL 2671312, *4 (E.D. Ark. July 8, 2011). "In this case, the court believes the best course is to decide the motion to remand because judicial economy will best be served by addressing the remand issue as it will facilitate litigation in the appropriate forum." *Kohl v. American Home Products Corp.*, 78 F.Supp. 2d 885, 888 (W.D. Ark. 1999) (internal quotation marks omitted).   As another district court in this circuit has commented, "This Court is in the best position to determine its subject matter jurisdiction....To stay the case pending a decision by the MDL Panel would waste judicial and other resources and would not promote the efficient administration of justice." *Stone v. Baxter Intern., Inc.*, 2009 WL 236116, *2 (D. Neb. Jan. 30, 2009).

2012 WL 3000229, at *1.  Based in part on the letter Judge Perry received from the JPML Chairman cited above, she further explained:

> Pfizer argues that transferor courts "regularly decline" to consider motions to remand in cases pending transfer to the MDL court upon the insistence of the JPML.   This is contrary to my experience, not only as a transferee judge presiding over other MDL actions, but also as the judge in this case.

*Id.*, at fn. 3.  Numerous courts presiding over transvaginal mesh cases involving multiple plaintiffs like this matter have echoed the logic and ruling in *T.F., et al. v. Pfizer. See e.g.*, *Atwell et al. v. Boston Scientific Corp*, 2013 WL 136471 (E.D. Mo. Jan. 10, 2013) (remanding a transvaginal mesh case filed by 94 plaintiffs instead of staying it at the

**EXHIBIT**

**9**

request of the defendant, who simultaneously sought a transfer to the federal MDL) (Jackson, J.); *Brannen et al. v. Ethicon, Inc. et al.*, Case No. 4:12-CV-1429 RWS (E.D. Mo. Aug 14, 2012) (remanding a transvaginal mesh case filed by 83 plaintiffs from 24 states rather than staying the case pending a potential transfer to the federal MDL) (Sippel, J.)[4]; (*Perry v. Luu*, 2013 WL 3354446, at *3, (E.D. Cal. July 3, 2013) (Thurston, Mag. J) (in a transvaginal mesh case against Johnson & Johnson and Ethicon, refusing to delay remanding the case for lack of subject matter jurisdiction despite a pending motion to transfer the case to the federal MDL).[5]  In fact, Judge Tucker of the Central District of

---

[4] It bears mention that *Atwell* and *Brannen* were ultimately re-removed on CAFA grounds when the attorney that filed them and several other vaginal mesh cases attempted to consolidate all of the cases (which, collectively, included more than 100 plaintiffs) for all purposes, including trial, following remand to various state courts. *See Atwell v. Boston Scientific Group*, --F.3d--, 2013 WL 6050762, at *6 (8th Cir. 2013);*Brannen v. Ethicon*, 2013 WL 6858496, at **2-3 (E.D. Mo. Dec. 30, 2013).  Both opinions make clear that only the post-remand effort to consolidate the various cases for all purposes, rather than just pre-trial purposes, brought them within the auspices of CAFA.  As such, the prior remand orders were proper, and provide guidance here.

[5] Courts in other types of cases also routinely acknowledge that a defendants' motion to stay pending transfer to an MDL should not thwart a determination of whether the court has subject matter jurisdiction. *See e.g.*, *Craft v. United Ins. Co. of America*, 2002 WL 32509283 at *1 (S.D. Miss. Jan. 17, 2002) ("The principal recognized in these cases is that if the federal court has no jurisdiction over a matter, then it can neither stay it nor transfer it to the MDL.  Since the district court is invested with the same authority to consider federal jurisdiction as the MDL, these cases advocate disposing of the jurisdictional issue at the outset"); *Moton v. Bayer Corp.*. 2005 WL 1653731, at *2 (S.D. Ala. July 8, 2005) ("Many courts have concluded that motions to remand should always, or usually, be resolved prior to transfer."); *Bell v. Prudential Ins. Co.*, 1997 WL 33708408, at *4 (S.D. Miss. 1997) (determining that "[b]ecause the Motion to Remand challenges the subject matter jurisdiction of this Court, the Court concludes that the Motion to Remand must be considered initially to determine whether [blank], or any of the federal district court, has jurisdiction to hear this matter."); *see also Rivers v. Walt Disney Co.*, 980 F.Supp. 1358,

**EXHIBIT 9**

California ruled just a few short months ago in a transvaginal mesh case that the threshold jurisdictional issue implicated by the plaintiffs' motion to remand should be decided immediately, rather than staying the case pending potential transfer to the federal MDL in West Virginia. *See Goodwin v. Kojian*, 2013 WL 1528966, at *3 (C.D. Cal. Apr. 12, 2013). In *Goodwin*, the Court pointed out that the jurisdictional analysis in a vaginal mesh case involving allegations of fraudulent misjoinder is not sufficiently difficult to delay ruling on the motion to remand. *See id.* at *2. The *Goodwin* Court further noted that:

> a determination of the fraudulent misjoinder issues raised in this case requires an application and analysis of Ninth Circuit law, and this Court is in as good a position, if not better, to apply the law of this circuit than a court in West Virginia.

*See id.* Finally, the Court aptly recognized that the appropriate course of action for a defendant in this circumstance is to move to sever in the state court proceeding first, and then remove the case to federal court only if the non-diverse plaintiffs are deemed to be improperly joined. *See id.* at *5. Plaintiffs respectfully submit that ruling on the remand immediately is also the proper course of action here.[6]

---

1360 (C.D.Cal.1997) (recognizing that courts "should not automatically stay discovery, postpone rulings on pending motions, or generally suspend further rulings upon a parties' motion to the MDL Panel for transfer and consolidation.").

[6] Plaintiffs are familiar with and respect the Court's Standing Order and the Local Rules of this District. As such, Plaintiffs have set this motion for hearing in accordance with both. However, Plaintiffs respectfully request expedited consideration of the jurisdictional issue due to Defendants' efforts to delay it prior to a potential transfer to the MDL. Plaintiffs submit that the facts and law strongly support remand. Thus, if the Court is not inclined to hear the motion prior to the date on which it is currently set, Plaintiffs request that it be adjudicated on the papers on an expedited basis.

EXHIBIT

9

**2.    Since August 2013, five Central District Court Judges have remanded multi-plaintiff vaginal mesh cases implicating the precise jurisdictional issues raised here.**

Five Central District Judges in the last six months have remanded multi-plaintiff vaginal mesh cases filed by Plaintiffs' counsel that, just like this case, contain claims of negligence, negligence per se, design defect, manufacturing defect, failure to warn, breach of implied warranties, and gross negligence:

-*Muller, et al. v. American Medical Systems, et al.*; 2:13-cv-06276 PA (RZ), which involved the claims of 66 plaintiffs from various states. *See* Remand Order attached hereto as Exhibit D

-*Howe, et al. v. Coloplast Corp., et al.*, 2:13-cv-06344 GHK (PLA), which involved the claims of 35 plaintiffs from various states. *See* Remand Order attached hereto as Exhibit E

-*Dekalb, et al. v. C.R. Bard, et al.*; 2:13-cv-06308 DMG (PJW), which involved the claims of 93 plaintiffs from various states. *See* Remand Order attached hereto as Exhibit F

-*Mauck, et al. v. Boston Scientific Corp, et al.*; 2:13-cv-06343 GW (JEM), which involved the claims of 73 plaintiffs from various states. *See* Remand Order attached hereto as Exhibit G

-*Pate, et al. v. Boston Scientific Corp., et al.*; 2:13-cv-06321 BRO (AJW), which involved the claims of 65 plaintiffs from various states. *See* Remand Order attached hereto as Exhibit H

In each instance, the district court immediately addressed the jurisdictional issue (whether the non-diverse plaintiffs were fraudulently misjoined) and found that the defendant failed to satisfy its heavy burden to establish removal jurisdiction. The same result is merited here.

**EXHIBIT**

**9**

The simplicity of the jurisdictional issue raised by Defendants' removal papers and the efficiency with which it can be handled pervades the five remand orders set forth above. In *Muller*, in which AMS removed the case on the exact same ground Defendants' assert here, Judge Anderson remanded the case *sua sponte* only two days after it was filed because the neither the Ninth Circuit nor the Central District has adopted the fraudulent misjoinder doctrine, and even if they had, AMS clearly failed to satisfy its heavy burden to prove that the non-diverse plaintiffs were fraudulently misjoined. *See* Exhibit D at 2-3. Judge King, who remanded *Howe*, expressly declined to adopt the fraudulent misjoinder doctrine. *See* Exhibit E at 1. Equally important, he pointed out that "[t]o stay this case pending a decision by the MDL Panel would waste judicial and other resources and would not promote the efficient administration of justice." *Id*. The remand order went on to recognize that "a determination of the fraudulent misjoinder issues raised in this case requires an application and analysis of Ninth Circuit law, and this Court is in as good a position, if not better, to apply the law of this circuit than a court in West Virginia." *Id*. In *Dekalb*, a similar conclusion was reached by Judge Gee, who held:

> [t]he Court does not consider the jurisdictional issue in this action to be 'difficult to determine' or outside the 'mine run of cases,' and thus Supreme Court and Ninth Circuit precedent suggest that the Court should consider Plaintiffs' Motion to Remand first. Moreover, even if this Court were to apply the *Conroy* test, it would not be necessary to proceed beyond the first step as the jurisdictional issue does not appear 'factually or legally difficult.'



**EXHIBIT**

**9**

Exhibit F at 4.  The Courts in *Mauck* and *Pate*, which likewise hinged on the defendants' fraudulent misjoinder argument, both refused to stay the cases, and instead, promptly remanded the matters to state court. *See* Exhibit G at 3; Exhibit H at 8-9, fn. 3.

Plaintiff respectfully submits that this case, like *Muller*, *Howe*, *Dekalb*, *Mauck*, and *Pate* should be immediately remanded to the court in which it was filed as diversity jurisdiction is clearly lacking.

**3.   Diversity jurisdiction is lacking based on the face of Plaintiffs' Original Complaint.**

Under 28 U.S.C. § 1332(c)(1), complete diversity must exist between the parties in order for federal diversity jurisdiction to apply. *See Lincoln Property Co. v. Roche*, 546 U.S. 81, 84 (2005) (recognizing that "Defendants may remove an action on the basis of diversity [only] if there is complete diversity between all named plaintiffs and all named defendants, and no defendant is a citizen of the forum state."). Here, it is beyond dispute that three Plaintiffs and the Defendants reside in New Jersey. *See* Plaintiffs' Original Complaint at ¶¶3-12, 70-76; (Doc. #1 at ¶¶12-13).  As such, the face of Plaintiffs' complaint conclusively establishes the absence of diversity jurisdiction and the necessity of a remand.

**4.   The fraudulent misjoinder doctrine – the primary basis for Defendants' removal of this case – has not been adopted by the Ninth Circuit or the Central District of California and is inapplicable.**

Faced with an obvious lack of diversity, Defendants seek to employ the fraudulent misjoinder doctrine to argue that the non-diverse Plaintiffs should not be considered in the

**EXHIBIT**

**9**

jurisdictional analysis. However, the fraudulent misjoinder doctrine has not been adopted by the Ninth Circuit or Courts this District, and is inapplicable.

Fraudulent (or procedural) misjoinder is a doctrine first articulated by the Eleventh Circuit in *Tapscott*, 77 F.3d at 1360. Fraudulent misjoinder is distinct from the traditional doctrine of fraudulent joinder. *See Goodwin v. Kojian*, 2013 WL 1528966, at *3 (C.D. Cal. Apr. 12, 2013). Whereas traditional fraudulent joinder rests on whether the plaintiff's claim against a non-diverse defendant has any merit, fraudulent misjoinder swings on the factual commonality among the plaintiff's claims and determines if they are sufficient to satisfy the standards set forth in the applicable joinder statute (FED. R. CIV. P. 20 or Cal. C.C.P. § 378, which are virtually identical). *See id.*; *see also Perry v. Luu*, 2013 WL 3354446, at *4 (E.D. Cal. July 3, 2013) (Thurston, Mag. J) (explaining that "according to *Tapscott*, fraudulent misjoinder examines the facts to determine whether plaintiffs' claims "aris[e] out of the same transaction, occurrence, or serious of transactions or occurrences" or have any "real connection," while fraudulent joinder requires an examination of the merits to determine if the plaintiff failed to state a claim against a non-diverse defendant.").

The Ninth Circuit has not adopted the fraudulent misjoinder doctrine. *See Goodwin*, 2013 WL 1528966, at *4. And, Plaintiffs can find no case in the Central District of California in which the doctrine has been adopted or applied to establish federal jurisdiction. *See id.*; *see also Flores v. Chevron Corp.*, 2011 WL 2160420, at **4-5 (C.D.

**EXHIBIT**

**9**15

Cal May 31, 2011) (acknowledging that the Ninth Circuit has "neither discussed nor adopted the Eleventh Circuit's holding in *Tapscott*," and refusing to sever parties based on the doctrine); *Aaron v. Merck & Co., Inc.*, 2005 WL 5792361, at *3 (C.D. Cal. July 26, 2005) (holding that "the Court declines to adopt and apply the theory set forth in *Tapscott* to this case"); *Alaniz v. Merck & Co., Inc.*, 2005 WL 6124308, at *3 (C.D. Cal. June 3, 2005) (same).[7]   Rather, in each of these cases, the Court acknowledged that the Ninth Circuit has not adopted the doctrine, and then either rejected the doctrine outright or held that even if it were viable, Plaintiffs' joinder practice did not trigger it. *See id.*   In *Goodwin*, for instance, the Court recognized that the doctrine subverts the appropriate timing of the severance determination:

> The Court notes that in a case raising issues such as this, the better and most efficient course of action would have been for Defendant to seek relief form the alleged misjoinder in state court, "and then, if that court severed the case and diversity then existed, [Defendant] could seek removal of the cause to federal court."

---

[7] At least one district court in California – the Eastern District – has reached inconsistent positions on whether the doctrine applies. *See e.g., Osborn v. Metropolitan Life Ins. Co.*, 341 F.Supp.2d 1123, 1127 (E.D.Cal.2004) (declining to apply the fraudulent misjoinder doctrine and explaining that it adds unnecessary complexity to the procedural joinder analysis); *N.C. ex rel. Jones v. Pfizer, Inc.*, 2012 WL 1029518 at *3 (N.D. Cal. March 26, 2012) (holding that even if it were to adopt *Tapscott*, the doctrine would not apply to the case before it involving claims against drug manufacturers/sellers and healthcare providers); *HVAC Sales, Inc. v. Zurich Am. Ins. Grp.*, No. 04–03615 RMW, 2005 WL 2216950 at *6 (N.D. Cal. July 25, 2005) (same). *But see, e.g., Sutton v. Davol, Inc.* 251 F.R.D. 500, 505 (E.D. Cal. May 28, 2008) (finding healthcare provider defendants were fraudulently misjoined with the manufacturing defendants in a case arising out of implantation of a medical device).

**EXHIBIT**

**9**6

2013 WL 1528966, at *5 (citing *Osborn v. Metro Life Ins. Co.*, 341 F.Supp.2d 1123, 1127

(E.D. Cal. 2004)).

In *Perry*, Magistrate Judge Thurston echoed Judge Tucker's rationale in *Goodwin* by providing a poignant analysis of the flawed logic underlying the doctrine:

> The Court finds the concept of fraudulent misjoinder to be faulty. **The Court is confounded by the concept's circular logic in that it requires the Court first – in full recognition of the lack of diversity jurisdiction – sever part of the case and only then find it has jurisdiction.** However, the authority to sever misjoined claims or [plaintiffs] under Rule 20 presumed the Court has jurisdiction to act.

*Perry*, 2013 WL 3354446, at *5 (emphasis added). The *Perry* Court went on to explain:

> **Likewise, as in *Osborn*, the Court finds no need to expand removal jurisdiction in that there is no showing that the state court is incompetent to determine the issue of misjoinder. Defendants fail to offer a sufficient explanation why they could not seek severance in state court and then remove the severed portion of the litigation to federal court.** Finally, the Court finds that the question of expanding removal jurisdiction based upon the novel concept of fraudulent misjoinder is more appropriately presented to Congress. Therefore, in keeping with the requirement that any doubts about federal jurisdiction be resolved in favor of remand, the Court has little hesitation in concluding that the question of misjoinder in this case should be resolved in the state court.

*Id.* (internal Ninth Circuit citations omitted) (emphasis added).

Plaintiffs respectfully submit that this Court, like the Ninth Circuit and other Courts in this District, should decline to adopt or apply the fraudulent misjoinder doctrine and return the case to the state court in which it was filed.

**5.     Even assuming the fraudulent misjoinder doctrine is viable here, Defendants' cannot satisfy their heavy burden to prove that the New Jersey Plaintiffs were fraudulently misjoined and removal is proper.**

**EXHIBIT**

**9**

Even if it the Court determines the doctrine is viable, Defendants have not, because they cannot, satisfy their heavy burden to prove that the New Jersey Plaintiffs were fraudulently misjoined. Accordingly, the case should be remanded.

a. There is a strong presumption against removal jurisdiction and Defendants bear a heavy burden to prove that removal is proper.

The Ninth Circuit requires district courts "to strictly construe the removal statute against removal jurisdiction" and reject federal jurisdiction "if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir. 1992); *Moore–Thomas v. Alaska Airlines, Inc.,* 553 F.3d 1241, 1244 (9th Cir. 2009) (holding that "any doubt about the right of removal requires resolution in favor of remand."). The party seeking removal bears the burden of proving its propriety. *Duncan v. Stuetzle,* 76 F.3d 1480, 1485 (9th Cir. 1996); *Abrego v. Dow Chem. Co.,* 443 F.3d 676, 683–85 (9th Cir. 2006); *see also Calif. ex. rel. Lockyer v. Dynegy, Inc.,* 375 F.3d 831, 838 (9th Cir. 2004) (acknowledging that "the burden of establishing federal jurisdiction falls to the party invoking the statute"). The presumption against removal jurisdiction is "strong." *Gaus,* 980 F.2d at 566 ("The strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper.").[8] Indeed, to

---

[8] It also bears mention that the party alleging fraudulent joinder under the traditional doctrine has a "heavy burden" of demonstrating by "clear and convincing evidence" that the non-diverse party has been joined fraudulently. *Hamilton Materials, Inc. v. Down Chem. Corp.,* 494 F.3d 1203, 1206 (9th Cir. 2[___]a v. AT & T Corp.,* 697 F.Supp.2d 1156, 1159 (C.D.Cal.2009). As such, if the fraudulent misjoinder doctrine is deemed viable here,

**EXHIBIT**

**9**[8]

1  prove that Plaintiffs' were fraudulently misjoined, Defendants must show that joinder of

2  the out-of-state Plaintiffs is so "egregious" that it "border[s] on a sham." *See Tapscott*, 77

3
4  F.3d at 1360; *In re Prempo Products Liability Litigation*, 591 F.3d 613, 620-24 (8th Cir.

5  2010); *Cauoette v. Bristol-Myers Squibb*, 2012 WL 3283858, at *7 (N.D. Cal. Aug. 10,

6
7  2012) (holding that if the fraudulent misjoinder doctrine is applicable, the defendant failed

8  to prove that joinder was egregious and bordered on a sham).  This they cannot do.

9        b.  <u>Defendants cannot satisfy their heavy burden to prove that the out-of-state
10            Plaintiffs were fraudulently misjoined.</u>

11       Under both Federal Rule of Civil Procedure 20(a) and California Code of Civil

12
13  Procedure §378, which are substantively identical, joinder of Plaintiffs' claims in this case

14  is appropriate.  The claims involve common questions of law and fact and arise from the

15
16  same transaction, occurrence, or series of transactions and occurrences.  Indeed, the

17  liability side of the claims are identical, and the damages aspect shares significant

18
19  commonalities as well.  As such, Defendants cannot prove that joinder is egregious and

20  borders on a sham.

21       Both the California and the federal permissive joinder statutes have two

22
23  requirements: (1) the claims must relate to or arise from the same transaction or

24  occurrence, or series of transactions and occurrences, and (2) the claims must share a

25  common question of law or fact. *See* CAL. C.C.P. §378 and FED. R. OF CIV. P. 20(a).  These

26
27

28  Plaintiffs submit that the same "hea[**EXHIBIT**]satisfied only by <u>clear and convincing
   evidence</u> is the appropriate burden of proof to impose on Defendants.

**EXHIBIT**
**9**

requirements are to be construed liberally as joinder is strongly encouraged. *See League to Save Lake Tahoe v. Tahoe Regional Planning Agency*, 558 F.2d 914, 917 (9th Cir. 1977) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724 (1966) (explaining that permissive joinder is to be "construed liberally in order to promote trial convenience and to expedite the final determination of disputes, thereby preventing multiple lawsuits[,]" and that "[u]nder the rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.").

Here, Defendants attempt to prove that Plaintiffs claims do not relate to or arise from the same transaction or occurrence, or series of transactions and occurrences. Their effort to do so relies on a narrow and flawed interpretation of the first prong of Rule 20 (or Section 378). In reality, the transaction/occurrence prong of Rule 20 is broad, particularly when – as here – judicial economy is promoted by its application:

> ***'Transaction' is a word of flexible meaning.*** It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship. Accordingly, all "logically related" events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence. The analogous interpretation of the terms as used in Rule 20 would permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding. ***Absolute identity of all events is unnecessary.***

*In re Prempo*, 591 F.3d at 622 (emphasis added); *see also* 7 Charles A. Wright et al., *Federal Practice and Procedure*, § 1653, at 415 (3d ed. 2001) (explaining that the transaction/ occurrence requirement prescribed by Rule 20(a) is not a rigid test and is

**EXHIBIT**

**9**

meant to be "read as broadly as possible whenever doing so is likely to promote judicial economy."); *see also Moore v. New York Cotton Exchange*, 270 U.S. 593, 610 (1926); *Albright v. Gates*, 362 F.2d 928, 929 (9th Cir. 1966). Based on this widely accepted standard, the Eighth Circuit in *In re Prempo* held that the defendants failed to demonstrate that the plaintiffs' (who had taken one or more of the defendants' drugs presumably prescribed by different physicians on different dates) claims did not arise from the same transaction or occurrence:

> Plaintiffs' claims arise from a series of transactions between HRT pharmaceutical manufacturers and individuals that have used HRT drugs. Plaintiffs allege the manufacturers conducted a national sales and marketing campaign to falsely promote the safety and benefits of HRT drugs and understated the risks of HRT drugs. Plaintiffs contend their claims are logically related because they each developed breast cancer as a result of the manufacturers' negligence in designing, manufacturing, testing, advertising, warning, marketing, and selling HRT drugs. Some of the plaintiffs allege to have taken several HRT drugs made by different manufacturers....Based on the plaintiffs' complaints, we cannot say that their claims have "no real connection" to each other such that they are egregiously misjoined.

591 F.3d at 623.

In addition to *Muller*, *Dekalb*, *Howe*, *Mauck*, and *Pate*, at least two federal district courts in other states to which transvaginal mesh cases were recently removed on virtually the same fraudulent misjoinder bases asserted by Defendants here remanded the cases to state court immediately, following the logic in *In re Prempo*. In *Atwell, et al. v. Boston Scientific Corporation*, 94 Plaintiffs (67 women and 27 of their spouses) filed suit against Boston Scientific for injuries suffered from transvaginal mesh devices designed,

**EXHIBIT**

**9**.1

manufactured, marketed, and sold by the corporation. *See* 2013 WL 136471, at *1 (E.D.

Mo. Jan. 10 2013). Like the Defendants here, Boston Scientific removed the case to

federal court alleging that the plaintiffs' claims were fraudulently misjoined under both

prongs of Rule 20(a), and that the non-diverse plaintiffs should be ignored in the

jurisdictional analysis. *See id.* at 1-3. Specifically, Boston Scientific argued that "the

parties have been misjoined because the plaintiffs were implanted with six different

devices, using four different placement options, by different surgeons in response to

different patient-specific factors." *See id.* at *3. Rejecting Boston Scientific's suggestion

that that the claims did not implicate common legal and factual questions and did not arise

from the same transaction or series of transactions, the Court held that Boston Scientific

did not prove that the joinder was "egregious" or "in bad faith," and remanded it. *See id.*

Judge Sippel reached the same result in *Brannen, et al. v. Ethicon, Inc., et al.*, Case

No. 4:12CV1429 RWS (E.D. Mo. Aug. 14, 2012). In that case, 83 Plaintiffs from 24

states who were vaginally implanted with three different Ethicon mesh products joined to

file suit for the injuries they suffered. When the case was removed on grounds that the

non-diverse plaintiffs were fraudulently misjoined, the Court promptly assessed the

jurisdictional issue and remanded the case, explaining: "Plaintiffs in this case have filed

suit against defendants for injuries caused by the same products and arising out of the

same development, distribution, marketing and sales practices for those products, and

common issues of law and fact are likely to arise in litigation." *See* Memorandum and

**EXHIBIT**

**9**

Opinion Order of Remand at p.6, attached hereto as Exhibit I. The Court then concluded that Defendants "failed to demonstrate that the joinder of [non-diverse] plaintiffs in this action is "so egregious and grossly improper....that plaintiffs' misjoinder borders on a sham" *See id*. at 5.

Like the mesh manufacturers in the recent Central District cases *Muller*, *Dekalb*, *Howe*, *Mauck*, and *Pate*, and those in *Atwell* and *Brannen*, Defendants cannot prove that Plaintiffs' joinder is so egregious that it borders on a sham. Instead, Plaintiffs' complaint demonstrates the opposite. As set forth in the Facts Section above, each of the sixty-seven Plaintiffs suffered from POP and SUI, and was vaginally implanted with Defendants' mesh products to correct the condition. The liability aspect of Plaintiffs' claim is identical, and will focus on Defendants' knowledge of the risks associated with its mesh products, its failure to warn unsuspecting women of those risks (which the FDA ultimately did on its own in 2011), and the design, production, marketing, and distribution of their mesh products. From a damages perspective, each of the Plaintiffs suffered from complications associated with her mesh implant. It is difficult to imagine that a case involving the same liability facts and conduct, and plaintiffs who suffered from the same problem, were vaginally implanted with the same mesh products produced by the same company, and all suffered complications as a result, does not satisfy the liberal joinder standard promulgated in Rule 20 and Section 378, which strongly encourages joinder to promote judicial



**EXHIBIT**

**9**

efficiency.[9]   In any event, these facts undermine Defendants' attempt to prove that Plaintiffs' joinder is egregious and borders on a sham.   The case should therefore be remanded for lack of subject matter jurisdiction.

## IV.
## CONCLUSION

Plaintiffs respectfully request this Court to remand this case to the court from which it was removed on an expedited basis.   Plaintiffs further request all other relief to which they are entitled, whether at law or in equity.

---

[9] Indeed, with the pervasive commonalities inherent in every aspect of this case, it seems that Defendants' removal has little to do with whether complete diversity actually exists between the parties, but is instead a tactical move aimed at having this case transferred to the federal MDL prior to this Court examining the threshold issue of subject matter jurisdiction, which is lacking.

**EXHIBIT**

**9**

Respectfully submitted,

**GIRARDI KEESE**

*/s/ Thomas V. Girardi*

Thomas V. Girardi
Amanda H. Kent, SBN 258298
1126 Wilshire Boulevard
Los Angeles, California 90017
Telephone: (213) 977-0211
Facsimile: (213) 481-1554

**ARNOLD & ITKIN LLP**
Kurt B. Arnold
Jason A. Itkin
Noah M. Wexler
Caj D. Boatright
6009 Memorial Drive
Houston, Texas 77007
Telephone: (713) 222-3800
Facsimile: (713) 222-3850

**THE MOSTYN LAW FIRM**
J. Steve Mostyn
3810 West Alabama Street
Houston, TX  77027
(713) 861-6616 (Office)
(713) 861-8084 (Facsimile)

**Attorneys For Plaintiffs**

**EXHIBIT**

**9**

## **PROOF OF SERVICE**

I, the undersigned, declare that: I am over the age of 18, employed in the County of Los Angeles, State of California, and not a party to the within action; my business address is 1126 Wilshire Boulevard, Los Angeles, CA 90017.

On February 13, 2014, I served a copy of the foregoing document described as **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR REMAND AND REQUEST FOR EXPEDITED CONSIDERATION; MEMORANDUM OF POINTS AND AUTHORITIES; [PROPOSED] ORDER** on all interested parties in this action as follows:

X___ **ELECTRONICALLY VIA ECF:** the above entitled document to be served electronically through the United States District Court, Central District of California, Western Division ECF website, addressed to all parties appearing on the Court's ECF service list. The file transmission was reported as complete and a copy of the "Filing Receipt" page will be maintained with the original document in our office.

X___ **FEDERAL**: I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on February 13, 2014, at Los Angeles, California.


*/s/ Irasema Longoria*
_____
Irasema Longoria

**EXHIBIT**

**9**

MOTION TO REMAND

# EXHIBIT "A"

**EXHIBIT**

**9**

**BEFORE THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

In re Ethicon, Inc.
Women's Pelvic Repair Products Liability Litigation                    MDL No. 2327

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR TRANSFER TO
THE SOUTHERN DISTRICT OF WEST VIRGINIA PURSUANT TO 28 U.S.C. § 1407**

Defendant Ethicon, Inc., (on its own behalf and behalf of its Division, Ethicon Women's

Health & Urology) and Defendant Johnson & Johnson (collectively "Ethicon")[1], present their

response to Plaintiffs' Motion for Transfer:

- Ethicon does not object to Plaintiffs' request to transfer all federal cases involving
  Ethicon's vaginal mesh pelvic repair products to a single MDL panel.

- Ethicon does, however, object to Plaintiffs' request to transfer these cases to the United
  States District Court for the Southern District of West Virginia.

- Ethicon also objects to Plaintiffs' request to transfer these cases to an MDL panel
  involving the vaginal mesh pelvic repair products manufactured by C. R. Bard, Inc.,
  American Medical Systems, Inc., and Boston Scientific Corporation.

- Ethicon therefore respectfully requests that the federal cases involving Ethicon's vaginal
  mesh products be transferred to the United States District Court for the District of New
  Jersey or, in the alternative, to the United States District Court for the Northern District
  of Georgia, Atlanta Division.

In support, Ethicon responds, paragraph by paragraph, to Plaintiffs' Motion for Transfer.

1.     Ethicon admits that centralization of the cases involving Ethicon vaginal pelvic

mesh products is proper under 28 U.S.C. § 1407.  Ethicon objects to and denies that the Ethicon

pelvic mesh cases should be centralized either in the same MDL or in the same transferee forum

---

[1] Plaintiffs have erroneously named "Gynecare" as a party in their Brief In Support Of Plaintiffs'
Motion For Transfer etc. 1 (Nov. 28, 2011) [1-1].  Ethicon, Inc. acquired Gynecare, Inc., a Delaware
corporation, on November 19, 1997.  Gynecare, Inc. merged out of existence and into Ethicon, Inc. on
January 3, 2000.  Johnson & Johnson, a holding company that does not make or sell any products or
services, is the parent company of Ethicon, Inc.

**EXHIBIT**

**9**

**EXHIBIT A**

as actions involving "the women's pelvic repair products manufactured by American Medical

Systems, Inc.[,] . . . Boston Scientific Corp." or C.R. Bard, Inc.

2.      Ethicon admits that the plaintiffs have asserted similar claims in all actions

involving Ethicon's pelvic mesh products. Ethicon further admits that the products at issue are

surgical mesh devices used for the treatment and repair of stress urinary incontinence and/or

pelvic organ prolapse. Ethicon denies that its products were defectively designed or

manufactured, and further denies that it failed to provide appropriate warnings or instructions

with the products.

3.      In response to the third paragraph of Plaintiffs' Motion ( incorrectly numbered as

the second paragraph "2"), Ethicon states that it filed a Notice of Potential Tag-Along Actions

with this Court on December 14, 2011, identifying 14 additional actions alleging similar claims

against Ethicon. [Docket No. 18]. Ethicon is also filing, contemporaneous with this Response, a

second Notice of Potential Tag-Along Actions with this Court, identifying five additional actions

alleging similar claims against Ethicon. Ethicon is currently unaware of any other additional

actions but will promptly notify the Court in accordance with JPML Rule 6.2(d) if it becomes

aware of any new potential tag-along actions.

4.      For the reasons discussed in Ethicon's supporting Brief and related exhibits

("Ethicon's Brief"), which are being contemporaneously filed herewith as attachments to the

instant Response of Defendants, Ethicon denies that this litigation should be transferred to the

United States District Court for the Southern District of West Virginia.

5.      Ethicon admits that one or more common questions of fact may exist among the

pelvic mesh cases pending against Ethicon. Ethicon denies any suggestion of commonality



**EXHIBIT**
**9**
2

between Ethicon's pelvic mesh products and the pelvic mesh products manufactured by C.R. Bard, Inc., American Medical Systems, Inc. or Boston Scientific Corporation.

6.      Ethicon agrees with the representations contained in Paragraph 6 of Plaintiffs' Motion for Transfer, to the extent they pertain only to those actions involving Ethicon pelvic mesh products.  For the reasons discussed in Ethicon's Brief, Ethicon denies that common centralization of the Ethicon pelvic mesh cases with cases involving these three other manufacturers' numerous pelvic mesh products would promote the just and efficient conduct of these actions, serve the convenience of the parties or witnesses, promote the interests of justice, conserve judicial resources, reduce litigation costs, eliminate duplication, or avoid inconsistent rulings and orders.

7.      Ethicon agrees that none of the related Ethicon-related actions is sufficiently advanced toward trial such that it would be prejudiced by transfer to another federal district court.

8.      Ethicon admits that there are some cases involving plaintiffs who were allegedly implanted with more than one pelvic mesh product made  by one or more of the other three manufacturers.  For the reasons discussed in Ethicon's Brief, Ethicon denies all remaining representations contained in Paragraph 8 of Plaintiffs' Motion for Transfer.

9.      For the reasons discussed in Ethicon's Brief, Ethicon denies the representations contained in Paragraph 9 of Plaintiffs' Motion for Transfer.  Ethicon requests that the federal cases involving Ethicon's vaginal mesh products be transferred to the United States District Court for the District of New Jersey or, in the alternative, to the United States District Court for the Northern District of Georgia.



EXHIBIT
9
3

10.    Ethicon's Response is also based on the arguments and legal authorities set forth in its accompanying Brief and related exhibits.

WHEREFORE, Ethicon respectfully requests that the Panel grant Section 1407 centralization of the Ethicon pelvic mesh cases but deny Plaintiffs' request for centralization in the Southern District of West Virginia.  Ethicon requests that the Panel instead transfer the subject cases to the District of New Jersey.  Alternatively, Ethicon requests centralization in the Northern District of Georgia, Atlanta Division.

THIS, the ___ day of December, 2011.


                              RESPECTFULLY SUBMITTED,


                              /s/Christy D. Jones_____
                              CHRISTY D. JONES
                              BUTLER, SNOW, O'MARA,
                              STEVENS & CANNADA, PLLC
                              1020 Highland Colony Parkway
                              Suite 1400
                              Ridgeland, MS 39157
                              601-948-5711 telephone
                              601-985-4500 facsimile
                              christy.jones@butlersnow.com

                              ATTORNEYS FOR ETHICON, INC. (ON BEHALF OF
                              ITSELF AND ON BEHALF OF ITS DIVISION,
                              ETHICON WOMEN'S HEALTH & UROLOGY) AND
                              JOHNSON & JOHNSON



EXHIBIT
9
4

OF COUNSEL:

William M. Gage
Kari L. Sutherland
Michael L. Brown
John C. Henegan
Laura H. Dixon
BUTLER, SNOW, O'MARA, STEVENS & CANADA, PLLC
1020 Highland Colony Parkway
Suite 1400
Ridgeland, MS 39157

Kelly S. Crawford
Maha M. Kabbash
RIKER DANZIG SCHERRER HYLAND PERRETTI, LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ  07962-1981
973-538-0800 telephone
973-538-1984 facsimile

Jackson 7282581v1



**EXHIBIT**

**9**

## CERTIFICATE OF SERVICE

I, Christy D. Jones, hereby certify that a true and correct copy of Ethicon, Inc.'s (on

behalf of itself and on behalf of its Division, Ethicon Women's Health & Urology) and Johnson

& Johnson's Response to Plaintiffs' Motion for Transfer to the Southern District of West

Virginia Pursuant to 28 U.S.C. § 1407 was served on December 21, 2011, via electronic mail

upon the following counsel of record:

Mark R. Mueller
Mueller Law Offices
404 West 7th Street
Austin, Texas 78701
Email: mark@muellerlaw.com

Henry G. Garrard, III
Blasingame, Burch, Garrard & Ashley, P.C.
P.O. Box 832
Athens, Georgia 30603
Email: hgg@bbgbalaw.com

Fred Thompson, III
Motley Rice LLC
28 Bridgeside Blvd.
Mt. Pleasant, South Carolina 29464
Email: fthompson@motleyrice.com

Bryan F. Aylstock
Aylstock, Witkin, Kreis & Overholtz
17 E. Main Street, Suite 200
Pensacola, Florida 32502
Email: baylstock@awkolaw.com

Derek H. Potts
The Potts Law Firm, LLP
908 Broadway, 3rd Floor
Kansas City, Missouri 64105
Email: dpotts@pott-law.com

ATTORNEYS FOR PLAINTIFFS



EXHIBIT
9

Barbara R. Binis
Reed Smith LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103
Email: bbinis@reedsmith.com

ATTORNEY FOR DEFENDANT AMERICAN MEDICAL SYSTEMS, INC. AND
AMERICAN MEDICAL SYSTEMS HOLDINGS, INC.

Jon A. Strongman
Shook, Hardy & Bacon, LLP
2555 Grand Boulevard
Kansas City, Missouri  64108
Email: jstrongman@shb.com

ATTORNEY FOR DEFENDANT BOSTON SCIENTIFIC CORPORATION


/s/Christy D. Jones
CHRISTY D. JONES

Jackson 7282581v1



EXHIBIT
9

# EXHIBIT "B"

**EXHIBIT**

**9**

# BEFORE THE JUDICIAL PANEL ON
# MULTIDISTRICT LITIGATION

In re Ethicon, Inc.                                    MDL-_____
Women's Pelvic Repair  Products Liability Litigation

## MOTION FOR TRANSFER TO THE SOUTHERN DISTRICT OF WEST VIRGINIA PURSUANT TO 28 U.S.C. § 1407

COME NOW, the Plaintiffs represented by the undersigned and respectfully move the Panel pursuant to 28 U.S.C. § 1407, for an order transferring 41 product liability actions pending in 24 federal district courts, as reflected in the Schedule of Actions filed contemporaneously herewith, to the Southern District of West Virginia for coordinated and/or consolidated pretrial proceedings.  The accompanying Schedule of Actions lists the 41 actions subject to this motion.

In support of this motion, Plaintiffs state the following, as more fully set forth in the accompanying Brief in Support of this motion:

1.      In accordance with 28 U.S.C. § 1407, the undersigned are seeking the transfer of all federal cases involving the Ethicon women's pelvic repair products, as well as the women's pelvic repair products manufactured by American Medical Systems, Inc. and Boston Scientific Corp., to the same Court for coordinated and/or consolidated proceedings.  Contemporaneously with the instant motion, the undersigned are filing separate motions to transfer cases involving the American Medical Systems, Inc. and Boston Scientific Corp. women's pelvic repair products to the same federal court for overall coordination and management of all of these related product liability litigations.

2.      The actions for which transfer and consolidation and/or coordination are proposed herein allege similar product liability claims involving the women's pelvic repair products sold by Ethicon.  All of these devices are surgical mesh products implanted in women for the treatment of pelvic organ prolapse and/or~~~~~ Each action alleges that Ethicon

**EXHIBIT**
**9**
**EXHIBIT B**

defectively designed and manufactured its women's pelvic repair products, and failed to provide appropriate warnings and instructions with these devices.

    2.     Movants are not aware of any actions, other than the 41 actions proposed for transfer herein, which are on file in a federal district court alleging similar claims. These 41 actions are listed in the Schedule of Actions filed herewith.

    4.     Movants propose that the actions filed outside of the Southern District of West Virginia be transferred to that district.

    5.     The actions listed in the Schedule of Actions involve one or more common questions of fact relating to Ethicon's research, development, design, testing, manufacturing, selling, marketing and labeling of the Ethicon women's pelvic repair products.

    6.     The centralization of these actions in a single judicial district for coordinated and/or consolidated pretrial proceedings will promote the just and efficient conduct of these actions, will serve the convenience of all parties and witnesses and will promote the interests of justice. The transfer of these cases will conserve judicial resources, reduce litigation costs, avoid potentially inconsistent pretrial scheduling orders and substantive rulings, and will eliminate unnecessary duplicative discovery.

    7.     None of the related actions are sufficiently advanced toward trial that they would be unduly prejudiced by transfer.

    8.     Many women who undergo mesh surgery for treatment of POP or SUI are implanted with more than one product, and often with products manufactured and sold by different companies. This "multi-product/multi-defendant" phenomenon makes these cases particularly appropriate for coordination before a single federal judge. The splitting of these multi-product/multi-defendant cases between two or more Courts would destroy the



EXHIBIT

**9**

- 2 -

268

convenience, efficiency and economy for which coordinated proceedings are granted pursuant to 28 U.S.C. § 1407.

9      The Southern District of West Virginia is uniquely situated as the most appropriate transferee forum because the Hon. Chief Judge Joseph R. Goodwin is already handling a number of similar cases in involving the Bard women's pelvic repair products in MDL No. 2187.  The claims asserted in these constituent actions are substantially similar in nature to the claims being asserted by the Plaintiffs in the Bard MDL (MDL No. 2187), which involve similar product liability claims regarding similar products used to treat the same medical conditions.  Judge Goodwin has thus had the opportunity to become familiar with the factual and legal issues presented in these cases through his handling of MDL No. 2187, and he is uniquely positioned to handle the inevitable conflicts that would arise from those cases that involve a single plaintiff implanted with multiple devices manufactured by multiple defendants if MDL's involving these other products were assigned to different federal district courts.

10.      This motion is based on the accompanying Brief and Schedule of Actions.

WHEREFORE, Movants respectfully move the Panel to order that the actions currently pending in any federal district court outside the Southern District of West Virginia, which are listed in the Schedule of Actions filed herewith, as well as any cases that may be subsequently filed in any United States District Court asserting related or similar claims, be transferred to the Southern District of West Virginia for coordinated and/or consolidated pretrial proceedings before the Hon. Joseph R. Goodwin.

This 28th day of November, 2011.

By:      /s/ Henry G. Garrard, III
          Henry G. Garrard, III
          hgg@bbgbalaw.com
          Georgia Bar No. 286300

EXHIBIT

9

- 3 -

Blasingame, Burch, Garrard & Ashley, P.C.
P.O. Box 832
Athens, GA 30603
(706) 354-4000
(706) 549-3545 (fax)
*Counsel for Plaintiffs in the following actions:*
*Garnett and Garnett v. Johnson & Johnson, et al, N.D. of Georgia, Case No. 1:11-cv-003904-*
*RWS;*
*Jackson v. Johnson & Johnson, et al, N.D. of Georgia, Case No. 1:11-cv-003903-TWT;*
*Kilday and Kilday v. Johnson & Johnson, et al, S.D. of Georgia, Case No. 4:11-cv-000286-*
*WTM-GRS;*
*Swaney v. Johnson & Johnson, et al, S.D. of Georgia, Case No. 4:11-cv-00287-WTM-GRS;*
*Cone v. Ethicon, Inc., et al, S.D. of Georgia, Case No. 5:11-cv-00110-LGW; and*
*Holland and Holland v. Johnson & Johnson, et al, M.D. of Georgia, Case No. 3:11-cv-00135-*
*CDL.*

By:      /s/ Fred Thompson, III
         Fred Thompson, III
         fthompson@motleyrice.com

Motley Rice LLC                   South Carolina Bar No. 5548
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
(843) 216-9118
*Counsel for Plaintiff in the following action:*
*Hargrove v. Johnson & Johnson, et al, District of South Carolina, Case No.: 3:11-av-99999-*
*CIV (case number unassigned; Dkt 2012)*

By:      /s/ Bryan F. Aylstock
         Bryan F. Aylstock
         BAylstock@awkolaw.com
         Florida Bar No.: 078263

Aylstock, Witkin, Kreis & Overholtz
17 E. Main Street, Suite 200
Pensacola, Florida 32502
(877)810-4808
(850)916-7449 (fax)
*Counsel for Plaintiffs in the following action:*
*Barbara Dykes v. Ethicon, Inc., et al, N.D. of Florida, Case No.: 3:11-cv-00564*

By:      /s/ Derek H. Potts
         Derek H. Potts
         dpotts@pott-law.com
The Potts Law Firm, LLP           Missouri Bar No. 18033
908 Broadway, 3rd Floor
Kansas City, MO 64105
(816)931-2230



EXHIBIT

**9**

- 4 -

*Counsel for Plaintiffs in the following actions:*
*Wolfe v. Ethicon, Inc., et al.,* W.D. of Missouri, Case No. 4:11-cv-01040-GAF; and
*Essman and Essman v. Ethicon, Inc., et al,* U.S. District Court of Kansas, Case No. 2:11-cv-
02595-JWL-KGG



# EXHIBIT "C"

**EXHIBIT**

**9**

### BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

**IN RE ETHICON, INC., PELVIC REPAIR SYSTEM**
**PRODUCTS LIABILITY LITIGATION**                    **MDL No. 2327**

This Document Relates to the Case Identified
Below:

---

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHERYL POOLE and KENNETH POOLE, <br><br> *Plaintiffs,* <br><br> v. <br><br> ETHICON, INC., *et al.* <br> *Defendants.* | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | Civil Action No.: 4:12-CV-339 |

---

### DEFENDANT ETHICON, INC.'S RESPONSE IN OPPOSITION
### TO MOTION TO VACATE CTO-1 AS TO POOLE

Defendant Ethicon, Inc. ("Ethicon"), by and through counsel, submits this Response in

Opposition to Plaintiffs' Motion to Vacate CTO-1, and respectfully requests that the Panel

transfer this action to Multidistrict Litigation No. 2327 ("MDL 2327") without further delay.

### INTRODUCTION

Plaintiffs Cheryl and Kenneth Poole have moved to vacate the order transferring the

above-captioned action to the Honorable Joseph Goodwin of the Southern District of West

Virginia for coordinated pretrial proceedings pursuant to 28 U.S.C. § 1407. In support, Plaintiffs

argue that a pending motion to remand before the United States District Court for the Southern



EXHIBIT C
273

District of Texas should bar the transfer and that they would be unfairly prejudiced by the delay that would result if the MDL court were permitted to rule on their remand Motion. This Panel has rejected these arguments many times over, and for the reasons discussed herein, it should reject them again.

In CTO-1, the Panel stated that, "It appears that the actions on this conditional transfer order involve questions of fact that are common to the actions previously transferred to the Southern District of West Virginia and assigned to Judge Goodwin." *See* Conditional Transfer Order (CTO-1) at ¶ 2. The Panel is correct. Because the primary plaintiff in this case, Cheryl Poole, alleges that she was implanted with a polypropylene pelvic mesh product manufactured by Ethicon, and sustained injuries as a result thereof, this case shares common questions of fact and law with all of the other actions that have been transferred to MDL 2327. Moreover, as the Panel has previously recognized, the pendency of a motion to remand is not grounds for vacating a Conditional Transfer Order because the transferee judge can easily rule on such motions in the MDL. Plaintiffs' contrary allegations notwithstanding, transfer of this action to the MDL – along with all other similarly-situated actions – will promote the just and efficient conduct of the litigation. The *Poole* case should be transferred to Judge Goodwin without delay.

## ARGUMENT

### A. Plaintiff's Pending Motion to Remand Does Not Weigh Against MDL Transfer.

This Panel's longstanding precedent firmly establishes that the presence of a pending remand motion is not a valid basis upon which to vacate a Conditional Transfer Order. Indeed, Plaintiffs fail to cite a single Panel opinion in support of their argument that transfer is somehow improper in light of their jurisdictional objection. Instead, they mainly argue the *merits* of their



**EXHIBIT**

**9**

2

remand motion, and conclusively allege that they believe it will be granted, thus stripping the federal court of jurisdiction.

As a preliminary matter, the merits of plaintiffs' remand motion are not at issue in this motion. "Section 1407 does not empower the MDL Panel to decide questions going to the jurisdiction or the merits of a case, including issues relating to a motion to remand." *In re Ivy*, 901 F.2d 7, 9 (2d Cir. 1990). Ethicon believes as strongly as Plaintiffs that its removal is proper and that therefore this case will remain in federal court – but the motion to remand simply is not before the Panel. Thus, "the sole issue … is the merits of the transfer viewed against the purposes of the multidistrict statutory scheme." *Id.*

Under 28 U.S.C. § 1407, the Panel has authority to transfer civil actions pending in different districts to any district for coordinated or consolidated pretrial proceedings *if*: (i) the actions involve one or more common questions of fact; (ii) transfer would serve the convenience of the parties and witnesses; and (iii) transfer would promote the just and efficient conduct of the actions. *See* 28 U.S.C. § 1407(a). This action clearly satisfies each of these requirements. Like the Complaints in the other cases already transferred to Judge Goodwin's court, Plaintiff Cheryl Poole alleges that she suffered physical injuries after she was surgically implanted with a pelvic mesh product manufactured by Ethicon. Plaintiffs notably do not dispute that their lawsuit raises common questions of fact with the other actions in MDL 2327; instead, they allege that efficiency would not be served by transfer here because they have moved to remand their case back to Texas State Court. The Panel has consistently rejected similar arguments and should do so again here.

Stated simply, the "pendency of a motion to remand to state court is not a sufficient basis to avoid inclusion in Section 1407 proceedings. We note that motions to remand … can be

**EXHIBIT**

**9**

presented to and decided by the transferee judge." *In re VIOXX Prods. Liab. Litig.*, 360 F. Supp. 2d 1352, 1354 (J.P.M.L. 2005). Indeed judicial efficiency is often *better-served* by permitting the MDL Court to decide a remand motion. *See, e.g., In re Bayer Corp. Combination Aspirin Prod. Mktg. & Sales Practices Litig.*, 609 F. Supp. 2d 1379, 1379-80 (J.P.M.L. 2009); *In re Gadolinium Contrast Dyes Prods. Liab. Litig.*, 559 F. Supp. 2d 1402, 1403 (J.P.M.L. 2008) ("Plaintiffs can present their motions for remand to state court to the transferee court."); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 170 F. Supp. 2d 1346, 1347 (J.P.M.L. 2001) ("there is no need to delay transfer in order to accommodate any interest of the transferor court in resolving a pending remand motion."); *In re Amino Acid Lysine Antitrust Litig.*, 910 F. Supp. 696, 700 (J.P.M.L. 1995)("We observe that the pending motion to remand to the Northern District of Alabama action to state court can be presented to and decided by the transferee judge."); *In re Fed. Election Campaign Act Litig.*, 511 F. Supp. 821, 824 (J.P.M.L. 1979) (transfer would enable "a single judge to consider these motions and thus will have the salutary effect of promoting judicial economy and avoiding inconsistent adjudications regarding this particular issue."); *In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972*, 368 F. Supp. 812, 813 (J.P.M.L. 1973) ("We see no reason for delaying our decision. Because these actions involve questions of fact identical to those raised in the actions previously transferred by the Panel, transfer is necessary in order to eliminate the possibility of duplicative discovery and conflicting pretrial rulings.").

This case is no different. There is no good reason consistent with the policies underpinning 28 U.S.C. § 1407 why Judge Goodwin cannot hear plaintiffs' remand motion after transfer. Contrary to their Motion to Vacate, the issues raised in Plaintiffs' Motion to Remand are not unique. The crux of their motion **EXHIBIT** jurisdiction is lacking because they

**EXHIBIT**

**9**

4

have asserted claims against Cheryl Poole's treating physicians – who are in-state defendants. This jurisdictional issue is "easily capable of arising in hundreds of other cases in other district courts throughout the nation" – each of which share the same common questions of law and fact with this medical device product liability lawsuit. *In re Ivy*, 901 F. 2d 7, 9 (2d Cir. 1990); *see Johnson v. AMR Corp.*, Nos. 95 C 7659, to 95 C 7664, 1996 WL 164415, *3 (N.D. Ill. Apr. 3, 1996) (staying consideration of motion to remand involving allegations of fraudulent joinder pending MDL transfer). Thus, the real economy lies in transferring all similarly-situated cases to MDL 2327, so that "the [same] jurisdictional objections can be heard and resolved by a single court and reviewed at the appellate level in due course. Consistency as well as economy is thus served." *See id.*

**B. Plaintiffs Will Not Be Prejudiced By Transfer.**

Plaintiffs' argument that they will be prejudiced if Judge Goodwin is permitted to rule on their Motion to Remand is without any evidentiary support, contrary to JPML practice and procedure, and wholly speculative and unfounded. Indeed, while Plaintiffs allege that "when the MDL court would hear Plaintiffs' motion to remand is uncertain," *see* Mot. to Vacate ¶ 8, they offer nothing other than the undocumented "experience of [their] attorneys" to support such a complaint. Moreover, their "experience ... that many MDL courts require Plaintiffs to re-file motions to remand at some point after the MDL has been created" does not apply to Judge Goodwin's court. Pretrial Order No. 1 (Initial Conference and Case Management) in MDL 2327 expressly instructs all parties to file a "Notice of Pending Motions" with the clerk's office *before the April 13, 2012 initial Pretrial Conference. See In re: Ethicon, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, Civil Action No. 2:12-md-02327 (S.D. W.VA. Feb. 29, 2012). That Notice will effectively re-notice for resolution all pending motions including the Pooles' Motion to Remand

**EXHIBIT 9**

277

when transferred.  Thus, there is no unknown "delay" as Plaintiffs allege, and no resulting

prejudice.  To the contrary, transfer of the Poole case to MDL 2327 will enable the parties to take

advantage of the multiple efficiencies and savings of both time and resources associated with

consolidated and coordinated pretrial proceedings.

### CONCLUSION

This case is no different than the hundred other cases involving Ethicon's pelvic mesh

products that have already been transferred to MDL 2327.  It is a simple, longstanding rule of

this court that questions regarding federal court jurisdiction do not preclude MDL transfer under

28 U.S.C. § 1407.  The legal and factual issues that this case shares with the cases already

transferred to MDL 2327 establish that a Conditional Transfer Order was properly entered in the

*Poole* case.  As established above, Plaintiffs' arguments to the contrary lack merit, and their

Motion to Vacate CTO-1 should be denied.

THIS, the 7th day of March, 2012.

Respectfully submitted,

/s/ Christy D. Jones
Christy D. Jones
Butler Snow
1020 Highland Colony Parkway
Suite 1400
Ridgeland, MS 39157
601-948-4523 telephone
601-985-4500 facsimile
christy.jones@butlersnow.com

*Attorney for Ethicon, Inc.*



EXHIBIT

**9**

# EXHIBIT "D"

EXHIBIT

**9**

JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 13-6276 PA (RZx) | Date | August 29, 2013 |
|---|---|---|---|
| Title | Shannon Muller, et al. v. American Medical Systems, et al. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Paul Songco | Not Reported | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**          IN CHAMBERS - COURT ORDER

Before the Court is a Notice of Removal filed by defendants American Medical Systems, Inc., American Medical Systems Holdings, Inc., Endo Pharmaceuticals, Inc., and Endo Health Solutions, Inc. ("Defendants"). Defendants assert that this Court has jurisdiction over the action brought against them by plaintiffs Shannon Muller, et al. ("Plaintiffs") based on the Court's diversity jurisdiction. See 28 U.S.C. § 1332.

Federal courts are courts of limited jurisdiction, having subject matter jurisdiction only over matters authorized by the Constitution and Congress. See, e.g., Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377, 114 S. Ct. 1673, 1675, 128 L. Ed. 2d 391 (1994). A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a). A removed action must be remanded to state court if the federal court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). "The burden of establishing federal jurisdiction is on the party seeking removal, and the removal statute is strictly construed against removal jurisdiction." Prize Frize, Inc. v. Matrix (U.S.) Inc., 167 F.3d 1261, 1265 (9th Cir. 1999). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).

In attempting to invoke this Court's diversity jurisdiction, Defendants must prove that there is complete diversity of citizenship between the parties and that the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. To establish citizenship for diversity purposes, a natural person must be a citizen of the United States and be domiciled in a particular state. Kantor v. Wellesley Galleries, Ltd., 704 F.2d 1088, 1090 (9th Cir. 1983). Persons are domiciled in the places they reside with the intent to remain or to which they intend to return. See Kanter v. Warner-Lambert Co., 265 F.3d 853, 857 (9th Cir. 2001). "A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state." Id. For the purposes of diversity jurisdiction, a corporation is a citizen of any state where it is incorporated and of the state where it has its principal place of business. 28 U.S.C. § 1332(c); see also Indus. Tectonics, Inc. v. Aero Alloy, 912 F.2d 1090, 1092 (9th Cir. 1990).

**EXHIBIT 9**

EXHIBIT D

280

Case 2:15-cv-06899-JGB-SP  Document 1443 Filed 02/12/15  Page 3 of 396  Page ID #:521
Case 2:13-cv-06276-PA-RZ  Document 12  Filed 08/29/13  Page 2 of 3  Page ID #:268

JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 13-6276 PA (RZx) | Date | August 29, 2013 |
|---|---|---|---|

| Title | Shannon Muller, et al. v. American Medical Systems, et al. |
|---|---|

   The sixty-six (66) plaintiffs in this action allege injuries from the surgical implantation of one or more AMS pelvic surgical mesh devices. For purposes of diversity, Plaintiffs are citizens of Massachusetts, Ohio, Virginia, California, Indiana, New Jersey, New Mexico, Texas, Georgia, Alabama, Kentucky, Tennessee, Utah, West Virginia, Florida, and Louisiana; Plaintiff Redethia Davis is a citizen of Delaware and Plaintiff Patricia Zeiber is a citizen of Pennsylvania; American Medical Systems, Inc. is a citizen of Delaware and Minnesota; American Medical Systems Holdings, Inc. is a citizen of Delaware and Minnesota; Endo Pharmaceuticals, Inc. is a citizen of Delaware and Pennsylvania; and Endo Health Solutions, Inc. is a citizen of Delaware and Pennsylvania.

   The Ninth Circuit has recognized an exception to the complete diversity requirement where a non-diverse defendant has been "fraudulently joined." Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1067 (9th Cir. 2001). If a plaintiff "fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent." McCabe v. Gen. Foods Corp., 811 F.2d 1336, 1339 (9th Cir. 1987). If the Court finds that the joinder of a non-diverse defendant is fraudulent, that defendant's presence in the lawsuit is ignored for the purposes of determining diversity. See, e.g., Morris, 236 F.3d at 1067.

   "There is a presumption against finding fraudulent joinder, and defendants who assert that plaintiff has fraudulently joined a party carry a heavy burden of persuasion." Plute v. Roadway Package Sys., Inc., 141 F. Supp. 2d 1005, 1008 (N.D. Cal. 2001). A claim of fraudulent joinder should be denied if there is any possibility that the plaintiff may prevail on the cause of action against the in-state defendant. See id. at 1008, 1012. "The standard is not whether plaintiffs will actually or even probably prevail on the merits, but whether there is a possibility that they may do so." Lieberman v. Meshkin, Mazandarani, 1996 WL 732506, at *3 (N.D. Cal. Dec. 11, 1996). A court should remand a case "unless the defendant shows that the plaintiff 'would not be afforded leave to amend his complaint to cure [the] purported deficiency.'" Padilla v. AT&T Corp., 697 F. Supp. 2d 1156, 1159 (C.D. Cal. 2009) (quoting Burris v. AT&T Wireless, Inc., 2006 WL 2038040, at *2 (N.D. Cal. July 19, 2006)).

   Here, Defendants argue that the citizenship of two plaintiffs, Redethia Davis and Patricia Zeiber, should be ignored for diversity purposes based on fraudulent misjoinder. In order for Plaintiffs to join their claims into a single action, the claims must (1) arise out of "the same transaction, occurrence, or series of transactions or occurrences;" and (2) contain "any question of law or fact common to all" plaintiffs. Fed. R. Civ. P. 20(a). Defendants cite Eleventh and Fifth Circuit cases in support of the doctrine of fraudulent misjoinder. "Misjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action." Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1360 (11th Cir. Ala. 1996), abrogated on other grounds, Cohen v. Office Depot, Inc., 204 F.3d 1069 (11th Cir. 2000); accord In re Benjamin Moore & Co., 318 F.3d 626, 630-31 (5th Cir. 2002) (recognizing that misjoinder of plaintiffs should not be allowed to "circumvent diversity jurisdiction"). The Eleventh Circuit further stated, "[w]e do not hold that mere misjoinder is fraudulent joinder, but we do agree with the district court that appellants' attempt to join these parties is so egregious as to constitute fraudulent joinder." Tapscott, 77 F.3d at 1360. However, other than the

**EXHIBIT**

**9**

281

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 13-6276 PA (RZx) | | Date | August 29, 2013 |
|---|---|---|---|---|
| Title | Shannon Muller, et al. v. American Medical Systems, et al. | | | |

Eleventh and Fifth Circuits, no other circuit court has adopted the fraudulent misjoinder doctrine; the Ninth Circuit has not expressly adopted it. See Caouette v. Bristol-Myers Squibb Co., 2012 U.S. Dist. LEXIS 113980, 28-33 (N.D. Cal. Aug. 10, 2012).

Several district courts "have criticized Tapscott, arguing that questions of joinder under state law do not implicate federal subject matter jurisdiction, federal jurisdiction is to be narrowly construed, and the fraudulent misjoinder doctrine has created an unpredictable and complex jurisdictional rule." In re Prempro Prods. Liab. Litig., 591 F.3d 613, 621-22 (8th Cir. 2010) (citing cases); see also In re Yasmin & Yaz Mktg., Sales Pracs. & Prods. Liab. Litig., 779 F. Supp. 2d 846, 854-55 (S.D. Ill. 2011) (citing cases). "Many of these courts also opine that the better approach is for parties to seek severance in state court prior to removal." Id. at 855; see also Caouette, 2012 U.S. Dist. LEXIS at 28-33.

Even if the Court were to adopt the doctrine of fraudulent misjoinder and conclude that plaintiffs' claims are not properly joined in this action, it is not clear that the joinder is egregious or grossly improper. See Tapscott, 77 F.3d at 1360; Prempro, 591 F.3d at 622-24 ("absent evidence that plaintiffs' misjoinder borders on a 'sham,' [the Court] decline[s] to apply Tapscott to the instant case"). Defendants have failed to carry their heavy burden of persuasion to demonstrate that the plaintiffs were fraudulently joined. Thus, defendants have not met their burden to establish complete diversity of citizenship between the parties. Accordingly, the Court remands this action to the Los Angeles County Superior Court, Case No. BC515042, for lack of federal subject matter jurisdiction. See 28 U.S.C. § 1447(c).

IT IS SO ORDERED.

**EXHIBIT**

**9**

| CV-90 (06/04) | CIVIL MINUTES - GENERAL | Page 3 of 3 |
|---|---|---|



**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
WESTERN DIVISION
312 North Spring Street, Room G-8
Los Angeles, CA 90012
Tel: (213) 894-3535

SOUTHERN DIVISION
411 West Fourth Street, Suite 1053
Santa Ana, CA 92701-4516
(714) 338-4750

EASTERN DIVISION
3470 Twelfth Street, Room 134
Riverside, CA 92501
(951) 328-4450

**TERRY NAFISI**
District Court Executive and
Clerk of Court

Date:    August 30, 2013

Clerk, Los Angeles Superior Court
Central District
Stanley Mosk Courthouse
111 North Hill Street
Los Angeles, CA  90012

Re:   Case Number: CV 13-06276 PA (RZx)

Previously Superior Court Case No. BC515042

Case Name: Shannon Muller, et al. v. American Medical Systems, Inc., et al.

Dear Sir / Madam:
    Pursuant to this Court's ORDER OF REMAND issued on 8/29/2013 , the above-referenced case is hereby remanded to your jurisdiction.

    Attached is a certified copy of the ORDER OF REMAND and a copy of the docket sheet from this Court.

    Please acknowledge receipt of the above by signing the enclosed copy of this letter and returning it to our office.  Thank you for your cooperation.

Respectfully,

Clerk, U. S. District Court

By: G. Kami
        Deputy Clerk   213-894-0747

☒ Western   ☐ Eastern   ☐ Southern Division

*cc: Counsel of record*

=================================================================================

Receipt is acknowledged of the documents described herein.

_____                Superior Court

**EXHIBIT 9**                By: _____

Date                                        Deputy Clerk

CV - 103 (09/08)        LETTER OF TRANSMITTAL - REMAND TO SUPERIOR COURT (CIVIL)

# EXHIBIT "E"

EXHIBIT

**9**

E-Filed – JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-6344-GHK (PLAx) | Date | October 10, 2013 |
|---|---|---|---|
| Title | *Marie Howe, et al. v. Coloplast Corp., et al.* | | |

**Presiding: The Honorable**     **GEORGE H. KING, CHIEF U.S. DISTRICT JUDGE**

| Beatrice Herrera | N/A | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**     **(In Chambers) Remand Order**

On September 11, 2013, we ordered Defendants to show cause why the above-captioned matter should not be remanded to state court for lack of subject matter jurisdiction. We noted that Defendants' Notice of Removal ("NOR") asserted that we have subject matter jurisdiction under 28 U.S.C. § 1332 based upon diversity of citizenship, but that, as Defendants acknowledged in their NOR, diversity does not exist on the face of the complaint, as two plaintiffs are citizens of the same states as two defendants. We further explained that we were not inclined to adopt the "fraudulent misjoinder" doctrine, which Defendants requested we adopt, to dismiss the two non-diverse Plaintiffs.

On September 25, 2013, Defendants timely filed a response to our OSC. In their Response, Defendants again requested we adopt the doctrine of fraudulent misjoinder, or alternatively, that we either defer ruling on the remand question until a determination has been made in their pending request to the MDL Panel to transfer this action to the Southern District of West Virginia or transfer this action to Judge Bernal, who has related cases pending before him. We decline to do any of the foregoing.

As a court of limited jurisdiction, *see Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994), we must determine the issue of subject matter jurisdiction before reaching the merits of a case. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). The removing party bears the burden of establishing the existence of federal subject matter jurisdiction, and if there is any doubt as to whether removal was proper, remand is required. 28 U.S.C. § 1447(c); *Duncan v. Stuetzie*, 76 F.3d 1480, 1485 (9th Cir. 1996). We need not postpone such a ruling merely because an MDL transfer motion has been filed. *See Totola Restaurants, L.P. v. Kimberly-Clark Corp.*, 987 F. Supp. 1186, 1188-89 (N.D. Cal. 1997). "To stay this case pending a decision by the MDL Panel would waste judicial and other resources and would not promote the efficient administration of justice." *Stone v. Baxter Int'l, Inc.*, 2009 WL 236116, at *2 (D. Neb. Jan. [text obscured]ther, "a determination of the fraudulent misjoinder issues raised in this case requires an application and analysis of Ninth Circuit law, and this Court is in as good a position, if not better, to apply the law of this circuit than a court in West Virginia." *Goodwin v. Kojian*, 2013 WL 1528966, at *3 (C.D. Cal. Apr. 12, 2013).

**EXHIBIT 9**

285

EXHIBIT

E-Filed – **JS-6**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 13-6344-GHK (PLAx) | | Date | October 10, 2013 |
|---|---|---|---|---|
| Title | *Marie Howe, et al. v. Coloplast Corp., et al.* | | | |

As we explained in our OSC, the Ninth Circuit has recognized an exception to the complete diversity requirement where a nondiverse defendant has been "fraudulently joined." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1997). Under the "fraudulent joinder" doctrine, a district court may disregard the citizenship of a nondiverse defendant if it is obvious that the plaintiffs have failed to state a claim against that defendant. *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). The Ninth Circuit has not, however, recognized the doctrine of "fraudulent misjoinder," which permits the court to ignore the citizenship of nondiverse parties when there is no real connection among the plaintiffs' claims, such that plaintiffs' joinder of the parties is "so egregious as to constitute fraudulent joinder." *See Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), abrogated on other grounds by *Cohen v. Office Depot*, 204 F.3d 1069 (11th Cir. 2011). This doctrine has only been recognized by the Fifth and Eleventh Circuits. *See Id.* at 1360; *accord In re Benjamin Moore & Co.*, 318 F.3d 626, 630-31 (5th Cir. 2002).

Even if we were to adopt the doctrine of fraudulent misjoinder, it is not clear that the joinder in this case is "so egregious as to constitute fraudulent joinder." *See Tapscott*, 77 F.3d at 1360; *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 624 ("[A]bsent evidence that plaintiffs' misjoinder borders on a 'sham,' we decline to apply *Tapscott* to the present case." (citation omitted)). Thus, Defendants have not met their burden to establish complete diversity of citizenship between the parties. Accordingly, this case is hereby **REMANDED** to the state court from which it was removed. In light of the foregoing, Plaintiffs' Motion to Remand (Dkt. 22), currently noticed for hearing on November 4, 2013, is **DENIED as moot**, and the hearing date is **VACATED**.

**IT IS SO ORDERED.**

|   | -- | : | -- |
|---|---|---|---|
| Initials of Deputy Clerk | | Bea | |

### EXHIBIT

## 9

286



**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**
312 North Spring Street, Room G-8
Los Angeles, CA 90012
Tel: (213) 894-3535

**SOUTHERN DIVISION**
411 West Fourth Street, Suite 1053
Santa Ana, CA 92701-4516
(714) 338-4750

**EASTERN DIVISION**
3470 Twelfth Street, Room 134
Riverside, CA 92501
(951) 328-4450

**TERRY NAFISI**
District Court Executive and
Clerk of Court

Date: October 10, 2013

Name & Address
Los Angeles County Superior Court
111 N. Hill Street
Los Angeles, CA 90012

Re:   Case Number: CV13-6344-GHK(PLAx)

Previously Superior Court Case No. BC515057

Case Name: Marie Howe -v- Coloplast Corp

Dear Sir / Madam:
    Pursuant to this Court's ORDER OF REMAND issued on October 10, 2013_____ , the
above-referenced case is hereby remanded to your jurisdiction.

    Attached is a certified copy of the ORDER OF REMAND and a copy of the docket sheet from this
Court.

    Please acknowledge receipt of the above by signing the enclosed copy of this letter and returning it
to our office.  Thank you for your cooperation.

Respectfully,

Clerk, U. S. District Court

By: Brent Pacillas_____
       Deputy Clerk   213-894-

☒ Western   ☐ Eastern   ☐ Southern Division

*cc: Counsel of record*

================================================================

Receipt is acknowledged of the documents described herein.

                              Clerk, Superior Court

                        **EXHIBIT**

_____       **9**   By: _____
Date                            Deputy Clerk

# EXHIBIT "F"

**EXHIBIT**

**9**

# JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 13-06308 DMG (PJWx)** | Date | October 8, 2013 |
|---|---|---|---|

| Title | ***Sheila Dekalb, et al. v. C.R. Bard, Inc., et al.*** | Page | 1 of 8 |
|---|---|---|---|

Present: The Honorable   DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| VALENCIA VALLERY | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings:   IN CHAMBERS—ORDER GRANTING PLAINTIFFS' MOTION TO
REMAND AND DENYING AS MOOT DEFENDANT'S MOTION TO
STAY CASE [Doc. ## 13, 14]**

## I.
## INTRODUCTION

On July 12, 2013, 93 Plaintiffs ("Plaintiffs") filed a Complaint in Los Angeles County Superior Court against Defendants C.R. Bard, Inc., Sofradim Production SAS, and Tissue Science Laboratories Limited, relating to injuries which they allege arose from implantation of defective pelvic mesh products. [Doc. # 1, Exh. A.] The Complaint alleges six state law causes of action for: (1) Negligence and Negligence Per Se; (2) Design Defect; (3) Manufacturing Defect; (4) Failure to Warn; (5) Breach of Implied Warranties; and (6) Gross Negligence.

On August 28, 2013, Defendant C.R. Bard, Inc. ("Defendant") removed the action to this Court, asserting subject matter jurisdiction on the basis of diversity of citizenship, 28 U.S.C. § 1332, 28 U.S.C. § 1441, and 28 U.S.C. § 1446.[1] [Doc. # 1.]

Defendant contends that the instant case is related to Multidistrict Litigation ("MDL") pending in the Southern District of West Virginia. (Not. of Removal ¶ 5; *see also id.*, Exh. C.) On August 30, 2013, Defendant submitted to the United States Judicial Panel on Multidistrict Litigation ("JPML") a Notice of Potential Tag-Along, seeking an order to transfer the action to MDL No. 2187. (Mot. for Stay at 3 [Doc. # 13].)

On September 4, 2013, Defendant filed a Motion to Stay all proceedings pending a decision on transfer by the JPML. [Doc. # 13.] On September 16, Plaintiffs filed an opposition

---

[1] Defendant was served the Complaint on July 29, 2013. (Not. of Removal ¶ 10 [Doc. # 1].) Defendants Sofradim Production SAS and Tissue Science Laboratories Limited apparently had not yet been served at the time of removal, but they consented to removal. (*Id.* ¶ 11.)

EXHIBIT
**9**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 13-06308 DMG (PJWx) | Date | October 8, 2013 |
|---|---|---|---|

| Title | *Sheila Dekalb, et al. v. C.R. Bard, Inc., et al.* | Page | 2 of 8 |
|---|---|---|---|

to Defendant's Motion to Stay. [Doc. # 25.]  On September 20, Defendant filed a reply. [Doc. # 26.]

On September 6, 2013, Plaintiffs filed a Motion to Remand the case to Los Angeles County Superior Court.[2] [Doc. # 14.]  On September 13, 2013, Defendant filed an opposition to the motion. [Doc. # 24.]

The Motion to Stay and Motion to Remand were originally scheduled for hearing on October 4, 2013. [Doc. ## 13, 14.]  On October 2, 2013, the Court deemed these matters suitable for decision without oral argument. [Doc. # 27.]  *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. For the reasons set forth below, Plaintiffs' Motion to Remand is **GRANTED**, Defendant's Motion to Stay Case is **DENIED** as moot, and this action is **REMANDED** to Los Angeles County Superior Court.

**II.**
**DISCUSSION**

**A.    The Court First Decides the Motion to Remand**

Defendant argues that the Court should address the Motion to Stay first and decline to rule on Plaintiffs' Motion to Remand (Mot. to Stay at 3-4) or, alternatively, the Court should deny Plaintiffs' Motion to Remand and grant the Motion to Stay.[3]  (Opp'n to Mot. to Remand at 7.)  Defendant contends that this Court has discretion to first consider the Motion to Stay based on *Sinochem International Co. v. Malaysia International Shipping Co.*, 549 U.S. 422, 127 S. Ct. 1184 (2007),[4] and notes that several district courts in this circuit have granted motions to stay while motions to remand have been pending.  (*Id.* at 2-7.)  Defendant contends that the MDL court is in the best position to decide pending jurisdictional issues in order to promote judicial efficiency and consistency and to prevent inconsistent rulings on the same jurisdictional issue. (Mot. to Stay at 8.)

---

[2] Plaintiffs request expedited consideration of their motion (Mot. to Remand at 1, 11, 22), but they did not file an *ex parte* application under Local Rule 7-19.

[3] In its opposition to Plaintiffs' motion to remand, Defendant argues in the alternative that the Court should sever the New Jersey Plaintiffs, remand their claims, and stay the claims of the remaining Plaintiffs.  (Opp'n to Mot. to Remand at 1 n.1.)

[4] The *Sinochem* Court held that "where subject matter or personal jurisdiction is difficult to determine, and *forum non conveniens* considerations weigh heavily in favor of dismissal," a court may dismiss on the ground of *forum non conveniens* without first addressing the jurisdictional issues. *Sinochem*, 549 U.S. at 435-36.

**EXHIBIT 9**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 13-06308 DMG (PJWx) | Date | October 8, 2013 |
|---|---|---|---|

| Title | *Sheila Dekalb, et al. v. C.R. Bard, Inc., et al.* | Page | 3 of 8 |

The Ninth Circuit has made clear that *Sinochem* does not "change the Supreme Court's command that [courts] address subject matter jurisdiction at the outset in the 'mine run of cases,' and reach other issues first only where the jurisdictional issue is 'difficult to determine,' and the other ground is relatively 'less burdensome.'" *Potter v. Hughes*, 546 F.3d 1051, 1061 (9th Cir. 2008) (quoting *Sinochem*, 549 U.S. at 436).

Defendant is correct that some district courts in this circuit have granted motions to stay in the context of a pending decision on transfer to an MDL court before ruling on a motion to remand, using the approach of the Northern District of California district court in *Conroy v. Fresh Del Monte Produce, Inc.*, 325 F. Supp. 2d 1049, 1053 (N.D. Cal. 2004).[5]  (Opp'n. to Mot. to Remand at 3-5.)  *See, e.g., Vest v. Allied Packing and Supply, Inc.*, No. C 11-00061, 2011 WL 333241, at *2 (N.D. Cal. Jan. 31, 2011); *but see Jones v. Bristol-Myers Squibb Co.*, No. C 13-2415, 2013 WL 3388659, at *4 (July 8, 2013).  The *Conroy* court noted that "[t]he decision to grant or deny a temporary stay of proceedings pending a ruling on the transfer of the matter to the MDL court lies" within the discretion of a district court, and it reasoned that "[o]ften, deference to the MDL court for resolution of a motion to remand provides the opportunity for the uniformity, consistency, and predictability in litigation that underlies the MDL system." *Conroy*, 325 F. Supp. 2d at 1053.  The court used a three-part test to determine whether to address a motion to remand or a motion to stay pending a ruling on transfer to the MDL court:  (1) "the court should give preliminary scrutiny to the merits of the motion to remand" because the venue statute, 28 U.S.C. § 1404(a), limits transfer of a civil action to "a venue where the case could have been brought originally" and therefore "questions regarding subject matter jurisdiction must be resolved before any such transfer"; (2) "if the jurisdictional issue appears factually or legally difficult, the court should determine whether identical or similar jurisdictional issues have been raised in other cases that have been or may be transferred to the MDL proceeding"; (3) "if the jurisdictional issue is both difficult and similar or identical to those in cases transferred or likely to be transferred, the court should stay the action." *Id.*, citing *Meyers v. Bayer AG*, 143 F. Supp.2d 1044, 1048-49 (E.D. Wis. 2001).

The Ninth Circuit has not expressly adopted the *Conroy* court's approach, *see Jones*, 2013 WL 3388659, at *4, and the cases cited by Defendant are not binding on this Court. Moreover, several courts in this district have considered motions to remand before motions to stay in the context of a pending decision on transfer to an MDL court. *See Carpenters Pension*

---

[5] Defendant also argues that "[c]ourts *****e . . . appl[ied] the three-factor test set forth in *Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1360 (C.D. Cal. 1997)." In *Rivers*, however, there was no pending motion to remand and the court used the three-factor test *****rely to determine whether to grant the stay. *See Rivers*, 980 F. Supp. at 1360.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 13-06308 DMG (PJWx)** | Date | October 8, 2013 |
|---|---|---|---|

| Title | *Sheila Dekalb, et al. v. C.R. Bard, Inc., et al.* | Page | 4 of 8 |
|---|---|---|---|

*Trust For S. California v. Ebbers*, 299 B.R. 610, 615 (C.D. Cal. 2003); *Shelton v. DePuy Orthopaedics, Inc.*, CV 11-08082, 2011 WL 6001630 (C.D. Cal. Dec. 1, 2011); *Andrews v. Bayer Corp.*, CV 09-08762, 2010 WL 234808 (C.D. Cal. Jan. 12, 2010); *but see Sanchez v. DePuy Orthopaedics Inc.*, 2:11-CV-07867, 2011 WL 7092289 (C.D. Cal. Nov. 21, 2011).

The Court does not consider the jurisdictional issue in this action to be "difficult to determine" or outside the "mine run of cases," and thus Supreme Court and Ninth Circuit precedent suggest that the Court should consider Plaintiffs' Motion to Remand first. Moreover, even if this Court were to apply the *Conroy* test, it would not be necessary to proceed beyond the first step as the jurisdictional issue does not appear "factually or legally difficult." *See Goodwin v. Kojian*, SACV 13-325, 2013 WL 1528966, at *2 (Apr. 12, 2013) ("Here, a preliminary assessment [under *Conroy*] of Plaintiff's MTR suggests that removal was improper, and thus, the Court must promptly complete its consideration of Plaintiff's MTR and remand if necessary.").

Defendant urges the Court to adopt the analysis of three district courts in this circuit that granted motions to stay and either denied or terminated with prejudice motions to remand in cases involving pelvic mesh. (Opp'n to Mot. to Remand, Exh. A.) As Plaintiffs point out, however, courts in this circuit are not of one mind as to whether to address a motion to stay or motion to remand first in pelvic mesh cases. *Compare Perry v. Luu*, No. 1:13-cv-729, 2013 WL 3354446, at *3 (E.D. Cal. July 3, 2013) (addressing motion to remand before motion to stay pending determination by JPML in pelvic mesh case), *and Goodwin*, 2013 WL 1528966, at *3 (same), *with Kelly Pecoraro and Michael Pecoraro v. Frances Sanghei-Kim, et al.*, EDCV 13-00987 (C.D. Cal.) (considering motion to stay pending determination by JPML before motion to remand in pelvic mesh case), *and Diane Thomas-Lanska, et al. v. Antoine A. Hanna, et al.*, CV 13-1434 (C.D. Cal.). While none of these cases are binding on this Court, the Court finds most persuasive the cases reaching the jurisdictional issue first.

Thus, this Court turns first to Plaintiffs' Motion to Remand.

**B.      The Court Lacks Subject Matter Jurisdiction**

"The burden of establishing federal subject matter jurisdiction falls on the party invoking removal." *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 944 (9th Cir. 2009) (citing *Toumajian v. Frailey*, 135 F.3d 648, 652 (9th Cir. 1998)). There is a "strong presumption against removal jurisdiction," and courts must reject it "if there is any doubt as to the right of removal in the first instance." *Pacific Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1107 (9th Cir. 2010) (quoting *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (*per curiam*) (internal quotation marks omitted)).

**EXHIBIT 9**

Case 2:14-cv-01699-JGB-SP  Document 96-3 Filed 02/17/15 Page 289 of 396 Page ID
#:533
Case 2:13-cv-06308-DMG-PJW  Document 30  Filed 10/08/13  Page 5 of 8  Page ID #:391

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 13-06308 DMG (PJWx) | | Date | October 8, 2013 |
|---|---|---|---|---|
| Title | *Sheila Dekalb, et al. v. C.R. Bard, Inc., et al.* | | Page | 5 of 8 |

Diversity jurisdiction under 28 U.S.C. § 1332 requires complete diversity: every plaintiff must be diverse from every defendant. *See Lincoln Property Co. v. Roche*, 546 U.S. 81, 89, 126 S. Ct 606, 163 L. Ed.2d 415 (2005). The Ninth Circuit has recognized an exception to the complete diversity requirement in the doctrine of fraudulent joinder. *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001). "Joinder of a non-diverse defendant is deemed fraudulent, and the defendant's presence in the lawsuit is ignored for purposes of determining diversity, 'if the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state.'" *Id.* (quoting *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987)).

Plaintiffs contend that complete diversity is lacking on the face of the Complaint. (Mot. to Remand at 12.) The Complaint is brought on behalf of 93 Plaintiffs[6] from 21 states, including three Plaintiffs from New Jersey.[7] (Not. of Removal ¶ 21.) Defendant is a corporation organized under the laws of New Jersey with its principal place of business in New Jersey. Therefore, for purposes of diversity jurisdiction, Defendant is a "citizen" of New Jersey. 28 U.S.C. § 1332(c)(1). Because Defendant and three Plaintiffs are citizens of New Jersey, diversity is lacking on the face of the Complaint.

Defendant does not suggest that complete diversity exists on the face of the Complaint, or that the fraudulent joinder exception is applicable. Rather, Defendant argues that this Court has jurisdiction under the "fraudulent misjoinder" doctrine, relying on a line of authority beginning with the Eleventh Circuit's decision in *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1359-60 (11th Cir. 1996), *abrogated on other grounds, Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). (Not. of Removal ¶¶ 20, 25-35; Opp'n. to Mot. to Remand at 7-15.) *Tapscott* involved two putative classes of plaintiffs, each of which sued a different group of defendants based on "wholly distinct" transactions. *Tapscott*, 77 F.3d at 1360. Defendant Lowe's, the representative of one defendant class, removed the case to federal court on the basis of diversity jurisdiction, and the district court disregarded the citizenship of the second class of

---

[6] The Complaint alleges that it is brought on behalf of 94 Plaintiffs (Compl. ¶ 1), but only 93 Plaintiffs are named (*see id.* ¶¶ 3-95), and Plaintiffs' briefing in this Court refers to 93 Plaintiffs. (*See* Mot. to Remand at 1.)

[7] Twenty-three Plaintiffs are from California; 10 Plaintiffs are from Texas; 8 Plaintiffs are from Pennsylvania; 7 Plaintiffs are from Indiana; 5 Plaintiffs are from Ohio; 4 Plaintiffs are from Georgia; 4 Plaintiffs are from Illinois; 4 Plaintiffs are from Oregon; 4 Plaintiffs ... Tennessee; 3 Plaintiffs are from Kansas; 3 Plaintiffs are from New Jersey; 3 Plaintiffs are from Oklahoma; ... from Utah; 2 Plaintiffs are from Louisiana; 2 Plaintiffs are from Nevada; 2 Plaintiffs are from Virginia; 2 Plaintiffs are from West Virginia; 1 Plaintiff is from Colorado; 1 Plaintiff is from Florida; 1 Plaintiff is from ... tucky; and 1 Plaintiff is from Missouri. (Compl. ¶¶ 3-95.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 13-06308 DMG (PJWx) | Date | October 8, 2013 |

| | | | |
|---|---|---|---|
| Title | *Sheila Dekalb, et al. v. C.R. Bard, Inc., et al.* | Page | 6 of 8 |

defendants, asserted jurisdiction, and severed and remanded the remainder of the action. *Id.* at 1355, 1360. The Eleventh Circuit affirmed the district court's orders, holding that where a plaintiff's attempt to defeat diversity by joining parties is "so egregious as to constitute fraudulent joinder," a court could disregard the fraudulently joined parties in order to assert diversity jurisdiction. *Id.* at 1360. The court noted that it "d[id] not hold that mere misjoinder is fraudulent joinder." *Id.*

The "fraudulent misjoinder" doctrine has received a "tepid" response outside the Eleventh Circuit. *See Early v. Northrup Grumman Corp.*, 2:13-CV-3130, 2013 WL 3872218, at *2 (C.D. Cal. July 24, 2013). While the Fifth Circuit adopted the doctrine in a one-paragraph opinion, *see In re Benjamin Moore & Co.*, 309 F.3d 296, 298 (5th Cir. 2002), the other circuit courts to consider the doctrine have not formally adopted it. *See, e.g., California Dump Truck Owners Ass'n v. Cummins Engine Co., Inc.*, 24 Fed. App'x. 727, 729 (9th Cir. 2001) ("For purposes of discussion we will assume, without deciding, that this circuit would accept the doctrines of fraudulent and egregious joinder as applied to plaintiffs."); *Lafalier v. State Farm Fire and Cas. Co.*, 391 Fed. App'x. 732, 739 (10th Cir. 2010); *In re Prempro Products Liability Litigation*, 591 F.3d 613 (8th Cir. 2010).

District courts in this circuit have criticized the "fraudulent misjoinder" doctrine. *See Osborn v. Metro. Life Ins. Co.*, 341 F. Supp.2d 1123, 1127-28 (E.D. Cal. 2004) (opining that "the last thing the federal courts need is more procedural complexity" associated with fraudulent misjoinder doctrine, noting the doctrine raises "unnecessary difficulties," such as uncertainty as to whether the federal or state joinder rules should apply, and suggesting the state court was competent to determine the issue of misjoinder); *Lopez v. Pfeffer*, 13-CV-03341, 2013 WL 5367723, at *3 (N.D. Cal. Sept. 25, 2013) (noting that defendant was entitled to litigate in MDL only if court had subject matter jurisdiction and court was "in just as good a position or better" than MDL court to resolve jurisdictional issue); *Early*, 2013 WL 3872218, at *2 - *3 (noting "the doctrine raises more questions than answers" because it is not clear when joinder is so egregious or otherwise inappropriate to require application of doctrine, and concluding that the doctrine "flips [the maxim that § 1441 should be narrowly construed] on its head by making cases removable that by § 1441's plain terms should not be, effectively increasing the jurisdiction of federal courts beyond what the rules envision"); *Perry v. Luu*, 1:13-CV-00729, 2013 WL 3354446, at *5 (E.D. Cal. July 3, 2013) (noting court was "confounded" by the "circular logic" of fraudulent misjoinder doctrine which "requires the Court first—in full recognition of the lack of diversity jurisdiction—sever part of the case and *only then* find it has jurisdiction" while "the authority to sever misjoined claims or ̶̶̶̶ ̶̶̶̶nder Rule 20 *presumes* the Court has jurisdiction to act" (emphasis in original)).

**EXHIBIT**

**9**

| | | |
|---|---|---|
| CV-90 | **CIVIL MINUTES—GENERAL** | Initials of Deputy Clerk vv |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 13-06308 DMG (PJWx) | Date | October 8, 2013 |
|---|---|---|---|

| Title | *Sheila Dekalb, et al. v. C.R. Bard, Inc., et al.* | Page | 7 of 8 |

It appears that two district courts in this circuit have used "fraudulent misjoinder" to exercise diversity jurisdiction, *see Sutton v. Davol*, 251 F.R.D. 500, 503-05 (E.D. Cal. 2008); *Greene v. Wyeth*, 344 F. Supp.2d 674, 684-85 (D. Nev. 2004).[8] Many other courts in this circuit have declined to decide whether the doctrine is good law, finding that it would not control their respective cases. *See, e.g., Ramirez v. Our Lady of Lourdes Hosp. at Pasco*, 2:13-CV-01108, 2013 WL 5373213, at *3 - *4 (W.D. Wash. Sept. 25, 2013); *Caouette v. Bristol-Myers Squibb Co.*, C-12-1814, 2012 WL 3283858, at *6 - *7 (N.D. Cal. Aug. 10, 2012); *Selman v. Pfizer, Inc.* 11-CV-1400, 2011 WL 6655354, at *12 - *13 (D. Or. Dec. 16, 2011).

Having considered both sides' arguments regarding the fraudulent misjoinder doctrine, this Court concludes that it must apply the traditional standards governing the existence *vel non* of diversity jurisdiction. Defendant identifies no precedent binding on this Court to support its contention that "fraudulent misjoinder" doctrine applies. The Ninth Circuit has not formally adopted the doctrine, and under Ninth Circuit precedent, 28 U.S.C. § 1441 is to be strictly construed and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus*, 980 F.2d at 566; *see also Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252.

Defendant has not met its burden of establishing that the Court has diversity jurisdiction over this case. Defendant fails to demonstrate that the New Jersey Plaintiffs were joined merely in order to defeat diversity jurisdiction. While Defendant accuses Plaintiffs of "blatant forum shopping" due to the joinder of three New Jersey Plaintiffs (Opp'n to Mot. to Remand at 15), Defendant's arguments suggest only that Plaintiffs' pleading is generally deficient as to all 93 Plaintiffs.[9] Thus, because complete diversity was destroyed by the presence of the New Jersey Plaintiffs, this Court lacks jurisdiction over this action.

---

[8] In these cases involving the alleged fraudulent misjoinder of defendants, the courts considered misjoinder under federal law and one of the courts used a standard lower than the egregiousness standard articulated in *Tapscott*. *See Greene*, 344 F. Supp.2d at 685.

[9] Specifically, Defendant contends: (1) "Plaintiffs' Complaint alleges claims arising from unidentified Bard products designed for the treatment of POP and SI. *No Plaintiff* identifies which product she received, if any"; (2) "The Complaint *does not allege injuries specific to each Plaintiff*, but rather lists various alleged dangers of polypropylene mesh in general"; (3) "*Each Plaintiff* has a unique medical history, which includes the highly individualized conditions and symptoms their symptoms were designed to treat, as well as their unique gynecological, urological, and other medical information"; (4) "The pelvic mesh products *for the 93 Plaintiffs* were undoubtedly implanted by different physicians, for different medical reasons, at different times, and at different medical facilities around the country; (5) "*Plaintiffs* have not stated when their surgeries occurred. It is likely that they occurred over a number of years given the potential range of products available to physicians, beginning in 2000." (Not. of Remand at 13-16 (emphasis added).)

EXHIBIT
**9**

| CV-90 | **CIVIL MINUTES—GENERAL** | Initials of Deputy Clerk vv |
|---|---|---|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 13-06308 DMG (PJWx) | Date | October 8, 2013 |
|---|---|---|---|

| Title | *Sheila Dekalb, et al. v. C.R. Bard, Inc., et al.* | Page | 8 of 8 |
|---|---|---|---|

## III.
## CONCLUSION

In light of the foregoing, Plaintiffs' Motion to Remand is **GRANTED**, Defendant's Motion to Stay Case is **DENIED** as moot, and this action is hereby **REMANDED** to Los Angeles County Superior Court.

**IT IS SO ORDERED.**

EXHIBIT
**9**

To the extent that Defendant argues that allegedly deficient pleading as to *all* plaintiffs is evidence of fraudulent misjoinder of only *some* plaintiffs, it fails to cite any binding Ninth Circuit precedent in support of this conclusion.



**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**
312 North Spring Street, Room G-8
Los Angeles, CA 90012
Tel: (213) 894-3535

**SOUTHERN DIVISION**
411 West Fourth Street, Suite 1053
Santa Ana, CA 92701-4516
(714) 338-4750

**TERRY NAFISI**
District Court Executive and
Clerk of Court

Date:  October 9, 2013

**EASTERN DIVISION**
3470 Twelfth Street, Room 134
Riverside, CA 92501
(951) 328-4450

Re:  Case Number: 2:13-cv-06308-DMG-PJWx

Previously Superior Court Case No. BC515036

Case Name: Sheila Dekalb, et al., v. C R Bard, Inc., et al.

Dear Sir / Madam:

Pursuant to this Court's ORDER OF REMAND issued on _____October 8, 2013_____, the above-referenced case is hereby remanded to your jurisdiction.

Attached is a certified copy of the ORDER OF REMAND and a copy of the docket sheet from this Court.

Please acknowledge receipt of the above by signing the enclosed copy of this letter and returning it to our office.  Thank you for your cooperation.

Respectfully,

Clerk, U. S. District Court

By: Mel Zavala
Deputy Clerk     213-894-5247

☒ Western   ☐ Eastern   ☐ Southern Division

cc: Counsel of record

=================================================================

Receipt is acknowledged of the documents described herein.

Clerk, Superior Court

By: _____

**EXHIBIT**

**9**

Date                              Deputy Clerk

# EXHIBIT "G"

**EXHIBIT**

**9**

**REMAND/JS-6**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 13-6343-GW(JEMx) | | Date | October 16, 2013 |
|---|---|---|---|---|
| Title | *Cheryl Mauck, et al. v. Boston Scientific Corporation, et al.* | | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | None Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):**     **RULINGS ON: (1) PLAINTIFFS' MOTION TO REMAND AND REQUEST FOR EXPEDITED CONSIDERATION [18], (2) DEFENDANT BOSTON SCIENTIFIC CORPORATION'S MOTION TO STAY ALL PROCEEDINGS PENDING A TRANSFER BY THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION [23], AND (3) MOTION TO DISMISS PLAINTIFFS' COMPLAINT [26]**

Boston Scientific Corporation ("BSC") removed this action on August 29, 2013, arguing that the 73 plaintiffs from 20 different states led by Cheryl Mauck (collectively "Plaintiffs") had been fraudulently misjoined in state court such that this Court could ignore the fact that three of the plaintiffs – Jennie Foley, Rosemarie Lambert and Audrey Aho – are of non-diverse citizen-ship vis-a-vis BSC. Plaintiffs now move to remand, whereas BSC moves to stay the action pending the resolution of an effort to have the action transferred to an MDL proceeding in the Southern District of West Virginia.[1] That MDL proceeding now includes approximately 8,000 cases against BSC. *See* Awong Decl. (Docket No. 24) ¶ 9. BSC also moves to dismiss, but the Court will not address that motion – either the case will be stayed pending resolution of the MDL-transfer proceedings or it will be remanded to state court. The

---

[1] BSC provided notice to the MDL panel of this "tag-along" action, and a Conditional Transfer Order was issued September 13, 2013. *See* Awong Decl. (Docket No. 24) ¶ 6 & Ex...

EXHIBIT G

**EXHIBIT**

**9**

299

Initials of Preparer    JG

*REMAND/JS-6*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 13-6343-GW(JEMx) | Date | October 16, 2013 |
|---|---|---|---|
| Title | *Cheryl Mauck, et al. v. Boston Scientific Corporation, et al.* | | |

Court finds the matter suitable for resolution on the briefs, and therefore vacates the October 21, 2013, hearing date.

As both parties recognize, district courts – including courts within this District – have taken different approaches to the question of whether subject matter jurisdiction must be resolved prior to transfer to a pending MDL. In similar circumstances involving medical product liability actions against DePuy Orthopaedics, Inc., this Court has stayed proceedings due to impending MDL-transfer proceedings. *See, e.g., Stone v. DePuy Orthopaedics, Inc.*, CV 13-1265, Docket No. 30 (Apr. 18, 2013); *Liebscher v. DePuy Orthopaedics, Inc.*, CV No. 12-6832, Docket No. 25 (Aug. 31, 2012). It took that approach to allow the MDL proceeding to resolve issues raised by remand motions in a way that is universally applicable to all the cases raising the same jurisdictional issue, thereby avoiding duplication of work and the possibility of inconsistent rulings. If the same judicial economy can be realized here – *i.e.*, if the MDL already has other cases raising the exact same removal/jurisdictional issues which it must resolve – the Court would adopt the same course.

Neither party has addressed what law the MDL applies with respect to any removal/ jurisdictional issues it must resolve. The Court will presume that the MDL must apply Ninth Circuit law – to the extent there is any – concerning "fraudulent misjoinder" to any cases transferred to it from district courts within the Ninth Circuit.[1] *Cf. In re Nucorp Energy Secs. Litig.*, 772 F.2d 1486, 1491-92 (9th Cir. 1985). As such, the Court is concerned with whether the MDL already must resolve this issue *in one or more cases transferred to it from a district court within the Ninth Circuit.* Only Exhibit B to the Awong Declaration concerns Central District of California cases that have been transferred to the BSC MDL. *See* Awong Decl. (Docket No. 24) ¶ 9. However, that exhibit only reflects Conditional Transfer Orders for those cases; those orders say nothing about whether the jurisdictional issue raised in this case is now before – or has ever been before – the judge handling the MDL proceeding. Exhibits C-

---

[1] The parties agree that the "fraudulent misjoinder" doctrine is of varied levels of acceptance across the Circuits, meaning that resolution of the issue in a case removed within, for instance, the Eleventh Circuit would not necessarily result in the same resolution with respect to a case removed within, for [?]~~ Circuit.~~

**EXHIBIT**

**9**

300

Initials of Preparer   JG

*REMAND/JS-6*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 13-6343-GW(JEMx) | | Date | October 16, 2013 |
|---|---|---|---|---|
| Title | *Cheryl Mauck, et al. v. Boston Scientific Corporation, et al.* | | | |

F reflect other cases transferred to the same judge handling BSC's MDL, but those cases concern a different MDL proceeding (albeit another one involving the same type of medical product at issue here). *See id.* ¶¶ 10-14. In any event, the jurisdictional/removal issues raised in those four rulings concerned fraudulent joinder *of a non-diverse defendant, see id.*, Exhs. C-E, or application of the "forum defendant rule," *id.*, Exh. F, not an alleged fraudulent misjoinder *of plaintiffs*. *Rubio v. Arndal*, No. 1:13-cv-0027-LJO-BAM, 2013 U.S. Dist. LEXIS 29149, *11 (C.D. Cal. Mar. 4, 2013), on which BSC also relies, similarly considers the distinct issue of fraudulent joinder of a non-diverse *defendant*.

In other words, BSC has failed to demonstrate that there will be any judicial efficiency gained by staying this matter so that the MDL proceeding can resolve the jurisdictional issue. As a result, this Court will proceed to resolve the jurisdictional issue. As other courts have noted, the Ninth Circuit has never adopted the "fraudulent misjoinder of plaintiffs" basis for ignoring the citizenship of non-diverse plaintiffs. *See, e.g., Muller v. Am. Med. Sys.*, CV 13-6276 PA (RZx), 2013 U.S. Dist. LEXIS 124747, *5-6 (C.D. Cal. Aug. 29, 2013); *see also Goodwin v. Kojian*, 2013 U.S. Dist. LEXIS 53403, 2013 U.S. Dist. LEXIS 53403, *11-12 (C.D. Cal. Apr. 12, 2013). Absent a clear indication that it must do so, neither will this Court.

Removal jurisdiction is to be narrowly-construed, and doubts about its propriety are to be resolved in favor of remand. *See, e.g., Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1107 (9th Cir. 2010). As such, diversity jurisdiction is lacking here. The Court grants Plaintiffs' motion to remand and denies BSC's motion to stay. The motion to dismiss is moot.

EXHIBIT

**9**

301

Initials of Preparer    JG      :



**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**
312 North Spring Street, Room G-8
Los Angeles, CA 90012
Tel: (213) 894-3535

**SOUTHERN DIVISION**
411 West Fourth Street, Suite 1053
Santa Ana, CA 92701-4516
(714) 338-4750

**EASTERN DIVISION**
3470 Twelfth Street, Room 134
Riverside, CA 92501
(951) 328-4450

**TERRY NAFISI**
District Court Executive and
Clerk of Court

Date: October 18, 2013

Los Angeles County Superior Court
Stanley Mosk Courthouse
111 North Hill Street
Los Angeles, CA 90012

Re:   Case Number: CV 13-6343-GW(JEMx)

Previously Superior Court Case No. BC515043

Case Name: Cheryl Mauck et al v. Boston Scientific Corporation et al

Dear Sir / Madam:

Pursuant to this Court's ORDER OF REMAND issued on October 16, 2013_____, the above-referenced case is hereby remanded to your jurisdiction.

Attached is a certified copy of the ORDER OF REMAND and a copy of the docket sheet from this Court.

Please acknowledge receipt of the above by signing the enclosed copy of this letter and returning it to our office. Thank you for your cooperation.

Respectfully,

Clerk, U. S. District Court

By: P. Lopez phyllis_lopez@cacd.uscourts.gov
Deputy Clerk   213-894-

☒ Western   ☐ Eastern   ☐ Southern Division

*cc: Counsel of record*

======================================================================

Receipt is acknowledged of the documents described herein.

Clerk, Superior Court

**EXHIBIT**
**9**

By:_____
Date_____   Deputy Clerk

CV - 103 (09/08)          LETTER OF TRANSMITTAL - REMAND TO SUPERIOR COURT (CIVIL)

302

# EXHIBIT "H"

EXHIBIT

**9**

JS-6
LINK:

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 13-06321 BRO (AJWx) | Date | October 21, 2013 |
|---|---|---|---|
| Title | SHERRY PATE, ET AL. V. BOSTON SCIENTIFIC CORP. | | |

Present: The Honorable    **BEVERLY REID O'CONNELL, United States District Judge**

| Renee A. Fisher | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**      (IN CHAMBERS)

## ORDER GRANTING PLAINTIFFS' MOTION TO REMAND, AND VACATING DEFENDANT'S MOTION TO STAY AND MOTION TO DISMISS

Pending before the Court are three separate motions: (1) Plaintiffs Sherry Pate, et al.'s motion to remand (Dkt. No. 18); Defendant Boston Scientific's motion to stay (Dkt. No. 23); and (3) Defendant Boston Scientific's motion to dismiss (Dkt. No. 26). For the following reasons Plaintiffs' motion to remand is GRANTED. Because the Court remanded the suit, it VACATES Defendant's motion for stay and motion to dismiss.

### I.    FACTUAL BACKGROUND

Defendant Boston Scientific Corporation is an entity incorporated under the laws of Delaware, and headquartered in Boston, Massachusetts. (Notice Removal Ex. A ("Compl.") ¶ 68.) Apparently, Defendant designs, manufactures, and distributes various medical and surgical devices, including pelvic mesh products that are the focus of this lawsuit. (*See* Compl. ¶ 70.)

Defendant designed the particular mesh products primarily as a treatment for pelvic organ prolapse and stress urinary incontinence. (Compl. ¶ 100.) Pelvic organ prolapse is a medical condition resulting from weakened or stretched tissues that support a female's lower abdominal organs. (Compl. ¶ 101.) As a treatment for the condition, Defendant designs, manufactures, and distributes its mesh products to be surgically inserted and implanted to reinforce a patient's pelvic region. (Compl. ¶ 101.) Stress urinary incontinence is a medical condition involving incontinence during physical

**EXHIBIT**
**9**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 13-06321 BRO (AJWx) | Date | October 21, 2013 |
|---|---|---|---|
| Title | SHERRY PATE, ET AL. V. BOSTON SCIENTIFIC CORP. | | |

activity. (Compl. ¶ 102.) Defendant designs, manufactures, and distributes its mesh products to be implanted in a patient's pelvic area in order to provide support to the patient's urethra, thus preventing incontinence. (*See* Compl. ¶ 102.)

Plaintiffs are sixty-five women medical patients who were treated using Defendant's mesh products. (*See* Compl. ¶¶ 2–67, 90, 128–134.) Following their respective medical procedures, Plaintiffs experienced serious side effects and injuries, requiring additional procedures, and causing severe and lasting pain. (Compl. ¶¶ 129–134.) Apparently, Plaintiffs' adverse side effects were caused due to the material of which Defendant's mesh products are made: composed biological and non-absorbable synthetic materials. (*See* Compl. ¶ 104.) Evidently, certain scientific evidence has indicated the possibility that those materials are biologically incompatible with human tissue, resulting in a negative immune response and inflammation of a patient's pelvic tissue. (Compl. ¶ 104.)

Consequently, on July 12, 2013, Plaintiffs jointly initiated a civil lawsuit against Defendant by filing a complaint with the Superior Court of California, County of Los Angeles. (*See* Compl.) Shortly thereafter, on August 28, 2013, Defendant removed the action to this Court, pursuant to 28 U.S.C. §§ 1441 and 1446, alleging this Court has original jurisdiction pursuant to 28 U.S.C. § 1332. (Dkt. No. 1.) Plaintiffs objects to Defendant's removal, contending jurisdiction under 28 U.S.C. § 1332 does not lie because the parties are not entirely diverse. (*See* Dkt. No. 18.) Accordingly, on September 13, 2013, Plaintiff filed a motion to remand the action to the Superior Court. (Dkt. No. 18.)

Apparently, Defendant is involved in myriad cases involving its mesh products. (*See* Dkt. No. 23, Def.'s Mot. Stay.) Thus, there is a multidistrict litigation proceeding, established in the Southern District of West Virginia, to coordinate all federal product liability actions involving Defendant's mesh products. (Def.'s Mot Stay 1.) At some point, Defendant applied to transfer this case to the multidistrict litigation proceeding, and on September 13, 2013, a conditional transfer order was issued. (Def.'s Mot. Stay 3; Awong Decl. ¶ 6, Ex. A.) Accordingly, on September 23, 2013, Defendant filed a motion to stay this case pending the transfer to the multidistrict litigation proceeding. (Dkt. No. 23.)

EXHIBIT
**9**

Case 2:13-cv-06321-BRO-AJW   Document 45   Filed 10/21/13   Page 3 of 9   Page ID #:1185
Case 2:15-cv-06392-JGB-SP   Document 18-3   Filed 02/12/14   Page 602 of 896   Page ID
#:546

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 13-06321 BRO (AJWx) | Date | October 21, 2013 |
|---|---|---|---|
| Title | SHERRY PATE, ET AL. V. BOSTON SCIENTIFIC CORP. | | |

Additionally, Defendant has moved to dismiss the complaint for failure to state a claim. (Dkt. No. 26.)

## II.   LEGAL STANDARD

Whether a defendant may rightfully remove a case from a state court to a federal district court is entirely governed by statutory authorization by Congress. *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979.) Under 28 U.S.C. § 1441, a civil action may be removed to the district court only if that court has original jurisdiction over the issues alleged in the state court complaint.[1] Because federal courts are courts of limited jurisdiction, they possess original jurisdiction only as authorized by the Constitution and federal statute. *See, e.g., Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

Pursuant to 28 U.S.C. § 1331, a federal district court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." A case "arises under" federal law if a plaintiff's "well-pleaded complaint establishes either that federal law creates the cause of action" or that the plaintiff's "right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 13 (1983). Because a defense is not part of a plaintiff's properly pleaded claim, *see Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987), jurisdiction may not properly be based on an anticipated defense created by federal law, *see Franchise Tax Bd.*, 463 U.S. at 14. Accordingly, "a case may not be removed to federal court on the basis of a federal defense, . . . even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." *Franchise Tax Bd.*, 463 U.S. at 14.

Original jurisdiction may also be established pursuant to 28 U.S.C. § 1332. Under § 1332, a federal district court has "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and

---

[1] Although inapplicable in this case, 28 U.S.C. § 1443 provides another means for removing a state court action to a federal district court.

EXHIBIT
9

Case 2:14-cv-00892-JGB-SP Document 18-3 Filed 02/27/14 15 Page 603 of 396 Page ID #:60
#:547
Case 2:13-cv-06321-BRO-AJW   Document 45   Filed 10/21/13   Page 4 of 9   Page ID #:1186

LINK:

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 13-06321 BRO (AJWx) | Date | October 21, 2013 |
|---|---|---|---|
| Title | SHERRY PATE, ET AL. V. BOSTON SCIENTIFIC CORP. | | |

costs, and" the dispute is between "citizens of different states."[2]  The Supreme Court has interpreted the statute to require "complete diversity of citizenship," meaning it requires "the citizenship of each plaintiff [to be] diverse from the citizenship of each defendant." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 67–68 (1996).

Section 1441 also limits removal to cases where none of the defendants "properly joined and served . . . is a citizen of the State in which such action is brought."  28 U.S.C. § 1441(b)(2).  Nevertheless, this so-called "forum defendant rule" is a "procedural, or non-jurisdictional," limitation on removal jurisdiction, and therefore may be waived. *Lively v. Wild Oats Markets Inc.*, 456 F.3d 933, 939 (9th Cir. 2006).

In determining whether removal in a given case is proper, a court should "strictly construe the removal statute against removal jurisdiction"; "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir. 1992).  As such, the removing party bears a heavy burden of establishing proper removal to and original jurisdiction in the district court in order to rebut the strong presumption against removal jurisdiction. *See id.*

## III.   REQUEST FOR JUDICIAL NOTICE

A court may properly take judicial notice of: (1) material which is included as part of the complaint or relied upon by the complaint; and (2) matters in the public record. *See Tellabs Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 322 (2007) ; *Lee v. City of Los Angeles*, 250 F.3d 668, 688–69 (9th Cir. 2001). Under Federal Rule of Evidence 201(b), a "judicially noticed fact must be one not subject to reasonable dispute in that it is either: (1) generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Further, a court "shall take judicial notice if requested by a party and supplied with the necessary information." *See* Fed.R.Evid. 201(d); *Mullis v. U. S. Bankr. Court for Dist. of Nevada*, 828 F.2d 1385, 1388 n. 9 (9th Cir.1987).

**EXHIBIT 9**

---

[2] Diversity of citizenship may also be established on other grounds that are not relevant here. *See* 28 U.S.C. § 1332.

Case 2:14-cv-01699-JGB-SP   Document 18-3   Filed 02/17/14   Page 604 of 840   Page ID
#:548
Case 2:13-cv-06321-BRO-AJW   Document 45   Filed 10/21/13   Page 5 of 9   Page ID #:1187

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 13-06321 BRO (AJWx) | Date | October 21, 2013 |
|---|---|---|---|
| Title | SHERRY PATE, ET AL. V. BOSTON SCIENTIFIC CORP. | | |

Here, Defendant filed a Request for Judicial Notice, asking this Court to take
judicial notice of exhibits A through K of the Awong Declaration. Exhibits A through K,
are orders from courts throughout the United States and are properly judicially noticeable
under Federal Rule of Evidence 201. Therefore, to the extent necessary to rule on the
pending motions, the Court has considered all Defendants' judicially noticeable exhibits.

## IV.   DISCUSSION

The Court will consider the motions in the order they were filed: first, Plaintiffs'
motion to remand the action; second, Defendant's motion to stay the action pending a
transfer to the multidistrict litigation proceeding; and, third, Defendant's motion to
dismiss for failure to state a claim.

In their motion, Plaintiffs contend Defendants have inappropriately removed this
action to federal court. (*See generally* Pls.' Mot.)  They assert that jurisdiction cannot
possibly be based on 28 U.S.C. § 1332 because the parties are not completely diverse.
(Pls.' Mot 12:6–17.)  Indeed, three of the plaintiffs are not diverse with Defendant:
Plaintiffs Josephine Penza and Valerie Scheibner are residents and citizens of
Massachusetts, and Plaintiff Denise Hutchinson is a resident and citizen of Delaware,
(Compl. ¶¶ 9–11).  Defendant is headquartered in Massachusetts, and incorporated in
Delaware. (Compl. ¶ 68.)  Therefore, jurisdiction in this matter cannot properly lie based
on 28 U.S.C. § 1332.  And after reviewing their complaint, it is readily apparent to the
Court that Plaintiffs have alleged no federal causes of action; therefore, jurisdiction
cannot properly lie based on 28 U.S.C. § 1331, either.

Yet, Defendant believes this action is rightly before the Court.[3]  (Def.'s Opp'n 7.)
According to Defendant, the three non-diverse plaintiffs have been "fraudulently
misjoined," and should therefore be severed, leaving only diverse plaintiffs. (*See* Def.'s
Opp'n 7–8.)  Fraudulent misjoinder is a concept originating in the Eleventh Circuit. *See
Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353 (11th Cir. 1996).  It appears to be

---

[3] Defendant also contends the Court should stay the [action] pending [a] possible transfer to multidistrict litigation proceedings,
and thus not decide whether remand is necessary. (Def.'s Opp'n 14.)  Nevertheless, if there is no subject matter jurisdiction
over this case in a federal court, it cannot be heard in this Court, nor can it be heard in another federal district where the
multidistrict litigation proceeds. Therefore, the Court will properly consider Plaintiffs' motion to remand before considering
Defendant's motion to stay.

**EXHIBIT 9**

LINK:

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| Case No. | CV 13-06321 BRO (AJWx) | Date | October 21, 2013 |
|---|---|---|---|
| Title | SHERRY PATE, ET AL. V. BOSTON SCIENTIFIC CORP. | | |

related to the legal doctrine of fraudulent joinder. *Osborn v. Metropolitan Life Ins. Co.*, 341 F. Supp. 2d 1123, 1127 (E.D. Cal. 2004). Fraudulent joinder of a non-diverse defendant is an exception to the requirement for complete diversity among the parties in a suit whose federal subject matter jurisdiction is based upon 28 U.S.C. § 1332. *Morris v. Princess Cruises Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001). Fraudulent joinder is a term of art, and does not describe plaintiff's subjective intent. *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir.1987). It exists, and therefore the non-diverse defendant is ignored for purposes of determining diversity of the parties, if the plaintiff "fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." *Id.* at 1339; *accord Ritchey v. Upjohn Drug Co.*, 139 F.2d 564, 566 (9th Cir. 1998). Because the removal statute in general is narrowly construed, thus favoring remand, the doctrine of fraudulent joinder is likewise narrowly construed: "[i]n borderline situations, where it is doubtful whether the complaint states a cause of action against the resident defendant, the doubt is ordinarily resolved in favor of the retention of the cause in state court." *Albi v. Street & Smith Publ'ns*, 140 F.2d 310, 312 (9th Cir. 1944). Indeed, a Court should reject removal, and remand the action to state court, unless the plaintiff is unable to state a claim against the non-diverse defendant, and "has no reasonable ground for supposing" it could. *Id.* Therefore, if any *possibility* exists that a plaintiff may prevail against the non-diverse defendant, fraudulent joinder must be rejected, and the case must be remanded. *Plute v. Roadway Package Sys., Inc.*, F. Supp. 2d 1005, 1008, 1012 (N.D. Cal. 2001).

Fraudulent misjoinder differs from fraudulent joinder. Under the Federal Rules of Civil Procedure, there are two requirements for "[p]ersons [to] join in one action as plaintiffs": (1) "they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of occurrences"; and (2) "any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a). Misjoinder occurs when multiple plaintiffs attempt to join separate claims that are not sufficiently related to warrant joinder. *See Geffen v. Gen. Elec. Co.*, 575 F. Supp. 2d 865, 869 (E.D. Ohio 2008). *Fraudulent* misjoinder occurs when misjoinder is "so egregious as to constitute fraudulent joinder," thus warranting a severance of the improperly joined claims. *See Tapscott* 77 F.3d at 1360. Yet the Court would note that "[m]isjoinder is not a ground for dismissing an action," and "the court

**EXHIBIT 9**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 13-06321 BRO (AJWx) | Date | October 21, 2013 |
|----------|------------------------|------|------------------|
| Title | SHERRY PATE, ET AL. V. BOSTON SCIENTIFIC CORP. | | |

*may* at any time, on just terms, add or drop a party," or "sever any claim against a party." Fed. R. Civ. P. 21 (emphasis added).[4]

Although the Ninth Circuit has acknowledged the concept of fraudulent misjoinder in an unpublished decision, it has not yet elected to adopt the doctrine. *Cal. Dump Truck Owners Ass'n v. Cummins Engine Co. Inc.*, 24 Fed. App'x 727, 729 (9th Cir. 2001);[5] *Osborn*, 341 F. Supp. 2d at 1127; *Caouette v. Bristol-Meyers Squibb Co.*, No. C-12-1814, 2012 WL 3283858 (N.D. Cal. Aug. 10, 2012). The Court need not decide whether to adopt the doctrine in this case. Even were fraudulent misjoinder a viable doctrine within the Ninth Circuit, in the Court's view, Defendant would not have met its heavy burden in demonstrating that removal was proper. The Court reiterates that "[f]ederal jurisdiction must be rejected if there is *any doubt* as to the right of removal in the first instance," and consequently Defendant bears a heavy burden of establishing proper removal to and original jurisdiction in this Court. *Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir. 1992) (emphasis added). And, as articulated by the Eleventh Circuit in *Tapscott*, mere misjoinder is not fraudulent joinder; it only rises to the level of fraudulent joinder if it is sufficiently egregious.[6] *Tapscott*, 77 F.3d at 1360. Therefore, whereas fraudulent joinder

---

[4] The Court notes the permissive nature of Rule 21 and finds it telling of the standard, if one actually exists, for circumstances where dropping a party or severing a claim would be mandatory. Because Rule 21 is permissive, such a standard would of necessity be very demanding.

[5] Although the Ninth Circuit did not in fact adopt the doctrine of fraudulent misjoinder in *California Dump Truck Owners Association*, it did apply the doctrine in that case: "For purposes of discussion we will assume, without deciding, that this circuit would accept the doctrines of fraudulent and egregious joinder as applied to plaintiffs." 24 Fed. App'x at 729.

[6] The Court notes Defendant's contention that misjoinder need not be egregious to be fraudulent. (Def.'s Opp'n 13–14.) And the Court is mindful of the district court cases cited by Defendant in support of its contention. (*See id.*) Yet, the Court rejects Defendant's argument in this respect. The court in *Tapscott* was clear: "We do not hold that mere misjoinder is fraudulent joinder, but we do agree with the district court that Appellants' attempt to join these parties is *so egregious as to constitute fraudulent joinder*." 77 F.3d at 1360 (emphasis added). If the Eleventh Circuit did not intend egregiousness to be the standard for fraudulent misjoinder, it could have selected one of myriad other terms to use in that sentence instead of "egregious." Moreover, the standard for fraudulent joinder is also very demanding: a court should reject removal and remand the action to state court unless the plaintiff is unable to state a claim against the non-diverse defendant, and "has no reasonable ground for supposing" it could. *Albi v. Street & Smith Publ'ns*, 140 F.2d 310, 312 (9th Cir. 1944). Therefore, logically then, the standard for fraudulent misjoinder would be similarly demanding. In any case, the Ninth Circuit has not adopted the doctrine of fraudulent misjoinder. As such, the Court is in no position to be altering the standard for a concept it would be borrowing from the Eleventh Circuit. This is especially true because, as noted above, a Ninth Circuit panel has in fact acknowledged the doctrine, without actually adopting it for the circuit, and applied it in the case before it. *Cal. Dump Truck Owners Ass'n v. Cummins Engine Co. Inc.*, 24 Fed. App'x 727, 729 (9th Cir. 2001). That panel specifically referred to the doctrine as "egregious joinder of plaintiffs." *Id.* (interior quotation marks omitted). Although the panel's decision is not binding, it is the only Ninth Circuit guidance available at this time, and the Court is unwilling to disregard it.

---

LINK:

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 13-06321 BRO (AJWx) | Date | October 21, 2013 |
|---|---|---|---|
| Title | SHERRY PATE, ET AL. V. BOSTON SCIENTIFIC CORP. | | |

must be proven by clear and convincing evidence, *Hamilton Materials Inc. v. Dow Chemical Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007), the Court interprets the corollary, that fraudulent misjoinder must also be proven by clear and convincing evidence.

In its opposition, Defendant contends Plaintiffs' "complaint alleges absolutely no factual connection among [P]laintiffs' claims, except that each was allegedly implanted with different pelvic mesh products manufactured by [Defendant]." (Def.'s Opp'n 11.) Yet, in the Court's view, Defendant oversimplifies Plaintiffs' claims. Indeed, Plaintiffs allege Defendant breached its duty to them by: "[f]ailing to design and manufacture the Mesh Products without defects," (Compl. ¶145(a)); "[f]ailing to exercise reasonable care in testing the Mesh Products prior to [their] marketing, sale, and distribution," (Compl. ¶ 145(b)); and "[f]ailing to include adequate warnings," (Compl. ¶ 145(c)). Additionally, Plaintiffs assert that "Defendant's Mesh Products are defectively designed," and therefore Defendant is strictly liable to them. (Compl. ¶ 155.) Moreover, Plaintiffs were injured when Defendant's mesh products were implanted into them. (Compl. ¶¶ 130, 133.) Defendant fails to explain why it cannot be said that Plaintiffs are "assert[ing a] right to relief . . . with respect to or arising out of the same . . . series of transactions or occurrences." Fed. R. Civ. P. 20. Instead, it merely asserts it has manufactured many different mesh products and therefore it is not plausible that Plaintiffs' claims arise out of the same transactions or occurrences. (Def.'s Opp'n 12.) Yet, Defendant's speculation does not rise to the level of clear and convincing evidence. Even if the Court were to accept Defendant's assertion that it is not plausible—and it is not clear that accepting Defendant's assertion would be appropriate—it is still *possible* that Plaintiffs' claims do arise out of the same transactions or occurrences. Without any kind of showing that Plaintiffs' are improperly joined, Defendant's efforts do not meet the requisite clear and convincing evidence standard.

Additionally, in the Court's view, Defendant's argument in favor of severing only the non-diverse plaintiffs' claims is inconsistent when based on the doctrine of fraudulent misjoinder. According to Defendant, Plaintiffs' claims do not arise out of the same transactions or occurrences, and are therefore fraudulently misjoined. It is not clear whether severance under fraudulent misjoinder would be permissive or mandatory. But, in either case, the Court is not persuaded that Plaintiffs have improperly joined their claims in a single lawsuit.

**EXHIBIT**

**9**

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-06321 BRO (AJWx) | Date | October 21, 2013 |
|---|---|---|---|
| Title | SHERRY PATE, ET AL. V. BOSTON SCIENTIFIC CORP. | | |

Accordingly, Plaintiffs' motion to remand is GRANTED.  As such, Defendants' motion to stay and motion to dismiss are VACATED as moot.

**V.    CONCLUSION**

For the foregoing reasons, the Court GRANTS Plaintiffs' motion to remand. Defendant's motion to stay and motion to dismiss are VACATED as moot.

**IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer | rf |



**EXHIBIT
9**



**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

WESTERN DIVISION
312 North Spring Street, Room G-8
Los Angeles, CA 90012
Tel: (213) 894-3535

SOUTHERN DIVISION
411 West Fourth Street, Suite 1053
Santa Ana, CA 92701-4516
(714) 338-4750

EASTERN DIVISION
3470 Twelfth Street, Room 134
Riverside, CA 92501
(951) 328-4450

**TERRY NAFISI**
District Court Executive and
Clerk of Court

Date: October 23, 2013

Name & Address
Los Angeles County Superior Court
111 N. Hill Street
Los Angeles, CA 90012

Re:   Case Number: <u>CV12-6321-BRO(AJWx)</u>

       Previously Superior Court Case No. <u>BC515037</u>

       Case Name: <u>Sherry Pate -v- Boston Scientific Corporation</u>

Dear Sir / Madam:
       Pursuant to this Court's ORDER OF REMAND issued on <u>October 21, 2013</u>                , the
above-referenced case is hereby remanded to your jurisdiction.

       Attached is a certified copy of the ORDER OF REMAND and a copy of the docket sheet from this
Court.

       Please acknowledge receipt of the above by signing the enclosed copy of this letter and returning it
to our office.  Thank you for your cooperation.

                              Respectfully,

                              Clerk, U. S. District Court

                              By: <u>Brent Pacillas</u>
                                  Deputy Clerk   213-894-

                              ☒ Western   ☐ Eastern   ☐ Southern Division

*cc: Counsel of record*

Receipt is acknowledged of the documents described herein.

                              Clerk, Superior Court

                              By: _____

_____              **EXHIBIT**

Date                         **9**              Deputy Clerk

CV - 103 (09/08)          LETTER OF TRANSMITTAL REMAND TO SUPERIOR COURT (CIVIL)

# EXHIBIT "I"

EXHIBIT

**9**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ISEBELL BRANNEN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 4:12CV1429 RWS |
| | ) | |
| ETHICON, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER OF REMAND**

This matter is before the Court on its review of this recently-removed case.
The Court has reviewed the state-court file and the notice of removal sua sponte to
determine whether the matter was properly removed. It was not, so the Court
remands the case back to state court for lack of subject matter jurisdiction under
28 U.S.C. § 1447(c).

Plaintiffs filed this action in state court claiming that they suffered various
damages as a result of their use of defendants' gynecare transvaginal tape mesh
products, which are used to treat stress urinary incontinence.

On August 10, 2012, defendants Ethicon, Inc., Ethicon, LLC, and Johnson
& Johnson removed the action to this Court, alleging diversity jurisdiction under
28 U.S.C. § 1332. Despite the fact that Ethicon, Inc. and some of the plaintiffs are
all citizens of New Jersey, defendants argue that the citizenship of the New Jersey

**EXHIBIT**

**9**

EXHIBIT I

(and all non-Missouri) plaintiffs should be disregarded because plaintiffs' claims are fraudulently misjoined.

Defendants also urge me to stay all proceedings in this matter because they have moved the Judicial Panel on Multidistrict Litigation (JPML) to transfer this case to Multidistrict Litigation (MDL) Case 2327, <u>In re Ethicon, Inc. Pelvic Repair Systems Products Liability Litigation</u>, which is pending in the Southern District of West Virginia before the Honorable Joseph R. Goodwin.  I will not stay these proceedings and must <u>sua</u> <u>sponte</u> remand this case.  "A putative transferor court need not automatically postpone rulings on pending motions, or in any way generally suspend proceedings, merely on grounds that an MDL transfer motion has been filed."  <u>Tortola Restaurants, L.P. v. Kimberly-Clark Corp.</u>, 987 F. Supp. 1186, 1188-89 (N.D. Cal. 1997) (citing <u>Manual for Complex Litigation 3d</u> § 31.131, p.252 (3d ed. 1995)).  This is especially true when dealing with the Court's subject matter jurisdiction.  <u>See</u> <u>Thompson v. Apple, Inc.</u>, 2011 WL 2671312, *4 (E.D. Ark. July 8, 2011).  "In this case, the court believes the best course is to decide the motion to remand because judicial economy will be best served by addressing the remand issue as it will facilitate litigation in the appropriate forum."  <u>Kohl v. American Home Products Corp.</u>, 78 F. Supp. 2d 885, 888 (W.D. Ark. 1999) (internal citation and quotation marks omitted).  As another district court in this circuit has com... Court is in the best position to

**EXHIBIT**

**9**

- 2 -

determine its subject matter jurisdiction . . . To stay the case pending a decision by the MDL Panel would waste judicial and other resources and would not promote the efficient administration of justice." Stone v. Baxter Intern., Inc., 2009 WL 236116, *2 (D. Neb. Jan. 30, 2009).

"A defendant may remove a state law claim to federal court only if the action originally could have been filed there." In re Prempro Products Liability Litigation, 591 F.3d 613, 619 (8th Cir. 2010) (citing Phipps v. FDIC, 417 F.3d 1006, 1010 (8th Cir. 2005)). Diversity jurisdiction under 28 U.S.C. § 1332 requires an amount in controversy greater than $75,000 and complete diversity of citizenship among the litigants. 28 U.S.C. § 1332(a). "Complete diversity of citizenship exists where no defendant holds citizenship in the same state where any plaintiff holds citizenship." OnePoint Solutions, LLC v. Borchert, 486 F.3d 342, 346 (8th Cir. 2007). The defendant bears the burden of establishing federal jurisdiction by a preponderance of the evidence. Altimore v. Mount Mercy College, 420 F.3d 763, 768 (8th Cir. 2005). "All doubts about federal jurisdiction should be resolved in favor of remand to state court." In re Prempro, 591 F.3d at 620 (citing Wilkinson v. Shackleford, 478 F.3d 957, 963 (8th Cir. 2007)).

"Courts have long recognized fraudulent joinder as an exception to the complete diversity rule." In re Prempro, 591 F.3d at 620. "Fraudulent joinder

**EXHIBIT**

**9**

- 3 -

occurs when a plaintiff files a frivolous or illegitimate claim against a non-diverse defendant solely to prevent removal." Id.

Here defendants are claiming fraudulent misjoinder. The Eighth Circuit Court of Appeals has not yet determined whether fraudulent misjoinder is a valid basis for removal. Prempro, 591 F.3d at 620. The Eighth Circuit recently discussed the doctrine of fraudulent misjoinder, stating:

> A more recent, somewhat different, and novel exception to the complete diversity rule is the fraudulent misjoinder doctrine which one appellate court and several district courts have adopted. Fraudulent misjoinder occurs when a plaintiff sues a diverse defendant in state court and joins a viable claim involving a nondiverse party, or a resident defendant, even though the plaintiff has no reasonable procedural basis to join them in one action because the claims bear no relation to each other. In such cases, some courts have concluded that diversity is not defeated where the claim that destroys diversity has "no real connection with the controversy" involving the claims that would qualify for diversity jurisdiction. Ronald A. Parsons, Jr., Should the Eighth Circuit Recognize Procedural Misjoinder?, 53 S.D. L.Rev. 52, 57 (2008).

Id. (footnotes omitted).

In Prempro, plaintiffs filed three lawsuits in which they asserted state law tort and contract claims against defendant companies that manufactured and marketed hormone replacement therapy (HRT) drugs. Id. at 613. Defendants removed the cases to federal court, alleging diversity jurisdiction. In support of removal, defendants argued that plaintiffs' claims were fraudulently misjoined



EXHIBIT

**9**

- 4 -

because they did not arise out of the same transaction or occurrence as required by Fed. R. Civ. P. 20(a). Id. at 618.

The Eighth Circuit declined to either adopt or reject the fraudulent misjoinder doctrine, holding that "even if we adopted the doctrine, the plaintiffs' alleged misjoinder in this case is not so egregious as to constitute fraudulent misjoinder." Id. at 622. In reaching this conclusion, the court considered that plaintiffs' claims arose from a series of transactions involving HRT manufacturers and users and that common questions of law and fact were likely to arise in the litigation, particularly on the issue of causation. Id. at 623. The court concluded that, "[b]ased on the plaintiffs' complaints, we cannot say that their claims have 'no real connection' to each other such that they are egregiously misjoined." Id. (distinguishing Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1360 (11th Cir. 1986), and declining to apply it and fraudulent misjoinder doctrine "absent evidence that plaintiffs' misjoinder borders on a 'sham' . . . .").

Similarly, in this case, there is no need to express an opinion on the validity of the fraudulent misjoinder doctrine because defendants have failed to demonstrate that the joinder of New Jersey and other non-Missouri citizens with Missouri plaintiffs in this action "is so egregious and grossly improper . . . . that plaintiffs' misjoinder borders on a 'sham' . . . ." Prempro, 591 F.3d at 624. As other judges from this district have ~~_____~~ joinder of plaintiffs alleging injury

**EXHIBIT**

**9**

from a single drug is not "egregious" because common issues of law and fact connect plaintiffs' claims.  See, e.g., T.F., et al. v. Pfizer, Inc., Case Number 4:12CV1221 CDP (E.D. Mo. July 23, 2012) (Zoloft®); S.F., et al. v. Pfizer Inc., Case Number 4:12CV420 CEJ (E.D. Mo. April 4, 2012) (Zoloft®); Douglas v. GlaxoSmithKline, LLC, 2010 WL 2680308 (E.D. Mo. July 1, 2010) (Avandia®).  Plaintiffs in this case have filed suit against defendants for injuries caused by the same products and arising out of the same development, distribution, marketing and sales practices for those products, and common issues of law and fact are likely to arise in the litigation.

In their notice of removal, defendants argue that each plaintiffs' claim will depend upon unique factual determinations and that plaintiffs must have filed this suit for the sole purpose of defeating federal jurisdiction because they "made a conscious decision to join together as many individuals as possible while still staying clear of the 100-claimant threshold that would trigger federal jurisdiction under the Class Action Fairness Act . . . ."  These arguments are woefully insufficient to demonstrate the propriety of jurisdiction here.  Plaintiffs' claims need not arise from the same transaction or occurrence, nor do they need to share a common outcome or state law, as long as common questions or law are fact are likely to arise in the litigation.  See Prempro, 591 F.3d at 623.  Nor do I find it relevant to my analysis that the number of plaintiffs falls below the CAFA

**EXHIBIT**

**9**

- 6 -

threshold as this fact does not demonstrate that joinder is "so egregious and grossly improper . . . that it warrants an . . . application of the fraudulent misjoinder doctrine." Id. at 624.

Plaintiffs' claims are sufficiently related to support joinder in this case, and defendants have not met its burden of demonstrating that the parties are diverse or that this Court has jurisdiction over this case as required by 28 U.S.C. § 1332. Because I lack subject-matter jurisdiction over this case, I will remand this action to state court.

Accordingly,

**IT IS HEREBY ORDERED** that the Clerk of the Court shall remand this action to the Circuit Court for the Twenty-Second Judicial Circuit, St. Louis City, Missouri from which it was removed.

**IT IS FURTHER ORDERED** that all other pending motions are denied without prejudice.

 

 

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 14th day of August, 2012.



EXHIBIT

**9**

- 7 -

Thomas v. Girardi, SBN 36603
Amy F. Solomon, SBN 140333
Amanda H. Kent, SBN 258298
GIRARDI | KEESE
1126 Wilshire Boulevard
Los Angeles, California 90017
Telephone: (213) 977-0211
Facsimile: (213) 481-1554

Kurt B. Arnold Texas SBN 24036150
Jason A. Itkin Texas SBN 24032461
Noah M. Wexler SBN 24060816
ARNOLD & ITKIN LLP
6009 Memorial Drive
Houston, Texas 77007
Telephone: (713) 222-3800
Facsimile: (713) 222-3850

J. Steve Mostyn SBN 00798389
The Mostyn Law Firm
3810 West Alabama Street
Houston, TX 77027
Telephone: (713) 861-6616
Facsimile: (713) 861-8084
Attorney(s) For: Plaintiff(s)

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

XOCHIL T ROBINSON, et al )      CASE NO. 2:14-cv-00899-SVW-AGR
                          )      [Assigned to Hon. Stephen V. Wilson]
        Plaintiff(s),     )
                          )
vs.                       )      **[PROPOSED] ORDER GRANTING**
                          )      **PLAINTIFFS' MOTION TO**
JOHNSON & JOHNSON, et al  )      **REMAND**
                          )
        Defendant(s).     )
                          )      DATE:      March 17, 2014
                          )      TIME:      1:30 P.M.
                          )      CTRM:      6
                          )      JUDGE      Hon. Stephen V. Wilson
                          )
                          )

**EXHIBIT**

**9**

322        1

[PROPOSED] ORDER ON MOTION TO REMAND

IT IS HEREBY ORDERED that Plaintiffs' Motion to Remand in the above captioned

civil action is granted and the case is remanded to the Superior Court of the State of

California, County of Los Angeles.


BY:_____     DATED:_____

     Hon. Stephen V. Wilson
     United States District Court Judge
     Central District of California
     Western Division

**EXHIBIT**

**9**

[PROPOSED] ORDER ON MOTION TO REMAND

# JS-6

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES—GENERAL

| Case No. | **CV 14-0899 JGB (SPx)** | Date | March 12, 2014 |
|---|---|---|---|
| Title | ***Xochil T. Robinson, et al. v. Johnson & Johnson, et al.*** | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   **Order (1) DENYING Defendants' Motion to Stay (Doc. No. 13); (2) GRANTING Plaintiffs' Motion to Remand (Doc. No. 9); (3) VACATING the March 17, 2014 Hearings; and (4) REMANDING the Action to the Superior Court of California, County of Los Angeles (IN CHAMBERS)**

Before the Court are Plaintiffs' motion to remand (Doc. No. 9) and Defendants' motion to stay (Doc. No. 13). The Court finds these matters appropriate for resolution without hearings. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers timely filed in support of and in opposition to the motions, the Court GRANTS Plaintiffs' motion to remand and DENIES AS MOOT Defendants' motion to stay. The March 17, 2014 hearings on the motions are VACATED.

## I.  BACKGROUND

On December 30, 2013, sixty seven individual Plaintiffs filed a complaint in state court against Defendants Johnson & Johnson, Ethicon, Inc., Ethicon, LLC, and Does 1 through 500, inclusive (collectively, "Defendants"). ("Compl.," Not. of Removal, Doc. No. 1, Exh. A.) The Complaint alleges Plaintiffs suffered a variety of injuries from the surgical implantation of pelvic mesh devices manufactured by Defendants. (Compl. ¶¶ 1, 93-95, 105-140.) On February 5, 2014, Defendants removed the action to this Court on the basis of diversity jurisdiction. (Not. of Removal at ¶¶ 4-17.)

On February 13, 2014, Plaintiffs moved to remand this action to state court, contending that complete diversity is lacking because Defendants' allegations of fraudulent misjoinder are unfounded. ("MTR," Doc. No. 9.) On February 24, 2014, Defendants opposed. ("MTR Opp'n," Doc. No. 18.) On March 3, 2014, Plaintiffs replied. ("MTR Reply," Doc. No. 26.)

**EXHIBIT 10**

| Page 1 of 1 | CIVIL MINUTES—GENERAL | Initials of Deputy Clerk MG |
|---|---|---|

On February 14, 2014, Defendants moved to stay the case pending a transfer by the Judicial Panel on Multidistrict Litigation. ("MTS," Doc. No. 13.) Plaintiffs opposed on February 24, 2014. ("MTS Opp'n," Doc. No. 19.) On March 3, 2014, Defendants replied. ("MTS Reply," Doc. No. 25.)

On February 7, 2012, the Judicial Panel on Multidistrict Litigation ("JPML") opened an MDL action in the United States District Court for the Southern District of West Virginia for coordinated pretrial proceedings for all Ethicon pelvic surgical mesh device-related litigation (MDL No. 2327). See In re Ethicon, Inc., Pelvic Repair Sys. Prods. Liab. Litig.["Ethicon MDL"], 844 F. Supp. 2d 1359 (J.P.M.L. 2012). To date, thousands of cases are pending in the Ethicon MDL. (MTS at 2.)

## II. LEGAL STANDARD

### A. Stay

The United States Supreme Court holds that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket within economy of time and effort for itself, for counsel, and for litigants." Landis v. North American Co., 299 U.S. 248, 254 (1936). "Whether or not to grant a stay is within the court's discretion and it is appropriate when it serves the interests of judicial economy and efficiency." Rivers v. Walt Disney Co., 980 F. Supp. 1358, 1360 (C.D. Cal. 1997) (citations omitted). District courts consider three factors when deciding whether to grant a motion to stay proceedings pending the motion filed with the MDL: "(1) potential prejudice to the non-moving party; (2) hardship and inequity to the moving party if the action is not stayed; and (3) the judicial resources that would be saved by avoiding duplicative litigation if the cases are in fact consolidated." Id.

### B. Remand

Federal courts have original jurisdiction of all civil actions where the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states. 28 U.S.C. § 1332. Proper jurisdiction under Section 1332 requires complete diversity, so each plaintiff must be diverse from each defendant. Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 553 (2005). To protect the jurisdiction of state courts, removal jurisdiction should be strictly construed in favor of remand. Harris v. Bankers Life and Cas. Co., 425 F.3d 689, 698 (9th Cir. 2005) (citing Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108–09 (1941)). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal." Gaus v. Miles, 980 F.2d 564, 566 (9th Cir. 1992) (internal citation omitted). "Th[is] 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." Id. (internal citations omitted).



EXHIBIT
10

# III. DISCUSSION

## A.  Order of the Motions

In previous actions involving Defendants and the Ethicon MDL, the Court has taken up the stay issue first and agreed to stay the action pending the JPML's decision to transfer.  See, e.g., Joan Miller, et al. v. Johnson & Johnson, et al., No. CV 13-6285 JGB (SPx); Pamela Ruiz, et al. v. Johnson & Johnson, et al., CV No. 13-6289 JGB (SPx).  However, after reviewing several other recent decisions by courts in this district, the Court finds that the weight of authority favors remand.

The Ninth Circuit has made clear that courts should "address subject matter jurisdiction at the outset in the 'mine run of cases,' and reach other issues first only where the jurisdictional issue is 'difficult to determine,' and the other ground is relatively 'less burdensome.'"  Potter v. Hughes, 546 F.3d 1051, 1061 (9th Cir. 2008) (quotation omitted).  The Court does not consider the jurisdictional issue in this action to be "difficult to determine" or outside the "mine run of cases," and thus Ninth Circuit precedent suggests that the Court should consider Plaintiffs' motion to remand first.  Numerous courts in this circuit have decided to take up the issue of remand prior to stay in order to address the jurisdictional issue first.  See DeKalb v. C.R. Bard, Inc., No. CV 13-6308 DMG (PJWx), Doc. No. 30 (C.D. Cal. Oct. 8, 2013); Perry v. Luu, No. 1:13-cv-729, 2013 WL 3354446, at *3 (E.D. Cal. July 3, 2013) (addressing motion to remand before motion to stay pending determination by JPML in pelvic mesh case); Goodwin v. Kojian, SACV 13-325, 2013 WL 1528966, at *2 (C.D. Cal. Apr. 12, 2013) (same).

Accordingly, the Court first turns to the motion to remand.

## B.  Remand

Diversity jurisdiction under 28 U.S.C. § 1332 requires complete diversity, meaning every plaintiff must be diverse from every defendant. See Lincoln Property Co. v. Roche, 546 U.S. 81, 89 (2005).  Here, three Plaintiffs, Irene Tobin, Cynthia Tortorici, and Bonnie Hand, are citizens of New Jersey and are not diverse from Defendants Johnson & Johnson and Ethicon, both of which have their principal place of business in New Jersey and therefore are citizens of that state.  (Compl. ¶¶ 13-15, 70-76; Not. of Removal ¶¶ 13-14.)  Thus, it appears from the face of the Complaint that jurisdiction cannot properly lie.

Defendants assert that diversity jurisdiction exists because Plaintiffs have "fraudulently misjoined" four non-diverse Plaintiffs to circumvent diversity jurisdiction.  (MTR Opp'n at 11-13.)  Fraudulent misjoinder is a concept originating in the Eleventh Circuit. See Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353 (11th Cir. 1996). It appears to be related to the legal doctrine of fraudulent joinder.  See Osborn v. Metro. Life Ins. Co., 341 F. Supp. 2d 1123, 1127 (E.D. Cal. 2004).  Fraudulent joinder of a non-diverse defendant is an exception to the requirement for complete diversity among the parties in a suit whose federal subject matter jurisdiction is based upon 28 U.S.C. § 1332.  See Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1067 (9th Cir. 2001).  Fraudulent misjoinder, on the other hand, permits the court to ignore the citizenship of non-diverse plaintiffs when there is no real connection among the plaintiffs' claims, such that

**EXHIBIT**

**10**

---

plaintiffs' joinder of the parties is "so egregious as to constitute fraudulent joinder. Tapscott, 77 F.3d at 1360.

The doctrine of fraudulent misjoinder has only been recognized by the Fifth and Eleventh Circuits. See id.; In re Benjamin Moore & Co., 309 F.3d 296, 298 (5th Cir. 2002). The Ninth Circuit has not adopted the doctrine, and courts in this circuit have criticized its application. See Cal. Dump Truck Owners Ass'n v. Cummins Engine Co. Inc., 24 Fed. App'x 727, 729 (9th Cir. 2001); Osborn, 341 F. Supp. 2d at 1127-28; Early v. Northrup Grumman Corp., 2:13-CV-3130, 2013 WL 3872218, at *2 (C.D. Cal. July 24, 2013). Defendants identify no precedent binding on this Court to support its contention that the "fraudulent misjoinder" doctrine applies. The Ninth Circuit has not formally adopted the doctrine, and under Ninth Circuit precedent, 28 U.S.C. § 1441 is to be strictly construed and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Gaus, 980 F.2d at 566.

Defendants have not met their burden of establishing that the Court has diversity jurisdiction over this case. Even if the Court recognized the doctrine of fraudulent misjoinder, Defendants fail to demonstrate that joinder of the non-diverse Plaintiffs was "egregious" and that they were joined merely in order to defeat diversity jurisdiction. Defendants' arguments suggest only that Plaintiffs' pleading is generally deficient as to all Plaintiffs due to its failure to satisfy the joinder requirements of Rule 20(a). (MTR Opp'n at 13-20.) However, as the Eleventh Circuit made clear, mere misjoinder is not fraudulent joinder; it only rises to the level of fraudulent joinder if it is sufficiently egregious. Tapscott, 77 F.3d at 1360; see also Pate v. Boston Scientific Corp., CV 13-06321 BRO AJWX, 2013 WL 5743499, at * 5 (C.D. Cal. Oct. 21, 2013) ("If the Eleventh Circuit did not intend egregiousness to be the standard for fraudulent misjoinder, it could have selected one of myriad other terms to use in that sentence instead of "egregious."). Defendants have not provided the Court with clear evidence from which the Court can conclude that joinder is egregious.

Because the Ninth Circuit has not adopted the doctrine of fraudulent misjoinder and complete diversity was destroyed by the presence of the New Jersey Plaintiffs, this Court lacks jurisdiction over this action. This Court now joins several other courts in this district in remanding pelvic mesh device actions improperly removed on the basis of fraudulent misjoinder. See Pate, CV 13-06321 BRO AJWX, 2013 WL 5743499, at * 5; Cheryl Mauck, et al. v. Boston Scientific Corporation, et al., No. CV 13-6343 GW (JEMx), Doc. No. 43 (C.D. Cal Oct. 16, 2013); Sheila Dekalb, et al. v. C.R. Bard, Inc., et al., No. CV 13-06308 DMG (PJWx), Doc. No. 30 (C.D. Cal. Oct. 8, 2013).

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' motion to remand, DENIES AS MOOT Defendants' motion to stay, and REMANDS this action to Los Angeles County Superior Court.

**IT IS SO ORDERED.**

EXHIBIT
**10**



**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**
312 North Spring Street, Room G-8
Los Angeles, CA 90012
Tel: (213) 894-3535

**SOUTHERN DIVISION**
411 West Fourth Street, Suite 1053
Santa Ana, CA 92701-4516
(714) 338-4750

**EASTERN DIVISION**
3470 Twelfth Street, Room 134
Riverside, CA 92501
(951) 328-4450

**TERRY NAFISI**
District Court Executive and
Clerk of Court

Re:   Case Number: _____

     Previously Superior Court Case No. _____

     Case Name: _____


Dear Sir / Madam:
     Pursuant to this Court's ORDER OF REMAND issued on _____, the above-referenced case is hereby remanded to your jurisdiction.

     Attached is a certified copy of the ORDER OF REMAND and a copy of the docket sheet from this Court.

     Please acknowledge receipt of the above by signing the enclosed copy of this letter and returning it to our office.  Thank you for your cooperation.

                              Respectfully,

                              Clerk, U. S. District Court


                              By: _____
                                  Deputy Clerk


                              ☐ Western   ☐ Eastern   ☐ Southern Division

*cc: Counsel of record*

--------------------------------------------------------------------------------
Receipt is acknowledged of the documents described herein.

                              Clerk, Superior Court

                              **EXHIBIT**
                              **10**
                              By: _____
_____           Deputy Clerk
Date

328

CV - 103 (09/08)          **LETTER OF TRANSMITTAL - REMAND TO SUPERIOR COURT (CIVIL)**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 06/22/15

**DEPT.** 322

HONORABLE WILLIAM F. HIGHBERGER     JUDGE

A. LIM     DEPUTY CLERK

HONORABLE     JUDGE PRO TEM
ADD-ON

ELECTRONIC RECORDING MONITOR

R. SANCHEZ, CA     Deputy Sheriff

NONE     Reporter

---

3:30 pm | BC531848

XOCHILT ROBINSON ET AL
VS
JOHNSON & JOHNSON ET AL

{CASE FILE SENT TO DEPT 322}
COMPLEX 7/7/14 R/T JCCP4733

Plaintiff
Counsel

Defendant
Counsel

NO APPEARANCE

---

**NATURE OF PROCEEDINGS:**

RULING ON SUBMITTED MATTER;

Ruling on submitted matters

JOHNSON & JOHNSON MOTION TO QUASH SERVICE, ETC.:
GRANT. A revised version of the [Proposed] Order
submitted by Johnson & Johnson with the motion is
being filed concurrently herewith.

RELEVANT LEGAL HISTORY:
All courts are necessarily concerned with the extent
to which they can or should assert jurisdiction over
parties since the assertion of a right to adjudicate
claims against persons who have no meaningful
contact with the jurisdiction (government)
maintaining a court creates situations where the
defendants are unlikely to respect any resulting
orders or judgments. Further, constitutional due
process considerations - which date back at least as
far as the establishment of the United States
Constitution and the Bill of Rights - require
American courts to constrain their assertion of
jurisdiction to conform to judicially created norms
as to when jurisdiction exists and when it is
lacking.

California, by statute in C.C.P. § 410.10, has
decided that its state courts have and thus should
assert jurisdiction "on any basis not inconsistent

Page    **EXHIBIT 11**    DEPT. 322

329

MINUTES ENTERED
06/22/15
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 06/22/15 | | DEPT. 322
---|---|---

HONORABLE WILLIAM F. HIGHBERGER    JUDGE | A. LIM | DEPUTY CLERK

HONORABLE      JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR
ADD-ON

R. SANCHEZ, CA    Deputy Sheriff | NONE | Reporter

---

3:30 pm   BC531848

XOCHILT ROBINSON ET AL
VS
JOHNSON & JOHNSON ET AL

{CASE FILE SENT TO DEPT 322}
COMPLEX 7/7/14 R/T JCCP4733

Plaintiff Counsel

Defendant Counsel

NO APPEARANCE

---

**NATURE OF PROCEEDINGS:**

with the Constitution of this state or of the United
States."  Over the years any number of suits have
been brought and tried to conclusion in California
where the connection of the facts giving rise to the
suit to events occurring in California has often
been slim or non-existent.  Indeed, a sophisticated
practice of law has developed in California where
claims of plaintiffs from across the entire country
are brought together to be litigated as Judicial
Council Coordinated Proceedings in this court and in
several other urban locations throughout the state.

A "minimum contacts" jurisprudence for the
evaluation of in personam jurisdiction has developed
over several generations since the doctrine was set
forth in International Shoe Co. v. Washington (1945)
326 U.S. 310, 316 (overturning a narrow view of
jurisdiction previously set forth in Pennoyer v.
Neff (1878) 95 U.S. 714, 733).  With 20/20
hindsight, it appears that many of the cases which
evaluated the minimum contacts between a defendant
and the forum state so as to determine whether the
exercise of jurisdiction would offend "traditional
notions of fair play and substantial justice" under
the 14th Amendment's "due process" clause did so
without requiring that the defendant's contact with
the forum be directly related to the facts of the
case.

The United States Supreme Court's direct involvement

EXHIBIT
Page 2 of 29   DEPT. 322
**11**

MINUTES ENTERED
06/22/15
COUNTY CLERK

330

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

DATE: 06/22/15

HONORABLE WILLIAM F. HIGHBERGER          JUDGE

HONORABLE                                JUDGE PRO TEM
ADD-ON
            R. SANCHEZ, CA          Deputy Sheriff

DEPT. 322

A. LIM          DEPUTY CLERK

                ELECTRONIC RECORDING MONITOR

NONE          Reporter

3:30 pm | BC531848

XOCHILT ROBINSON ET AL
VS
JOHNSON & JOHNSON ET AL

{CASE FILE SENT TO DEPT 322}
COMPLEX 7/7/14 R/T JCCP4733

Plaintiff
Counsel          NO APPEARANCE

Defendant
Counsel

**NATURE OF PROCEEDINGS:**

with this body of law has been intermittent and
relatively infrequent.  Most lawyers, judges and
scholars had paid little attention to the "general
jurisdiction" subset of in-personam-jurisdiction law
because the typical jurisdictional battle was fought
over the "minimum contacts" showing needed to obtain
"long-arm" jurisdiction over a party not otherwise
present in a forum state.  As to jurisdiction over
natural persons (i.e. human beings), a mere
voluntary presence in a given state has been held by
the United States Supreme Court to be a sufficient
basis for the assertion of jurisdiction.  Burnham v.
Superior Court (1990) 495 U.S. 604, 612.  Since this
kind of transitory physical presence in a state by a
person was considered sufficient for assertion of
jurisdiction, it seemed settled law that a large
multi-state corporate entity with a substantial
physical presence in a given state would itself be
subject to the assertion of general jurisdiction.

But all of these long accepted assumptions as to the
nature of in-personam jurisdiction analysis were set
off kilter when the United States Supreme Court
issued its decision in Daimler AG v. Bauman (2014)
134 S.Ct. 746.  Plaintiffs in that case had no
contact with California, having been victims of
atrocities committed in Argentina during the "Dirty
War," and Daimler AG did business indirectly in
California by being the sole shareholder in
Mercedes-Benz USA LLC (through an additional layer

**EXHIBIT**

**11**

Page 3 of 29          DEPT. 322

MINUTES ENTERED
06/22/15
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 06/22/15

DEPT. 322

HONORABLE WILLIAM F. HIGHBERGER   JUDGE | A. LIM   DEPUTY CLERK

HONORABLE   JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR
ADD-ON

R. SANCHEZ, CA   Deputy Sheriff | NONE   Reporter

---

3:30 pm | BC531848

XOCHILT ROBINSON ET AL
VS
JOHNSON & JOHNSON ET AL

{CASE FILE SENT TO DEPT 322}
COMPLEX 7/7/14 R/T JCCP4733

Plaintiff
Counsel

Defendant
Counsel

NO APPEARANCE

---

**NATURE OF PROCEEDINGS:**

of ownership). Perhaps because Mercedes-Benz USA
LLC ("MBUSA") had no connection to the events in
Argentina, it was not sued in its own right. The
record showed that 2.4% of Daimler AG's worldwide
sales were in California.

While the District Court and the original 9th
Circuit panel decision had sustained Daimler AG's
jurisdictional challenge, on rehearing en banc the
9th Circuit adopted former panel dissenter Stephen
Reinhardt's reasoning that the assertion of
jurisdiction over Daimler AG in California for these
claims was supported on an agency theory (i.e. the
presence of MBUSA) and by the conclusion that such
an assertion of jurisdiction satisfied the due
process "reasonableness" test. The Supreme Court
reversed, applying its view of California's
jurisdictional law as constrained by 14th Amendment
due process limitations. First, it noted the
"different trajectories" of the law regulating
general jurisdiction as compared to "specific
jurisdiction":

As is evident from Perkins, Helicopteros, and
Goodyear, general and specific jurisdiction have
followed markedly different trajectories
post-International Shoe. Specific jurisdiction has
been cut loose from Pennoyer's sway, but we have
declined to stretch general jurisdiction beyond
limits traditionally recognized. As this Court has

**EXHIBIT**
**11**

Page 4 of 29   DEPT. 322

MINUTES ENTERED
06/22/15
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 06/22/15          **DEPT.** 322

HONORABLE WILLIAM F. HIGHBERGER JUDGE    A. LIM        DEPUTY CLERK

HONORABLE         JUDGE PRO TEM        ELECTRONIC RECORDING MONITOR
ADD-ON

R. SANCHEZ, CA    Deputy Sheriff    NONE         Reporter

---

3:30 pm | BC531848        Plaintiff
                Counsel

XOCHILT ROBINSON ET AL        NO APPEARANCE
VS              Defendant
JOHNSON & JOHNSON ET AL    Counsel

{CASE FILE SENT TO DEPT 322}
COMPLEX 7/7/14 R/T JCCP4733

---

**NATURE OF PROCEEDINGS:**

increasingly trained on the "relationship among the
defendant, the forum, and the litigation," Shaffer,
433 U. S., at 204, 97 S. Ct. 2569, 53 L. Ed. 2d 683,
i.e., specific jurisdiction, general jurisdiction
has come to occupy a less dominant place in the
contemporary scheme.

134 S.Ct. at 757-78. On the record in that case, no
attempt had been made to show that specific
jurisdiction existed: "Plaintiffs have never
attempted to fit this case into the specific
jurisdiction category." Id. Thus, the key holding
in that case provided a statement of the current
test for constitutionally permissible assertion of
general jurisdiction:

Here, neither Daimler nor MBUSA is incorporated in
California, nor does either entity have its
principal place of business there. If Daimler's
California activities sufficed to allow adjudication
of this Argentina-rooted case in California, the
same global reach would presumably be available in
every other State in which MBUSA's sales are
sizable. Such exorbitant exercises of all-purpose
jurisdiction would scarcely permit out-of-state
defendants "to structure their primary conduct with
some minimum assurance as to where that conduct will
and will not render them liable to suit." Burger
King Corp., 471 U. S., at 472, 105 S. Ct. 2174, 85
L. Ed. 2d 528.

**EXHIBIT 11**

Page 5 of 29     DEPT. 322

**MINUTES ENTERED**
06/22/15
**COUNTY CLERK**

333

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 06/22/15          **DEPT.** 322

HONORABLE WILLIAM F. HIGHBERGER   JUDGE    A. LIM        DEPUTY CLERK

HONORABLE            JUDGE PRO TEM        ELECTRONIC RECORDING MONITOR
ADD-ON

R. SANCHEZ, CA     Deputy Sheriff    NONE           Reporter

| 3:30 pm | BC531848 | Plaintiff Counsel | |
|---|---|---|---|
| | XOCHILT ROBINSON ET AL | | NO APPEARANCE |
| | VS | Defendant | |
| | JOHNSON & JOHNSON ET AL | Counsel | |
| | {CASE FILE SENT TO DEPT 322} | | |
| | COMPLEX 7/7/14 R/T JCCP4733 | | |

**NATURE OF PROCEEDINGS:**

134 S.Ct. at 761-62 (emphasis added). For all intents and purposes, a new chapter in the law for assessing when a large corporation could be sued had begun since the "minimum contacts/reasonableness" standard relied upon by Judge Reinhardt no longer had any relevance to the analysis of general jurisdiction, as such.

APPLICABLE LEGAL STANDARDS FOR ASSERTING JURISDICTION:

(a)   GENERAL JURISDICTION

As noted above, the law of general jurisdiction had been allowed to become a rarely noticed backwater in decades following International Shoe until an extreme case like Daimler AG prompted a reexamination of the issue by the U.S. Supreme Court. Now we know via Daimler AG that a fictitious entity like Daimler AG or Johnson & Johnson can only be sued on a general jurisdiction theory (where the claim itself has no logical factual connection to the forum) where the entity "is at home" and that a corporation has, at most, two "home" states: (1) its place of incorporation, and (2) its principal place of business.

If there was any doubt about this conclusion, it was laid to rest by the recent decision of our own Court

**EXHIBIT 11**

Page 11 of 29     DEPT. 322

MINUTES ENTERED
06/22/15
COUNTY CLERK

334

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

DATE: 06/22/15
DEPT. 322

HONORABLE WILLIAM F. HIGHBERGER JUDGE | A. LIM DEPUTY CLERK

HONORABLE JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR
ADD-ON

R. SANCHEZ, CA Deputy Sheriff | NONE Reporter

3:30 pm | BC531848

Plaintiff
Counsel

XOCHILT ROBINSON ET AL NO APPEARANCE
VS
JOHNSON & JOHNSON ET AL Defendant
Counsel

{CASE FILE SENT TO DEPT 322}
COMPLEX 7/7/14 R/T JCCP4733

**NATURE OF PROCEEDINGS:**

of Appeal in BNSF Railway Co. v. Superior Court
(March 27, 2015) 235 Cal.App.4th 591, a case which
held that no general jurisdiction applied as to a
massive corporation doing business in 28 states and
2 Canadian provinces with 1,149 miles of track in
California (out of 2,319 miles overall), 3,520
employees in California (out of 44,000 employees
overall) and which obtained six percent of its
revenue in California. The only relevant facts were
that it was incorporated in Delaware and had its
principal place of business in Texas, which was both
its official and operations headquarters and its
largest single state in terms of employees, revenue
and track.

BNSF expressly rejected the plaintiff's argument
there (repeated by these plaintiffs in briefs filed
before BNSF was issued) that the foreign
plaintiff/comity concerns which were part of the
record in Bauman limited that case's applicability
to situations where the transitory plaintiffs were
litigation tourists from another county. For the
same reasons, those arguments have no potency in the
context of this motion.

Barriere v. Juluca (S.D.Fla. 2014) 2014 WL 652831,
cited by plaintiffs, is not controlling, and it
would be inconsistent with BNSF insofar as
jurisdiction was premised on general jurisdiction.
But from a reading of plaintiff's quote from

**EXHIBIT**

Page **11** of 29 DEPT. 322

MINUTES ENTERED
06/22/15
COUNTY CLERK

335

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 06/22/15                         **DEPT.** 322

| | |
|---|---|
| HONORABLE WILLIAM F. HIGHBERGER   JUDGE | A. LIM           DEPUTY CLERK |
| HONORABLE              JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR |
| ADD-ON | |
| R. SANCHEZ, CA     Deputy Sheriff | NONE            Reporter |

| | | |
|---|---|---|
| 3:30 pm | BC531848 | Plaintiff Counsel |
| | XOCHILT ROBINSON ET AL |     NO APPEARANCE |
| | VS | |
| | JOHNSON & JOHNSON ET AL | Defendant Counsel |
| | {CASE FILE SENT TO DEPT 322} COMPLEX 7/7/14 R/T JCCP4733 | |

**NATURE OF PROCEEDINGS:**

Barriere, it appears to be a quite reasonable conclusion based on specific jurisdiction concepts: the plaintiffs were allegedly hurt at defendant's foreign resort, and defendant actively marketed the foreign property in Florida from a physical office in Florida to Florida residents. The order by Judge Arnold New in the state court in Philadelphia denying a similar jurisdictional challenge by Johnson & Johnson is not of precedential value since no reasoning is provided and it is not published; further it is obviously not controlling whereas BNSF Railway is.

(b) SPECIFIC JURISDICTION

"Specific jurisdiction," sometimes referred to as "limited jurisdiction," is still controlled by the minimum contacts/reasonableness standard set forth in International Shoe except that Daimler AG and BNSF teach us that there must be a factual nexus between the claim presented and California. It is not enough that the defendant might be large enough such that paying to defend in California would not be undue burden. That was equally the case for Daimler AG and BNSF Railway, but neither the plaintiffs nor the courts in those cases even argued that specific jurisdiction supported a finding of jurisdiction in either case. Simply put, a plaintiff seeking to assert specific jurisdiction must show that the claim presented arose out of

EXHIBIT

Page **11** of 29     DEPT. 322

| |
|---|
| **MINUTES ENTERED** 06/22/15 **COUNTY CLERK** |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

DATE: 06/22/15

HONORABLE WILLIAM F. HIGHBERGER     JUDGE

HONORABLE     JUDGE PRO TEM
ADD-ON
    R. SANCHEZ, CA     Deputy Sheriff

DEPT. 322

A. LIM     DEPUTY CLERK

ELECTRONIC RECORDING MONITOR

NONE     Reporter

3:30 pm   BC531848

XOCHILT ROBINSON ET AL
VS
JOHNSON & JOHNSON ET AL

{CASE FILE SENT TO DEPT 322}
COMPLEX 7/7/14 R/T JCCP4733

Plaintiff
Counsel     NO APPEARANCE

Defendant
Counsel

**NATURE OF PROCEEDINGS:**

defendant's activities in the jurisdiction or that
the defendant's activities occurring outside of
California were intended to cause injury within
California.  See generally Edmon & Rylarsdaam
[formerly Weil & Brown] CALIFORNIA PRACTICE GUIDE:
CIVIL PROCEDURE BEFORE TRIAL (The Rutter Group)
3:263 to 3:271 and cases cited therein.  The
broader statements in pre-Bauman "stream of
commerce" cases regarding assertion of jurisdiction
just because it is foreseeable that product will get
to California are no longer good law.  See
CALIFORNIA PRACTICE GUIDE: CIVIL PROCEDURE BEFORE
TRIAL, supra, 3:206.5 and cases cited therein,
Bauman and BNSF Railway.

ALLEGATIONS AND SUPPLEMENTAL FACTS OFFERED IN
SUPPORT OF ASSERTION OF JURISDICTION:

Defendant Johnson & Johnson filed various
declarations in support of its opening motion, the
factual accuracy of which is not disputed by
plaintiffs.  Plaintiffs' original Opposition, filed
February 13, 2015 and refiled (for reasons not
obvious) on February 20, 2015, is supported by (a) a
declaration of counsel affirming that all plaintiffs
will appear in California for deposition (absent
agreement otherwise) and trial, (b) two discovery
responses from Johnson & Johnson as to
jurisdictional discovery (each of which states that
Johnson & Johnson is a holding company that does not

**EXHIBIT**

**11**

Page   9 of 29   DEPT. 322

MINUTES ENTERED
06/22/15
COUNTY CLERK

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 06/22/15                                                                                    **DEPT.** 322

HONORABLE WILLIAM F. HIGHBERGER        JUDGE   A. LIM                    DEPUTY CLERK

HONORABLE                      JUDGE PRO TEM                             ELECTRONIC RECORDING MONITOR
ADD-ON
            R. SANCHEZ, CA        Deputy Sheriff   NONE                     Reporter

| | | |
|---|---|---|
| 3:30 pm | BC531848 | Plaintiff Counsel |
| | XOCHILT ROBINSON ET AL | NO APPEARANCE |
| | VS | |
| | JOHNSON & JOHNSON ET AL | Defendant Counsel |
| | {CASE FILE SENT TO DEPT 322} | |
| | COMPLEX 7/7/14 R/T JCCP4733 | |

**NATURE OF PROCEEDINGS:**

itself design or market products), (c) various
pleadings, discovery demands, remand orders, rulings
by other trial courts (i.e. Judge Highberger) on a
similar motion on forum non conveniens grounds, and
(d) Johnson & Johnson's 10-K filing with the
Securities and Exchange Commission.  Plaintiff also
submitted two publications by the federal Food &
Drug Administration and three documents filed by
defendants in the pending federal court
Multi-District Litigation proceeding in West
Virginia.  Plaintiffs with court permission filed a
Sur-Reply to the original motion papers on April 10,
2015 and Plaintiffs' Supplemental Brief Re Personal
Jurisdiction, etc. on May 27, 2015 (corrected by
errata on May 28, 2015), but those additional
filings provide no additional factual material.

The Court finds that no material factual dispute is
created by any of the papers before the Court.
Since the relevant facts are undisputed, the only
real question is:  What is the correct legal ruling
applying the law to the facts?

(a)   GENERAL JURISDICTION:

It is undisputed that Johnson & Johnson is
incorporated in New Jersey and that it has its
corporate headquarters in New Brunswick, New Jersey.
Johnson & Johnson is a holding company which does
not itself operate the design, manufacturing and

EXHIBIT
**11**

Page 11 of 29      DEPT. 322

MINUTES ENTERED
06/22/15
COUNTY CLERK

338

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 06/22/15

**DEPT.** 322

HONORABLE WILLIAM F. HIGHBERGER     JUDGE

A. LIM     DEPUTY CLERK

HONORABLE     JUDGE PRO TEM
ADD-ON

ELECTRONIC RECORDING MONITOR

R. SANCHEZ, CA     Deputy Sheriff

NONE

Reporter

| 3:30 pm | BC531848 | | |
|---|---|---|---|

BC531848

Plaintiff
Counsel

XOCHILT ROBINSON ET AL       NO APPEARANCE
VS
JOHNSON & JOHNSON ET AL

Defendant
Counsel

{CASE FILE SENT TO DEPT 322}
COMPLEX 7/7/14 R/T JCCP4733

**NATURE OF PROCEEDINGS:**

sales operations which form the commercial heart of
its business; those businesses are conducted by
various subsidiary corporate entities. Moving party
showed without contradiction that the operating
subsidiary Ethicon, Inc. did not have "a physical
office in California dedicated to the design,
manufacture, or marketing of any mesh product" and
that "No Ethicon mesh product is designed,
manufactured, or labeled in California." Rastogi
Declaration 2. Under the circumstances, it is
unquestionable that moving party Johnson & Johnson
is not "at home" in California for purposes of
invoking general jurisdiction.

Plaintiffs argued via counsel at oral argument that
this was an "exceptional case" cases within the
meaning of Daimler AG in footnote 19:

19. We do not foreclose the possibility that in an
exceptional case, see, e.g., Perkins, described
supra, at ___ - ___, 187 L. Ed. 2d, at 634-636, and
n. 8, a corporation's operations in a forum other
than its formal place of incorporation or principal
place of business may be so substantial and of such
a nature as to render the corporation at home in
that State. But this case presents no occasion to
explore that question, because Daimler's activities
in California plainly do not approach that level. It
is one thing to hold a corporation answerable for
operations in the forum State, see infra, at ___,

**EXHIBIT**

**11**

Page 11 of 29     DEPT. 322

MINUTES ENTERED
06/22/15
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 06/22/15

**DEPT.** 322

HONORABLE WILLIAM F. HIGHBERGER    JUDGE | A. LIM              DEPUTY CLERK

HONORABLE                           JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR
ADD-ON

R. SANCHEZ, CA    Deputy Sheriff | NONE                Reporter

---

3:30 pm | BC531848

XOCHILT ROBINSON ET AL
VS
JOHNSON & JOHNSON ET AL

{CASE FILE SENT TO DEPT 322}
COMPLEX 7/7/14 R/T JCCP4733

Plaintiff
Counsel

Defendant
Counsel

NO APPEARANCE

---

**NATURE OF PROCEEDINGS:**

187 L. Ed. 2d, at 642, quite another to expose it to
suit on claims having no connection whatever to the
forum State.

Plaintiffs conceded that they had no factual showing
in their papers supporting the "exceptional case"
argument and when asked for an offer of proof, they
had no particulars to provide, asking instead for
discovery re same.  The Court is persuaded after
reviewing the relevant U.S. Supreme Court cases that
the "exceptional case" concept is intended to be
highly limited, e.g. to the peculiar one-off
situation in Perkins v. Benguet Consolidated Mining
Co. (1951) 342 U.S. 437, where a Philippines mining
company's principal place of business was
temporarily relocated to Ohio as a result of
Japanese military occupation during World War II and
thus the defendant was subject to general
jurisdiction in Ohio.  Daimler AG described the
holding in Perkins as follows: "No fair reader of
the full opinion in Perkins could conclude that the
Court meant to convey anything other than that Ohio
was the center of the corporation's wartime
activities." 134 S.Ct. at 755 n.8.

The U.S. Supreme Court made as clear as they could
in Daimler AG that mere bigness of operations in a
given forum state was not the relevant test for
being "at home" since it would produce entirely
unpredictable outcomes, the exact antithesis of what

**EXHIBIT**
**11**

Page 12 of 29    DEPT. 322

MINUTES ENTERED
06/22/15
COUNTY CLERK

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

| | |
|---|---|
| DATE: 06/22/15 | **DEPT.** 322 |
| HONORABLE WILLIAM F. HIGHBERGER        JUDGE | A. LIM                         DEPUTY CLERK |
| HONORABLE                      JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR |
| ADD-ON | |
| R. SANCHEZ, CA         Deputy Sheriff | NONE                              Reporter |

| | | |
|---|---|---|
| 3:30 pm | BC531848 | Plaintiff Counsel |
| | XOCHILT ROBINSON ET AL | NO APPEARANCE |
| | VS | Defendant Counsel |
| | JOHNSON & JOHNSON ET AL | |
| | {CASE FILE SENT TO DEPT 322} | |
| | COMPLEX 7/7/14 R/T JCCP4733 | |

**NATURE OF PROCEEDINGS:**

they were hoping to achieve with the rule being stated: "If Daimler's California activities sufficed to allow adjudication of this Argentina-rooted case in California, the same global reach would presumably be available in every other State in which MBUSA's sales are sizable. Such exorbitant exercises of all-purpose jurisdiction would scarcely permit out-of-state defendants 'to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'"  134 S.Ct. at 731.

The Court agrees with moving party that defendant's relationship with this forum can and should be tested plaintiff-by-plaintiff, and the motion is only brought as to the non-California plaintiffs. The mere happenstance of the joinder of those claims with the claims of the California plaintiffs does not cause the Court to doubt the correctness of the ruling above.  That 67 plaintiffs have banded together (or found themselves joined together) in one suit brought by California counsel in conjunction with Texas counsel does not change the analysis.  By the nature of the product, each plaintiff had a separate surgery by a specific treating physician for a specific set of complaints with a specific medical history.  That the products and their disclosure warnings were the same or similar and that the product approval process with the federal Food and Drug Administration was common

**EXHIBIT**

**11**

Page 28 of 29        DEPT. 322

| |
|---|
| MINUTES ENTERED |
| 06/22/15 |
| COUNTY CLERK |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

DATE: 06/22/15

**DEPT.** 322

HONORABLE WILLIAM F. HIGHBERGER   JUDGE

A. LIM   DEPUTY CLERK

HONORABLE   JUDGE PRO TEM
ADD-ON

ELECTRONIC RECORDING MONITOR

R. SANCHEZ, CA   Deputy Sheriff

NONE   Reporter

---

3:30 pm | BC531848

XOCHILT ROBINSON ET AL
VS
JOHNSON & JOHNSON ET AL

{CASE FILE SENT TO DEPT 322}
COMPLEX 7/7/14 R/T JCCP4733

Plaintiff
Counsel

Defendant
Counsel

NO APPEARANCE

---

**NATURE OF PROCEEDINGS:**

to all plaintiffs is not enough to make the
jurisdictional facts relevant to a California
plaintiff applicable to a non-California plaintiff.

(b)   SPECIFIC JURISDICTION:

Plaintiffs do not directly argue the point as their
argument conflates the two jurisdictional concepts
together.  Here, as in Bauman and BNSF, the claims
of the non-California plaintiffs have no logical
connection with California.  These plaintiffs did
not have surgery in California, and the onset of
their injuries occurred outside of California.
Plaintiffs have not attempted to show that Johnson &
Johnson (or its wholly owned subsidiaries such as
Ethicon, Inc.) designed the trans-vaginal mesh
products in California or that the products
implanted in theses plaintiffs were manufactured in
California.  Moving party's contrary showing by
declaration is undisputed.  Clearly, if these kinds
of facts existed, the analysis of specific
jurisdiction might lead to a different outcome.

PLAINTIFF'S WAIVER ARGUMENT:

The Court agrees with Defendant that plaintiffs
waived any waiver argument that they themselves
might have had as to the assertion of jurisdiction
over Johnson & Johnson by not including it in either
their original Opposition filed in February or in

EXHIBIT

**11**

Page 11 of 29   DEPT. 322

MINUTES ENTERED
06/22/15
COUNTY CLERK

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

DATE: 06/22/15                                                          **DEPT.** 322

HONORABLE WILLIAM F. HIGHBERGER    JUDGE | A. LIM        DEPUTY CLERK

HONORABLE                     JUDGE PRO TEM              ELECTRONIC RECORDING MONITOR
ADD-ON
          R. SANCHEZ, CA    Deputy Sheriff | NONE              Reporter

| 3:30 pm | BC531848 | Plaintiff Counsel | NO APPEARANCE |

XOCHILT ROBINSON ET AL
VS
JOHNSON & JOHNSON ET AL

Defendant
Counsel

{CASE FILE SENT TO DEPT 322}
COMPLEX 7/7/14 R/T JCCP4733

**NATURE OF PROCEEDINGS:**

their Sur-Reply filed April 10, 2015.  The Court
further agrees with Defendant that the inclusion of
a Declaration from a Johnson & Johnson executive in
the original motion filed last summer by
co-defendant Ethicon, Inc. on the forum non
conveniens motion was not a general appearance in
this action by Johnson & Johnson.  Something more
affirmative would have been required for Johnson &
Johnson to be deemed appearing before the court for
all purposes in this docket.

PLAINTIFFS' DISCOVERY REQUEST AND REQUEST FOR
CONTINUANCE:

The Court has reviewed the discovery served on
Johnson & Johnson (Exhibits O & P to Opposition) and
this defendant's responses thereto (Exhibits R, S &
T).  Given the relevant legal standards to apply to
determine general and specific jurisdiction, the
Court has determined that the answers provided by
this defendant to date are sufficient and that any
further responses would not have a logical tendency
to change the analysis of the ultimate question set
forth above in this notice of intended ruling.  As
noted above, the "exceptional case" concept noted by
the U.S. Supreme Court in Daimler AG at n. 19 by
reference to Perkins v. Benguet Consolidated Mining
Co, supra, is intended to be highly limited and not
an opportunity to force a large corporation to be
"at home" in multiple separate jurisdictions.

**EXHIBIT**
**11**

Page    15 of 29    DEPT. 322

MINUTES ENTERED
06/22/15
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 06/22/15

DEPT. 322

HONORABLE WILLIAM F. HIGHBERGER   JUDGE

A. LIM   DEPUTY CLERK

HONORABLE   JUDGE PRO TEM
ADD-ON

ELECTRONIC RECORDING MONITOR

R. SANCHEZ, CA   Deputy Sheriff

NONE   Reporter

3:30 pm | BC531848

Plaintiff
Counsel

XOCHILT ROBINSON ET AL          NO APPEARANCE
VS
JOHNSON & JOHNSON ET AL

Defendant
Counsel

{CASE FILE SENT TO DEPT 322}
COMPLEX 7/7/14 R/T JCCP4733

**NATURE OF PROCEEDINGS:**

Plaintiffs' discovery, to which defendant responded
albeit with objections, appeared intended to show
that Johnson & Johnson (directly or via its
subsidiaries) had substantial operations in
California, which is not the relevant question.  The
extent to which discovery is needed to resolve the
question of general jurisdiction was directly
addressed by the Supreme Court in Daimler AG:

Justice Sotomayor fears that our holding will "lead
to greater unpredictability by radically expanding
the scope of jurisdictional discovery." Post, at
___, 187 L. Ed. 2d, at 650. But it is hard to see
why much in the way of discovery would be needed to
determine where a corporation is at home. Justice
Sotomayor's proposal to import Asahi's
"reasonableness" check into the general jurisdiction
determination, on the other hand, would indeed
compound the jurisdictional inquiry. The
reasonableness factors identified in Asahi include
"the burden on the defendant," "the interests of the
forum State," "the plaintiff's interest in obtaining
relief," "the interstate judicial system's interest
in obtaining the most efficient resolution of
controversies," "the shared interest of the several
States in furthering fundamental substantive social
policies," and, in the international context, "the
procedural and substantive policies of other nations
whose interests are affected by the assertion of
jurisdiction." 480 U. S. at 113-115, 107 S. Ct.

EXHIBIT

Page **11** of 29   DEPT. 322

MINUTES ENTERED
06/22/15
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 06/22/15

**DEPT.** 322

HONORABLE WILLIAM F. HIGHBERGER    JUDGE

A. LIM      DEPUTY CLERK

HONORABLE      JUDGE PRO TEM
ADD-ON

ELECTRONIC RECORDING MONITOR

R. SANCHEZ, CA    Deputy Sheriff

NONE      Reporter

---

3:30 pm   BC531848

XOCHILT ROBINSON ET AL
VS
JOHNSON & JOHNSON ET AL

{CASE FILE SENT TO DEPT 322}
COMPLEX 7/7/14 R/T JCCP4733

Plaintiff
Counsel

Defendant
Counsel

NO APPEARANCE

---

**NATURE OF PROCEEDINGS:**

1026, 94 L. Ed. 2d 92 (some internal quotation marks omitted). Imposing such a checklist in cases of general jurisdiction would hardly promote the efficient disposition of an issue that should be resolved expeditiously at the outset of litigation.

134 S.Ct. at 762 n. 20 (emphasis added). Simply put, the additional discovery which plaintiffs say they want (based on demands previously served) would not inform the relevant question: whether Johnson & Johnson is "at home" in California. Thus there is no reason to delay ruling.

Further, if plaintiffs really wanted the discovery, they should have used the time since the responses were served on February 10, 2015 to move to compel, but they failed to do so.

DEFENDANT'S OBJECTION TO LENGTH OF PLAINTIFF'S ORIGINAL OPPOSITION:

Overruled. Defendant has had ample opportunity to set forth its own position at length in its Reply, its Response To Plaintiffs' Sur-Reply, its Response To Plaintiffs' Supplemental Brief and its sua sponte Notice Of New Authority Pertaining To Motion To Quash.

FORUM NON CONVENIENS MOTION, IN THE ALTERNATIVE:
This is moot in view of the Court's ruling on the

**EXHIBIT 11**

Page 17 of 29    DEPT. 322

**MINUTES ENTERED**
06/22/15
**COUNTY CLERK**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 06/22/15        **DEPT.** 322

HONORABLE WILLIAM F. HIGHBERGER    JUDGE    A. LIM        DEPUTY CLERK

HONORABLE        JUDGE PRO TEM        ELECTRONIC RECORDING MONITOR
ADD-ON

     R. SANCHEZ, CA    Deputy Sheriff    NONE        Reporter

---

| | |
|---|---|
| 3:30 pm | BC531848 |

XOCHILT ROBINSON ET AL      Plaintiff Counsel
VS                      NO APPEARANCE
JOHNSON & JOHNSON ET AL      Defendant Counsel

{CASE FILE SENT TO DEPT 322}
COMPLEX 7/7/14 R/T JCCP4733

---

**NATURE OF PROCEEDINGS:**

challenge to in personam jurisdiction.

SEVERANCE MOTION, IN THE ALTERNATIVE:

Moving party Johnson & Johnson only asked that
severance of claims be granted in the challenge to
jurisdiction failed.  Under the circumstances, the
alternative request is moot.  The ruling on the
companion motion brought by Ethicon will, indeed,
cause a severance of each plaintiff's claim into a
separate action.

CONCLUSION:

Many of the unquestioned assumptions of the bench
and bar regarding the extent to which minimum
contacts/reasonableness "long arm" jurisdiction can
be invoked have been shredded by Daimler AG v.
Bauman and its progeny BNSF Railway.  Based on those
two cases, the Court finds that it lacks general
jurisdiction as to moving party Johnson & Johnson as
to the non-California plaintiffs since Johnson &
Johnson is not "at home" in California.  The Court
also finds that plaintiffs have failed to show, in
the alternative, that there is a proper basis to
assert "specific jurisdiction" (also known as
limited jurisdiction) over Johnson & Johnson as to
the non-California plaintiffs' claims since those
claims have no factual nexus to California.  Since
this will lead to an appealable order as between

**EXHIBIT 11**

| MINUTES ENTERED |
|---|
| 06/22/15 |
| COUNTY CLERK |

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 06/22/15

DEPT. 322

HONORABLE WILLIAM F. HIGHBERGER        JUDGE

A. LIM        DEPUTY CLERK

HONORABLE        JUDGE PRO TEM

ELECTRONIC RECORDING MONITOR

ADD-ON

R. SANCHEZ, CA        Deputy Sheriff

NONE        Reporter

3:30 pm    BC531848

XOCHILT ROBINSON ET AL
VS
JOHNSON & JOHNSON ET AL

{CASE FILE SENT TO DEPT 322}
COMPLEX 7/7/14 R/T JCCP4733

Plaintiff
Counsel

NO APPEARANCE

Defendant
Counsel

**NATURE OF PROCEEDINGS:**

these parties and this defendant, plaintiffs should
be able to obtain immediate appellate review of this
ruling (subject to the normal timelines applicable
in the Court of Appeal).

ETHICON, INC. MOTION TO DISMISS BASED ON FORUM NON
CONVENIENS, ETC.: GRANT IN PART, DENY IN PART
WITHOUT PREJUDICE

FORUM NON CONVENIENS MOTION:

Defendant Ethicon, having waived its potential
challenge to in personam jurisdiction, requests that
the Court dismiss the claims of the non-California
plaintiffs or to stay them pending litigation of
such claims in the various plaintiffs' own home
state on the basis of forum non conveniens.  Ethicon
and its parent Johnson & Johnson are defendants
(along with various other manufacturers) in various
cases proceeding in JCCP4733.  For the same reasons
that this Court denied the motion for forum non
conveniens in Muller v. Boston Scientific in
JCCP4733, this Court believes that the motion should
be denied here.  That similar tort claims should
proceed together for pre-trial proceedings does not
lead to the conclusion that all such tort claims
should be tried together.  The likely result would
be chaos, confusion, inordinately long trials and a
denial of due process to the defendant(s).  The
question of how to pick a specific plaintiff case

**EXHIBIT**

**11**

Page 1 of 29        DEPT. 322

MINUTES ENTERED
06/22/15
COUNTY CLERK

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

| | |
|---|---|
| DATE: 06/22/15 | **DEPT.** 322 |
| HONORABLE WILLIAM F. HIGHBERGER JUDGE | A. LIM DEPUTY CLERK |
| HONORABLE JUDGE PRO TEM ADD-ON | ELECTRONIC RECORDING MONITOR |
| R. SANCHEZ, CA Deputy Sheriff | NONE Reporter |

| | | |
|---|---|---|
| 3:30 pm | BC531848 | Plaintiff Counsel |
| | XOCHILT ROBINSON ET AL | NO APPEARANCE |
| | VS | |
| | JOHNSON & JOHNSON ET AL | Defendant Counsel |
| | {CASE FILE SENT TO DEPT 322} COMPLEX 7/7/14 R/T JCCP4733 | |

**NATURE OF PROCEEDINGS:**

for the early bell weather trial and whether or not
to joint two or more plaintiff claims for a single
trial are other issues for another day.

The Court is not blind to the long-term reality that
defendants such as Ethicon and Johnson & Johnson
will in all likelihood be able to avoid any new
filings from sticking in state court in California
assuming that each is not subject to general
jurisdiction for a suit filed by non-California
plaintiffs.  The California plaintiffs who chose to
sue in state court will find themselves removed, and
any non-California plaintiffs who sue in this court
in the future will likely find their claims
dismissed (unless they can show a factual basis for
specific jurisdiction).  But taking the current
docket as it is (e.g. the pending claims against
Ethicon) and mindful of the pendency of the similar
cases in JCCP4733, this Court believes that
efficiency is gained by keeping these plaintiffs in
this forum and not Balkanizing the litigation
effort.  No disrespect is meant for the pending
federal MDL, but the anticipated process of sending
trial-ready "bell weather" cases to some other
federal district court for trial seems like a recipe
for delay, inconsistent outcomes (when the question
of law is otherwise the same), and extra expense.

Because the Court has discretion to weigh the
factors relevant to ruling on this motion, this

**EXHIBIT**
**11**

Page 2 of 29        DEPT. 322

| MINUTES ENTERED |
|---|
| 06/22/15 |
| COUNTY CLERK |

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 06/22/15

**DEPT.** 322

HONORABLE WILLIAM F. HIGHBERGER    JUDGE | A. LIM

DEPUTY CLERK

HONORABLE       JUDGE PRO TEM
ADD-ON

ELECTRONIC RECORDING MONITOR

R. SANCHEZ, CA    Deputy Sheriff | NONE

Reporter

---

3:30 pm | BC531848

Plaintiff
Counsel

NO APPEARANCE

XOCHILT ROBINSON ET AL
VS
JOHNSON & JOHNSON ET AL

Defendant
Counsel

{CASE FILE SENT TO DEPT 322}
COMPLEX 7/7/14 R/T JCCP4733

---

**NATURE OF PROCEEDINGS:**

Court exercises its discretion to find that the
better course of wisdom is to let these specific
claims against Ethicon proceed in this forum. If
plaintiffs consider the inclusion of co-defendant
Johnson & Johnson in the case to be essential, then
they will have to find a way to bring the entire
litigation into another courthouse. That choice,
however, is for plaintiffs to make, not this Court.

This motion is denied without prejudice because the
Court recognizes that the posture of this case may
well change after the severance request discussed
below is granted. Defendant can renew the motion if
most of the plaintiffs' cases are removed to federal
court and only a few non-California plaintiffs
remain in this docket.

MOTION, IN THE ALTERNATIVE, FOR SEVERANCE OF VARIOUS
PLAINTIFFS' CLAIMS:

Ethicon asks, in the alternative, that the claims of
the non-California plaintiffs be severed under the
grounds that they are not appropriate for permissive
joinder under C.C.P. § 378(a).

After listening to oral argument and carefully
reviewing the California Rules of Court applicable
to cases deemed complex like BC531848, the Court
concludes that C.C.P. § 378(a) remains applicable in
this docket (and would also remain applicable if

**EXHIBIT
11**

Page 21 of 29    DEPT. 322

MINUTES ENTERED
06/22/15
COUNTY CLERK

349

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 06/22/15                                             **DEPT.** 322

HONORABLE WILLIAM F. HIGHBERGER    JUDGE   | A. LIM                  DEPUTY CLERK

HONORABLE                 JUDGE PRO TEM  |            ELECTRONIC RECORDING MONITOR
ADD-ON

R. SANCHEZ, CA        Deputy Sheriff | NONE                  Reporter

---

3:30 pm | BC531848

XOCHILT ROBINSON ET AL
VS
JOHNSON & JOHNSON ET AL

{CASE FILE SENT TO DEPT 322}
COMPLEX 7/7/14 R/T JCCP4733

Plaintiff
Counsel           NO APPEARANCE

Defendant
Counsel

---

**NATURE OF PROCEEDINGS:**

this case had been incorporated into a Judicial
Council Coordinated Proceeding). C.C.P. § 404.7 and
CRC 3.504(b) allow a Rule of Court applicable to
complex and/or complex/coordinated cases to trump
the normal code provisions, but the Court and
plaintiffs' counsel have been unable to identify an
express California Rule of Court which modifies the
otherwise enforceable provisions of C.C.P. § 378(a).

Under the authority of David v. Medtronic, Inc. (2d
DCA June 12, 2015) No. B254914, the Court finds that
the combined claims of the 67 plaintiffs here do not
arise out of "the same transaction, occurrence, or
series of transactions or occurrences." Defendant
has shown by Exhibit A to the Wes Declaration, filed
December 1, 2014 and the underlying evidentiary
support cited therein that there is a wide range of
products involved and that each of the female
plaintiffs had her implant surgery on an individual
basis in any number of locations spread throughout
the United States. Each such plaintiff had her own
medical history and presenting problems and each
patient had a doctor recommend this surgery in lieu
of other therapies based on the specific facts known
to such doctor. This does not constitute the "same
transaction  or series of transactions" for
purposes of C.C.P. § 378(a).

The fact that Judge Jesus Bernal did not retain this
case in federal court when presented with this

**EXHIBIT**
**11**

Page 22 of 29     DEPT. 322

MINUTES ENTERED
06/22/15
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 06/22/15

DEPT. 322

HONORABLE WILLIAM F. HIGHBERGER    JUDGE    A. LIM    DEPUTY CLERK

HONORABLE                JUDGE PRO TEM    ELECTRONIC RECORDING MONITOR
ADD-ON
        R. SANCHEZ, CA    Deputy Sheriff    NONE    Reporter

3:30 pm | BC531848

| Plaintiff Counsel | |
| --- | --- |

XOCHILT ROBINSON ET AL                    NO APPEARANCE
VS
JOHNSON & JOHNSON ET AL    Defendant Counsel

{CASE FILE SENT TO DEPT 322}
COMPLEX 7/7/14 R/T JCCP4733

**NATURE OF PROCEEDINGS:**

defendant's "fraudulent joinder" argument does not
foreclose (or predict) the resolution of the
misjoinder question because the "fraudulent joinder"
test (insofar as it is recognized by certain federal
courts) is a different test. Indeed, by his
pinpoint citation to Osborn v. Metropolitan Life
Ins. Co. (E.D.Cal. 2004) 341 F.Supp.2d 1123, 1127,
Judge Bernal was pointing to the statement therein
that misjoinder is properly addressed in the state
court on remand as a possible prelude to a second
removal petition. The cited portion of Osborn
states in relevant part (emphasis added):

Professors Wright, Miller, and Cooper have
characterized the Tapscott "fraudulent misjoinder"
theory as a "new concept" that "appears to be part
of the doctrine of fraudulent joinder." WRIGHT,
MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE:
Jurisdiction 3d § 3723 at 656. They observe that the
doctrine adds to the complexity of a federal court's
decision as to removal, and note that even in the
Eleventh Circuit not all procedural misjoinder rises
to the level of fraudulent joinder. They posit that
"numerous additional decisions will be needed to
clarify" the distinction between which misjoinder
claims rise to the level of "egregiousness"
justifying a refusal to remand. Id. They further
suggest that an aggrieved defendant could avoid the
confusion and complexity created by this standard by
seeking relief from the misjoinder in state court

**EXHIBIT**

**11**

Page 28 of 29    DEPT. 322

| MINUTES ENTERED |
| --- |
| 06/22/15 |
| COUNTY CLERK |

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 06/22/15

**DEPT.** 322

HONORABLE WILLIAM F. HIGHBERGER   JUDGE

A. LIM      DEPUTY CLERK

HONORABLE      JUDGE PRO TEM
ADD-ON

ELECTRONIC RECORDING MONITOR

R. SANCHEZ, CA    Deputy Sheriff

NONE      Reporter

---

3:30 pm | BC531848

XOCHILT ROBINSON ET AL
VS
JOHNSON & JOHNSON ET AL

{CASE FILE SENT TO DEPT 322}
COMPLEX 7/7/14 R/T JCCP4733

Plaintiff
Counsel

NO APPEARANCE

Defendant
Counsel

---

**NATURE OF PROCEEDINGS:**

and then removing to federal court. Id.

My own judgment is that the last thing the federal courts need is more procedural complexity. I thus conclude that the better rule would require Met Life to resolve the claimed misjoinder in state court, and then, if that court severed the case and diversity then existed, it could seek removal of the cause to federal court.

For all these reasons, the Court does believe that the motion for severance is legally valid and that this Court does not have discretion to deny it just because the case has been designated "complex" or because the case is pending in this court's Complex Civil Litigation Program. The Court can still keep the several severed cases together as related cases (assuming they remain in state court), it can consolidate them for discovery purposes, it can even contemplate adding them on the Court's own motion to the pending coordination proceeding in JCCP4733, and it can include them in case selection for suitable bell weather trials. But those are all distinct questions from whether or not defendant is entitled to have its severance request granted.

MECHANICS OF SEVERANCE:

After consultation with Senior Administrator Greg Drapac, who is in charge of civil operations at the

**EXHIBIT 11**

Page 24 of 29      DEPT. 322

MINUTES ENTERED
06/22/15
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 06/22/15

**DEPT.** 322

HONORABLE WILLIAM F. HIGHBERGER   JUDGE

A. LIM   DEPUTY CLERK

HONORABLE   JUDGE PRO TEM

ELECTRONIC RECORDING MONITOR

ADD-ON

R. SANCHEZ, CA   Deputy Sheriff

NONE   Reporter

3:30 pm   BC531848

XOCHILT ROBINSON ET AL
VS
JOHNSON & JOHNSON ET AL

{CASE FILE SENT TO DEPT 322}
COMPLEX 7/7/14 R/T JCCP4733

Plaintiff
Counsel

Defendant
Counsel

NO APPEARANCE

**NATURE OF PROCEEDINGS:**

Stanley Mosk Courthouse and indirectly responsible
for operations at Central Civil West Courthouse, the
Court has determined that the most efficient way to
accomplish severance in the specific context of this
case is to give each of the severed plaintiff's
cases (indeed to give ALL of the individual
plaintiff's cases) a specific docket number which
includes an alpha suffix to the general civil docket
number originally assigned to this aggregation of
claims.  The original docket number was BC531848.

For convenience, the 67 plaintiffs names have been
placed in alphabetical order by surname, and the
alpha suffix postscripts will start as BC531848A and
run through BC531848OOO.  The complete list appears
below, and a free-standing copy of the same list
will be served concurrently herewith for counsel's
ready reference.

No new filing fee will be charged to plaintiffs or
defendants as a consequence of this severance
process, and no new filing of one-off complaints
will be required since that would appear to elevate
form over substance to a pointless degree.  Insofar
as specific cases going forward involve only one
plaintiff, the caption should reflect that
plaintiff's name as the sole plaintiff, e.g. Theresa
Barnes v. Johnson & Johnson, et al., and the docket
number with suffix shall be shown, e.g.  BC531848A.
As an administrative matter, the clerk's entries for

**EXHIBIT 11**

Page 2 of 29   DEPT. 322

MINUTES ENTERED
06/22/15
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 06/22/15

**DEPT.** 322

HONORABLE  WILLIAM F. HIGHBERGER  JUDGE | A. LIM    DEPUTY CLERK

HONORABLE  JUDGE PRO TEM  ELECTRONIC RECORDING MONITOR
ADD-ON

R. SANCHEZ, CA  Deputy Sheriff | NONE    Reporter

---

3:30 pm | BC531848

XOCHILT ROBINSON ET AL
VS
JOHNSON & JOHNSON ET AL

{CASE FILE SENT TO DEPT 322}
COMPLEX 7/7/14 R/T JCCP4733

Plaintiff Counsel

Defendant Counsel

NO APPEARANCE

---

**NATURE OF PROCEEDINGS:**

the several severed cases will all be found under
BC531848 as the ancient computer system does not
have a capability of cleaving the docket into 67
separate, cloned, electronic copies.  Service via
the electronic service system under JCCP4733 via
CaseAnywhere will continue to be the court-ordered
mode of service.

DOCKET NUMBERS FOR INDIVIDUAL PLAINTIFF CASES
ORIGINALLY FILED AS A SINGLE DOCKET IN BC531848

| LAST NAME | GIVEN NAME(S) | DOCKET NUMBER |
|-----------|---------------|---------------|
| BARNES | THERESA | BC531848A |
| BERRY | LINDA | BC531848B |
| BLACKMER | CAROLYN | BC531848C |
| BRADLEY-LERMA | KELLY | BC531848D |
| BREEDEN | MERRY | BC531848E |
| BUCHANAN | FLORENCE | BC531848F |
| BUELL | MALLAH | BC531848G |
| CARMONA | SARA | BC531848H |
| COOVERT | SERENA | BC531848I |
| CUNNINGHAM | DAWN | BC531848J |
| DAGON | ILHAM | BC531848K |
| DAVIS | MARTHA | BC531848L |
| DULEY | MARGARET | BC531848M |
| EDWARDS | MARY | BC531848N |
| FESLER | JUDITH | BC531848O |
| FRIEL | MARY | BC531848P |
| GAUNT | RUTH | BC531848Q |
| GIBBS | PATRICIA | BC531848R |

**EXHIBIT**

**11**

Page 26 of 29    DEPT. 322

**MINUTES ENTERED
06/22/15
COUNTY CLERK**

Case 2:15-cv-05392-JGB-SP Document 14-3 Filed 07/24/15 Page 351 of 396 Page ID #:395

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 06/22/15

**DEPT.** 322

HONORABLE WILLIAM F. HIGHBERGER  JUDGE | A. LIM   DEPUTY CLERK

HONORABLE  JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR
ADD-ON

R. SANCHEZ, CA  Deputy Sheriff | NONE  Reporter

| | |
|---|---|
| 3:30 pm | BC531848 |

Plaintiff
Counsel

XOCHILT ROBINSON ET AL    NO APPEARANCE
VS
JOHNSON & JOHNSON ET AL

Defendant
Counsel

{CASE FILE SENT TO DEPT 322}
COMPLEX 7/7/14 R/T JCCP4733

**NATURE OF PROCEEDINGS:**

| | | |
|---|---|---|
| GOODMAN | PHYLLIS | BC531848S |
| GUASE | DINA | BC531848T |
| HAMANN | SANDRA | BC531848U |
| HAND BONNIE | | BC531848V |
| HEWLEIT | JANE | BC531848W |
| HIRD JANICE | | BC531848X |
| HUFFMAN | SHIRLENE | BC531848Y |
| KATUIN | MARY | BC531848Z |
| KOTZEN | LAURI | BC531848AA |
| KRUM | AVA | BC531848BB |
| LOUGHMAN | SHARON | BC531848CC |
| MASTERS | VENITA | BC531848DD |
| MAY | JUDY | BC531848EE |
| MCCASKELL | ANGELEA | BC531848FF |
| MCMILLAN | LISHA | BC531848GG |
| MILEUSNIC | HILDEGARD | BC531848HH |
| MILLER | MARCILLE | BC531848II |
| MOXLEY | MARIAN | BC531848JJ |
| MULLER | TRACY | BC531848KK |
| MURPHY | LISA | BC531848LL |
| NAQUIN | MAIDA | BC531848MM |
| NEWMAN | WILHELMINA | BC531848NN |
| NUNES | JOANN | BC531848OO |
| OMEROVIC | MEDINA | BC531848PP |
| ORSI | MARY | BC531848QQ |
| PARNELL | MARIE | BC531848RR |
| PEARSON | DONNA | BC531848SS |
| PEELE | PAMELA | BC531848TT |
| PELTER | GWEN | BC531848UU |
| PIAZZA | TAMMY | BC531848VV |

**EXHIBIT
11**

Page 27 of 29    DEPT. 322

MINUTES ENTERED
06/22/15
COUNTY CLERK

355

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 06/22/15                                                                    **DEPT.** 322

HONORABLE WILLIAM F. HIGHBERGER    JUDGE | A. LIM        DEPUTY CLERK

HONORABLE                    JUDGE PRO TEM         ELECTRONIC RECORDING MONITOR
ADD-ON

R. SANCHEZ, CA    Deputy Sheriff | NONE        Reporter

---

3:30 pm | BC531848                                    Plaintiff
                                                      Counsel
         XOCHILT ROBINSON ET AL                              NO APPEARANCE
         VS                                           Defendant
         JOHNSON & JOHNSON ET AL                      Counsel

         {CASE FILE SENT TO DEPT 322}
         COMPLEX 7/7/14 R/T JCCP4733

---

**NATURE OF PROCEEDINGS:**

| | | |
|---|---|---|
| PIOTROSWSKI | NOLA | BC531848WW |
| QUIAMBAO | BIBIANA | BC531848XX |
| REAVIS | JOYCE | BC531848YY |
| RENUCCI | BOBBIE JO | BC531848ZZ |
| ROBERTS | SHERRY | BC531848AAA |
| ROBINSON | XOCHILT | BC531848BBB |
| SCHULER | VALENTINE | BC531848CCC |
| SCHURICHT | SUSAN | BC531848DDD |
| SKELTON | VICKIE | BC531848EEE |
| SPANGLER | JADE | BC531848FFF |
| STEWART | PAMELA | BC531848GGG |
| STEWART | SHIRLEY | BC531848HHH |
| TINKHAM | BEVERLY | BC531848III |
| TOBIN | IRENE | BC531848JJJ |
| TORTORICI | CYNTHIA | BC531848KKK |
| VOKATY | GOERGINA | BC531848LLL |
| WALTON | LINDA | BC531848MMM |
| WEST REGINA | | BC531848NNN |
| WICK MARIE | | BC531848OOO |

The Court sets a Further Status Conference on July 30,
2015 at 11:00 a.m. in this department with Joint
Status Report due three (3) court days in advance.

                    CERTIFICATE OF ELECTRONIC SERVICE
                    CODE OF CIVIL PROCEDURE 1010.6

I, the below named Executive Officer/Clerk of the


EXHIBIT
**11**

Page 28 of 29    DEPT. 322

| MINUTES ENTERED |
| 06/22/15 |
| COUNTY CLERK |

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 06/22/15 | **DEPT.** 322 |
| HONORABLE WILLIAM F. HIGHBERGER JUDGE | A. LIM DEPUTY CLERK |
| HONORABLE JUDGE PRO TEM<br>ADD-ON | ELECTRONIC RECORDING MONITOR |
| R. SANCHEZ, CA Deputy Sheriff | NONE Reporter |

| | | |
|---|---|---|
| 3:30 pm | BC531848<br><br>XOCHILT ROBINSON ET AL<br>VS<br>JOHNSON & JOHNSON ET AL<br><br>{CASE FILE SENT TO DEPT 322}<br>COMPLEX 7/7/14 R/T JCCP4733 | Plaintiff<br>Counsel<br>     NO APPEARANCE<br>Defendant<br>Counsel |

**NATURE OF PROCEEDINGS:**

above entitled court, do hereby certify that I am
not a party to the cause herein, and that on this
date I served one copy of the
Minute Order
entered herein, on June 22, 2015, upon each
party or counsel of record in the above entitled
action, by electronically serving the document on
Case Anywhere at www.caseanywhere.com
on June 23, 2015 from my place of business,
Central Civil West Courthouse, 600 South
Commonwealth Avenue, Los Angeles, California 90005
in accordance with standard court practices.


Dated: June 23, 2015

Sherri R. Carter, Executive Officer/Clerk

By: _____, Deputy Clerk
             A. LIM

**EXHIBIT**

**11**

Page 29 of 29     DEPT. 322

357

| |
|---|
| **MINUTES ENTERED**<br>06/22/15<br>**COUNTY CLERK** |



# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**WESTERN DIVISION**
312 North Spring Street, Room G–8
Los Angeles, CA 90012
Tel: (213) 894–3535

**SOUTHERN DIVISION**
411 West Fourth Street, Suite 1053
Santa Ana, CA 92701–4516
(714) 338–4750

**TERRY NAFISI**
District Court Executive and
Clerk of Court

**EASTERN DIVISION**
3470 Twelfth Street, Room 134
Riverside, CA 92501
(951) 328–4450

July 21, 2015

  Clerk, Los Angeles Superior Court, Stanley Mosk Courthouse
  111 North Hill Street
  Los Angeles, CA 90012

Re:  Case Number:     2:15–cv–05315–PA–AGR
     Previously Superior Court Case No.     BC531848F
     Case Name:    FLORENCE BUCHANAN V. JOHNSON AND JOHNSON ET AL

Dear Sir/Madam:

     Pursuant to this Court's ORDER OF REMAND issued on     7/21/2015    , the above–referenced case is hereby remanded to your jurisdiction.

     Attached is a certified copy of the ORDER OF REMAND and a copy of the docket sheet from this Court.

     Please acknowledge receipt of the above by signing the enclosed copy of this letter and returning it to our office. Thank you for your cooperation.

Respectfully,

Clerk, U.S. District Court

By:  /s/ *Grace Kami*
    Deputy Clerk
    (213) 894–0747
    Western Division

*cc: Counsel of record*

---

Receipt is acknowledged of the documents described herein.

Clerk, Superior Court

By: _____

_____
Date

    Deputy Clerk

**EXHIBIT**
# 12
358

CV–103 (09/08)   LETTER OF TRANSMITTAL – REMAND TO SUPERIOR COURT (CIVIL)

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5315 PA (AGRx) | | Date | July 21, 2015 |
|---|---|---|---|---|
| Title | Florence Buchanan v. Johnson & Johnson, et al. | | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Stephen Montes Kerr | N/A | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** IN CHAMBERS – COURT ORDER

Before the Court is a Notice of Removal filed by defendant Ethicon, LLC ("Ethicon") on July 15, 2015. Ethicon notes that its co-defendants, Johnson & Johnson and Ethicon, Inc. consent to removal. (Notice ¶ 42.) Ethicon asserts that the Court has jurisdiction over this action, brought by plaintiff Florence Buchanan ("Plaintiff"), based on the Court's diversity jurisdiction. See 28 U.S.C. § 1332.

On December 13, 2013, sixty-seven plaintiffs filed a Complaint, styled Robinson, et al. v. Johnson & Johnson, et al., Case No. BC531848, in Los Angeles County Superior Court. The plaintiffs allege various injuries caused by a pelvic mesh product. The case was removed to the Central District on February 5, 2014 and remanded on March 12, 2014. The Superior Court granted a motion to sever on June 22, 2015, giving each severed plaintiff a specific docket number including a unique "alpha suffix" added to the original docket number, BC531848.

"Federal courts are courts of limited jurisdiction," having subject matter jurisdiction only over matters authorized by the Constitution and Congress. See, e.g., Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377, 114 S. Ct. 1673, 1675, 128 L. Ed. 2d 391, 395 (1994). A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a). "The removal statute is strictly construed against removal jurisdiction, and the burden of establishing federal jurisdiction falls to the party invoking the statute." California ex rel. Lockyer v. Dynegy, Inc., 375 F.3d 831, 838 (citing Ethridge v. Harbor House Rest., 861 F.2d 1389, 1393 (9th Cir. 1988)), amended by 387 F.3d 966 (9th Cir. 2004). "The defendant also has the burden of showing that it has complied with the procedural requirements for removal." See, e.g., Riggs v. Plaid Pantries, Inc., 233 F. Supp. 2d 1260, 1264 (D. Or. 2001). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (citing Libhart v. Santa Monica Dairy Co., 592 F.2d [ ] h Cir. 1979)). In attempting to invoke this Court's diversity jurisdiction, Ethicon must prove that there is complete diversity of citizenship between the parties and that the amount in controversy exceeds $75,000. 28 U.S.C. § 1332.

EXHIBIT
**12**

/ / /

359

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5315 PA (AGRx) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Florence Buchanan v. Johnson & Johnson, et al. | | |

### A.    Diversity of Parties

To establish citizenship for diversity purposes, a natural person must be a citizen of the United States and be domiciled in a particular state.  Kantor v. Wellesley Galleries, Ltd., 704 F.2d 1088, 1090 (9th Cir. 1983).  Persons are domiciled in the places they reside with the intent to remain or to which they intend to return.  See Kanter v. Warner-Lambert Co., 265 F.3d 853, 857 (9th Cir. 2001).  "A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state."  Id.  For the purposes of diversity jurisdiction, a corporation is a citizen of any state where it is incorporated and of the state where it has its principal place of business.  28 U.S.C. § 1332(c); see also Indus. Tectonics, Inc. v. Aero Alloy, 912 F.2d 1090, 1092 (9th Cir. 1990).  The citizenship of an LLC is the citizenship of its members.  See Johnson v. Columbia Props. Anchorage, LP, 437 F.3d 894, 899 (9th Cir. 2006) ("[L]ike a partnership, an LLC is a citizen of every state of which its owners/members are citizens.").

Here, Plaintiff is allegedly a resident and citizen of Missouri.  Johnson & Johnson is a citizen of New Jersey; Ethicon, Inc. is a citizen of New Jersey; and Ethicon is a citizen of Ireland because its sole member, Ethicon PR Holdings, is a private unlimited company organized under the laws of Ireland with its principal place of business in Cork, Ireland.

### B.    Amount in Controversy

When an action has been removed and the amount in controversy is in doubt, there is a "strong presumption" that the plaintiff has not claimed an amount sufficient to confer jurisdiction.  Gaus, 980 F.2d 564, 566 (9th Cir. 1992) (citing St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288–90, 58 S. Ct. 586, 590–91, 82 L. Ed. 845 (1938)).  "When not facially evident from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold."  Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003).  "Conclusory allegations as to the amount in controversy are insufficient."  Id. at 1090-91.  "Under this burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds [$75,000]."  Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996).[1/]

---

[1/]     Ethicon cites the Venue Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat. 758, and quotes from the House Report accompanying the bill for the proposition that "the defendants do not need to prove to a legal certainty that the amount in controversy requirement has been met.  Rather, defendants may simply allege or assert that the jurisdictional threshold has been met."  H.R. Rep. No. 112-10 at 16 (2011).  Interpreting the Act in Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547, 554, 190 L. Ed. 2d 495 (2014), the Supreme Court acknowledged that while "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," evidence establishing the amount in controversy may be required if the court questions the defendant's allegation.  Here, the Court questions Ethicon's amount in controversy allegation because it is based on a Complaint alleging damages on behalf of more than sixty plaintiffs, with no individualized

EXHIBIT
**12**

**360**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5315 PA (AGRx) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Florence Buchanan v. Johnson & Johnson, et al. | | |

Here, Ethicon attempts to establish the amount in controversy solely by citation to the original complaint filed on behalf of more than sixty individual plaintiffs. Ethicon lists the categories of damages sought by the plaintiffs collectively, but provides no information regarding Plaintiff's individual situation. For example, the Court has no information regarding the specific nature or extent of Plaintiff's injuries, her past or future medical expenses, or her earning capacity. The Court has no basis to find that it is more likely than not that the amount in controversy exceeds $75,000.

### C.       Timeliness of Removal

To remove an action from state to federal court, a defendant must also comply with the procedural requirements for removal. These procedures include a requirement that the "notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b)(1). "[I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). Diversity cases where the initial pleading is not removable "may not be removed . . . more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C. § 1446(c)(1).

Here, Ethicon argues that § 1446(c)(1) does not apply because Plaintiff has always been diverse from Defendants. The Ninth Circuit has construed § 1446(c)(1) to apply only to cases removed pursuant to § 1446(b)(3)—i.e. cases that "become" removable. See Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1316-18 (9th Cir. 1998) ("The first paragraph of § 1446(b) addresses a defendant's right to promptly remove when he is served. The second paragraph addresses a defendant's right to remove beyond the initial period of 30 days, if the case only becomes removable sometime after the initial commencement of the action. Only the latter type of removal is barred by the one-year exception."). However, Ethicon's claim that the instant case has always been removable is simply not accurate. As Ethicon notes, the Central District held prior to severance that the "initial pleading" was not removable. If Ethicon's position is that the Complaint filed in Case No. BC531848 is not the "initial pleading" in the instant case, it is not clear that an initial pleading has even been received. See Milton A. Jacobs, Inc. v. Manning Mfg. Corp., 171 F. Supp. 393, 395 (S.D. N.Y. 1959) ("[P]arties seeking removal can take no action until they have received a copy of the 'initial pleading.'").



**EXHIBIT**

**12**

361

---

facts about Plaintiff.

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5315 PA (AGRx) | Date | July 21, 2015 |
|---|---|---|---|

| Title | Florence Buchanan v. Johnson & Johnson, et al. |
|---|---|

Ethicon argues that if § 1446(c)(1)'s one-year rule applies, removal is nonetheless timely because the instant action was "commenced" on June 22, 2015 when the instant case was severed from Case No. BC531848. Ethicon does not cite any authority for this argument, and the Court is not persuaded. The filing date of the Complaint in Case No. BC521848 is the "commencement date" for purposes of § 1446(c)(1). See, e.g., Wejrowski v. Wyeth, No. 4:06CV292 CDP, 2012 WL 2367388, at *3 (E.D. Mo. June 21, 2012) ("But even though the plaintiffs' second amended complaint will proceed as an independent claim from the point it was severed, it was still part of the original case filed on July 7, 2004, and the state court recognized that it was commenced then. Defendant's opportunity to remove was limited to one year from that original commencement date, and the intervening removal, remand, and severance have no effect on the one-year time limit.").

Finally, Ethicon argues that even if removal is not timely under § 1446(c)(1), the statute does not bar removal when the delay is due to Plaintiff's bad faith conduct and state court docket delays. First, Ethicon notes that while Plaintiff has served other defendants, she has yet to serve Ethicon. See Escalante v. Burlington Nat. Indem. Ltd., No. 2:14-CV-7273 ODW, 2014 WL 6670002, at *4 (C.D. Cal. Nov. 24, 2014); WMCV Phase, LLC v. Tufenkian Carpets Las Vegas, LLC, No. 2:12-CV-01454-RJC-PAL, 2012 WL 5198478, at *2 (D. Nev. Oct. 18, 2012). However, there is no evidence that Plaintiff's delay in serving Ethicon was intended to stymie removal—the case did not become potentially removable until the case was severed, well after § 1446(c)(1)'s one-year period had expired. Second, Ethicon argues that Plaintiff's counsel's repeated misjoinder of nondiverse plaintiffs to keep their cases out of federal courts constitutes bad faith under § 1446(c)(1). Here, Ethicon emphasizes that Plaintiff's counsel originally joined sixty-four diverse plaintiffs with three non-diverse plaintiffs and argues that this was purely a "manipulative tactic[]" employed to defeat diversity. Ethicon notes that Plaintiff's attorneys have filed similar lawsuits with similarly skewed ratios of diverse to non-diverse plaintiffs. "The Ninth Circuit has not addressed the standard to be applied to meet the bad faith requirement of the amendment to Section 1446 nor has it recognized any equitable exceptions to section 1446(c)(1). . . . While it is unclear what standard would be used in this context, the requirement that a party acts in bad faith sets a high threshold." NKD Diversified Electronics, Inc. v. First Mercury Ins. Co., No. 1:14-cv-00183-AWI-SAB, 2014 WL 1671659, at *3 (N.D. Cal. Apr. 28, 2014) (internal citations omitted). Defendants argued fraudulent joinder when they first removed this action to this Court, and the Court found no evidence that joinder was "egregious." See Case. No. 14-CV-899 JGB (Spx), Docket No. 32 at 4. Similarly, Ethicon has now failed to provide evidence showing that the handful of non-diverse plaintiffs in this case were joined in bad faith. Third, Ethicon argues that state court docket delays warrant equitable tolling of § 1446(c)(1)'s one-year period. As noted in NKD Diversified, the Ninth Circuit has not recognized equitable exceptions to § 1446(c)(1).

Accordingly, Ethicon's Notice of Re̲̅**EXHIBIT**̲̅mely under § 1446(c)(1).

**EXHIBIT**

**12**

362

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5315 PA (AGRx) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Florence Buchanan v. Johnson & Johnson, et al. | | |

### Conclusion

For the foregoing reasons, Ethicon has failed to meet its burden of showing that diversity jurisdiction exists over this action.[2]  Accordingly, this action is hereby remanded to the Los Angeles Superior Court, Case No. BC531848F, for lack of subject matter jurisdiction.  See 28 U.S.C. § 1447(c).

IT IS SO ORDERED.

---

[2]    Although the Court recognizes that the one-year limitation addressed above is procedural, the amount in controversy requirement is jurisdictional.  See Smith v. Mylan, Inc., 761 F.3d 1042, 1043 (9th Cir. 2014) ("We hold that the district court acted in excess of its statutory authority because the one-year time limitation for removal of diversity cases under § 1446(b) is a procedural requirement rather than jurisdictional.  While the district court may remand at any time prior to final judgment for lack of subject matter jurisdiction, it cannot remand sua sponte based on a non jurisdictional defect because procedural deficiencies are waivable.").

EXHIBIT
**12**
363



**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**
312 North Spring Street, Room G–8
Los Angeles, CA 90012
Tel: (213) 894–3535

**SOUTHERN DIVISION**
411 West Fourth Street, Suite 1053
Santa Ana, CA 92701–4516
(714) 338–4750

**EASTERN DIVISION**
3470 Twelfth Street, Room 134
Riverside, CA 92501
(951) 328–4450

**TERRY NAFISI**
District Court Executive and
Clerk of Court

July 21, 2015

 Clerk, Los Angeles Superior Court, Stanley Mosk Courthouse
  111 North Hill Street
  Los Angeles, CA 90012

Re:  Case Number:  _____2:15–cv–05317–PA–E_____
 Previously Superior Court Case No.  _____BC531848H_____
 Case Name:  _____SARA CARMONA V. JOHNSON & JOHNSON ET AL_____

Dear Sir/Madam:

 Pursuant to this Court's ORDER OF REMAND issued on  _____7/21/2015_____, the above–referenced case is hereby remanded to your jurisdiction.

 Attached is a certified copy of the ORDER OF REMAND and a copy of the docket sheet from this Court.

 Please acknowledge receipt of the above by signing the enclosed copy of this letter and returning it to our office. Thank you for your cooperation.

Respectfully,

Clerk, U.S. District Court

By:  _/s/ Grace Kami_
 Deputy Clerk
 (213) 894–0747
 Western Division

*cc: Counsel of record*

Receipt is acknowledged of the documents described herein.

Clerk, Superior Court

By: _____

_____
Date

Deputy Clerk

EXHIBIT
**12**
364

CV–103 (09/08)   LETTER OF TRANSMITTAL – REMAND TO SUPERIOR COURT (CIVIL)

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5317 PA (Ex) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Sara Carmona v. Johnson & Johnson, et al. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Stephen Montes Kerr | N/A | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**  IN CHAMBERS – COURT ORDER

Before the Court is a Notice of Removal filed by defendant Ethicon, LLC ("Ethicon") on July 15, 2015. Ethicon notes that its co-defendants, Johnson & Johnson and Ethicon, Inc. consent to removal. (Notice ¶ 42.) Ethicon asserts that the Court has jurisdiction over this action, brought by plaintiff Sara Carmona ("Plaintiff"), based on the Court's diversity jurisdiction. See 28 U.S.C. § 1332.

On December 13, 2013, sixty-seven plaintiffs filed a Complaint, styled Robinson, et al. v. Johnson & Johnson, et al., Case No. BC531848, in Los Angeles County Superior Court. The plaintiffs allege various injuries caused by a pelvic mesh product. The case was removed to the Central District on February 5, 2014 and remanded on March 12, 2014. The Superior Court granted a motion to sever on June 22, 2015, giving each severed plaintiff a specific docket number including a unique "alpha suffix" added to the original docket number, BC531848.

"Federal courts are courts of limited jurisdiction," having subject matter jurisdiction only over matters authorized by the Constitution and Congress. See, e.g., Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377, 114 S. Ct. 1673, 1675, 128 L. Ed. 2d 391, 395 (1994). A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a). "The removal statute is strictly construed against removal jurisdiction, and the burden of establishing federal jurisdiction falls to the party invoking the statute." California ex rel. Lockyer v. Dynegy, Inc., 375 F.3d 831, 838 (citing Ethridge v. Harbor House Rest., 861 F.2d 1389, 1393 (9th Cir. 1988)), amended by 387 F.3d 966 (9th Cir. 2004). "The defendant also has the burden of showing that it has complied with the procedural requirements for removal." See, e.g., Riggs v. Plaid Pantries, Inc., 233 F. Supp. 2d 1260, 1264 (D. Or. 2001). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (citing Libhart v. Santa Monica Dairy Co., 592 F.2d 1062, 1064 (9th Cir. 1979)). In attempting to invoke this Court's diversity jurisdiction, Ethicon must prove that there is complete diversity of citizenship between the parties and that the amount in controversy [EXHIBIT] ,000. 28 U.S.C. § 1332.

/ / /

**EXHIBIT**
## 12
365

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5317 PA (Ex) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Sara Carmona v. Johnson & Johnson, et al. | | |

### A.    Diversity of Parties

To establish citizenship for diversity purposes, a natural person must be a citizen of the United States and be domiciled in a particular state. Kantor v. Wellesley Galleries, Ltd., 704 F.2d 1088, 1090 (9th Cir. 1983). Persons are domiciled in the places they reside with the intent to remain or to which they intend to return. See Kanter v. Warner-Lambert Co., 265 F.3d 853, 857 (9th Cir. 2001). "A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state." Id. For the purposes of diversity jurisdiction, a corporation is a citizen of any state where it is incorporated and of the state where it has its principal place of business. 28 U.S.C. § 1332(c); see also Indus. Tectonics, Inc. v. Aero Alloy, 912 F.2d 1090, 1092 (9th Cir. 1990). The citizenship of an LLC is the citizenship of its members. See Johnson v. Columbia Props. Anchorage, LP, 437 F.3d 894, 899 (9th Cir. 2006) ("[L]ike a partnership, an LLC is a citizen of every state of which its owners/members are citizens.").

Here, Plaintiff is allegedly a resident and citizen of Florida. Johnson & Johnson is a citizen of New Jersey; Ethicon, Inc. is a citizen of New Jersey; and Ethicon is a citizen of Ireland because its sole member, Ethicon PR Holdings, is a private unlimited company organized under the laws of Ireland with its principal place of business in Cork, Ireland.

### B.    Amount in Controversy

When an action has been removed and the amount in controversy is in doubt, there is a "strong presumption" that the plaintiff has not claimed an amount sufficient to confer jurisdiction. Gaus, 980 F.2d 564, 566 (9th Cir. 1992) (citing St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288–90, 58 S. Ct. 586, 590–91, 82 L. Ed. 845 (1938)). "When not facially evident from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold." Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003). "Conclusory allegations as to the amount in controversy are insufficient." Id. at 1090-91. "Under this burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds [$75,000]." Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996).[1/]

---

[1/]    Ethicon cites the Venue Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat. 758, and quotes from the House Report accompanying the bill for the proposition that "the defendants do not need to prove to a legal certainty that the amount in controversy requirement has been met. Rather, defendants may simply allege or assert that the jurisdictional threshold has been met." H.R. Rep. No. 112-10 at 16 (2011). Interpreting the Act in Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547, 554, 190 L. Ed. 2d 495 (2014), the Supreme Court acknowledged that while "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," evidence establishing the amount in controversy may be required if the court questions the defendant's allegation. Here, the Court questions Ethicon's amount in controversy allegation because it is based on a Complaint alleging damages on behalf of more than sixty plaintiffs, with no individualized

EXHIBIT
12
362

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5317 PA (Ex) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Sara Carmona v. Johnson & Johnson, et al. | | |

Here, Ethicon attempts to establish the amount in controversy solely by citation to the original complaint filed on behalf of more than sixty individual plaintiffs. Ethicon lists the categories of damages sought by the plaintiffs collectively, but provides no information regarding Plaintiff's individual situation. For example, the Court has no information regarding the specific nature or extent of Plaintiff's injuries, her past or future medical expenses, or her earning capacity. The Court has no basis to find that it is more likely than not that the amount in controversy exceeds $75,000.

### C. Timeliness of Removal

To remove an action from state to federal court, a defendant must also comply with the procedural requirements for removal. These procedures include a requirement that the "notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b)(1). "[I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). Diversity cases where the initial pleading is not removable "may not be removed . . . more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C. § 1446(c)(1).

Here, Ethicon argues that § 1446(c)(1) does not apply because Plaintiff has always been diverse from Defendants. The Ninth Circuit has construed § 1446(c)(1) to apply only to cases removed pursuant to § 1446(b)(3)—i.e. cases that "become" removable. See Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1316-18 (9th Cir. 1998) ("The first paragraph of § 1446(b) addresses a defendant's right to promptly remove when he is served. The second paragraph addresses a defendant's right to remove beyond the initial period of 30 days, if the case only becomes removable sometime after the initial commencement of the action. Only the latter type of removal is barred by the one-year exception."). However, Ethicon's claim that the instant case has always been removable is simply not accurate. As Ethicon notes, the Central District held prior to severance that the "initial pleading" was not removable. If Ethicon's position is that the Complaint filed in Case No. BC531848 is not the "initial pleading" in the instant case, it is not clear that an initial pleading has even been received. See Milton A. Jacobs, Inc. v. Manning Mfg. Corp., 171 F. Supp. 393, 395 (S.D. N.Y. 1959) ("[P]arties seeking removal can take no action until they have received a copy of the 'initial pleading.'").



EXHIBIT

**12**

367

facts about Plaintiff.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-5317 PA (Ex) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Sara Carmona v. Johnson & Johnson, et al. | | |

Ethicon argues that if § 1446(c)(1)'s one-year rule applies, removal is nonetheless timely because the instant action was "commenced" on June 22, 2015 when the instant case was severed from Case No. BC531848. Ethicon does not cite any authority for this argument, and the Court is not persuaded. The filing date of the Complaint in Case No. BC521848 is the "commencement date" for purposes of § 1446(c)(1). See, e.g., Wejrowski v. Wyeth, No. 4:06CV292 CDP, 2012 WL 2367388, at *3 (E.D. Mo. June 21, 2012) ("But even though the plaintiffs' second amended complaint will proceed as an independent claim from the point it was severed, it was still part of the original case filed on July 7, 2004, and the state court recognized that it was commenced then. Defendant's opportunity to remove was limited to one year from that original commencement date, and the intervening removal, remand, and severance have no effect on the one-year time limit.").

Finally, Ethicon argues that even if removal is not timely under § 1446(c)(1), the statute does not bar removal when the delay is due to Plaintiff's bad faith conduct and state court docket delays. First, Ethicon notes that while Plaintiff has served other defendants, she has yet to serve Ethicon. See Escalante v. Burlington Nat. Indem. Ltd., No. 2:14-CV-7273 ODW, 2014 WL 6670002, at *4 (C.D. Cal. Nov. 24, 2014); WMCV Phase, LLC v. Tufenkian Carpets Las Vegas, LLC, No. 2:12-CV-01454-RJC-PAL, 2012 WL 5198478, at *2 (D. Nev. Oct. 18, 2012). However, there is no evidence that Plaintiff's delay in serving Ethicon was intended to stymie removal—the case did not become potentially removable until the case was severed, well after § 1446(c)(1)'s one-year period had expired. Second, Ethicon argues that Plaintiff's counsel's repeated misjoinder of nondiverse plaintiffs to keep their cases out of federal courts constitutes bad faith under § 1446(c)(1). Here, Ethicon emphasizes that Plaintiff's counsel originally joined sixty-four diverse plaintiffs with three non-diverse plaintiffs and argues that this was purely a "manipulative tactic[]" employed to defeat diversity. Ethicon notes that Plaintiff's attorneys have filed similar lawsuits with similarly skewed ratios of diverse to non-diverse plaintiffs. "The Ninth Circuit has not addressed the standard to be applied to meet the bad faith requirement of the amendment to Section 1446 nor has it recognized any equitable exceptions to section 1446(c)(1). . . . While it is unclear what standard would be used in this context, the requirement that a party acts in bad faith sets a high threshold." NKD Diversified Electronics, Inc. v. First Mercury Ins. Co., No. 1:14-cv-00183-AWI-SAB, 2014 WL 1671659, at *3 (N.D. Cal. Apr. 28, 2014) (internal citations omitted). Defendants argued fraudulent joinder when they first removed this action to this Court, and the Court found no evidence that joinder was "egregious." See Case. No. 14-CV-899 JGB (Spx), Docket No. 32 at 4. Similarly, Ethicon has now failed to provide evidence showing that the handful of non-diverse plaintiffs in this case were joined in bad faith. Third, Ethicon argues that state court docket delays warrant equitable tolling of § 1446(c)(1)'s one-year period. As noted in NKD Diversified, the Ninth Circuit has not recognized equitable exceptions to § 1446(c)(1).

Accordingly, Ethicon's Notice of Rem~~oval~~ ~~is~~ ~~ti~~mely under § 1446(c)(1).

**EXHIBIT**
**12**
Conclusion
368

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5317 PA (Ex) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Sara Carmona v. Johnson & Johnson, et al. | | |

For the foregoing reasons, Ethicon has failed to meet its burden of showing that diversity jurisdiction exists over this action.[2]  Accordingly, this action is hereby remanded to the Los Angeles Superior Court, Case No. BC531848H, for lack of subject matter jurisdiction.  See 28 U.S.C. § 1447(c).

IT IS SO ORDERED.

---

[2]      Although the Court recognizes that the one-year limitation addressed above is procedural, the amount in controversy requirement is jurisdictional.  See Smith v. Mylan, Inc., 761 F.3d 1042, 1043 (9th Cir. 2014) ("We hold that the district court acted in excess of its statutory authority because the one-year time limitation for removal of diversity cases under § 1446(b) is a procedural requirement rather than jurisdictional.  While the district court may remand at any time prior to final judgment for lack of subject matter jurisdiction, it cannot remand sua sponte based on a non jurisdictional defect because procedural deficiencies are waivable.").

EXHIBIT
12

369



**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**
312 North Spring Street, Room G–8
Los Angeles, CA 90012
Tel: (213) 894–3535

**SOUTHERN DIVISION**
411 West Fourth Street, Suite 1053
Santa Ana, CA 92701–4516
(714) 338–4750

**EASTERN DIVISION**
3470 Twelfth Street, Room 134
Riverside, CA 92501
(951) 328–4450

**TERRY NAFISI**
District Court Executive and
Clerk of Court

July 21, 2015

Clerk, Los Angeles Superior Court, Stanley Mosk Courthouse
111 North Hill Street
Los Angeles, CA 90012

Re:  Case Number:  ____2:15–cv–05371–PA–GJS____
     Previously Superior Court Case No.  ____BC531848QQ____
     Case Name:  ____MARY ORSI V. JOHNSON AND JOHNSON ET AL____

Dear Sir/Madam:

Pursuant to this Court's ORDER OF REMAND issued on  ____7/21/2015____, the above–referenced case is hereby remanded to your jurisdiction.

Attached is a certified copy of the ORDER OF REMAND and a copy of the docket sheet from this Court.

Please acknowledge receipt of the above by signing the enclosed copy of this letter and returning it to our office. Thank you for your cooperation.

Respectfully,

Clerk, U.S. District Court

By:  _/s/ Grace Kami_
     Deputy Clerk
     (213) 894–0747
     Western Division

*cc: Counsel of record*

Receipt is acknowledged of the documents described herein.

Clerk, Superior Court

By:  _____

_____
Date

Deputy Clerk

**EXHIBIT**

**12**

370

CV–103 (09/08)   LETTER OF TRANSMITTAL – REMAND TO SUPERIOR COURT (CIVIL)

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5371 PA (GJSx) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Mary Orsi v. Johnson & Johnson, et al. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Stephen Montes Kerr | N/A | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**     IN CHAMBERS – COURT ORDER

Before the Court is a Notice of Removal filed by defendant Ethicon, LLC ("Ethicon") on July 15, 2015. Ethicon notes that its co-defendants, Johnson & Johnson and Ethicon, Inc. consent to removal. (Notice ¶ 42.) Ethicon asserts that the Court has jurisdiction over this action, brought by plaintiff Mary Orsi ("Plaintiff"), based on the Court's diversity jurisdiction. See 28 U.S.C. § 1332.

On December 13, 2013, sixty-seven plaintiffs filed a Complaint, styled <u>Robinson, et al. v. Johnson & Johnson, et al.</u>, Case No. BC531848, in Los Angeles County Superior Court. The plaintiffs allege various injuries caused by a pelvic mesh product. The case was removed to the Central District on February 5, 2014 and remanded on March 12, 2014. The Superior Court granted a motion to sever on June 22, 2015, giving each severed plaintiff a specific docket number including a unique "alpha suffix" added to the original docket number, BC531848.

"Federal courts are courts of limited jurisdiction," having subject matter jurisdiction only over matters authorized by the Constitution and Congress. See, e.g., <u>Kokkonen v. Guardian Life Ins. Co.</u>, 511 U.S. 375, 377, 114 S. Ct. 1673, 1675, 128 L. Ed. 2d 391, 395 (1994). A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a). "The removal statute is strictly construed against removal jurisdiction, and the burden of establishing federal jurisdiction falls to the party invoking the statute." <u>California ex rel. Lockyer v. Dynegy, Inc.</u>, 375 F.3d 831, 838 (citing <u>Ethridge v. Harbor House Rest.</u>, 861 F.2d 1389, 1393 (9th Cir. 1988)), <u>amended by</u> 387 F.3d 966 (9th Cir. 2004). "The defendant also has the burden of showing that it has complied with the procedural requirements for removal." <u>See, e.g.</u>, <u>Riggs v. Plaid Pantries, Inc.</u>, 233 F. Supp. 2d 1260, 1264 (D. Or. 2001). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." <u>Gaus v. Miles, Inc.</u>, 980 F.2d 564, 566 (9th Cir. 1992) (<u>citing</u> <u>Libhart v. Santa Monica Dairy Co.</u>, 592 F.2d 1062, 1064 (9th Cir. 1979)). In attempting to invoke this Court's diversity jurisdiction, Ethicon must prove that there is complete diversity of citizenship between the parties and that the amount in controversy [EXHIBIT] 000. 28 U.S.C. § 1332.

/ / /

**EXHIBIT**
## 12
371

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5371 PA (GJSx) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Mary Orsi v. Johnson & Johnson, et al. | | |

### A.     Diversity of Parties

To establish citizenship for diversity purposes, a natural person must be a citizen of the United States and be domiciled in a particular state.  Kantor v. Wellesley Galleries, Ltd., 704 F.2d 1088, 1090 (9th Cir. 1983).  Persons are domiciled in the places they reside with the intent to remain or to which they intend to return.  See Kanter v. Warner-Lambert Co., 265 F.3d 853, 857 (9th Cir. 2001).  "A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state."  Id.  For the purposes of diversity jurisdiction, a corporation is a citizen of any state where it is incorporated and of the state where it has its principal place of business.  28 U.S.C. § 1332(c); see also Indus. Tectonics, Inc. v. Aero Alloy, 912 F.2d 1090, 1092 (9th Cir. 1990).  The citizenship of an LLC is the citizenship of its members.  See Johnson v. Columbia Props. Anchorage, LP, 437 F.3d 894, 899 (9th Cir. 2006) ("[L]ike a partnership, an LLC is a citizen of every state of which its owners/members are citizens.").

Here, Plaintiff is allegedly a resident and citizen of Washington.  Johnson & Johnson is a citizen of New Jersey; Ethicon, Inc. is a citizen of New Jersey; and Ethicon is a citizen of Ireland because its sole member, Ethicon PR Holdings, is a private unlimited company organized under the laws of Ireland with its principal place of business in Cork, Ireland.

### B.     Amount in Controversy

When an action has been removed and the amount in controversy is in doubt, there is a "strong presumption" that the plaintiff has not claimed an amount sufficient to confer jurisdiction.  Gaus, 980 F.2d 564, 566 (9th Cir. 1992) (citing St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288–90, 58 S. Ct. 586, 590–91, 82 L. Ed. 845 (1938)).  "When not facially evident from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold."  Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003).  "Conclusory allegations as to the amount in controversy are insufficient."  Id. at 1090-91.  "Under this burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds [$75,000]."  Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996).[1]

---

[1]     Ethicon cites the Venue Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat. 758, and quotes from the House Report accompanying the bill for the proposition that "the defendants do not need to prove to a legal certainty that the amount in controversy requirement has been met.  Rather, defendants may simply allege or assert that the jurisdictional threshold has been met."  H.R. Rep. No. 112-10 at 16 (2011).  Interpreting the Act in Dart Cherokee _____ _____ing Co., LLC v. Owens, 135 S. Ct. 547, 554, 190 L. Ed. 2d 495 (2014), the Supreme Court acknowledged that while "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," evidence establishing the amount in controversy may be required if the court questions the defendant's allegation.  Here, the Court questions Ethicon's amount in controversy allegation because it is based on a Complaint alleging damages on behalf of more than sixty plaintiffs, with no individualized

EXHIBIT 12 372

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5371 PA (GJSx) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Mary Orsi v. Johnson & Johnson, et al. | | |

Here, Ethicon attempts to establish the amount in controversy solely by citation to the original complaint filed on behalf of more than sixty individual plaintiffs. Ethicon lists the categories of damages sought by the plaintiffs collectively, but provides no information regarding Plaintiff's individual situation. For example, the Court has no information regarding the specific nature or extent of Plaintiff's injuries, her past or future medical expenses, or her earning capacity. The Court has no basis to find that it is more likely than not that the amount in controversy exceeds $75,000.

### C.      Timeliness of Removal

To remove an action from state to federal court, a defendant must also comply with the procedural requirements for removal. These procedures include a requirement that the "notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b)(1). "[I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). Diversity cases where the initial pleading is not removable "may not be removed . . . more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C. § 1446(c)(1).

Here, Ethicon argues that § 1446(c)(1) does not apply because Plaintiff has always been diverse from Defendants. The Ninth Circuit has construed § 1446(c)(1) to apply only to cases removed pursuant to § 1446(b)(3)—i.e. cases that "become" removable. See Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1316-18 (9th Cir. 1998) ("The first paragraph of § 1446(b) addresses a defendant's right to promptly remove when he is served. The second paragraph addresses a defendant's right to remove beyond the initial period of 30 days, if the case only becomes removable sometime after the initial commencement of the action. Only the latter type of removal is barred by the one-year exception."). However, Ethicon's claim that the instant case has always been removable is simply not accurate. As Ethicon notes, the Central District held prior to severance that the "initial pleading" was not removable. If Ethicon's position is that the Complaint filed in Case No. BC531848 is not the "initial pleading" in the instant case, it is not clear that an initial pleading has even been received. See Milton A. Jacobs, Inc. v. Manning Mfg. Corp., 171 F. Supp. 393, 395 (S.D. N.Y. 1959) ("[P]arties seeking removal can take no action until they have received a copy of the 'initial pleading.'").



EXHIBIT

**12**

373

facts about Plaintiff.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5371 PA (GJSx) | | Date | July 21, 2015 |
|---|---|---|---|---|
| Title | Mary Orsi v. Johnson & Johnson, et al. | | | |

Ethicon argues that if § 1446(c)(1)'s one-year rule applies, removal is nonetheless timely because the instant action was "commenced" on June 22, 2015 when the instant case was severed from Case No. BC531848. Ethicon does not cite any authority for this argument, and the Court is not persuaded. The filing date of the Complaint in Case No. BC521848 is the "commencement date" for purposes of § 1446(c)(1). See, e.g., Wejrowski v. Wyeth, No. 4:06CV292 CDP, 2012 WL 2367388, at *3 (E.D. Mo. June 21, 2012) ("But even though the plaintiffs' second amended complaint will proceed as an independent claim from the point it was severed, it was still part of the original case filed on July 7, 2004, and the state court recognized that it was commenced then. Defendant's opportunity to remove was limited to one year from that original commencement date, and the intervening removal, remand, and severance have no effect on the one-year time limit.").

Finally, Ethicon argues that even if removal is not timely under § 1446(c)(1), the statute does not bar removal when the delay is due to Plaintiff's bad faith conduct and state court docket delays. First, Ethicon notes that while Plaintiff has served other defendants, she has yet to serve Ethicon. See Escalante v. Burlington Nat. Indem. Ltd., No. 2:14-CV-7273 ODW, 2014 WL 6670002, at *4 (C.D. Cal. Nov. 24, 2014); WMCV Phase, LLC v. Tufenkian Carpets Las Vegas, LLC, No. 2:12-CV-01454-RJC-PAL, 2012 WL 5198478, at *2 (D. Nev. Oct. 18, 2012). However, there is no evidence that Plaintiff's delay in serving Ethicon was intended to stymie removal—the case did not become potentially removable until the case was severed, well after § 1446(c)(1)'s one-year period had expired. Second, Ethicon argues that Plaintiff's counsel's repeated misjoinder of nondiverse plaintiffs to keep their cases out of federal courts constitutes bad faith under § 1446(c)(1). Here, Ethicon emphasizes that Plaintiff's counsel originally joined sixty-four diverse plaintiffs with three non-diverse plaintiffs and argues that this was purely a "manipulative tactic[]" employed to defeat diversity. Ethicon notes that Plaintiff's attorneys have filed similar lawsuits with similarly skewed ratios of diverse to non-diverse plaintiffs. "The Ninth Circuit has not addressed the standard to be applied to meet the bad faith requirement of the amendment to Section 1446 nor has it recognized any equitable exceptions to section 1446(c)(1). . . . While it is unclear what standard would be used in this context, the requirement that a party acts in bad faith sets a high threshold." NKD Diversified Electronics, Inc. v. First Mercury Ins. Co., No. 1:14-cv-00183-AWI-SAB, 2014 WL 1671659, at *3 (N.D. Cal. Apr. 28, 2014) (internal citations omitted). Defendants argued fraudulent joinder when they first removed this action to this Court, and the Court found no evidence that joinder was "egregious." See Case. No. 14-CV-899 JGB (Spx), Docket No. 32 at 4. Similarly, Ethicon has now failed to provide evidence showing that the handful of non-diverse plaintiffs in this case were joined in bad faith. Third, Ethicon argues that state court docket delays warrant equitable tolling of § 1446(c)(1)'s one-year period. As noted in NKD Diversified, the Ninth Circuit has not recognized equitable exceptions to § 1446(c)(1).

Accordingly, Ethicon's Notice of Removal is not timely under § 1446(c)(1).

**EXHIBIT**

**12**

374

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5371 PA (GJSx) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Mary Orsi v. Johnson & Johnson, et al. | | |

### Conclusion

For the foregoing reasons, Ethicon has failed to meet its burden of showing that diversity jurisdiction exists over this action.[2/]  Accordingly, this action is hereby remanded to the Los Angeles Superior Court, Case No. BC531848QQ, for lack of subject matter jurisdiction.  <u>See</u> 28 U.S.C. § 1447(c).

IT IS SO ORDERED.

---

[2/]    Although the Court recognizes that the one-year limitation addressed above is procedural, the amount in controversy requirement is jurisdictional.  <u>See Smith v. Mylan, Inc.</u>, 761 F.3d 1042, 1043 (9th Cir. 2014) ("We hold that the district court acted in excess of its statutory authority because the one-year time limitation for removal of diversity cases under § 1446(b) is a procedural requirement rather than jurisdictional.  While the district court may remand at any time prior to final judgment for lack of subject matter jurisdiction, it cannot remand sua sponte based on a non jurisdictional defect because procedural deficiencies are waivable.").

**EXHIBIT 12**

375



**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**
312 North Spring Street, Room G–8
Los Angeles, CA 90012
Tel: (213) 894–3535

**SOUTHERN DIVISION**
411 West Fourth Street, Suite 1053
Santa Ana, CA 92701–4516
(714) 338–4750

**EASTERN DIVISION**
3470 Twelfth Street, Room 134
Riverside, CA 92501
(951) 328–4450

**TERRY NAFISI**
District Court Executive and
Clerk of Court

July 21, 2015

Clerk, Los Angeles Superior Court, Stanley Mosk Courthouse
111 North Hill Street
Los Angeles, CA 90012

Re:   Case Number:       2:15–cv–05382–PA–FFM
        Previously Superior Court Case No.        BC531848BBB
        Case Name:       XOCHILT ROBINSON V. JOHNSON AND JOHNSON ET AL

Dear Sir/Madam:

    Pursuant to this Court's ORDER OF REMAND issued on       7/21/2015       , the above–referenced case is hereby remanded to your jurisdiction.

    Attached is a certified copy of the ORDER OF REMAND and a copy of the docket sheet from this Court.

    Please acknowledge receipt of the above by signing the enclosed copy of this letter and returning it to our office. Thank you for your cooperation.

Respectfully,

Clerk, U.S. District Court

By:  /s/ *Grace Kami*
    Deputy Clerk
    (213) 894–0747
    Western Division

*cc: Counsel of record*

---

Receipt is acknowledged of the documents described herein.

Clerk, Superior Court

By: _____

_____
Date

      Deputy Clerk



**EXHIBIT**
**12**

376

CV–103 (09/08)    LETTER OF TRANSMITTAL – REMAND TO SUPERIOR COURT (CIVIL)

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5382 PA (FFMx) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Xochilt Robinson v. Johnson & Johnson, et al. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Stephen Montes Kerr | N/A | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**       IN CHAMBERS – COURT ORDER

Before the Court is a Notice of Removal filed by defendant Ethicon, LLC ("Ethicon") on July 15, 2015. Ethicon notes that its co-defendants, Johnson & Johnson and Ethicon, Inc. consent to removal. (Notice ¶ 42.) Ethicon asserts that the Court has jurisdiction over this action, brought by plaintiff Xochilt Robinson ("Plaintiff"), based on the Court's diversity jurisdiction. See 28 U.S.C. § 1332.

On December 13, 2013, sixty-seven plaintiffs filed a Complaint, styled Robinson, et al. v. Johnson & Johnson, et al., Case No. BC531848, in Los Angeles County Superior Court. The plaintiffs allege various injuries caused by a pelvic mesh product. The case was removed to the Central District on February 5, 2014 and remanded on March 12, 2014. The Superior Court granted a motion to sever on June 22, 2015, giving each severed plaintiff a specific docket number including a unique "alpha suffix" added to the original docket number, BC531848.

"Federal courts are courts of limited jurisdiction," having subject matter jurisdiction only over matters authorized by the Constitution and Congress. See, e.g., Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377, 114 S. Ct. 1673, 1675, 128 L. Ed. 2d 391, 395 (1994). A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a). "The removal statute is strictly construed against removal jurisdiction, and the burden of establishing federal jurisdiction falls to the party invoking the statute." California ex rel. Lockyer v. Dynegy, Inc., 375 F.3d 831, 838 (citing Ethridge v. Harbor House Rest., 861 F.2d 1389, 1393 (9th Cir. 1988)), amended by 387 F.3d 966 (9th Cir. 2004). "The defendant also has the burden of showing that it has complied with the procedural requirements for removal." See, e.g., Riggs v. Plaid Pantries, Inc., 233 F. Supp. 2d 1260, 1264 (D. Or. 2001). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (citing Libhart v. Santa Monica Dairy Co., 592 F.2d 1062, 1064 (9th Cir. 1979)). In attempting to invoke this Court's diversity jurisdiction, Ethicon must prove that there is complete diversity of citizenship between the parties and that the amount in controversy exceeds $75,000. 28 U.S.C. § 1332.

/ / /

**EXHIBIT**
**12**
377

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5382 PA (FFMx) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Xochilt Robinson v. Johnson & Johnson, et al. | | |

### A.    Diversity of Parties

To establish citizenship for diversity purposes, a natural person must be a citizen of the United States and be domiciled in a particular state. Kantor v. Wellesley Galleries, Ltd., 704 F.2d 1088, 1090 (9th Cir. 1983). Persons are domiciled in the places they reside with the intent to remain or to which they intend to return. See Kanter v. Warner-Lambert Co., 265 F.3d 853, 857 (9th Cir. 2001). "A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state." Id. For the purposes of diversity jurisdiction, a corporation is a citizen of any state where it is incorporated and of the state where it has its principal place of business. 28 U.S.C. § 1332(c); see also Indus. Tectonics, Inc. v. Aero Alloy, 912 F.2d 1090, 1092 (9th Cir. 1990). The citizenship of an LLC is the citizenship of its members. See Johnson v. Columbia Props. Anchorage, LP, 437 F.3d 894, 899 (9th Cir. 2006) ("[L]ike a partnership, an LLC is a citizen of every state of which its owners/members are citizens.").

Here, Plaintiff is allegedly a resident and citizen of California. Johnson & Johnson is a citizen of New Jersey; Ethicon, Inc. is a citizen of New Jersey; and Ethicon is a citizen of Ireland because its sole member, Ethicon PR Holdings, is a private unlimited company organized under the laws of Ireland with its principal place of business in Cork, Ireland.

### B.    Amount in Controversy

When an action has been removed and the amount in controversy is in doubt, there is a "strong presumption" that the plaintiff has not claimed an amount sufficient to confer jurisdiction. Gaus, 980 F.2d 564, 566 (9th Cir. 1992) (citing St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288–90, 58 S. Ct. 586, 590–91, 82 L. Ed. 845 (1938)). "When not facially evident from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold." Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003). "Conclusory allegations as to the amount in controversy are insufficient." Id. at 1090-91. "Under this burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds [$75,000]." Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996).[1/]

---

[1/]    Ethicon cites the Venue Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat. 758, and quotes from the House Report accompanying the bill for the proposition that "the defendants do not need to prove to a legal certainty that the amount in controversy requirement has been met. Rather, defendants may simply allege or assert that the jurisdictional threshold has been met." H.R. Rep. No. 112-10 at 16 (2011). Interpreting the Act in Dart Cherokee ~~ing Co., LLC v. Owens~~, 135 S. Ct. 547, 554, 190 L. Ed. 2d 495 (2014), the Supreme Court acknowledged that while "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," evidence establishing the amount in controversy may be required if the court questions the defendant's allegation. Here, the Court questions ~~ion~~'s amount in controversy allegation because it is based on a Complaint alleging damages on behalf of more than sixty plaintiffs, with no individualized

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5382 PA (FFMx) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Xochilt Robinson v. Johnson & Johnson, et al. | | |

Here, Ethicon attempts to establish the amount in controversy solely by citation to the original complaint filed on behalf of more than sixty individual plaintiffs. Ethicon lists the categories of damages sought by the plaintiffs collectively, but provides no information regarding Plaintiff's individual situation. For example, the Court has no information regarding the specific nature or extent of Plaintiff's injuries, her past or future medical expenses, or her earning capacity. The Court has no basis to find that it is more likely than not that the amount in controversy exceeds $75,000.

### C.      Timeliness of Removal

To remove an action from state to federal court, a defendant must also comply with the procedural requirements for removal. These procedures include a requirement that the "notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b)(1). "[I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). Diversity cases where the initial pleading is not removable "may not be removed . . . more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C. § 1446(c)(1).

Here, Ethicon argues that § 1446(c)(1) does not apply because Plaintiff has always been diverse from Defendants. The Ninth Circuit has construed § 1446(c)(1) to apply only to cases removed pursuant to § 1446(b)(3)—i.e. cases that "become" removable. See Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1316-18 (9th Cir. 1998) ("The first paragraph of § 1446(b) addresses a defendant's right to promptly remove when he is served. The second paragraph addresses a defendant's right to remove beyond the initial period of 30 days, if the case only becomes removable sometime after the initial commencement of the action. Only the latter type of removal is barred by the one-year exception."). However, Ethicon's claim that the instant case has always been removable is simply not accurate. As Ethicon notes, the Central District held prior to severance that the "initial pleading" was not removable. If Ethicon's position is that the Complaint filed in Case No. BC531848 is not the "initial pleading" in the instant case, it is not clear that an initial pleading has even been received. See Milton A. Jacobs, Inc. v. Manning Mfg. Corp., 171 F. Supp. 393, 395 (S.D. N.Y. 1959) ("[P]arties seeking removal can take no action until they have received a copy of the 'initial pleading.'").



EXHIBIT

**12**

379

facts about Plaintiff.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5382 PA (FFMx) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Xochilt Robinson v. Johnson & Johnson, et al. | | |

Ethicon argues that if § 1446(c)(1)'s one-year rule applies, removal is nonetheless timely because the instant action was "commenced" on June 22, 2015 when the instant case was severed from Case No. BC531848. Ethicon does not cite any authority for this argument, and the Court is not persuaded. The filing date of the Complaint in Case No. BC521848 is the "commencement date" for purposes of § 1446(c)(1). See, e.g., Wejrowski v. Wyeth, No. 4:06CV292 CDP, 2012 WL 2367388, at *3 (E.D. Mo. June 21, 2012) ("But even though the plaintiffs' second amended complaint will proceed as an independent claim from the point it was severed, it was still part of the original case filed on July 7, 2004, and the state court recognized that it was commenced then. Defendant's opportunity to remove was limited to one year from that original commencement date, and the intervening removal, remand, and severance have no effect on the one-year time limit.").

Finally, Ethicon argues that even if removal is not timely under § 1446(c)(1), the statute does not bar removal when the delay is due to Plaintiff's bad faith conduct and state court docket delays. First, Ethicon notes that while Plaintiff has served other defendants, she has yet to serve Ethicon. See Escalante v. Burlington Nat. Indem. Ltd., No. 2:14-CV-7273 ODW, 2014 WL 6670002, at *4 (C.D. Cal. Nov. 24, 2014); WMCV Phase, LLC v. Tufenkian Carpets Las Vegas, LLC, No. 2:12-CV-01454-RJC-PAL, 2012 WL 5198478, at *2 (D. Nev. Oct. 18, 2012). However, there is no evidence that Plaintiff's delay in serving Ethicon was intended to stymie removal—the case did not become potentially removable until the case was severed, well after § 1446(c)(1)'s one-year period had expired. Second, Ethicon argues that Plaintiff's counsel's repeated misjoinder of nondiverse plaintiffs to keep their cases out of federal courts constitutes bad faith under § 1446(c)(1). Here, Ethicon emphasizes that Plaintiff's counsel originally joined sixty-four diverse plaintiffs with three non-diverse plaintiffs and argues that this was purely a "manipulative tactic[]" employed to defeat diversity. Ethicon notes that Plaintiff's attorneys have filed similar lawsuits with similarly skewed ratios of diverse to non-diverse plaintiffs. "The Ninth Circuit has not addressed the standard to be applied to meet the bad faith requirement of the amendment to Section 1446 nor has it recognized any equitable exceptions to section 1446(c)(1). . . . While it is unclear what standard would be used in this context, the requirement that a party acts in bad faith sets a high threshold." NKD Diversified Electronics, Inc. v. First Mercury Ins. Co., No. 1:14-cv-00183-AWI-SAB, 2014 WL 1671659, at *3 (N.D. Cal. Apr. 28, 2014) (internal citations omitted). Defendants argued fraudulent joinder when they first removed this action to this Court, and the Court found no evidence that joinder was "egregious." See Case. No. 14-CV-899 JGB (Spx), Docket No. 32 at 4. Similarly, Ethicon has now failed to provide evidence showing that the handful of non-diverse plaintiffs in this case were joined in bad faith. Third, Ethicon argues that state court docket delays warrant equitable tolling of § 1446(c)(1)'s one-year period. As noted in NKD Diversified, the Ninth Circuit has not recognized equitable exceptions to § 1446(c)(1).

Accordingly, Ethicon's Notice of Rem[...] mely under § 1446(c)(1).

**EXHIBIT**

**12**

380

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5382 PA (FFMx) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Xochilt Robinson v. Johnson & Johnson, et al. | | |

**Conclusion**

For the foregoing reasons, Ethicon has failed to meet its burden of showing that diversity jurisdiction exists over this action.[2/]  Accordingly, this action is hereby remanded to the Los Angeles Superior Court, Case No. BC531848BBB, for lack of subject matter jurisdiction.  See 28 U.S.C. § 1447(c).

IT IS SO ORDERED.

---

[2/]      Although the Court recognizes that the one-year limitation addressed above is procedural, the amount in controversy requirement is jurisdictional.  See Smith v. Mylan, Inc., 761 F.3d 1042, 1043 (9th Cir. 2014) ("We hold that the district court acted in excess of its statutory authority because the one-year time limitation for removal of diversity cases under § 1446(b) is a procedural requirement rather than jurisdictional.  While the district court may remand at any time prior to final judgment for lack of subject matter jurisdiction, it cannot remand sua sponte based on a non jurisdictional defect because procedural deficiencies are waivable.").

**EXHIBIT**

**12**

381



**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**
312 North Spring Street, Room G–8
Los Angeles, CA 90012
Tel: (213) 894–3535

**SOUTHERN DIVISION**
411 West Fourth Street, Suite 1053
Santa Ana, CA 92701–4516
(714) 338–4750

**EASTERN DIVISION**
3470 Twelfth Street, Room 134
Riverside, CA 92501
(951) 328–4450

**TERRY NAFISI**
District Court Executive and
Clerk of Court

July 21, 2015

Clerk, Los Angeles Superior Court, Stanley Mosk Courthouse
111 North Hill Street
Los Angeles, CA 90012

Re:  Case Number:    2:15–cv–05385–PA–E
Previously Superior Court Case No.    BC531848EEE
Case Name:    VICKIE SKELTON V. JOHNSON AND JOHNSON ET AL

Dear Sir/Madam:

Pursuant to this Court's ORDER OF REMAND issued on    7/21/2015   , the above–referenced case is hereby remanded to your jurisdiction.

Attached is a certified copy of the ORDER OF REMAND and a copy of the docket sheet from this Court.

Please acknowledge receipt of the above by signing the enclosed copy of this letter and returning it to our office. Thank you for your cooperation.

Respectfully,

Clerk, U.S. District Court

By:  /s/ Grace Kami
Deputy Clerk
(213) 894–0747
Western Division

*cc: Counsel of record*

Receipt is acknowledged of the documents described herein.

Clerk, Superior Court

By: _____
Deputy Clerk

_____
Date

**EXHIBIT 12**

382

CV–103 (09/08)   LETTER OF TRANSMITTAL – REMAND TO SUPERIOR COURT (CIVIL)

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5385 PA (Ex) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Vickie Skelton v. Johnson & Johnson, et al. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Stephen Montes Kerr | N/A | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** IN CHAMBERS – COURT ORDER

Before the Court is a Notice of Removal filed by defendant Ethicon, LLC ("Ethicon") on July 15, 2015. Ethicon notes that its co-defendants, Johnson & Johnson and Ethicon, Inc. consent to removal. (Notice ¶ 42.) Ethicon asserts that the Court has jurisdiction over this action, brought by plaintiff Vickie Skelton ("Plaintiff"), based on the Court's diversity jurisdiction. See 28 U.S.C. § 1332.

On December 13, 2013, sixty-seven plaintiffs filed a Complaint, styled Robinson, et al. v. Johnson & Johnson, et al., Case No. BC531848, in Los Angeles County Superior Court. The plaintiffs allege various injuries caused by a pelvic mesh product. The case was removed to the Central District on February 5, 2014 and remanded on March 12, 2014. The Superior Court granted a motion to sever on June 22, 2015, giving each severed plaintiff a specific docket number including a unique "alpha suffix" added to the original docket number, BC531848.

"Federal courts are courts of limited jurisdiction," having subject matter jurisdiction only over matters authorized by the Constitution and Congress. See, e.g., Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377, 114 S. Ct. 1673, 1675, 128 L. Ed. 2d 391, 395 (1994). A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a). "The removal statute is strictly construed against removal jurisdiction, and the burden of establishing federal jurisdiction falls to the party invoking the statute." California ex rel. Lockyer v. Dynegy, Inc., 375 F.3d 831, 838 (citing Ethridge v. Harbor House Rest., 861 F.2d 1389, 1393 (9th Cir. 1988)), amended by 387 F.3d 966 (9th Cir. 2004). "The defendant also has the burden of showing that it has complied with the procedural requirements for removal." See, e.g., Riggs v. Plaid Pantries, Inc., 233 F. Supp. 2d 1260, 1264 (D. Or. 2001). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (citing Libhart v. Santa Monica Dairy Co., 592 F.2d 1062, 1064 (9th Cir. 1979)). In attempting to invoke this Court's diversity jurisdiction, Ethicon must prove that there is complete diversity of citizenship between the parties and that the amount in controversy exceeds $75,000. 28 U.S.C. § 1332.

**EXHIBIT**

**12**

383

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5385 PA (Ex) | Date | July 21, 2015 |
|----------|--------------------|----|--------------|
| Title | Vickie Skelton v. Johnson & Johnson, et al. | | |

### A.    Diversity of Parties

To establish citizenship for diversity purposes, a natural person must be a citizen of the United States and be domiciled in a particular state.  Kantor v. Wellesley Galleries, Ltd., 704 F.2d 1088, 1090 (9th Cir. 1983).  Persons are domiciled in the places they reside with the intent to remain or to which they intend to return.  See Kanter v. Warner-Lambert Co., 265 F.3d 853, 857 (9th Cir. 2001).  "A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state."  Id.  For the purposes of diversity jurisdiction, a corporation is a citizen of any state where it is incorporated and of the state where it has its principal place of business.  28 U.S.C. § 1332(c); see also Indus. Tectonics, Inc. v. Aero Alloy, 912 F.2d 1090, 1092 (9th Cir. 1990).  The citizenship of an LLC is the citizenship of its members.  See Johnson v. Columbia Props. Anchorage, LP, 437 F.3d 894, 899 (9th Cir. 2006) ("[L]ike a partnership, an LLC is a citizen of every state of which its owners/members are citizens.").

Here, Plaintiff is allegedly a resident and citizen of Arkansas.  Johnson & Johnson is a citizen of New Jersey; Ethicon, Inc. is a citizen of New Jersey; and Ethicon is a citizen of Ireland because its sole member, Ethicon PR Holdings, is a private unlimited company organized under the laws of Ireland with its principal place of business in Cork, Ireland.

### B.    Amount in Controversy

When an action has been removed and the amount in controversy is in doubt, there is a "strong presumption" that the plaintiff has not claimed an amount sufficient to confer jurisdiction.  Gaus, 980 F.2d 564, 566 (9th Cir. 1992) (citing St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288–90, 58 S. Ct. 586, 590–91, 82 L. Ed. 845 (1938)).  "When not facially evident from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold."  Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003).  "Conclusory allegations as to the amount in controversy are insufficient."  Id. at 1090-91.  "Under this burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds [$75,000]."  Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996).[1/]

---

[1/]    Ethicon cites the Venue Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat. 758, and quotes from the House Report accompanying the bill for the proposition that "the defendants do not need to prove to a legal certainty that the amount in controversy requirement has been met.  Rather, defendants may simply allege or assert that the jurisdictional threshold has been met."  H.R. Rep. No. 112-10 at 16 (2011).  Interpreting the Act in Dart Cherokee ~~Basin~~ ~~Operating~~ Co., LLC v. Owens, 135 S. Ct. 547, 554, 190 L. Ed. 2d 495 (2014), the Supreme Court acknowledged that while "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," evidence establishing the amount in controversy may be required if the court questions the defendant's allegation.  Here, the Court questions Ethicon's amount in controversy allegation because it is based on a Complaint alleging damages on behalf of more than sixty plaintiffs, with no individualized

**EXHIBIT**

**12**

384

Case 2:15-cv-05385-GPA-SP Document 134-1 Filed 07/27/15 Page 3 of 5 Page ID #:625
Case 2:15-cv-05385-GPA-SP Document 134-1 Filed 07/21/15 Page 3 of 5 Page ID #:625

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5385 PA (Ex) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Vickie Skelton v. Johnson & Johnson, et al. | | |

Here, Ethicon attempts to establish the amount in controversy solely by citation to the original complaint filed on behalf of more than sixty individual plaintiffs. Ethicon lists the categories of damages sought by the plaintiffs collectively, but provides no information regarding Plaintiff's individual situation. For example, the Court has no information regarding the specific nature or extent of Plaintiff's injuries, her past or future medical expenses, or her earning capacity. The Court has no basis to find that it is more likely than not that the amount in controversy exceeds $75,000.

### C.     Timeliness of Removal

To remove an action from state to federal court, a defendant must also comply with the procedural requirements for removal. These procedures include a requirement that the "notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b)(1). "[I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). Diversity cases where the initial pleading is not removable "may not be removed . . . more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C. § 1446(c)(1).

Here, Ethicon argues that § 1446(c)(1) does not apply because Plaintiff has always been diverse from Defendants. The Ninth Circuit has construed § 1446(c)(1) to apply only to cases removed pursuant to § 1446(b)(3)—i.e. cases that "become" removable. See Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1316-18 (9th Cir. 1998) ("The first paragraph of § 1446(b) addresses a defendant's right to promptly remove when he is served. The second paragraph addresses a defendant's right to remove beyond the initial period of 30 days, if the case only becomes removable sometime after the initial commencement of the action. Only the latter type of removal is barred by the one-year exception."). However, Ethicon's claim that the instant case has always been removable is simply not accurate. As Ethicon notes, the Central District held prior to severance that the "initial pleading" was not removable. If Ethicon's position is that the Complaint filed in Case No. BC531848 is not the "initial pleading" in the instant case, it is not clear that an initial pleading has even been received. See Milton A. Jacobs, Inc. v. Manning Mfg. Corp., 171 F. Supp. 393, 395 (S.D. N.Y. 1959) ("[P]arties seeking removal can take no action until they have received a copy of the 'initial pleading.'").

**EXHIBIT**
**12**

---

facts about Plaintiff.

385

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-5385 PA (Ex) | Date | July 21, 2015 |
|---|---|---|---|

| Title | Vickie Skelton v. Johnson & Johnson, et al. |
|---|---|

Ethicon argues that if § 1446(c)(1)'s one-year rule applies, removal is nonetheless timely because the instant action was "commenced" on June 22, 2015 when the instant case was severed from Case No. BC531848. Ethicon does not cite any authority for this argument, and the Court is not persuaded. The filing date of the Complaint in Case No. BC521848 is the "commencement date" for purposes of § 1446(c)(1). See, e.g., Wejrowski v. Wyeth, No. 4:06CV292 CDP, 2012 WL 2367388, at *3 (E.D. Mo. June 21, 2012) ("But even though the plaintiffs' second amended complaint will proceed as an independent claim from the point it was severed, it was still part of the original case filed on July 7, 2004, and the state court recognized that it was commenced then. Defendant's opportunity to remove was limited to one year from that original commencement date, and the intervening removal, remand, and severance have no effect on the one-year time limit.").

Finally, Ethicon argues that even if removal is not timely under § 1446(c)(1), the statute does not bar removal when the delay is due to Plaintiff's bad faith conduct and state court docket delays. First, Ethicon notes that while Plaintiff has served other defendants, she has yet to serve Ethicon. See Escalante v. Burlington Nat. Indem. Ltd., No. 2:14-CV-7273 ODW, 2014 WL 6670002, at *4 (C.D. Cal. Nov. 24, 2014); WMCV Phase, LLC v. Tufenkian Carpets Las Vegas, LLC, No. 2:12-CV-01454-RJC-PAL, 2012 WL 5198478, at *2 (D. Nev. Oct. 18, 2012). However, there is no evidence that Plaintiff's delay in serving Ethicon was intended to stymie removal—the case did not become potentially removable until the case was severed, well after § 1446(c)(1)'s one-year period had expired. Second, Ethicon argues that Plaintiff's counsel's repeated misjoinder of nondiverse plaintiffs to keep their cases out of federal courts constitutes bad faith under § 1446(c)(1). Here, Ethicon emphasizes that Plaintiff's counsel originally joined sixty-four diverse plaintiffs with three non-diverse plaintiffs and argues that this was purely a "manipulative tactic[]" employed to defeat diversity. Ethicon notes that Plaintiff's attorneys have filed similar lawsuits with similarly skewed ratios of diverse to non-diverse plaintiffs. "The Ninth Circuit has not addressed the standard to be applied to meet the bad faith requirement of the amendment to Section 1446 nor has it recognized any equitable exceptions to section 1446(c)(1). . . . While it is unclear what standard would be used in this context, the requirement that a party acts in bad faith sets a high threshold." NKD Diversified Electronics, Inc. v. First Mercury Ins. Co., No. 1:14-cv-00183-AWI-SAB, 2014 WL 1671659, at *3 (N.D. Cal. Apr. 28, 2014) (internal citations omitted). Defendants argued fraudulent joinder when they first removed this action to this Court, and the Court found no evidence that joinder was "egregious." See Case. No. 14-CV-899 JGB (Spx), Docket No. 32 at 4. Similarly, Ethicon has now failed to provide evidence showing that the handful of non-diverse plaintiffs in this case were joined in bad faith. Third, Ethicon argues that state court docket delays warrant equitable tolling of § 1446(c)(1)'s one-year period. As noted in NKD Diversified, the Ninth Circuit has not recognized equitable exceptions to § 1446(c)(1).

Accordingly, Ethicon's Notice of Removal is not timely under § 1446(c)(1).

**EXHIBIT**

**12**

386

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5385 PA (Ex) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Vickie Skelton v. Johnson & Johnson, et al. | | |

### Conclusion

For the foregoing reasons, Ethicon has failed to meet its burden of showing that diversity jurisdiction exists over this action.[2]  Accordingly, this action is hereby remanded to the Los Angeles Superior Court, Case No. BC531848EEE.  See 28 U.S.C. § 1447(c), for lack of subject matter jurisdiction.

IT IS SO ORDERED.

---

[2]  Although the Court recognizes that the one-year limitation addressed above is procedural, the amount in controversy requirement is jurisdictional.  See Smith v. Mylan, Inc., 761 F.3d 1042, 1043 (9th Cir. 2014) ("We hold that the district court acted outside of its statutory authority because the one-year time limitation for removal of diversity cases under § 1446(b) is a procedural requirement rather than jurisdictional.  While the district court may remand at any time prior to final judgment for lack of subject matter jurisdiction, it cannot remand sua sponte based on a non jurisdictional defect because procedural deficiencies are waivable.").

**EXHIBIT 12**
387

## BEFORE THE JUDICIAL PANEL ON
## MULTIDISTRICT LITIGATION

In re Ethicon, Inc.
Women's Pelvic Repair Products Liability Litigation                    MDL No. 2327

## DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR TRANSFER TO
## THE SOUTHERN DISTRICT OF WEST VIRGINIA PURSUANT TO 28 U.S.C. § 1407

Defendant Ethicon, Inc., (on its own behalf and behalf of its Division, Ethicon Women's

Health & Urology) and Defendant Johnson & Johnson (collectively "Ethicon")[1], present their

response to Plaintiffs' Motion for Transfer:

- Ethicon does not object to Plaintiffs' request to transfer all federal cases involving Ethicon's vaginal mesh pelvic repair products to a single MDL panel.

- Ethicon does, however, object to Plaintiffs' request to transfer these cases to the United States District Court for the Southern District of West Virginia.

- Ethicon also objects to Plaintiffs' request to transfer these cases to an MDL panel involving the vaginal mesh pelvic repair products manufactured by C. R. Bard, Inc., American Medical Systems, Inc., and Boston Scientific Corporation.

- Ethicon therefore respectfully requests that the federal cases involving Ethicon's vaginal mesh products be transferred to the United States District Court for the District of New Jersey or, in the alternative, to the United States District Court for the Northern District of Georgia, Atlanta Division.

In support, Ethicon responds, paragraph by paragraph, to Plaintiffs' Motion for Transfer.

1.      Ethicon admits that centralization of the cases involving Ethicon vaginal pelvic

mesh products is proper under 28 U.S.C. § 1407.  Ethicon objects to and denies that the Ethicon

pelvic mesh cases should be centralized either in the same MDL or in the same transferee forum

---

[1] Plaintiffs have erroneously named "Gynecare" as a party in their Brief In Support Of Plaintiffs' Motion For Transfer etc. 1 (Nov. 28, 2011) [1-1].  Ethicon, Inc. acquired Gynecare, Inc., a Delaware corporation, on November 19, 1997.  Gynecare, Inc. merged out of existence and into Ethicon, Inc. on January 3, 2000.  Johnson & Johnson, a holding company that does not make or sell any products or services, is the parent company of Ethicon, In

**EXHIBIT**
**13**
EXHIBIT A

388

as actions involving "the women's pelvic repair products manufactured by American Medical Systems, Inc.[,] . . . Boston Scientific Corp." or C.R. Bard, Inc.

2.      Ethicon admits that the plaintiffs have asserted similar claims in all actions involving Ethicon's pelvic mesh products. Ethicon further admits that the products at issue are surgical mesh devices used for the treatment and repair of stress urinary incontinence and/or pelvic organ prolapse. Ethicon denies that its products were defectively designed or manufactured, and further denies that it failed to provide appropriate warnings or instructions with the products.

3.      In response to the third paragraph of Plaintiffs' Motion ( incorrectly numbered as the second paragraph "2"), Ethicon states that it filed a Notice of Potential Tag-Along Actions with this Court on December 14, 2011, identifying 14 additional actions alleging similar claims against Ethicon. [Docket No. 18]. Ethicon is also filing, contemporaneous with this Response, a second Notice of Potential Tag-Along Actions with this Court, identifying five additional actions alleging similar claims against Ethicon. Ethicon is currently unaware of any other additional actions but will promptly notify the Court in accordance with JPML Rule 6.2(d) if it becomes aware of any new potential tag-along actions.

4.      For the reasons discussed in Ethicon's supporting Brief and related exhibits ("Ethicon's Brief"), which are being contemporaneously filed herewith as attachments to the instant Response of Defendants, Ethicon denies that this litigation should be transferred to the United States District Court for the Southern District of West Virginia.

5.      Ethicon admits that one or more common questions of fact may exist among the pelvic mesh cases pending against Ethicon. Ethicon denies any suggestion of commonality



EXHIBIT

**13**

2

between Ethicon's pelvic mesh products and the pelvic mesh products manufactured by C.R. Bard, Inc., American Medical Systems, Inc. or Boston Scientific Corporation.

6.      Ethicon agrees with the representations contained in Paragraph 6 of Plaintiffs' Motion for Transfer, to the extent they pertain only to those actions involving Ethicon pelvic mesh products. For the reasons discussed in Ethicon's Brief, Ethicon denies that common centralization of the Ethicon pelvic mesh cases with cases involving these three other manufacturers' numerous pelvic mesh products would promote the just and efficient conduct of these actions, serve the convenience of the parties or witnesses, promote the interests of justice, conserve judicial resources, reduce litigation costs, eliminate duplication, or avoid inconsistent rulings and orders.

7.      Ethicon agrees that none of the related Ethicon-related actions is sufficiently advanced toward trial such that it would be prejudiced by transfer to another federal district court.

8.      Ethicon admits that there are some cases involving plaintiffs who were allegedly implanted with more than one pelvic mesh product made by one or more of the other three manufacturers. For the reasons discussed in Ethicon's Brief, Ethicon denies all remaining representations contained in Paragraph 8 of Plaintiffs' Motion for Transfer.

9.      For the reasons discussed in Ethicon's Brief, Ethicon denies the representations contained in Paragraph 9 of Plaintiffs' Motion for Transfer. Ethicon requests that the federal cases involving Ethicon's vaginal mesh products be transferred to the United States District Court for the District of New Jersey or, in the alternative, to the United States District Court for the Northern District of Georgia.



**EXHIBIT**
**13**
3

10.    Ethicon's Response is also based on the arguments and legal authorities set forth

in its accompanying Brief and related exhibits.

WHEREFORE, Ethicon respectfully requests that the Panel grant Section 1407

centralization of the Ethicon pelvic mesh cases but deny Plaintiffs' request for centralization in

the Southern District of West Virginia.  Ethicon requests that the Panel instead transfer the

subject cases to the District of New Jersey.  Alternatively, Ethicon requests centralization in the

Northern District of Georgia, Atlanta Division.

THIS, the ___ day of December, 2011.


RESPECTFULLY SUBMITTED,


/s/Christy D. Jones
CHRISTY D. JONES
BUTLER, SNOW, O'MARA,
STEVENS & CANNADA, PLLC
1020 Highland Colony Parkway
Suite 1400
Ridgeland, MS 39157
601-948-5711 telephone
601-985-4500 facsimile
christy.jones@butlersnow.com

ATTORNEYS FOR ETHICON, INC. (ON BEHALF OF
ITSELF AND ON BEHALF OF ITS DIVISION,
ETHICON WOMEN'S HEALTH & UROLOGY) AND
JOHNSON & JOHNSON



EXHIBIT
**13**
4

OF COUNSEL:

William M. Gage
Kari L. Sutherland
Michael L. Brown
John C. Henegan
Laura H. Dixon
BUTLER, SNOW, O'MARA, STEVENS & CANADA, PLLC
1020 Highland Colony Parkway
Suite 1400
Ridgeland, MS 39157

Kelly S. Crawford
Maha M. Kabbash
RIKER DANZIG SCHERRER HYLAND PERRETTI, LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981
973-538-0800 telephone
973-538-1984 facsimile

Jackson 7282581v1

**EXHIBIT**

**13**

## <u>CERTIFICATE OF SERVICE</u>

I, Christy D. Jones, hereby certify that a true and correct copy of Ethicon, Inc.'s  (on behalf of itself and on behalf of its Division, Ethicon Women's Health & Urology) and Johnson & Johnson's Response to Plaintiffs' Motion for Transfer to the Southern District of West Virginia Pursuant to 28 U.S.C. § 1407 was served on December 21, 2011, via electronic mail upon the following counsel of record:

Mark R. Mueller
Mueller Law Offices
404 West 7th Street
Austin, Texas 78701
Email: mark@muellerlaw.com

Henry G. Garrard, III
Blasingame, Burch, Garrard & Ashley, P.C.
P.O. Box 832
Athens, Georgia 30603
Email: hgg@bbgbalaw.com

Fred Thompson, III
Motley Rice LLC
28 Bridgeside Blvd.
Mt. Pleasant, South Carolina  29464
Email: fthompson@motleyrice.com

Bryan F. Aylstock
Aylstock, Witkin, Kreis & Overholtz
17 E. Main Street, Suite 200
Pensacola, Florida 32502
Email: baylstock@awkolaw.com

Derek H. Potts
The Potts Law Firm, LLP
908 Broadway, 3rd Floor
Kansas City, Missouri  64105
Email: dpotts@pott-law.com

ATTORNEYS FOR PLAINTIFFS



**EXHIBIT**
**13**

Barbara R. Binis
Reed Smith LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103
Email: bbinis@reedsmith.com

ATTORNEY FOR DEFENDANT AMERICAN MEDICAL SYSTEMS, INC. AND
AMERICAN MEDICAL SYSTEMS HOLDINGS, INC.

Jon A. Strongman
Shook, Hardy & Bacon, LLP
2555 Grand Boulevard
Kansas City, Missouri 64108
Email: jstrongman@shb.com

ATTORNEY FOR DEFENDANT BOSTON SCIENTIFIC CORPORATION


/s/Christy D. Jones
CHRISTY D. JONES

Jackson 7282581v1

EXHIBIT
**13**

394

**BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

IN RE ETHICON, INC., PELVIC REPAIR SYSTEM
PRODUCTS LIABILITY LITIGATION                    **MDL No. 2327**

    This Document Relates to the Case Identified
Below:

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHERYL POOLE and<br>KENNETH POOLE,<br><br>   *Plaintiffs,*<br><br><br>v.<br><br>ETHICON, INC., *et al.*<br>   *Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | <br><br><br><br><br>Civil Action No.: 4:12-CV-339 |

**DEFENDANT ETHICON, INC.'S RESPONSE IN OPPOSITION
TO MOTION TO VACATE CTO-1 AS TO POOLE**

    Defendant Ethicon, Inc. ("Ethicon"), by and through counsel, submits this Response in

Opposition to Plaintiffs' Motion to Vacate CTO-1, and respectfully requests that the Panel

transfer this action to Multidistrict Litigation No. 2327 ("MDL 2327") without further delay.

**INTRODUCTION**

    Plaintiffs Cheryl and Kenneth Poole have moved to vacate the order transferring the

above-captioned action to the Honorable Joseph Goodwin of the Southern District of West

Virginia for coordinated pretrial proceedings pursuant to 28 U.S.C. § 1407.  In support, Plaintiffs

argue that a pending motion to remand before the United States District Court for the Southern



EXHIBIT
**14**
EXHIBIT C
395

District of Texas should bar the transfer and that they would be unfairly prejudiced by the delay that would result if the MDL court were permitted to rule on their remand Motion. This Panel has rejected these arguments many times over, and for the reasons discussed herein, it should reject them again.

In CTO-1, the Panel stated that, "It appears that the actions on this conditional transfer order involve questions of fact that are common to the actions previously transferred to the Southern District of West Virginia and assigned to Judge Goodwin." *See* Conditional Transfer Order (CTO-1) at ¶ 2. The Panel is correct. Because the primary plaintiff in this case, Cheryl Poole, alleges that she was implanted with a polypropylene pelvic mesh product manufactured by Ethicon, and sustained injuries as a result thereof, this case shares common questions of fact and law with all of the other actions that have been transferred to MDL 2327. Moreover, as the Panel has previously recognized, the pendency of a motion to remand is not grounds for vacating a Conditional Transfer Order because the transferee judge can easily rule on such motions in the MDL. Plaintiffs' contrary allegations notwithstanding, transfer of this action to the MDL – along with all other similarly-situated actions – will promote the just and efficient conduct of the litigation. The *Poole* case should be transferred to Judge Goodwin without delay.

**ARGUMENT**

**A. Plaintiff's Pending Motion to Remand Does Not Weigh Against MDL Transfer.**

This Panel's longstanding precedent firmly establishes that the presence of a pending remand motion is not a valid basis upon which to vacate a Conditional Transfer Order. Indeed, Plaintiffs fail to cite a single Panel opinion in support of their argument that transfer is somehow improper in light of their jurisdictional objection. Instead, they mainly argue the *merits* of their



EXHIBIT

**14**$^2$

remand motion, and conclusively allege that they believe it will be granted, thus stripping the federal court of jurisdiction.

As a preliminary matter, the merits of plaintiffs' remand motion are not at issue in this motion. "Section 1407 does not empower the MDL Panel to decide questions going to the jurisdiction or the merits of a case, including issues relating to a motion to remand." *In re Ivy*, 901 F.2d 7, 9 (2d Cir. 1990). Ethicon believes as strongly as Plaintiffs that its removal is proper and that therefore this case will remain in federal court – but the motion to remand simply is not before the Panel. Thus, "the sole issue … is the merits of the transfer viewed against the purposes of the multidistrict statutory scheme." *Id.*

Under 28 U.S.C. § 1407, the Panel has authority to transfer civil actions pending in different districts to any district for coordinated or consolidated pretrial proceedings *if*: (i) the actions involve one or more common questions of fact; (ii) transfer would serve the convenience of the parties and witnesses; and (iii) transfer would promote the just and efficient conduct of the actions. *See* 28 U.S.C. § 1407(a). This action clearly satisfies each of these requirements. Like the Complaints in the other cases already transferred to Judge Goodwin's court, Plaintiff Cheryl Poole alleges that she suffered physical injuries after she was surgically implanted with a pelvic mesh product manufactured by Ethicon. Plaintiffs notably do not dispute that their lawsuit raises common questions of fact with the other actions in MDL 2327; instead, they allege that efficiency would not be served by transfer here because they have moved to remand their case back to Texas State Court. The Panel has consistently rejected similar arguments and should do so again here.

Stated simply, the "pendency of a motion to remand to state court is not a sufficient basis to avoid inclusion in Section 1407 proceedings. We note that motions to remand … can be



EXHIBIT
14
3

presented to and decided by the transferee judge." *In re VIOXX Prods. Liab. Litig.*, 360 F. Supp. 2d 1352, 1354 (J.P.M.L. 2005). Indeed judicial efficiency is often *better-served* by permitting the MDL Court to decide a remand motion. *See, e.g., In re Bayer Corp. Combination Aspirin Prod. Mktg. & Sales Practices Litig.*, 609 F. Supp. 2d 1379, 1379-80 (J.P.M.L. 2009); *In re Gadolinium Contrast Dyes Prods. Liab. Litig.*, 559 F. Supp. 2d 1402, 1403 (J.P.M.L. 2008) ("Plaintiffs can present their motions for remand to state court to the transferee court."); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 170 F. Supp. 2d 1346, 1347 (J.P.M.L. 2001) ("there is no need to delay transfer in order to accommodate any interest of the transferor court in resolving a pending remand motion."); *In re Amino Acid Lysine Antitrust Litig.*, 910 F. Supp. 696, 700 (J.P.M.L. 1995)("We observe that the pending motion to remand to the Northern District of Alabama action to state court can be presented to and decided by the transferee judge."); *In re Fed. Election Campaign Act Litig.*, 511 F. Supp. 821, 824 (J.P.M.L. 1979) (transfer would enable "a single judge to consider these motions and thus will have the salutary effect of promoting judicial economy and avoiding inconsistent adjudications regarding this particular issue."); *In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972*, 368 F. Supp. 812, 813 (J.P.M.L. 1973) ("We see no reason for delaying our decision. Because these actions involve questions of fact identical to those raised in the actions previously transferred by the Panel, transfer is necessary in order to eliminate the possibility of duplicative discovery and conflicting pretrial rulings.").

This case is no different. There is no good reason consistent with the policies underpinning 28 U.S.C. § 1407 why Judge Goodwin cannot hear plaintiffs' remand motion after transfer. Contrary to their Motion to Vacate, the issues raised in Plaintiffs' Motion to Remand are not unique. The crux of their motion is that diversity jurisdiction is lacking because they



have asserted claims against Cheryl Poole's treating physicians – who are in-state defendants. This jurisdictional issue is "easily capable of arising in hundreds of other cases in other district courts throughout the nation" – each of which share the same common questions of law and fact with this medical device product liability lawsuit. *In re Ivy*, 901 F. 2d 7, 9 (2d Cir. 1990); *see Johnson v. AMR Corp.*, Nos. 95 C 7659, to 95 C 7664, 1996 WL 164415, *3 (N.D. Ill. Apr. 3, 1996) (staying consideration of motion to remand involving allegations of fraudulent joinder pending MDL transfer). Thus, the real economy lies in transferring all similarly-situated cases to MDL 2327, so that "the [same] jurisdictional objections can be heard and resolved by a single court and reviewed at the appellate level in due course. Consistency as well as economy is thus served." *See id.*

**B. Plaintiffs Will Not Be Prejudiced By Transfer.**

Plaintiffs' argument that they will be prejudiced if Judge Goodwin is permitted to rule on their Motion to Remand is without any evidentiary support, contrary to JPML practice and procedure, and wholly speculative and unfounded. Indeed, while Plaintiffs allege that "when the MDL court would hear Plaintiffs' motion to remand is uncertain," *see* Mot. to Vacate ¶ 8, they offer nothing other than the undocumented "experience of [their] attorneys" to support such a complaint. Moreover, their "experience … that many MDL courts require Plaintiffs to re-file motions to remand at some point after the MDL has been created" does not apply to Judge Goodwin's court. Pretrial Order No. 1 (Initial Conference and Case Management) in MDL 2327 expressly instructs all parties to file a "Notice of Pending Motions" with the clerk's office *before the April 13, 2012 initial Pretrial Conference. See In re: Ethicon, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, Civil Action No. 2:12-md-02327 (S.D. W.VA. Feb. 29, 2012). That Notice will effectively re-notice for resolution all pending potions – including the Pooles' Motion to Remand



EXHIBIT

**14**

when transferred. Thus, there is no unknown "delay" as Plaintiffs allege, and no resulting prejudice. To the contrary, transfer of the Poole case to MDL 2327 will enable the parties to take advantage of the multiple efficiencies and savings of both time and resources associated with consolidated and coordinated pretrial proceedings.

## CONCLUSION

This case is no different than the hundred other cases involving Ethicon's pelvic mesh products that have already been transferred to MDL 2327. It is a simple, longstanding rule of this court that questions regarding federal court jurisdiction do not preclude MDL transfer under 28 U.S.C. § 1407. The legal and factual issues that this case shares with the cases already transferred to MDL 2327 establish that a Conditional Transfer Order was properly entered in the *Poole* case. As established above, Plaintiffs' arguments to the contrary lack merit, and their Motion to Vacate CTO-1 should be denied.

THIS, the 7th day of March, 2012.

Respectfully submitted,

/s/ Christy D. Jones
Christy D. Jones
Butler Snow
1020 Highland Colony Parkway
Suite 1400
Ridgeland, MS 39157
601-948-4523 telephone
601-985-4500 facsimile
christy.jones@butlersnow.com

*Attorney for Ethicon, Inc.*



EXHIBIT
14[6]