# JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 14-0899 JGB (SPx)** | Date | March 12, 2014 |
|---|---|---|---|

| Title | ***Xochil T. Robinson, et al. v. Johnson & Johnson, et al.*** |
|---|---|

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**    **Order (1) DENYING Defendants' Motion to Stay (Doc. No. 13); (2) GRANTING Plaintiffs' Motion to Remand (Doc. No. 9); (3) VACATING the March 17, 2014 Hearings; and (4) REMANDING the Action to the Superior Court of California, County of Los Angeles (IN CHAMBERS)**

Before the Court are Plaintiffs' motion to remand (Doc. No. 9) and Defendants' motion to stay (Doc. No. 13). The Court finds these matters appropriate for resolution without hearings. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers timely filed in support of and in opposition to the motions, the Court GRANTS Plaintiffs' motion to remand and DENIES AS MOOT Defendants' motion to stay. The March 17, 2014 hearings on the motions are VACATED.

## I. BACKGROUND

On December 30, 2013, sixty seven individual Plaintiffs filed a complaint in state court against Defendants Johnson & Johnson, Ethicon, Inc., Ethicon, LLC, and Does 1 through 500, inclusive (collectively, "Defendants"). ("Compl.," Not. of Removal, Doc. No. 1, Exh. A.) The Complaint alleges Plaintiffs suffered a variety of injuries from the surgical implantation of pelvic mesh devices manufactured by Defendants. (Compl. ¶¶ 1, 93-95, 105-140.) On February 5, 2014, Defendants removed the action to this Court on the basis of diversity jurisdiction. (Not. of Removal at ¶¶ 4-17.)

On February 13, 2014, Plaintiffs moved to remand this action to state court, contending that complete diversity is lacking because Defendants' allegations of fraudulent misjoinder are unfounded. ("MTR," Doc. No. 9.) On February 24, 2014, Defendants opposed. ("MTR Opp'n," Doc. No. 18.) On March 3, 2014, Plaintiffs replied. ("MTR Reply," Doc. No. 26.)


EXHIBIT 1

On February 14, 2014, Defendants moved to stay the case pending a transfer by the Judicial Panel on Multidistrict Litigation. ("MTS," Doc. No. 13.) Plaintiffs opposed on February 24, 2014. ("MTS Opp'n," Doc. No. 19.) On March 3, 2014, Defendants replied. ("MTS Reply," Doc. No. 25.)

On February 7, 2012, the Judicial Panel on Multidistrict Litigation ("JPML") opened an MDL action in the United States District Court for the Southern District of West Virginia for coordinated pretrial proceedings for all Ethicon pelvic surgical mesh device-related litigation (MDL No. 2327). See In re Ethicon, Inc., Pelvic Repair Sys. Prods. Liab. Litig.["Ethicon MDL"], 844 F. Supp. 2d 1359 (J.P.M.L. 2012). To date, thousands of cases are pending in the Ethicon MDL. (MTS at 2.)

## II. LEGAL STANDARD

### A. Stay

The United States Supreme Court holds that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket within economy of time and effort for itself, for counsel, and for litigants." Landis v. North American Co., 299 U.S. 248, 254 (1936). "Whether or not to grant a stay is within the court's discretion and it is appropriate when it serves the interests of judicial economy and efficiency." Rivers v. Walt Disney Co., 980 F. Supp. 1358, 1360 (C.D. Cal. 1997) (citations omitted). District courts consider three factors when deciding whether to grant a motion to stay proceedings pending the motion filed with the MDL: "(1) potential prejudice to the non-moving party; (2) hardship and inequity to the moving party if the action is not stayed; and (3) the judicial resources that would be saved by avoiding duplicative litigation if the cases are in fact consolidated." Id.

### B. Remand

Federal courts have original jurisdiction of all civil actions where the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states. 28 U.S.C. § 1332. Proper jurisdiction under Section 1332 requires complete diversity, so each plaintiff must be diverse from each defendant. Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 553 (2005). To protect the jurisdiction of state courts, removal jurisdiction should be strictly construed in favor of remand. Harris v. Bankers Life and Cas. Co., 425 F.3d 689, 698 (9th Cir. 2005) (citing Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108–09 (1941)). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal." Gaus v. Miles, 980 F.2d 564, 566 (9th Cir. 1992) (internal citation omitted). "Th[is] 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." Id. (internal citations omitted).



**EXHIBIT**
**1**

# III. DISCUSSION

## A. Order of the Motions

In previous actions involving Defendants and the Ethicon MDL, the Court has taken up the stay issue first and agreed to stay the action pending the JPML's decision to transfer. See, e.g., Joan Miller, et al. v. Johnson & Johnson, et al., No. CV 13-6285 JGB (SPx); Pamela Ruiz, et al. v. Johnson & Johnson, et al., CV No. 13-6289 JGB (SPx). However, after reviewing several other recent decisions by courts in this district, the Court finds that the weight of authority favors remand.

The Ninth Circuit has made clear that courts should "address subject matter jurisdiction at the outset in the 'mine run of cases,' and reach other issues first only where the jurisdictional issue is 'difficult to determine,' and the other ground is relatively 'less burdensome.'" Potter v. Hughes, 546 F.3d 1051, 1061 (9th Cir. 2008) (quotation omitted). The Court does not consider the jurisdictional issue in this action to be "difficult to determine" or outside the "mine run of cases," and thus Ninth Circuit precedent suggests that the Court should consider Plaintiffs' motion to remand first. Numerous courts in this circuit have decided to take up the issue of remand prior to stay in order to address the jurisdictional issue first. See DeKalb v. C.R. Bard, Inc., No. CV 13-6308 DMG (PJWx), Doc. No. 30 (C.D. Cal. Oct. 8, 2013); Perry v. Luu, No. 1:13-cv-729, 2013 WL 3354446, at *3 (E.D. Cal. July 3, 2013) (addressing motion to remand before motion to stay pending determination by JPML in pelvic mesh case); Goodwin v. Kojian, SACV 13-325, 2013 WL 1528966, at *2 (C.D. Cal. Apr. 12, 2013) (same).

Accordingly, the Court first turns to the motion to remand.

## B. Remand

Diversity jurisdiction under 28 U.S.C. § 1332 requires complete diversity, meaning every plaintiff must be diverse from every defendant. See Lincoln Property Co. v. Roche, 546 U.S. 81, 89 (2005). Here, three Plaintiffs, Irene Tobin, Cynthia Tortorici, and Bonnie Hand, are citizens of New Jersey and are not diverse from Defendants Johnson & Johnson and Ethicon, both of which have their principal place of business in New Jersey and therefore are citizens of that state. (Compl. ¶¶ 13-15, 70-76; Not. of Removal ¶¶ 13-14.) Thus, it appears from the face of the Complaint that jurisdiction cannot properly lie.

Defendants assert that diversity jurisdiction exists because Plaintiffs have "fraudulently misjoined" four non-diverse Plaintiffs to circumvent diversity jurisdiction. (MTR Opp'n at 11-13.) Fraudulent misjoinder is a concept originating in the Eleventh Circuit. See Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353 (11th Cir. 1996). It appears to be related to the legal doctrine of fraudulent joinder. See Osborn v. Metro. Life Ins. Co., 341 F. Supp. 2d 1123, 1127 (E.D. Cal. 2004). Fraudulent joinder of a non-diverse defendant is an exception to the requirement for complete diversity among the parties in a suit where federal subject matter jurisdiction is based upon 28 U.S.C. § 1332. See Morris v. Princess Cruises Inc., 236 F.3d 1061, 1067 (9th Cir. 2001). Fraudulent misjoinder, on the other hand, permits the court to ignore the citizenship of non-diverse plaintiffs when there is no real connection among the plaintiffs' claims, such that

plaintiffs' joinder of the parties is "so egregious as to constitute fraudulent joinder. <u>Tapscott</u>, 77 F.3d at 1360.

The doctrine of fraudulent misjoinder has only been recognized by the Fifth and Eleventh Circuits. <u>See id.</u>; <u>In re Benjamin Moore & Co.</u>, 309 F.3d 296, 298 (5th Cir. 2002). The Ninth Circuit has not adopted the doctrine, and courts in this circuit have criticized its application. <u>See Cal. Dump Truck Owners Ass'n v. Cummins Engine Co. Inc.</u>, 24 Fed. App'x 727, 729 (9th Cir. 2001); <u>Osborn</u>, 341 F. Supp. 2d at 1127-28; <u>Early v. Northrup Grumman Corp.</u>, 2:13-CV-3130, 2013 WL 3872218, at *2 (C.D. Cal. July 24, 2013). Defendants identify no precedent binding on this Court to support its contention that the "fraudulent misjoinder" doctrine applies. The Ninth Circuit has not formally adopted the doctrine, and under Ninth Circuit precedent, 28 U.S.C. § 1441 is to be strictly construed and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." <u>Gaus</u>, 980 F.2d at 566.

Defendants have not met their burden of establishing that the Court has diversity jurisdiction over this case. Even if the Court recognized the doctrine of fraudulent misjoinder, Defendants fail to demonstrate that joinder of the non-diverse Plaintiffs was "egregious" and that they were joined merely in order to defeat diversity jurisdiction. Defendants' arguments suggest only that Plaintiffs' pleading is generally deficient as to all Plaintiffs due to its failure to satisfy the joinder requirements of Rule 20(a). (MTR Opp'n at 13-20.) However, as the Eleventh Circuit made clear, mere misjoinder is not fraudulent joinder; it only rises to the level of fraudulent joinder if it is sufficiently egregious. <u>Tapscott</u>, 77 F.3d at 1360; <u>see also</u> <u>Pate v. Boston Scientific Corp.</u>, CV 13-06321 BRO AJWX, 2013 WL 5743499, at * 5 (C.D. Cal. Oct. 21, 2013) ("If the Eleventh Circuit did not intend egregiousness to be the standard for fraudulent misjoinder, it could have selected one of myriad other terms to use in that sentence instead of "egregious."). Defendants have not provided the Court with clear evidence from which the Court can conclude that joinder is egregious.

Because the Ninth Circuit has not adopted the doctrine of fraudulent misjoinder and complete diversity was destroyed by the presence of the New Jersey Plaintiffs, this Court lacks jurisdiction over this action. This Court now joins several other courts in this district in remanding pelvic mesh device actions improperly removed on the basis of fraudulent misjoinder. <u>See Pate</u>, CV 13-06321 BRO AJWX, 2013 WL 5743499, at * 5; <u>Cheryl Mauck, et al. v. Boston Scientific Corporation, et al.</u>, No. CV 13-6343 GW (JEMx), Doc. No. 43 (C.D. Cal Oct. 16, 2013); <u>Sheila Dekalb, et al. v. C.R. Bard, Inc., et al.</u>, No. CV 13-06308 DMG (PJWx), Doc. No. 30 (C.D. Cal. Oct. 8, 2013).

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' motion to remand, DENIES AS MOOT Defendants' motion to stay, and REMANDS this action to Los Angeles County Superior Court.

**IT IS SO ORDERED.**



EXHIBIT
1

---



**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**
312 North Spring Street, Room G-8
Los Angeles, CA 90012
Tel: (213) 894-3535

**SOUTHERN DIVISION**
411 West Fourth Street, Suite 1053
Santa Ana, CA 92701-4516
(714) 338-4750

**EASTERN DIVISION**
3470 Twelfth Street, Room 134
Riverside, CA 92501
(951) 328-4450

**TERRY NAFISI**
District Court Executive and
Clerk of Court

Re:  Case Number: _____

     Previously Superior Court Case No. _____

     Case Name: _____

Dear Sir / Madam:
     Pursuant to this Court's ORDER OF REMAND issued on _____, the above-referenced case is hereby remanded to your jurisdiction.

     Attached is a certified copy of the ORDER OF REMAND and a copy of the docket sheet from this Court.

     Please acknowledge receipt of the above by signing the enclosed copy of this letter and returning it to our office.  Thank you for your cooperation.

                                    Respectfully,

                                    Clerk, U. S. District Court

                                    By: _____
                                        Deputy Clerk

                                    ☐ Western   ☐ Eastern   ☐ Southern Division

*cc: Counsel of record*

--------------------------------------------------------------------------------
Receipt is acknowledged of the documents described herein.

                              **EXHIBIT**
                              **1**
                                    Clerk, Superior Court

                                    By: _____
_____
Date                                 Deputy Clerk
--------------------------------------------------------------------------------

CV - 103 (09/08)          **LETTER OF TRANSMITTAL - REMAND TO SUPERIOR COURT (CIVIL)**

8

JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
## CIVIL MINUTES - GENERAL

| Case No. | CV 15-5315 PA (AGRx) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Florence Buchanan v. Johnson & Johnson, et al. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Stephen Montes Kerr | N/A | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**          IN CHAMBERS – COURT ORDER

Before the Court is a Notice of Removal filed by defendant Ethicon, LLC ("Ethicon") on July 15, 2015. Ethicon notes that its co-defendants, Johnson & Johnson and Ethicon, Inc. consent to removal. (Notice ¶ 42.) Ethicon asserts that the Court has jurisdiction over this action, brought by plaintiff Florence Buchanan ("Plaintiff"), based on the Court's diversity jurisdiction. See 28 U.S.C. § 1332.

On December 13, 2013, sixty-seven plaintiffs filed a Complaint, styled <u>Robinson, et al. v. Johnson & Johnson, et al.</u>, Case No. BC531848, in Los Angeles County Superior Court. The plaintiffs allege various injuries caused by a pelvic mesh product. The case was removed to the Central District on February 5, 2014 and remanded on March 12, 2014. The Superior Court granted a motion to sever on June 22, 2015, giving each severed plaintiff a specific docket number including a unique "alpha suffix" added to the original docket number, BC531848.

"Federal courts are courts of limited jurisdiction," having subject matter jurisdiction only over matters authorized by the Constitution and Congress. See, e.g., Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377, 114 S. Ct. 1673, 1675, 128 L. Ed. 2d 391, 395 (1994). A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a). "The removal statute is strictly construed against removal jurisdiction, and the burden of establishing federal jurisdiction falls to the party invoking the statute." California ex rel. Lockyer v. Dynegy, Inc., 375 F.3d 831, 838 (citing Ethridge v. Harbor House Rest., 861 F.2d 1389, 1393 (9th Cir. 1988)), amended by 387 F.3d 966 (9th Cir. 2004). "The defendant also has the burden of showing that it has complied with the procedural requirements for removal." See, e.g., Riggs v. Plaid Pantries, Inc., 233 F. Supp. 2d 1260, 1264 (D. Or. 2001). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (citing Libhart v. Santa Monica Dairy Co., 592 F.2d 1062, 1064 (9th Cir. 1979)). In attempting to invoke this Court's diversity jurisdiction, Ethicon must prove that there is complete diversity of citizenship between the parties and that the amount in controversy exceeds $75,000. 28 U.S.C. § 1332.

/ / /

**EXHIBIT 2**

9

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5315 PA (AGRx) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Florence Buchanan v. Johnson & Johnson, et al. | | |

### A.    Diversity of Parties

To establish citizenship for diversity purposes, a natural person must be a citizen of the United States and be domiciled in a particular state.  Kantor v. Wellesley Galleries, Ltd., 704 F.2d 1088, 1090 (9th Cir. 1983).  Persons are domiciled in the places they reside with the intent to remain or to which they intend to return.  See Kanter v. Warner-Lambert Co., 265 F.3d 853, 857 (9th Cir. 2001).  "A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state."  Id.  For the purposes of diversity jurisdiction, a corporation is a citizen of any state where it is incorporated and of the state where it has its principal place of business.  28 U.S.C. § 1332(c); see also Indus. Tectonics, Inc. v. Aero Alloy, 912 F.2d 1090, 1092 (9th Cir. 1990).  The citizenship of an LLC is the citizenship of its members.  See Johnson v. Columbia Props. Anchorage, LP, 437 F.3d 894, 899 (9th Cir. 2006) ("[L]ike a partnership, an LLC is a citizen of every state of which its owners/members are citizens.").

Here, Plaintiff is allegedly a resident and citizen of Missouri.  Johnson & Johnson is a citizen of New Jersey; Ethicon, Inc. is a citizen of New Jersey; and Ethicon is a citizen of Ireland because its sole member, Ethicon PR Holdings, is a private unlimited company organized under the laws of Ireland with its principal place of business in Cork, Ireland.

### B.    Amount in Controversy

When an action has been removed and the amount in controversy is in doubt, there is a "strong presumption" that the plaintiff has not claimed an amount sufficient to confer jurisdiction.  Gaus, 980 F.2d 564, 566 (9th Cir. 1992) (citing St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288–90, 58 S. Ct. 586, 590–91, 82 L. Ed. 845 (1938)).  "When not facially evident from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold."  Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003).  "Conclusory allegations as to the amount in controversy are insufficient."  Id. at 1090-91.  "Under this burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds [$75,000]."  Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996).[1]

---

[1]     Ethicon cites the Venue Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat. 758, and quotes from the House Report accompanying the bill for the proposition that "the defendants do not need to prove to a legal certainty that the amount in controversy requirement has been met.  Rather, defendants may simply allege or assert that the jurisdictional threshold has been met."  H.R. Rep. No. 112-10 at 16 (2011).  Interpreting the Act in Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547, 554, 190 L. Ed. 2d 495 (2014), the Supreme Court stated that while "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," evidence establishing the amount in controversy may be required if the court questions the defendant's allegation.  Here, the Court questions Ethicon's amount in controversy allegation because it is based on a Complaint alleging damages on behalf of more than sixty plaintiffs, with no individualized

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5315 PA (AGRx) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Florence Buchanan v. Johnson & Johnson, et al. | | |

Here, Ethicon attempts to establish the amount in controversy solely by citation to the original complaint filed on behalf of more than sixty individual plaintiffs. Ethicon lists the categories of damages sought by the plaintiffs collectively, but provides no information regarding Plaintiff's individual situation. For example, the Court has no information regarding the specific nature or extent of Plaintiff's injuries, her past or future medical expenses, or her earning capacity. The Court has no basis to find that it is more likely than not that the amount in controversy exceeds $75,000.

### C.      Timeliness of Removal

To remove an action from state to federal court, a defendant must also comply with the procedural requirements for removal. These procedures include a requirement that the "notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b)(1). "[I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). Diversity cases where the initial pleading is not removable "may not be removed . . . more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C. § 1446(c)(1).

Here, Ethicon argues that § 1446(c)(1) does not apply because Plaintiff has always been diverse from Defendants. The Ninth Circuit has construed § 1446(c)(1) to apply only to cases removed pursuant to § 1446(b)(3)—i.e. cases that "become" removable. See Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1316-18 (9th Cir. 1998) ("The first paragraph of § 1446(b) addresses a defendant's right to promptly remove when he is served. The second paragraph addresses a defendant's right to remove beyond the initial period of 30 days, if the case only becomes removable sometime after the initial commencement of the action. Only the latter type of removal is barred by the one-year exception."). However, Ethicon's claim that the instant case has always been removable is simply not accurate. As Ethicon notes, the Central District held prior to severance that the "initial pleading" was not removable. If Ethicon's position is that the Complaint filed in Case No. BC531848 is not the "initial pleading" in the instant case, it is not clear that an initial pleading has even been received. See Milton A. Jacobs, Inc. v. Manning Mfg. Corp., 171 F. Supp. 393, 395 (S.D. N.Y. 1959) ("[P]arties seeking removal can take no action until they have received a copy of the 'initial pleading.'").

facts about Plaintiff.

**EXHIBIT**

**2**

11

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5315 PA (AGRx) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Florence Buchanan v. Johnson & Johnson, et al. | | |

Ethicon argues that if § 1446(c)(1)'s one-year rule applies, removal is nonetheless timely because the instant action was "commenced" on June 22, 2015 when the instant case was severed from Case No. BC531848. Ethicon does not cite any authority for this argument, and the Court is not persuaded. The filing date of the Complaint in Case No. BC521848 is the "commencement date" for purposes of § 1446(c)(1). See, e.g., Wejrowski v. Wyeth, No. 4:06CV292 CDP, 2012 WL 2367388, at *3 (E.D. Mo. June 21, 2012) ("But even though the plaintiffs' second amended complaint will proceed as an independent claim from the point it was severed, it was still part of the original case filed on July 7, 2004, and the state court recognized that it was commenced then. Defendant's opportunity to remove was limited to one year from that original commencement date, and the intervening removal, remand, and severance have no effect on the one-year time limit.").

Finally, Ethicon argues that even if removal is not timely under § 1446(c)(1), the statute does not bar removal when the delay is due to Plaintiff's bad faith conduct and state court docket delays. First, Ethicon notes that while Plaintiff has served other defendants, she has yet to serve Ethicon. See Escalante v. Burlington Nat. Indem. Ltd., No. 2:14-CV-7273 ODW, 2014 WL 6670002, at *4 (C.D. Cal. Nov. 24, 2014); WMCV Phase, LLC v. Tufenkian Carpets Las Vegas, LLC, No. 2:12-CV-01454-RJC-PAL, 2012 WL 5198478, at *2 (D. Nev. Oct. 18, 2012). However, there is no evidence that Plaintiff's delay in serving Ethicon was intended to stymie removal—the case did not become potentially removable until the case was severed, well after § 1446(c)(1)'s one-year period had expired. Second, Ethicon argues that Plaintiff's counsel's repeated misjoinder of nondiverse plaintiffs to keep their cases out of federal courts constitutes bad faith under § 1446(c)(1). Here, Ethicon emphasizes that Plaintiff's counsel originally joined sixty-four diverse plaintiffs with three non-diverse plaintiffs and argues that this was purely a "manipulative tactic[]" employed to defeat diversity. Ethicon notes that Plaintiff's attorneys have filed similar lawsuits with similarly skewed ratios of diverse to non-diverse plaintiffs. "The Ninth Circuit has not addressed the standard to be applied to meet the bad faith requirement of the amendment to Section 1446 nor has it recognized any equitable exceptions to section 1446(c)(1). . . . While it is unclear what standard would be used in this context, the requirement that a party acts in bad faith sets a high threshold." NKD Diversified Electronics, Inc. v. First Mercury Ins. Co., No. 1:14-cv-00183-AWI-SAB, 2014 WL 1671659, at *3 (N.D. Cal. Apr. 28, 2014) (internal citations omitted). Defendants argued fraudulent joinder when they first removed this action to this Court, and the Court found no evidence that joinder was "egregious." See Case. No. 14-CV-899 JGB (Spx), Docket No. 32 at 4. Similarly, Ethicon has now failed to provide evidence showing that the handful of non-diverse plaintiffs in this case were joined in bad faith. Third, Ethicon argues that state court docket delays warrant equitable tolling of § 1446(c)(1)'s one-year period. As noted in NKD Diversified, the Ninth Circuit has not recognized equitable exceptions to § 1446(c)(1).

Accordingly, Ethicon's Notice of Removal is not timely under § 1446(c)(1).



EXHIBIT

2

12

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5315 PA (AGRx) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Florence Buchanan v. Johnson & Johnson, et al. | | |

### Conclusion

For the foregoing reasons, Ethicon has failed to meet its burden of showing that diversity jurisdiction exists over this action.[2/]  Accordingly, this action is hereby remanded to the Los Angeles Superior Court, Case No. BC531848F, for lack of subject matter jurisdiction.  See 28 U.S.C. § 1447(c).

IT IS SO ORDERED.

---

[2/]    Although the Court recognizes that the one-year limitation addressed above is procedural, the amount in controversy requirement is jurisdictional.  See Smith v. Mylan, Inc., 761 F.3d 1042, 1043 (9th Cir. 2014) ("We hold that the district court ag[...] of its statutory authority because the one-year time limitation for removal of diversity cases under § 1446(b) is a procedural requirement rather than jurisdictional.  While the district court may remand at any time prior to final judgment for lack of subject matter jurisdiction, it cannot remand sua sponte based on a non jurisdictional defect because procedural deficiencies are waivable.").

**EXHIBIT**

**2**

13

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5317 PA (Ex) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Sara Carmona v. Johnson & Johnson, et al. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Stephen Montes Kerr | N/A | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**          IN CHAMBERS – COURT ORDER

Before the Court is a Notice of Removal filed by defendant Ethicon, LLC ("Ethicon") on July 15, 2015. Ethicon notes that its co-defendants, Johnson & Johnson and Ethicon, Inc. consent to removal. (Notice ¶ 42.) Ethicon asserts that the Court has jurisdiction over this action, brought by plaintiff Sara Carmona ("Plaintiff"), based on the Court's diversity jurisdiction. See 28 U.S.C. § 1332.

On December 13, 2013, sixty-seven plaintiffs filed a Complaint, styled Robinson, et al. v. Johnson & Johnson, et al., Case No. BC531848, in Los Angeles County Superior Court. The plaintiffs allege various injuries caused by a pelvic mesh product. The case was removed to the Central District on February 5, 2014 and remanded on March 12, 2014. The Superior Court granted a motion to sever on June 22, 2015, giving each severed plaintiff a specific docket number including a unique "alpha suffix" added to the original docket number, BC531848.

"Federal courts are courts of limited jurisdiction," having subject matter jurisdiction only over matters authorized by the Constitution and Congress. See, e.g., Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377, 114 S. Ct. 1673, 1675, 128 L. Ed. 2d 391, 395 (1994). A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a). "The removal statute is strictly construed against removal jurisdiction, and the burden of establishing federal jurisdiction falls to the party invoking the statute." California ex rel. Lockyer v. Dynegy, Inc., 375 F.3d 831, 838 (citing Ethridge v. Harbor House Rest., 861 F.2d 1389, 1393 (9th Cir. 1988)), amended by 387 F.3d 966 (9th Cir. 2004). "The defendant also has the burden of showing that it has complied with the procedural requirements for removal." See, e.g., Riggs v. Plaid Pantries, Inc., 233 F. Supp. 2d 1260, 1264 (D. Or. 2001). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (citing Libhart v. Santa Monica Dairy Co., 592 F.2d 1062, 1064 (9th Cir. 1979)). In attempting to invoke this Court's diversity jurisdiction, Ethicon must prove that there is complete diversity of citizenship between the parties and that the amount in controversy exceeds $75,000. 28 U.S.C. § 1332.

/ / /

**EXHIBIT**
**2**

14

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5317 PA (Ex) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Sara Carmona v. Johnson & Johnson, et al. | | |

### A.     Diversity of Parties

To establish citizenship for diversity purposes, a natural person must be a citizen of the United States and be domiciled in a particular state. Kantor v. Wellesley Galleries, Ltd., 704 F.2d 1088, 1090 (9th Cir. 1983). Persons are domiciled in the places they reside with the intent to remain or to which they intend to return. See Kanter v. Warner-Lambert Co., 265 F.3d 853, 857 (9th Cir. 2001). "A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state." Id. For the purposes of diversity jurisdiction, a corporation is a citizen of any state where it is incorporated and of the state where it has its principal place of business. 28 U.S.C. § 1332(c); see also Indus. Tectonics, Inc. v. Aero Alloy, 912 F.2d 1090, 1092 (9th Cir. 1990). The citizenship of an LLC is the citizenship of its members. See Johnson v. Columbia Props. Anchorage, LP, 437 F.3d 894, 899 (9th Cir. 2006) ("[L]ike a partnership, an LLC is a citizen of every state of which its owners/members are citizens.").

Here, Plaintiff is allegedly a resident and citizen of Florida. Johnson & Johnson is a citizen of New Jersey; Ethicon, Inc. is a citizen of New Jersey; and Ethicon is a citizen of Ireland because its sole member, Ethicon PR Holdings, is a private unlimited company organized under the laws of Ireland with its principal place of business in Cork, Ireland.

### B.     Amount in Controversy

When an action has been removed and the amount in controversy is in doubt, there is a "strong presumption" that the plaintiff has not claimed an amount sufficient to confer jurisdiction. Gaus, 980 F.2d 564, 566 (9th Cir. 1992) (citing St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288–90, 58 S. Ct. 586, 590–91, 82 L. Ed. 845 (1938)). "When not facially evident from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold." Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003). "Conclusory allegations as to the amount in controversy are insufficient." Id. at 1090-91. "Under this burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds [$75,000]." Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996).[1]

---

[1]     Ethicon cites the Venue Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat. 758, and quotes from the House Report accompanying the bill for the proposition that "the defendants do not need to prove to a legal certainty that the amount in controversy requirement has been met. Rather, defendants may simply allege or assert that the jurisdictional threshold has been met." H.R. Rep. No. 112-10 at 16 (2011). Interpreting the Act in Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547, 554, 190 L. Ed. 2d 495 (2014), the Supreme Court _____ d that while "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," evidence establishing the amount in controversy may be required if the court questions the defendant's allegation. Here, the Court questions Ethicon's amount in controversy allegation because it is based on a Complaint alleging damages on behalf of more than sixty plaintiffs, with no individualized

**EXHIBIT 2**

15

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-5317 PA (Ex) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Sara Carmona v. Johnson & Johnson, et al. | | |

Here, Ethicon attempts to establish the amount in controversy solely by citation to the original complaint filed on behalf of more than sixty individual plaintiffs. Ethicon lists the categories of damages sought by the plaintiffs collectively, but provides no information regarding Plaintiff's individual situation. For example, the Court has no information regarding the specific nature or extent of Plaintiff's injuries, her past or future medical expenses, or her earning capacity. The Court has no basis to find that it is more likely than not that the amount in controversy exceeds $75,000.

### C.  Timeliness of Removal

To remove an action from state to federal court, a defendant must also comply with the procedural requirements for removal. These procedures include a requirement that the "notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b)(1). "[I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). Diversity cases where the initial pleading is not removable "may not be removed . . . more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C. § 1446(c)(1).

Here, Ethicon argues that § 1446(c)(1) does not apply because Plaintiff has always been diverse from Defendants. The Ninth Circuit has construed § 1446(c)(1) to apply only to cases removed pursuant to § 1446(b)(3)—i.e. cases that "become" removable. See Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1316-18 (9th Cir. 1998) ("The first paragraph of § 1446(b) addresses a defendant's right to promptly remove when he is served. The second paragraph addresses a defendant's right to remove beyond the initial period of 30 days, if the case only becomes removable sometime after the initial commencement of the action. Only the latter type of removal is barred by the one-year exception."). However, Ethicon's claim that the instant case has always been removable is simply not accurate. As Ethicon notes, the Central District held prior to severance that the "initial pleading" was not removable. If Ethicon's position is that the Complaint filed in Case No. BC531848 is not the "initial pleading" in the instant case, it is not clear that an initial pleading has even been received. See Milton A. Jacobs, Inc. v. Manning Mfg. Corp., 171 F. Supp. 393, 395 (S.D.N.Y. 1959) ("[P]arties seeking removal can take no action until they have received a copy of the 'initial pleading.'").

**EXHIBIT**
**2**

facts about Plaintiff.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5317 PA (Ex) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Sara Carmona v. Johnson & Johnson, et al. | | |

Ethicon argues that if § 1446(c)(1)'s one-year rule applies, removal is nonetheless timely because the instant action was "commenced" on June 22, 2015 when the instant case was severed from Case No. BC531848. Ethicon does not cite any authority for this argument, and the Court is not persuaded. The filing date of the Complaint in Case No. BC521848 is the "commencement date" for purposes of § 1446(c)(1). See, e.g., Wejrowski v. Wyeth, No. 4:06CV292 CDP, 2012 WL 2367388, at *3 (E.D. Mo. June 21, 2012) ("But even though the plaintiffs' second amended complaint will proceed as an independent claim from the point it was severed, it was still part of the original case filed on July 7, 2004, and the state court recognized that it was commenced then. Defendant's opportunity to remove was limited to one year from that original commencement date, and the intervening removal, remand, and severance have no effect on the one-year time limit.").

Finally, Ethicon argues that even if removal is not timely under § 1446(c)(1), the statute does not bar removal when the delay is due to Plaintiff's bad faith conduct and state court docket delays. First, Ethicon notes that while Plaintiff has served other defendants, she has yet to serve Ethicon. See Escalante v. Burlington Nat. Indem. Ltd., No. 2:14-CV-7273 ODW, 2014 WL 6670002, at *4 (C.D. Cal. Nov. 24, 2014); WMCV Phase, LLC v. Tufenkian Carpets Las Vegas, LLC, No. 2:12-CV-01454-RJC-PAL, 2012 WL 5198478, at *2 (D. Nev. Oct. 18, 2012). However, there is no evidence that Plaintiff's delay in serving Ethicon was intended to stymie removal—the case did not become potentially removable until the case was severed, well after § 1446(c)(1)'s one-year period had expired. Second, Ethicon argues that Plaintiff's counsel's repeated misjoinder of nondiverse plaintiffs to keep their cases out of federal courts constitutes bad faith under § 1446(c)(1). Here, Ethicon emphasizes that Plaintiff's counsel originally joined sixty-four diverse plaintiffs with three non-diverse plaintiffs and argues that this was purely a "manipulative tactic[]" employed to defeat diversity. Ethicon notes that Plaintiff's attorneys have filed similar lawsuits with similarly skewed ratios of diverse to non-diverse plaintiffs. "The Ninth Circuit has not addressed the standard to be applied to meet the bad faith requirement of the amendment to Section 1446 nor has it recognized any equitable exceptions to section 1446(c)(1). . . . While it is unclear what standard would be used in this context, the requirement that a party acts in bad faith sets a high threshold." NKD Diversified Electronics, Inc. v. First Mercury Ins. Co., No. 1:14-cv-00183-AWI-SAB, 2014 WL 1671659, at *3 (N.D. Cal. Apr. 28, 2014) (internal citations omitted). Defendants argued fraudulent joinder when they first removed this action to this Court, and the Court found no evidence that joinder was "egregious." See Case. No. 14-CV-899 JGB (Spx), Docket No. 32 at 4. Similarly, Ethicon has now failed to provide evidence showing that the handful of non-diverse plaintiffs in this case were joined in bad faith. Third, Ethicon argues that state court docket delays warrant equitable tolling of § 1446(c)(1)'s one-year period. As noted in NKD Diversified, the Ninth Circuit has not recognized equitable exceptions to § 1446(c)(1).

Accordingly, Ethicon's Notice of Removal is not timely under § 1446(c)(1).

Conclusion

**EXHIBIT**

**2**

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5317 PA (Ex) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Sara Carmona v. Johnson & Johnson, et al. | | |

      For the foregoing reasons, Ethicon has failed to meet its burden of showing that diversity jurisdiction exists over this action.[2/]  Accordingly, this action is hereby remanded to the Los Angeles Superior Court, Case No. BC531848H, for lack of subject matter jurisdiction.  See 28 U.S.C. § 1447(c).

      IT IS SO ORDERED.

---

[2/]     Although the Court recognizes that the one-year limitation addressed above is procedural, the amount in controversy requirement is jurisdictional.  See Smith v. Mylan, Inc., 761 F.3d 1042, 1043 (9th Cir. 2014) ("We hold that the district court acted in excess of its statutory authority because the one-year time limitation for removal of diversity cases under § 1446(b) is a procedural requirement rather than jurisdictional.  While the district court may remand at any time prior to final judgment for lack of subject matter jurisdiction, it cannot remand sua sponte based on a non jurisdictional defect because procedural deficiencies are waivable.").

**EXHIBIT**

**2**

18

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5371 PA (GJSx) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Mary Orsi v. Johnson & Johnson, et al. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Stephen Montes Kerr | N/A | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**     IN CHAMBERS – COURT ORDER

Before the Court is a Notice of Removal filed by defendant Ethicon, LLC ("Ethicon") on July 15, 2015. Ethicon notes that its co-defendants, Johnson & Johnson and Ethicon, Inc. consent to removal. (Notice ¶ 42.) Ethicon asserts that the Court has jurisdiction over this action, brought by plaintiff Mary Orsi ("Plaintiff"), based on the Court's diversity jurisdiction. See 28 U.S.C. § 1332.

On December 13, 2013, sixty-seven plaintiffs filed a Complaint, styled Robinson, et al. v. Johnson & Johnson, et al., Case No. BC531848, in Los Angeles County Superior Court. The plaintiffs allege various injuries caused by a pelvic mesh product. The case was removed to the Central District on February 5, 2014 and remanded on March 12, 2014. The Superior Court granted a motion to sever on June 22, 2015, giving each severed plaintiff a specific docket number including a unique "alpha suffix" added to the original docket number, BC531848.

"Federal courts are courts of limited jurisdiction," having subject matter jurisdiction only over matters authorized by the Constitution and Congress. See, e.g., Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377, 114 S. Ct. 1673, 1675, 128 L. Ed. 2d 391, 395 (1994). A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a). "The removal statute is strictly construed against removal jurisdiction, and the burden of establishing federal jurisdiction falls to the party invoking the statute." California ex rel. Lockyer v. Dynegy, Inc., 375 F.3d 831, 838 (citing Ethridge v. Harbor House Rest., 861 F.2d 1389, 1393 (9th Cir. 1988)), amended by 387 F.3d 966 (9th Cir. 2004). "The defendant also has the burden of showing that it has complied with the procedural requirements for removal." See, e.g., Riggs v. Plaid Pantries, Inc., 233 F. Supp. 2d 1260, 1264 (D. Or. 2001). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (citing Libhart v. Santa Monica Dairy Co., 592 F.2d 1062, 1064 (9th Cir. 1979)). In attempting to invoke this Court's diversity jurisdiction, Ethicon must prove that there is complete diversity of citizenship between the parties and that the amount in controversy ~~EXHIBIT~~ ,000. 28 U.S.C. § 1332.

/ / /

**EXHIBIT**

**2**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-5371 PA (GJSx) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Mary Orsi v. Johnson & Johnson, et al. | | |

### A.     Diversity of Parties

To establish citizenship for diversity purposes, a natural person must be a citizen of the United States and be domiciled in a particular state.  Kantor v. Wellesley Galleries, Ltd., 704 F.2d 1088, 1090 (9th Cir. 1983).  Persons are domiciled in the places they reside with the intent to remain or to which they intend to return.  See Kanter v. Warner-Lambert Co., 265 F.3d 853, 857 (9th Cir. 2001).  "A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state."  Id.  For the purposes of diversity jurisdiction, a corporation is a citizen of any state where it is incorporated and of the state where it has its principal place of business.  28 U.S.C. § 1332(c); see also Indus. Tectonics, Inc. v. Aero Alloy, 912 F.2d 1090, 1092 (9th Cir. 1990).  The citizenship of an LLC is the citizenship of its members.  See Johnson v. Columbia Props. Anchorage, LP, 437 F.3d 894, 899 (9th Cir. 2006) ("[L]ike a partnership, an LLC is a citizen of every state of which its owners/members are citizens.").

Here, Plaintiff is allegedly a resident and citizen of Washington.  Johnson & Johnson is a citizen of New Jersey; Ethicon, Inc. is a citizen of New Jersey; and Ethicon is a citizen of Ireland because its sole member, Ethicon PR Holdings, is a private unlimited company organized under the laws of Ireland with its principal place of business in Cork, Ireland.

### B.     Amount in Controversy

When an action has been removed and the amount in controversy is in doubt, there is a "strong presumption" that the plaintiff has not claimed an amount sufficient to confer jurisdiction.  Gaus, 980 F.2d 564, 566 (9th Cir. 1992) (citing St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288–90, 58 S. Ct. 586, 590–91, 82 L. Ed. 845 (1938)).  "When not facially evident from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold."  Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003).  "Conclusory allegations as to the amount in controversy are insufficient."  Id. at 1090-91.  "Under this burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds [$75,000]."  Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996).[1]

---

[1]     Ethicon cites the Venue Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat. 758, and quotes from the House Report accompanying the bill for the proposition that "the defendants do not need to prove to a legal certainty that the amount in controversy requirement has been met.  Rather, defendants may simply allege or assert that the jurisdictional threshold has been met."  H.R. Rep. No. 112-10 at 16 (2011).  Interpreting the Act in Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547, 554, 190 L. Ed. 2d 495 (2014), the Supreme Court acknowledged that while "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," evidence establishing the amount in controversy may be required if the court questions the defendant's allegation.  Here, the Court questions Ethicon's amount in controversy allegation because it is based on a Complaint alleging damages on behalf of more than sixty plaintiffs, with no individualized

EXHIBIT
**2**
20

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5371 PA (GJSx) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Mary Orsi v. Johnson & Johnson, et al. | | |

Here, Ethicon attempts to establish the amount in controversy solely by citation to the original complaint filed on behalf of more than sixty individual plaintiffs. Ethicon lists the categories of damages sought by the plaintiffs collectively, but provides no information regarding Plaintiff's individual situation. For example, the Court has no information regarding the specific nature or extent of Plaintiff's injuries, her past or future medical expenses, or her earning capacity. The Court has no basis to find that it is more likely than not that the amount in controversy exceeds $75,000.

### C.     Timeliness of Removal

To remove an action from state to federal court, a defendant must also comply with the procedural requirements for removal. These procedures include a requirement that the "notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b)(1). "[I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). Diversity cases where the initial pleading is not removable "may not be removed . . . more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C. § 1446(c)(1).

Here, Ethicon argues that § 1446(c)(1) does not apply because Plaintiff has always been diverse from Defendants. The Ninth Circuit has construed § 1446(c)(1) to apply only to cases removed pursuant to § 1446(b)(3)—i.e. cases that "become" removable. See Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1316-18 (9th Cir. 1998) ("The first paragraph of § 1446(b) addresses a defendant's right to promptly remove when he is served. The second paragraph addresses a defendant's right to remove beyond the initial period of 30 days, if the case only becomes removable sometime after the initial commencement of the action. Only the latter type of removal is barred by the one-year exception."). However, Ethicon's claim that the instant case has always been removable is simply not accurate. As Ethicon notes, the Central District held prior to severance that the "initial pleading" was not removable. If Ethicon's position is that the Complaint filed in Case No. BC531848 is not the "initial pleading" in the instant case, it is not clear that an initial pleading has even been received. See Milton A. Jacobs, Inc. v. Manning Mfg. Corp., 171 F. Supp. 393, 395 (S.D. N.Y. 1959) ("[P]arties seeking removal can take no action until they have received a copy of the 'initial pleading.'").

```
┌─────────────┐
│  EXHIBIT    │
│             │
│     2       │
│             │
└─────────────┘
```

facts about Plaintiff.

21

**JS-6**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5371 PA (GJSx) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Mary Orsi v. Johnson & Johnson, et al. | | |

Ethicon argues that if § 1446(c)(1)'s one-year rule applies, removal is nonetheless timely because the instant action was "commenced" on June 22, 2015 when the instant case was severed from Case No. BC531848. Ethicon does not cite any authority for this argument, and the Court is not persuaded. The filing date of the Complaint in Case No. BC521848 is the "commencement date" for purposes of § 1446(c)(1). See, e.g., Wejrowski v. Wyeth, No. 4:06CV292 CDP, 2012 WL 2367388, at *3 (E.D. Mo. June 21, 2012) ("But even though the plaintiffs' second amended complaint will proceed as an independent claim from the point it was severed, it was still part of the original case filed on July 7, 2004, and the state court recognized that it was commenced then. Defendant's opportunity to remove was limited to one year from that original commencement date, and the intervening removal, remand, and severance have no effect on the one-year time limit.").

Finally, Ethicon argues that even if removal is not timely under § 1446(c)(1), the statute does not bar removal when the delay is due to Plaintiff's bad faith conduct and state court docket delays. First, Ethicon notes that while Plaintiff has served other defendants, she has yet to serve Ethicon. See Escalante v. Burlington Nat. Indem. Ltd., No. 2:14-CV-7273 ODW, 2014 WL 6670002, at *4 (C.D. Cal. Nov. 24, 2014); WMCV Phase, LLC v. Tufenkian Carpets Las Vegas, LLC, No. 2:12-CV-01454-RJC-PAL, 2012 WL 5198478, at *2 (D. Nev. Oct. 18, 2012). However, there is no evidence that Plaintiff's delay in serving Ethicon was intended to stymie removal—the case did not become potentially removable until the case was severed, well after § 1446(c)(1)'s one-year period had expired. Second, Ethicon argues that Plaintiff's counsel's repeated misjoinder of nondiverse plaintiffs to keep their cases out of federal courts constitutes bad faith under § 1446(c)(1). Here, Ethicon emphasizes that Plaintiff's counsel originally joined sixty-four diverse plaintiffs with three non-diverse plaintiffs and argues that this was purely a "manipulative tactic[]" employed to defeat diversity. Ethicon notes that Plaintiff's attorneys have filed similar lawsuits with similarly skewed ratios of diverse to non-diverse plaintiffs. "The Ninth Circuit has not addressed the standard to be applied to meet the bad faith requirement of the amendment to Section 1446 nor has it recognized any equitable exceptions to section 1446(c)(1). . . . While it is unclear what standard would be used in this context, the requirement that a party acts in bad faith sets a high threshold." NKD Diversified Electronics, Inc. v. First Mercury Ins. Co., No. 1:14-cv-00183-AWI-SAB, 2014 WL 1671659, at *3 (N.D. Cal. Apr. 28, 2014) (internal citations omitted). Defendants argued fraudulent joinder when they first removed this action to this Court, and the Court found no evidence that joinder was "egregious." See Case. No. 14-CV-899 JGB (Spx), Docket No. 32 at 4. Similarly, Ethicon has now failed to provide evidence showing that the handful of non-diverse plaintiffs in this case were joined in bad faith. Third, Ethicon argues that state court docket delays warrant equitable tolling of § 1446(c)(1)'s one-year period. As noted in NKD Diversified, the Ninth Circuit has not recognized equitable exceptions to § 1446(c)(1).

Accordingly, Ethicon's Notice of Removal is not timely under § 1446(c)(1).

**EXHIBIT 2**

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5371 PA (GJSx) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Mary Orsi v. Johnson & Johnson, et al. | | |

### Conclusion

For the foregoing reasons, Ethicon has failed to meet its burden of showing that diversity jurisdiction exists over this action.[2] Accordingly, this action is hereby remanded to the Los Angeles Superior Court, Case No. BC531848QQ, for lack of subject matter jurisdiction.  See 28 U.S.C. § 1447(c).

IT IS SO ORDERED.

---

[2]      Although the Court recognizes that the one-year limitation addressed above is procedural, the amount in controversy requirement is jurisdictional.  See Smith v. Mylan, Inc., 761 F.3d 1042, 1043 (9th Cir. 2014) ("We hold that the district court a ~~EXHIBIT~~ of its statutory authority because the one-year time limitation for removal of diversity cases under § 1446(b) is a procedural requirement rather than jurisdictional.  While the district court may remand at any time prior to final judgment for lack of subject matter jurisdiction, it cannot remand sua sponte based on a non jurisdictional defect because procedural deficiencies are waivable.").

EXHIBIT

2

23

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5382 PA (FFMx) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Xochilt Robinson v. Johnson & Johnson, et al. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Stephen Montes Kerr | N/A | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** IN CHAMBERS – COURT ORDER

Before the Court is a Notice of Removal filed by defendant Ethicon, LLC ("Ethicon") on July 15, 2015. Ethicon notes that its co-defendants, Johnson & Johnson and Ethicon, Inc. consent to removal. (Notice ¶ 42.) Ethicon asserts that the Court has jurisdiction over this action, brought by plaintiff Xochilt Robinson ("Plaintiff"), based on the Court's diversity jurisdiction. See 28 U.S.C. § 1332.

On December 13, 2013, sixty-seven plaintiffs filed a Complaint, styled Robinson, et al. v. Johnson & Johnson, et al., Case No. BC531848, in Los Angeles County Superior Court. The plaintiffs allege various injuries caused by a pelvic mesh product. The case was removed to the Central District on February 5, 2014 and remanded on March 12, 2014. The Superior Court granted a motion to sever on June 22, 2015, giving each severed plaintiff a specific docket number including a unique "alpha suffix" added to the original docket number, BC531848.

"Federal courts are courts of limited jurisdiction," having subject matter jurisdiction only over matters authorized by the Constitution and Congress. See, e.g., Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377, 114 S. Ct. 1673, 1675, 128 L. Ed. 2d 391, 395 (1994). A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a). "The removal statute is strictly construed against removal jurisdiction, and the burden of establishing federal jurisdiction falls to the party invoking the statute." California ex rel. Lockyer v. Dynegy, Inc., 375 F.3d 831, 838 (citing Ethridge v. Harbor House Rest., 861 F.2d 1389, 1393 (9th Cir. 1988)), amended by 387 F.3d 966 (9th Cir. 2004). "The defendant also has the burden of showing that it has complied with the procedural requirements for removal." See, e.g., Riggs v. Plaid Pantries, Inc., 233 F. Supp. 2d 1260, 1264 (D. Or. 2001). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (citing Libhart v. Santa Monica Dairy Co., 592 F.2d 1062, 1064 (9th Cir. 1979)). In attempting to invoke this Court's diversity jurisdiction, Ethicon must prove that there is complete diversity of citizenship between the parties and that the amount in controversy exceeds $75,000. 28 U.S.C. § 1332.

/ / /

**EXHIBIT 2**

24

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5382 PA (FFMx) | Date | July 21, 2015 |
|---|---|---|---|

| Title | Xochilt Robinson v. Johnson & Johnson, et al. |
|---|---|

## A.    Diversity of Parties

To establish citizenship for diversity purposes, a natural person must be a citizen of the United States and be domiciled in a particular state.  Kantor v. Wellesley Galleries, Ltd., 704 F.2d 1088, 1090 (9th Cir. 1983).  Persons are domiciled in the places they reside with the intent to remain or to which they intend to return.  See Kanter v. Warner-Lambert Co., 265 F.3d 853, 857 (9th Cir. 2001).  "A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state."  Id.  For the purposes of diversity jurisdiction, a corporation is a citizen of any state where it is incorporated and of the state where it has its principal place of business.  28 U.S.C. § 1332(c); see also Indus. Tectonics, Inc. v. Aero Alloy, 912 F.2d 1090, 1092 (9th Cir. 1990).  The citizenship of an LLC is the citizenship of its members.  See Johnson v. Columbia Props. Anchorage, LP, 437 F.3d 894, 899 (9th Cir. 2006) ("[L]ike a partnership, an LLC is a citizen of every state of which its owners/members are citizens.").

Here, Plaintiff is allegedly a resident and citizen of California.  Johnson & Johnson is a citizen of New Jersey; Ethicon, Inc. is a citizen of New Jersey; and Ethicon is a citizen of Ireland because its sole member, Ethicon PR Holdings, is a private unlimited company organized under the laws of Ireland with its principal place of business in Cork, Ireland.

## B.    Amount in Controversy

When an action has been removed and the amount in controversy is in doubt, there is a "strong presumption" that the plaintiff has not claimed an amount sufficient to confer jurisdiction.  Gaus, 980 F.2d 564, 566 (9th Cir. 1992) (citing St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288–90, 58 S. Ct. 586, 590–91, 82 L. Ed. 845 (1938)).  "When not facially evident from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold."  Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003).  "Conclusory allegations as to the amount in controversy are insufficient."  Id. at 1090-91.  "Under this burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds [$75,000]."  Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996).[1]

---

[1]    Ethicon cites the Venue Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat. 758, and quotes from the House Report accompanying the bill for the proposition that "the defendants do not need to prove to a legal certainty that the amount in controversy requirement has been met.  Rather, defendants may simply allege or assert that the jurisdictional threshold has been met."  H.R. Rep. No. 112-10 at 16 (2011).  Interpreting the Act in Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547, 554, 190 L. Ed. 2d 495 (2014), the Supreme Court acknowledged that while "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," evidence establishing the amount in controversy may be required if the court questions the defendant's allegation.  Here, the Court questions Ethicon's amount in controversy allegation because it is based on a Complaint alleging damages on behalf of more than sixty plaintiffs, with no individualized

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5382 PA (FFMx) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Xochilt Robinson v. Johnson & Johnson, et al. | | |

Here, Ethicon attempts to establish the amount in controversy solely by citation to the original complaint filed on behalf of more than sixty individual plaintiffs. Ethicon lists the categories of damages sought by the plaintiffs collectively, but provides no information regarding Plaintiff's individual situation. For example, the Court has no information regarding the specific nature or extent of Plaintiff's injuries, her past or future medical expenses, or her earning capacity. The Court has no basis to find that it is more likely than not that the amount in controversy exceeds $75,000.

### C.    Timeliness of Removal

To remove an action from state to federal court, a defendant must also comply with the procedural requirements for removal. These procedures include a requirement that the "notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b)(1). "[I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). Diversity cases where the initial pleading is not removable "may not be removed . . . more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C. § 1446(c)(1).

Here, Ethicon argues that § 1446(c)(1) does not apply because Plaintiff has always been diverse from Defendants. The Ninth Circuit has construed § 1446(c)(1) to apply only to cases removed pursuant to § 1446(b)(3)—i.e. cases that "become" removable. See Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1316-18 (9th Cir. 1998) ("The first paragraph of § 1446(b) addresses a defendant's right to promptly remove when he is served. The second paragraph addresses a defendant's right to remove beyond the initial period of 30 days, if the case only becomes removable sometime after the initial commencement of the action. Only the latter type of removal is barred by the one-year exception."). However, Ethicon's claim that the instant case has always been removable is simply not accurate. As Ethicon notes, the Central District held prior to severance that the "initial pleading" was not removable. If Ethicon's position is that the Complaint filed in Case No. BC531848 is not the "initial pleading" in the instant case, it is not clear that an initial pleading has even been received. See Milton A. Jacobs, Inc. v. Manning Mfg. Corp., 171 F. Supp. 393, 395 (S.D. N.Y. 1959) ("[P]arties seeking removal can take no action until they have received a copy of the 'initial pleading.'").

**EXHIBIT**

**2**

facts about Plaintiff.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5382 PA (FFMx) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Xochilt Robinson v. Johnson & Johnson, et al. | | |

Ethicon argues that if § 1446(c)(1)'s one-year rule applies, removal is nonetheless timely because the instant action was "commenced" on June 22, 2015 when the instant case was severed from Case No. BC531848. Ethicon does not cite any authority for this argument, and the Court is not persuaded. The filing date of the Complaint in Case No. BC521848 is the "commencement date" for purposes of § 1446(c)(1). See, e.g., Wejrowski v. Wyeth, No. 4:06CV292 CDP, 2012 WL 2367388, at *3 (E.D. Mo. June 21, 2012) ("But even though the plaintiffs' second amended complaint will proceed as an independent claim from the point it was severed, it was still part of the original case filed on July 7, 2004, and the state court recognized that it was commenced then. Defendant's opportunity to remove was limited to one year from that original commencement date, and the intervening removal, remand, and severance have no effect on the one-year time limit.").

Finally, Ethicon argues that even if removal is not timely under § 1446(c)(1), the statute does not bar removal when the delay is due to Plaintiff's bad faith conduct and state court docket delays. First, Ethicon notes that while Plaintiff has served other defendants, she has yet to serve Ethicon. See Escalante v. Burlington Nat. Indem. Ltd., No. 2:14-CV-7273 ODW, 2014 WL 6670002, at *4 (C.D. Cal. Nov. 24, 2014); WMCV Phase, LLC v. Tufenkian Carpets Las Vegas, LLC, No. 2:12-CV-01454-RJC-PAL, 2012 WL 5198478, at *2 (D. Nev. Oct. 18, 2012). However, there is no evidence that Plaintiff's delay in serving Ethicon was intended to stymie removal—the case did not become potentially removable until the case was severed, well after § 1446(c)(1)'s one-year period had expired. Second, Ethicon argues that Plaintiff's counsel's repeated misjoinder of nondiverse plaintiffs to keep their cases out of federal courts constitutes bad faith under § 1446(c)(1). Here, Ethicon emphasizes that Plaintiff's counsel originally joined sixty-four diverse plaintiffs with three non-diverse plaintiffs and argues that this was purely a "manipulative tactic[]" employed to defeat diversity. Ethicon notes that Plaintiff's attorneys have filed similar lawsuits with similarly skewed ratios of diverse to non-diverse plaintiffs. "The Ninth Circuit has not addressed the standard to be applied to meet the bad faith requirement of the amendment to Section 1446 nor has it recognized any equitable exceptions to section 1446(c)(1). . . . While it is unclear what standard would be used in this context, the requirement that a party acts in bad faith sets a high threshold." NKD Diversified Electronics, Inc. v. First Mercury Ins. Co., No. 1:14-cv-00183-AWI-SAB, 2014 WL 1671659, at *3 (N.D. Cal. Apr. 28, 2014) (internal citations omitted). Defendants argued fraudulent joinder when they first removed this action to this Court, and the Court found no evidence that joinder was "egregious." See Case. No. 14-CV-899 JGB (Spx), Docket No. 32 at 4. Similarly, Ethicon has now failed to provide evidence showing that the handful of non-diverse plaintiffs in this case were joined in bad faith. Third, Ethicon argues that state court docket delays warrant equitable tolling of § 1446(c)(1)'s one-year period. As noted in NKD Diversified, the Ninth Circuit has not recognized equitable exceptions to § 1446(c)(1).

Accordingly, Ethicon's Notice of Removal is not timely under § 1446(c)(1).

**EXHIBIT**

**2**

27

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5382 PA (FFMx) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Xochilt Robinson v. Johnson & Johnson, et al. | | |

### Conclusion

For the foregoing reasons, Ethicon has failed to meet its burden of showing that diversity jurisdiction exists over this action.[2/] Accordingly, this action is hereby remanded to the Los Angeles Superior Court, Case No. BC531848BBB, for lack of subject matter jurisdiction. See 28 U.S.C. § 1447(c).

IT IS SO ORDERED.

---

[2/] Although the Court recognizes that the one-year limitation addressed above is procedural, the amount in controversy requirement is jurisdictional. See Smith v. Mylan, Inc., 761 F.3d 1042, 1043 (9th Cir. 2014) ("We hold that the district court a[EXHIBIT] of its statutory authority because the one-year time limitation for removal of diversity cases under § 1446(b) is a procedural requirement rather than jurisdictional. While the district court may remand at any time prior to final judgment for lack of subject matter jurisdiction, it cannot remand sua sponte based on a non jurisdictional defect because procedural deficiencies are waivable.").

**EXHIBIT 2**

28

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5385 PA (Ex) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Vickie Skelton v. Johnson & Johnson, et al. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Stephen Montes Kerr | N/A | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** IN CHAMBERS – COURT ORDER

Before the Court is a Notice of Removal filed by defendant Ethicon, LLC ("Ethicon") on July 15, 2015. Ethicon notes that its co-defendants, Johnson & Johnson and Ethicon, Inc. consent to removal. (Notice ¶ 42.) Ethicon asserts that the Court has jurisdiction over this action, brought by plaintiff Vickie Skelton ("Plaintiff"), based on the Court's diversity jurisdiction. See 28 U.S.C. § 1332.

On December 13, 2013, sixty-seven plaintiffs filed a Complaint, styled Robinson, et al. v. Johnson & Johnson, et al., Case No. BC531848, in Los Angeles County Superior Court. The plaintiffs allege various injuries caused by a pelvic mesh product. The case was removed to the Central District on February 5, 2014 and remanded on March 12, 2014. The Superior Court granted a motion to sever on June 22, 2015, giving each severed plaintiff a specific docket number including a unique "alpha suffix" added to the original docket number, BC531848.

"Federal courts are courts of limited jurisdiction," having subject matter jurisdiction only over matters authorized by the Constitution and Congress. See, e.g., Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377, 114 S. Ct. 1673, 1675, 128 L. Ed. 2d 391, 395 (1994). A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a). "The removal statute is strictly construed against removal jurisdiction, and the burden of establishing federal jurisdiction falls to the party invoking the statute." California ex rel. Lockyer v. Dynegy, Inc., 375 F.3d 831, 838 (citing Ethridge v. Harbor House Rest., 861 F.2d 1389, 1393 (9th Cir. 1988)), amended by 387 F.3d 966 (9th Cir. 2004). "The defendant also has the burden of showing that it has complied with the procedural requirements for removal." See, e.g., Riggs v. Plaid Pantries, Inc., 233 F. Supp. 2d 1260, 1264 (D. Or. 2001). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (citing Libhart v. Santa Monica Dairy Co., 592 F.2d 1062, 1064 (9th Cir. 1979)). In attempting to invoke this Court's diversity jurisdiction, Ethicon must prove that there is complete diversity of citizenship between the parties and that the amount in controversy exceeds $75,000. 28 U.S.C. § 1332.

**EXHIBIT 2**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5385 PA (Ex) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Vickie Skelton v. Johnson & Johnson, et al. | | |

### A.    Diversity of Parties

To establish citizenship for diversity purposes, a natural person must be a citizen of the United States and be domiciled in a particular state.  Kantor v. Wellesley Galleries, Ltd., 704 F.2d 1088, 1090 (9th Cir. 1983).  Persons are domiciled in the places they reside with the intent to remain or to which they intend to return.  See Kanter v. Warner-Lambert Co., 265 F.3d 853, 857 (9th Cir. 2001).  "A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state."  Id.  For the purposes of diversity jurisdiction, a corporation is a citizen of any state where it is incorporated and of the state where it has its principal place of business.  28 U.S.C. § 1332(c); see also Indus. Tectonics, Inc. v. Aero Alloy, 912 F.2d 1090, 1092 (9th Cir. 1990).  The citizenship of an LLC is the citizenship of its members.  See Johnson v. Columbia Props. Anchorage, LP, 437 F.3d 894, 899 (9th Cir. 2006) ("[L]ike a partnership, an LLC is a citizen of every state of which its owners/members are citizens.").

Here, Plaintiff is allegedly a resident and citizen of Arkansas.  Johnson & Johnson is a citizen of New Jersey; Ethicon, Inc. is a citizen of New Jersey; and Ethicon is a citizen of Ireland because its sole member, Ethicon PR Holdings, is a private unlimited company organized under the laws of Ireland with its principal place of business in Cork, Ireland.

### B.    Amount in Controversy

When an action has been removed and the amount in controversy is in doubt, there is a "strong presumption" that the plaintiff has not claimed an amount sufficient to confer jurisdiction.  Gaus, 980 F.2d 564, 566 (9th Cir. 1992) (citing St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288–90, 58 S. Ct. 586, 590–91, 82 L. Ed. 845 (1938)).  "When not facially evident from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold."  Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003).  "Conclusory allegations as to the amount in controversy are insufficient."  Id. at 1090-91.  "Under this burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds [$75,000]."  Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996).[1/]

---

[1/]    Ethicon cites the Venue Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat. 758, and quotes from the House Report accompanying the bill for the proposition that "the defendants do not need to prove to a legal certainty that the amount in controversy requirement has been met.  Rather, defendants may simply allege or assert that the jurisdictional threshold has been met."  H.R. Rep. No. 112-10 at 16 (2011).  Interpreting the Act in Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547, 554, 190 L. Ed. 2d 495 (2014), the Supreme Court acknowledged that while "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," evidence establishing the amount in controversy may be required if the court questions the defendant's allegation.  Here, the Court questions Ethicon's amount in controversy allegation because it is based on a Complaint alleging damages on behalf of more than sixty plaintiffs, with no individualized

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5385 PA (Ex) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Vickie Skelton v. Johnson & Johnson, et al. | | |

Here, Ethicon attempts to establish the amount in controversy solely by citation to the original complaint filed on behalf of more than sixty individual plaintiffs. Ethicon lists the categories of damages sought by the plaintiffs collectively, but provides no information regarding Plaintiff's individual situation. For example, the Court has no information regarding the specific nature or extent of Plaintiff's injuries, her past or future medical expenses, or her earning capacity. The Court has no basis to find that it is more likely than not that the amount in controversy exceeds $75,000.

### C. Timeliness of Removal

To remove an action from state to federal court, a defendant must also comply with the procedural requirements for removal. These procedures include a requirement that the "notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b)(1). "[I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). Diversity cases where the initial pleading is not removable "may not be removed . . . more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C. § 1446(c)(1).

Here, Ethicon argues that § 1446(c)(1) does not apply because Plaintiff has always been diverse from Defendants. The Ninth Circuit has construed § 1446(c)(1) to apply only to cases removed pursuant to § 1446(b)(3)—i.e. cases that "become" removable. See Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1316-18 (9th Cir. 1998) ("The first paragraph of § 1446(b) addresses a defendant's right to promptly remove when he is served. The second paragraph addresses a defendant's right to remove beyond the initial period of 30 days, if the case only becomes removable sometime after the initial commencement of the action. Only the latter type of removal is barred by the one-year exception."). However, Ethicon's claim that the instant case has always been removable is simply not accurate. As Ethicon notes, the Central District held prior to severance that the "initial pleading" was not removable. If Ethicon's position is that the Complaint filed in Case No. BC531848 is not the "initial pleading" in the instant case, it is not clear that an initial pleading has even been received. See Milton A. Jacobs, Inc. v. Manning Mfg. Corp., 171 F. Supp. 393, 395 (S.D. N.Y. 1959) ("[P]arties seeking removal can take no action until they have received a copy of the 'initial pleading.'").



EXHIBIT
2

facts about Plaintiff.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-5385 PA (Ex) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Vickie Skelton v. Johnson & Johnson, et al. | | |

Ethicon argues that if § 1446(c)(1)'s one-year rule applies, removal is nonetheless timely because the instant action was "commenced" on June 22, 2015 when the instant case was severed from Case No. BC531848. Ethicon does not cite any authority for this argument, and the Court is not persuaded. The filing date of the Complaint in Case No. BC521848 is the "commencement date" for purposes of § 1446(c)(1). See, e.g., Wejrowski v. Wyeth, No. 4:06CV292 CDP, 2012 WL 2367388, at *3 (E.D. Mo. June 21, 2012) ("But even though the plaintiffs' second amended complaint will proceed as an independent claim from the point it was severed, it was still part of the original case filed on July 7, 2004, and the state court recognized that it was commenced then. Defendant's opportunity to remove was limited to one year from that original commencement date, and the intervening removal, remand, and severance have no effect on the one-year time limit.").

Finally, Ethicon argues that even if removal is not timely under § 1446(c)(1), the statute does not bar removal when the delay is due to Plaintiff's bad faith conduct and state court docket delays. First, Ethicon notes that while Plaintiff has served other defendants, she has yet to serve Ethicon. See Escalante v. Burlington Nat. Indem. Ltd., No. 2:14-CV-7273 ODW, 2014 WL 6670002, at *4 (C.D. Cal. Nov. 24, 2014); WMCV Phase, LLC v. Tufenkian Carpets Las Vegas, LLC, No. 2:12-CV-01454-RJC-PAL, 2012 WL 5198478, at *2 (D. Nev. Oct. 18, 2012). However, there is no evidence that Plaintiff's delay in serving Ethicon was intended to stymie removal—the case did not become potentially removable until the case was severed, well after § 1446(c)(1)'s one-year period had expired. Second, Ethicon argues that Plaintiff's counsel's repeated misjoinder of nondiverse plaintiffs to keep their cases out of federal courts constitutes bad faith under § 1446(c)(1). Here, Ethicon emphasizes that Plaintiff's counsel originally joined sixty-four diverse plaintiffs with three non-diverse plaintiffs and argues that this was purely a "manipulative tactic[]" employed to defeat diversity. Ethicon notes that Plaintiff's attorneys have filed similar lawsuits with similarly skewed ratios of diverse to non-diverse plaintiffs. "The Ninth Circuit has not addressed the standard to be applied to meet the bad faith requirement of the amendment to Section 1446 nor has it recognized any equitable exceptions to section 1446(c)(1). . . . While it is unclear what standard would be used in this context, the requirement that a party acts in bad faith sets a high threshold." NKD Diversified Electronics, Inc. v. First Mercury Ins. Co., No. 1:14-cv-00183-AWI-SAB, 2014 WL 1671659, at *3 (N.D. Cal. Apr. 28, 2014) (internal citations omitted). Defendants argued fraudulent joinder when they first removed this action to this Court, and the Court found no evidence that joinder was "egregious." See Case. No. 14-CV-899 JGB (Spx), Docket No. 32 at 4. Similarly, Ethicon has now failed to provide evidence showing that the handful of non-diverse plaintiffs in this case were joined in bad faith. Third, Ethicon argues that state court docket delays warrant equitable tolling of § 1446(c)(1)'s one-year period. As noted in NKD Diversified, the Ninth Circuit has not recognized equitable exceptions to § 1446(c)(1).

Accordingly, Ethicon's Notice of Removal is not timely under § 1446(c)(1).



EXHIBIT
**2**

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 15-5385 PA (Ex) | Date | July 21, 2015 |
|---|---|---|---|
| Title | Vickie Skelton v. Johnson & Johnson, et al. | | |

### Conclusion

For the foregoing reasons, Ethicon has failed to meet its burden of showing that diversity jurisdiction exists over this action.[2] Accordingly, this action is hereby remanded to the Los Angeles Superior Court, Case No. BC531848EEE. See 28 U.S.C. § 1447(c), for lack of subject matter jurisdiction.

IT IS SO ORDERED.

---

[2] Although the Court recognizes that the one-year limitation addressed above is procedural, the amount in controversy requirement is jurisdictional. See Smith v. Mylan, Inc., 761 F.3d 1042, 1043 (9th Cir. 2014) ("We hold that the district court a[c]t[ed] of its statutory authority because the one-year time limitation for removal of diversity cases under § 1446(b) is a procedural requirement rather than jurisdictional. While the district court may remand at any time prior to final judgment for lack of subject matter jurisdiction, it cannot remand sua sponte based on a non jurisdictional defect because procedural deficiencies are waivable.").

**EXHIBIT**

**2**

33

CONFORMED COPY
ORIGINAL FILED
Superior Court Of California
County Of Los Angeles

DEC 3 0 2013

Sherri R. Carter, Executive Officer/Clerk
By: Kristina Vargas, Deputy

1  Thomas v. Girardi, SBN 36603
2  Amy F. Solomon, SBN 140333
   GIRARDI | KEESE
3  1126 Wilshire Boulevard
   Los Angeles, California 90017
4  Telephone:  (213) 977-0211
5  Facsimile:  (213) 481-1554

6  Kurt B. Arnold Texas SBN 24036150
7  Jason A. Itkin Texas SBN 24032461
   Noah M. Wexler
8  ARNOLD & ITKIN LLP
   1401 McKinney Street, Suite 2550
9  Houston, Texas 77010
10 Telephone:  (713) 222-3800
   Facsimile:  (713) 222-3850
11

12 J. Steve Mostyn SBN 00798389
   The Mostyn Law Firm
13 3810 West Alabama Street
   Houston, TX 77027
14 Telephone:  (713) 861-6616
15 Facsimile:  (713) 861-8084

16 Attorney(s) For: Plaintiff(s)

17            SUPERIOR COURT OF THE STATE OF CALIFORNIA
18                      COUNTY OF LOS ANGELES
19

20 XOCHILT ROBINSON; THERESA          )   CASE NO.  BC 5 3 1 8 4 8
21 BARNES; PATRICIA GIBBS; KELLY      )
   BRADLEY-LERMA; JOANN NUNES;        )   COMPLAINT FOR DAMAGES AND
22 PHYLLIS GOODMAN; DINA              )   DEMAND FOR JURY TRIAL
   GUASE; JUDY MAY; WILHELMINA        )
23 NEWMAN; PAMELA STEWART;            )      1.  Negligence & Negligence Per Se;
24 IRENE TOBIN; CYNTHIA               )      2.  Design Defect;
   TORTORICI; BONNIE HAND;            )      3.  Manufacturing Defect;
25 FLORENCE BUCHANAN; VENITA          )      4.  Failure to Warn;
26 MASTERS; BIBIANA QUIAMBAO;         )      5.  Breach of Implied Warranties; and
   LISHA MCMILLAN; CAROLYN            )      6.  Gross Negligence
27 BLACKMER; JANE HEWLETT;            )
28 ILHAM DAGON; SANDRA                )
   HAMANN; DONNA PEARSON;             )

**EXHIBIT**

**3**

1

_____
                COMPLAINT FOR DAMAGES

RUTH GAUNT; BEVERLY
TINKHAM; SARA CARMONA;
JOYCE REAVIS; JANICE HIRD;
GEORGINA VOKATY; DAWN
CUNNINGHAM; PAMELA PEELE;
MARY EDWARDS; VICKIE
SKELTON; MARY FRIEL; MARIE
PARNELL; MARIAN MOXLEY;
MALLAH BUELL; SHIRLEY
STEWART; SHIRLENE HUFFMAN;
SUSAN SCHURICHT; VALENTINE
SCHULER; LINDA BERRY; TAMMY
PIAZZA; MARTHA DAVIS; MARY
KATUIN; JUDITH FESLER; SHARON
LOUGHMAN; TRACY MULLER;
AVA KRUM; LINDA WALTON;
HILDEGARD MILEUSNIC;
MARGARET DULEY; BOBBIE JO
RENUCCI; ANGELA MCCASKELL;
LAURI KOTZEN; MARIE WICK;
MARCILLE MILLER; SHERRY
ROBERTS; GWEN PELTIER; MERRY
BREEDEN; MEDINA OMEROVIC;
NOLA PIOTROSWSKI; LISA
MURPHY; SERENA COOVERT;
REGINA WEST; MAIDA NAQUIN;
MARY ORSI AND JADA SPANGLER

Plaintiffs,

vs.

JOHNSON & JOHNSON, a New Jersey
Corporation; ETHICON, INC., a New
Jersey Corporation; ETHICON, LLC, a
Limited Liability Company; and DOES
1 through 500, inclusive,

Defendants.

**EXHIBIT**

**3**

2

**COMPLAINT FOR DAMAGES**

## Plaintiffs' Original Complaint

Plaintiffs, as identified in further detail below, bring this action for damages against Defendants, as identified in further detail below, and would show the Court as follows:

### I.

### Parties

**A.   Plaintiffs**

1.      At all relevant times, Plaintiffs resided in the United States of America or its territories. Plaintiffs include women who had Defendants' Mesh Products implanted in their bodies.  There are a total of sixty-six (66) Plaintiffs bringing claims in this action.

2.      As a result of Defendants' intentional and coordinated conduct, Plaintiffs were implanted with Defendants' defective and dangerous Mesh Products.  Plaintiffs' use of Defendants' Mesh Products caused Plaintiffs' injuries and resulting damages. As pled with additional particularly herein, Defendants' Mesh Products were defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with their use.

3.      Plaintiff Xochilt Robinson is an adult female resident and citizen of California who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

4.      Plaintiff Theresa Barnes is an adult female resident and citizen of California who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

5.      Plaintiff Patricia Gibbs is an adult female resident and citizen of California who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

**EXHIBIT**

**3**

3

6.   Plaintiff Kelly Bradley-Lerma is an adult female resident and citizen of California who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

7.   Plaintiff Joann Nunes is an adult female resident and citizen of California who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

8.   Plaintiff Phyllis Goodman is an adult female resident and citizen of California who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

9.   Plaintiff Dina Guase is an adult female resident and citizen of California who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

10.   Plaintiff Judy May is an adult female resident and citizen of California who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

11.   Plaintiff Wilhelmina Newman is an adult female resident and citizen of California who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

12.   Plaintiff Pamela Stewart is an adult female resident and citizen of California who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

13.   Plaintiff Irene Tobin is an adult female resident and citizen of New Jersey who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

**EXHIBIT**

**3**

4

**COMPLAINT FOR DAMAGES**

14.     Plaintiff Cynthia Tortorici is an adult female resident and citizen of New Jersey who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

15.     Plaintiff Bonnie Hand is an adult female resident and citizen of New Jersey who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

16.     Plaintiff Florence Buchanan is an adult female resident and citizen of Missouri who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

17.     Plaintiff Venita Masters is an adult female resident and citizen of Georgia who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

18.     Plaintiff Bibiana Quiambao is an adult female resident and citizen of Virginia who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

19.     Plaintiff Lisha McMillan is an adult female resident and citizen of Maryland who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

20.     Plaintiff Carolyn Blackmer is an adult female resident and citizen of Vermont who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

21.     Plaintiff Jane Hewlett is an adult female resident and citizen of New York who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

**EXHIBIT**

**3**

5

22.     Plaintiff Ilham Dagon is an adult female resident and citizen of Arizona who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

23.     Plaintiff Sandra Hamann is an adult female resident and citizen of Minnesota who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

24.     Plaintiff Donna Pearson is an adult female resident and citizen of North Carolina who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

25.     Plaintiff Ruth Gaunt is an adult female resident and citizen of Pennsylvania who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

26.     Plaintiff Beverly Tinkham is an adult female resident and citizen of Rhode Island who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

27.     Plaintiff Sara Carmona is an adult female resident and citizen of Florida  who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

28.     Plaintiff Joyce Reavis is an adult female resident and citizen of Virginia who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

29.     Plaintiff Janice Hird is an adult female resident and citizen of Colorado who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

EXHIBIT

3

6

**COMPLAINT FOR DAMAGES**

30.     Plaintiff Georgina Vokaty is an adult female resident and citizen of Minnesota who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

31.     Plaintiff Dawn Cunningham is an adult female resident and citizen of Maryland who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

32.     Plaintiff Pamela Peele is an adult female resident and citizen of North Carolina who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

33.     Plaintiff Mary Edwards is an adult female resident and citizen of Missouri who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

34.     Plaintiff Vickie Skelton is an adult female resident and citizen of Arkansas who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

35.     Plaintiff Mary Friel is an adult female resident and citizen of New York who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

36.     Plaintiff Marie Parnell is an adult female resident and citizen of South Carolina who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

37.     Plaintiff Marian Moxley is an adult female resident and citizen of Missouri who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

**EXHIBIT**

**3**

7

38.     Plaintiff Mallah Buell is an adult female resident and citizen of Missouri who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

39.     Plaintiff Shirley Stewart is an adult female resident and citizen of South Carolina who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

40.     Plaintiff Shirlene Huffman is an adult female resident and citizen of Mississippi who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

41.     Plaintiff Susan Schuricht is an adult female resident and citizen of Wyoming who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

42.     Plaintiff Valentine Schuler is an adult female resident and citizen of Wisconsin who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

43.     Plaintiff Linda Berry is an adult female resident and citizen of Illinois who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

44.     Plaintiff Tammy Piazza is an adult female resident and citizen of Oregon who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

45.     Plaintiff Martha Davis is an adult female resident and citizen of Oregon who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

**EXHIBIT**

**3**

8

**COMPLAINT FOR DAMAGES**

46.     Plaintiff Mary Katuin is an adult female resident and citizen of Iowa who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

47.     Plaintiff Judith Fesler is an adult female resident and citizen of Indiana who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

48.     Plaintiff Sharon Loughman is an adult female resident and citizen of Ohio who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

49.     Plaintiff Tracy Muller is an adult female resident and citizen of Oregon who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

50.     Plaintiff Ava Krum is an adult female resident and citizen of Texas who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

51.     Plaintiff Linda Walton is an adult female resident and citizen of Oregon who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

52.     Plaintiff Hildegard Mileusnic is an adult female resident and citizen of Nevada who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

53.     Plaintiff Margaret Duley is an adult female resident and citizen of Illinois who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

**EXHIBIT**

**3**

9

**COMPLAINT FOR DAMAGES**

42

54.     Plaintiff Bobbie Jo Renucci is an adult female resident and citizen of Michigan who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

55.     Plaintiff Angela McCaskell is an adult female resident and citizen of California who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

56.     Plaintiff Lauri Kotzen is an adult female resident and citizen of Massachusetts who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

57.     Plaintiff Marie Wick is an adult female resident and citizen of Massachusetts who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

58.     Plaintiff Marcille Miller is an adult female resident and citizen of Michigan who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

59.     Plaintiff Sherry Roberts is an adult female resident and citizen of Alabama who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

60.     Plaintiff Gwen Peltier is an adult female resident and citizen of Minnesota who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

61.     Plaintiff Merry Breeden is an adult female resident and citizen of Kansas who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

**EXHIBIT**

**3**

10

**COMPLAINT FOR DAMAGES**

62.     Plaintiff Medina Omerovic is an adult female resident and citizen of Michigan who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

63.     Plaintiff Nola Piotroswski is an adult female resident and citizen of Michigan who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

64.     Plaintiff Lisa Murphy is an adult female resident and citizen of Florida who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

65.     Plaintiff Serena Coovert is an adult female resident and citizen of Colorado who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

66.     Plaintiff Regina West is an adult female resident and citizen of Colorado who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

67.     Plaintiff Maida Naquin is an adult female resident and citizen of New Mexico who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

68.     Plaintiff Mary Orsi is an adult female resident and citizen of Washington who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

69.     Plaintiff Jada Spangler is an adult female resident and citizen of Ohio who was implanted with one of Defendants' Mesh Products and brings claims as set forth herein for resulting injuries and damages.

**EXHIBIT**

**3**

11

**COMPLAINT FOR DAMAGES**

**B.**   **Defendants**

70.   Defendant Johnson & Johnson ("J&J") is a New Jersey corporation with its worldwide headquarters located at One Johnson & Johnson Plaza, New Brunswick, New Jersey. Johnson & Johnson organizes its subsidiary businesses into individual Business Units to coordinate the development, manufacture, testing, marketing promotion, training, distribution and sale of its' Mesh Products as described herein.

71.   Within J&J there are three sectors, medical devices and diagnostics, pharmaceutical, and consumer. Within the medical devices and diagnostic sector are "Business Units" including the "Ethicon Franchise." The Ethicon Franchise was charged by J&J with the design, development, promotion, marketing, testing, training, distribution and sale of the Mesh Products at issue in this case. The Company Group Chairman and Worldwide Franchise Chairman for the Ethicon Franchise, Gary Pruden, is employed by J&J. The companies which comprise the Ethicon Franchise are thus controlled by J&J and include, but are not limited to, Ethicon Inc., Ethicon LLC, Ethicon LTD.

72.   Defendant, Ethicon, Inc. is a wholly owned subsidiary of Defendant J&J which maintains its principle place of business in Somerville, New Jersey.

73.   Defendant, Ethicon, LLC, is a wholly owned subsidiary of Johnson & Johnson Medical, Inc., with its principle place of business in San Lorenzo, Puerto Rico. Ethicon LLC was charged by J&J with the manufacture of Ethicon Inc.'s Mesh Products.

74.   Defendants J&J, Ethicon, Inc., and Ethicon, LLC are collectively referred to herein as Defendants.

75.   Defendants designed, manufactured, packaged, labeled, marketed, sold, and distributed the transvaginal mesh products at issue in this matter (collectively referred to herein as "Defendants' Mesh Products" or "Mesh Products").

76.   Defendants are citizens of New Jersey.

**EXHIBIT**

**3**

12

## II.

### Jurisdiction & Venue

77.     Jurisdiction in this Court is proper as Defendants do business in the state of California and committed torts in whole or in part against Plaintiffs in California.

78.     Venue is proper in this Court pursuant to Cal. Civ. Proc. Code § 395 because one or more of the named Defendants reside in Los Angeles County, maintained their principal place of business in Los Angeles County, and maintain their registered agent for service in Los Angeles County. Further, one or more of the named Plaintiffs reside in, were implanted with Defendants' Mesh Products, and/or were injured in Los Angeles County, California.

79.     At all times material to this action, Defendants and/or their predecessors in interest and/or its subsidiaries, regularly engaged in business in California and Los Angeles County, including advertising, analyzing, assembling, designing, developing, distributing, inspecting, labeling, manufacturing, marketing, packaging, producing, processing, promoting, researching, selling, testing, and/or training in the use of the Mesh Products.

80.     Defendants regularly solicit and transact business in, receive substantial revenues from, and/or distribute products in California and Los Angeles County.

81.     It was reasonably foreseeable to Defendants that the Mesh Products would be used on patients such as Plaintiffs and in the state of California and Los Angeles County.

82.     At all relevant times, Defendants transacted business in the state of California and Los Angeles County.

83.     At all relevant times, Defendants committed tortious conduct within the state of California and Los Angeles County.



EXHIBIT
**3**
13

---

**COMPLAINT FOR DAMAGES**

46

84.     At all relevant times, Defendants used or possessed property situated in the state of California and Los Angeles County.

85.     At all relevant times, Defendants marketed, promoted, and sold their Mesh Products throughout the state of California and Los Angeles County.

86.     Defendants' contacts with the state of California and Los Angeles County were at all relevant times systematic and continuous such that the exercise of jurisdiction comports with the notions fair play and substantial justice.

87.     Additionally, some Plaintiffs named herein were implanted with and suffered injury as a direct and proximate result of Defendants' Mesh Products and/or Defendants' acts and/or omissions in the state of California and Los Angeles County.

88.     Plaintiffs do not assert claims or rights arising under the Constitution, treaties, or laws of the United States; thus, there is no federal question at issue pursuant to 28 U.S.C.§1441(b) and 28 U.S.C. §1331.

89.     Complete diversity of citizenship is lacking pursuant to 28 U.S.C. §1441(b) and 28 U.S.C. §1332(c) as certain Plaintiffs and Defendants are citizens of the same state.

90.     Plaintiffs' claims are brought pursuant to state law. As such, there is no federal subject matter jurisdiction because no federal question is raised and complete diversity does not exist.

91.     Plaintiffs' claims present common questions of fact and law concerning, as alleged herein, what information Defendants possessed concerning the harmful effects of the Mesh Products, what information Defendants chose to disclose, and what information Defendants were required by law to disclose about those harmful effects.

92.     Plaintiffs' claims are logically related because all Plaintiffs allege the same claims related to their use of Mesh Products. Further, these Mesh Products were defectively designed,

**EXHIBIT**

**3**

14

manufactured, marketed and sold by Defendants, and Defendants failed to provide appropriate warnings and instructions regarding the dangers posed by these Mesh Products.

93.     Defendants' conduct, which resulted in Plaintiffs' injuries, is common to all Plaintiffs and includes, but is not limited to, Defendants' failure to conduct adequate safety and efficacy testing, Defendants' submissions to the regulatory agency that indicated that the Mesh Products were the substantial equivalent to pre-existing and previously approved devices, Defendants' marketing materials and literature, and Defendants' failure to provide adequate warnings regarding the risks associated with Defendants' Mesh Products.

94.     Defendants' conduct in designing, developing, marketing, and distributing these products relates to all Plaintiffs and provides a common universe of facts underlying Plaintiffs' claims, such that Plaintiffs' claims against Defendants arise from the same transaction or occurrence or the same series of transactions or occurrences.

95.     Plaintiffs suffered injuries and damages following as a result of Defendants' Mesh Products, and common liability facts will be presented to demonstrate that Defendants' knew or should have known that their Mesh Products cause such serious complications and injuries.

96.     Discovery will be identical for all Plaintiffs' claims with respect to Defendants' conduct and regulatory violations, as all claims arise out of the same acts and/or omissions of Defendants and involve common questions of law and/or fact.

97.     Joinder of Plaintiffs' claims is proper because Plaintiffs' claims arise out of the same acts and/or omissions of Defendants and involve common questions of law and/or fact.

98.     This is an action for damages that exceed the minimum jurisdictional limits of this Court.



EXHIBIT

3

15

99.     Plaintiffs have timely filed this lawsuit within the applicable statutory limitations period.

100.    All conditions precedent have been satisfied or have occurred.

101.    Plaintiffs' claims are not removable to federal court on the basis of diversity jurisdiction, federal question jurisdiction, or any other jurisdictional basis, any attempt to remove this matter would be improper and would provide grounds for sanctions.

### III.

### Tolling of Statute Of Limitations

102.    Plaintiffs assert all applicable state statutory and common law rights and theories related to the tolling or extension of any applicable statute of limitations, including equitable tolling, delayed discovery, discovery rule, and/or fraudulent concealment.

103.    Despite diligent investigation by Plaintiffs into the cause of their injuries, the nature of Plaintiffs' injuries and damages and their relationship to the Mesh Products was not discovered, and through reasonable care and due diligence could not have been discovered, until a date within the applicable statute of limitations for filing Plaintiffs' claims. Therefore, under appropriate application of the discovery rule, Plaintiffs' suit was filed within the applicable statutory limitations period.

104.    Further, the running of the statute of limitations in this cause is tolled under the doctrine of equitable tolling. Defendants are estopped from asserting a statute of limitations defense due to Defendants' concealment of the true risks associated with the use of the Mesh Products. Plaintiffs could not have reasonably discovered the wrongdoing. As a direct and proximate result of Defendants' concealment, the Plaintiffs suffered severe injuries and damages.



16

COMPLAINT FOR DAMAGES

## IV.

### General Allegations

105.   At all relevant times, Defendants designed, patented, tested, manufactured, labeled, marketed, sold, and distributed the Mesh Products in question.   Defendants' Mesh Products were designed primarily for the purposes of treating pelvic organ prolapse ("POP") and stress urinary incontinence ("SUI").

106.   POP is a condition that results from weakened or stretched tissues that support the female pelvic organs. When treating POP, the Mesh Products are usually implanted vaginally to reinforce the vaginal wall.

107.   SUI is a medical condition involving involuntary leakage of urine during moments of physical activity.  When treating SUI, Defendants' Mesh Products are usually implanted vaginally to support a patient's urethra.

108.   Surgical mesh products have been used to repair abdominal hernias for decades. In the 1990's surgeons began using surgical mesh for the treatment of POP and SUI.  At or near that time, Defendants began to modify the mesh previously used for abdominal hernia repairs to be used as products specifically marketed for the surgical treatment of POP and SUI.   Defendants began marketing these Mesh Products along with the tools and appurtenances used for pelvic area tissue insertion and fixation.

109.   Defendants' Mesh Products are targeted for use in women who suffer from POP and/or SUI. Defendants' Mesh Products are composed of biologic and/or non-absorbable synthetic.  Despite Defendants' claims that the materials used in their Mesh Products are inert, the scientific evidence indicates that this material is biologically incompatible with human tissue and promotes a negative



**EXHIBIT**

**3**

17

**COMPLAINT FOR DAMAGES**

immune response and/or inflammation of pelvic tissue in a large subset of patients frequently resulting in significant adverse events, severe injuries, and debilitating medical complications.

110.   Further, the collagen components of Defendants' Mesh Products cause hyper-inflammatory responses leading to medical problems including, but not limited to, chronic pain and fibrotic reaction. Defendants Mesh Products cause chronic pain, fibrotic reaction, disability, and infection resulting from hyper-inflammatory responses to Defendants' Mesh Products.

111.   Defendants' Mesh Products cause erosion through vaginal epithelium, infection, pain, urinary problems, and recurrence of prolapse and/or incontinence in addition to complications at the time of insertion, which included the perforation of the bowel, bladder, and blood vessels.   In addition, Defendants' Mesh Products degrade, fragment, shrink, migrate, and fold after implantation.

112.   Defendants' Mesh Products are biologically incompatible with human tissue and stimulate a negative immune response in patients.  This negative response promotes inflammation of the pelvic tissue and contributes to the formation of severe adverse reactions to the mesh, such as those experienced by Plaintiffs.

113.   Despite having knowledge of these serious side effects, Defendants have continued to market the Mesh Products as safe treatment options for POP and SUI.

114.   At all relevant times, Defendants knew or should have known of the risks and complications associated with Defendants' Mesh Products. Defendants knew or should have known that the Mesh Products unreasonably exposed patients to the risk of serious harm while conferring no benefit over available feasible alternatives that do not involve the same risks.

115.   At all relevant times, Defendants possessed the knowledge, the means, and the duty to adequately warn regarding the risks associated with the Mesh Products.



EXHIBIT

**3**

18

---

**COMPLAINT FOR DAMAGES**

116.   At all relevant times, Defendants, their agents, servants, and employees acting in the course and scope of their employment, negligently and recklessly breached their duty to adequately warn regarding the risks associated with the Mesh Products.

117.   At all relevant times, Defendants knew or should have known that the Mesh Products exposed Plaintiffs to unreasonable risk while failing to provide significant improvement in clinical outcomes over alternative treatments which were equally or more effective and did not involve the same risk.

118.   Despite having extensive knowledge of the extreme risks associated with the use of the Mesh Products, as well as the absolute duty to properly and adequately warn foreseeable users, Defendants failed to adequately warn of the risks associated with the Mesh Products.

119.   Defendants knew of the dangerous side effects associated with the Mesh Products. Defendants failed to properly evaluate the risk profile of the Mesh Products or did not properly publish, disclose, and/or disseminate the results of the testing and studies it did conduct. Defendants failed to adequately warn or remedy the risks associated with the Mesh Products, but instead concealed, suppressed and failed to disclose the dangers.

120.   Defendants omitted the risks, dangers, defects, and disadvantages of the Mesh Products, and advertised, promoted, marketed, sold and distributed the Mesh Products as safe medical devices when Defendants knew or should have known that the Mesh Products were not safe for their intended purposes, and that the Products would cause, and did cause, serious medical problems for Plaintiffs.

121.   Contrary to Defendants' representations and marketing, Defendants' Mesh Products have significantly high rates of failure, injury, and complications, fail to perform as intended, and have caused severe and irreversible injuries to Plaintiffs.

**EXHIBIT**

**3**

19

122.   Defendants failed to adequately disclose, report, and/or disseminate information regarding the propensity of the Mesh Products to fail and cause injury and complications, and have made unfounded representations regarding the efficacy and safety of the Mesh Products through various means and media. Defendants have also underreported information about the injuries caused by the use of the implantation kits and instructions that accompany Defendants' Mesh Products.

123.   Defendants failed to adequately test and evaluate the risks and benefits of Defendants' Mesh Products.  Further, Defendants failed to design and establish a safe, effective procedure for removal of the Mesh Products, or to determine if a safe, effective procedure for removal of the Mesh Products exists.

124.   At all relevant times, feasible, suitable, safer, and more effective alternatives to the Mesh Products existed.

125.   At all relevant times, Defendants continued to promote the Mesh Products as safe and effective having conducting no clinical trials to support the efficacy and safety of the Mesh Products.

126.   Defendants failed to disclose, train, or disseminate information about the known risks and failed to warn of dangers and risks associated with the Mesh Products of which Defendants knew or should have known.

127.   Defendants failed to provide adequate warnings, training, and instructions about the dangers and adverse effects caused by the Mesh Products. Defendants' Mesh Products were defective as marketed due to inadequate warnings, training instructions, labeling and/or inadequate testing.

128.   Defendants' Mesh Products were in the same or substantially similar condition as they were when they left Defendants' possession, and in the condition directed by and expected by Defendants.



**EXHIBIT**
**3**

20

**COMPLAINT FOR DAMAGES**

129.   Defendants' Mesh Products were at all times utilized and implanted in a manner foreseeable to Defendants.

130.   The injuries, conditions, and complications suffered by those implanted with Defendants' Mesh Products were foreseeable consequences of Defendants' conduct and the dangerous and defective nature of Defendants' Mesh Products.

131.   As a direct and proximate result of Defendants' Mesh Products and/or Defendants' negligence, negligence per se, defective design, defective manufacture, failure to warn, breach of implied warranties, and/or gross negligence, Plaintiffs have suffered and will continue to suffer severe injuries and damages as further described herein.

**V.**

**Plaintiffs' Mesh Implants & Resulting Injuries**

132.   Plaintiffs incorporate by reference all the above paragraphs as if set forth in full herein.

133.   Plaintiffs bring this action to recover damages resulting from injuries suffered as a direct and proximate result of the implantation of Defendants' Mesh Products.

134.   Plaintiffs' use of Defendants' Mesh Products caused Plaintiffs' injuries and resulting damages.   During Plaintiffs' procedures, Defendants' Mesh Products were used in a manner reasonably foreseeable to Defendants.   Defendants' Mesh Products were defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the dangers associated with the Mesh Products use at the time of their implantation in Plaintiffs.

135.   Plaintiffs have suffered serious injuries and damages as a direct and proximate result of Defendants' Mesh Products.   Plaintiffs' injuries necessitate continued medical treatment for the foreseeable future.



EXHIBIT
**3**
21

**COMPLAINT FOR DAMAGES**

51

136.    Prior to Plaintiffs' respective surgeries, Defendants knew or should have known of the risks associated with implantation of the Mesh Products and possessed the means to provide adequate warning regarding the risks associated with Defendants' Mesh Products.   Had Plaintiffs been adequately warned that Defendants' Mesh Products could cause serious side effects, they would have not have undergone treatment involving Defendants' Mesh Products.

137.    As a direct and proximate result of Defendants' conduct, Plaintiffs and Plaintiffs' implanting physicians, were unaware, and could not reasonably know, or through the exercise of reasonable diligence could not have known, that the Mesh Products exposed Plaintiffs to the risks and injuries alleged herein.

138.    As a direct and proximate result of Defendants' conduct, Plaintiffs suffered physical injuries and damages. Further, the Plaintiffs have sustained in the past, and will sustain in the future, pain and suffering, mental anguish, emotional distress, disfigurement, physical impairment, embarrassment and humiliation, psychological injury, a reasonable and traumatic fear of an increased risk of additional injuries, progression of existing conditions, and other serious injury and loss.

139.    Plaintiffs also have suffered and will sustain past and future general and special damages, including past and future medical care and treatment, lost wages, and lost earning capacity.

140.    As a direct and proximate result of Defendants' conduct and/or Defendants' Mesh Products, Plaintiffs have incurred, and will continue to incur for the foreseeable future, medical, nursing, diagnostic, hospital, pharmaceutical, rehabilitative, and other related costs and expenses for Plaintiffs' treatment and care, along with lost wages, lost earning capacity, and other damages for which they are entitled to compensation.

141.    Plaintiffs are entitled to punitive damages because Defendants' conduct was reckless and without regard for the Plaintiffs' and the public's safety and welfare. Defendants misled both the

**EXHIBIT**

**3**

22

medical community and the public at large, including the Plaintiffs, by making false representations about the safety of the Mesh Products. Defendants downplayed, understated and/or disregarded its knowledge of the serious risks associated with the Mesh Products.   Nevertheless, Defendants continued to market the Mesh Products by providing false and misleading information with regard to their safety and efficacy.  Defendants' conduct constitutes a willful, despicable, fraudulent, malicious, oppressive, reckless, and conscious disregard for the rights of Plaintiffs and the public.

142.    Defendants are liable both jointly and severally to the Plaintiffs for all damages, punitive damages, and all other relief to which Plaintiffs are entitled to by law or equity.

## VI.

## Plaintiffs' Causes Of Action

143.    Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

144.    Plaintiffs set forth the following claims in the alternative, such that the sufficiency of this Complaint shall not be defeated by an inconsistency or insufficiency among any one or more of the alternative claims set forth herein.

## Count I: Negligence & Negligence Per Se

145.    Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

146.    At relevant times, Defendants had a duty to Plaintiffs to exercise reasonable care in designing, manufacturing, marketing, labeling, packaging, sale, and distribution of Defendants' Mesh Products.

147.    Defendants are liable to Plaintiffs as a result of Defendants' negligent advertising, analyzing, assembling, designing, developing, distributing, inspecting, labeling, manufacturing,

EXHIBIT

**3**

23

marketing, packaging, patenting, producing, processing, promoting, selling, testing, and/or training in the use of Defendants' Mesh Products.

148.    Defendants were under a duty to exercise reasonable care in advertising, analyzing, assembling, designing, developing, distributing, inspecting, labeling, manufacturing, marketing, packing, producing, promoting, processing, researching, selling, and testing the Mesh Products.

149.    Defendants owed a duty to adequately warn of the risks, dangers, and adverse effects associated with the use of Defendants' Mesh Products.

150.    Defendants negligently and carelessly breached the above-described duties to Plaintiffs by:

> a.    Failing to design and manufacture the Mesh Products without defects that would result in an unreasonable risk of harm to patients implanted with the Mesh Products;
>
> b.    Failing to exercise reasonable care in testing the Mesh Products prior to marketing, sale, and distribution of the Mesh Products so as to avoid unreasonable risk of harm and injury to patients implanted with the Mesh Products;
>
> c.    Failing to exercise reasonable care in inspecting the Mesh Products prior to distribution to avoid the implantation of the defective Mesh Products in women and exposing them to unreasonable risk or harm.
>
> d.    Failing to ensure the Mesh Products warnings to the medical community, physicians, the Plaintiffs' physicians, and Plaintiffs were accurate and adequate, despite having extensive knowledge of the risks associated with the Mesh Products;
>
> e.    Failing in their obligation to provide relevant information, data and warnings regarding the adverse health risks associated with exposure to the Mesh Products, and/or that there existed safer and more or equally effective alternative methods or treatment options;
>
> f.    Failing to conduct post market safety surveillance and report that information;
>
> g.    Failing to include adequate warnings and/or provide adequate and clinically relevant information;

**EXHIBIT**

**3**

24

---

**COMPLAINT FOR DAMAGES**

5γ

h.    Failing to continually monitor, test, and analyze data regarding safety, efficacy, and the implantation practices for the Mesh Products;

i.    Failing to review all adverse product event information and to report any information bearing upon the adequacy and/or accuracy of their warnings, efficacy, or safety, including the risks and/or prevalence of side effects caused by the Mesh Products to the appropriate parties;

j.    Failing to provide adequate post-marketing warnings and instructions;

k.    Failing to disclose the results of the testing and other information in their possession regarding the possibility that the Mesh Products can cause serious and catastrophic side effects;

l.    Failing to adequately warn about the dangers of using the Mesh Products;

m.    Promoting and marketing the Mesh Products as safe and effective for use with women when, in fact, they were unsafe;

n.    Failing to act as a reasonably prudent product manufacturer in advertising, analyzing, assembling, designing, developing, distributing, inspecting, labeling, manufacturing, marketing, packaging, producing, processing, promoting, researching, selling, testing, and/or training in the use of the Mesh Products;

o.    Failing to perform adequate and necessary studies to determine and analyze the safety and risks associated with the safety and efficacy of the Mesh Products' use;

p.    Continuing to promote the safety and effectiveness of the Mesh Products, while downplaying their risks, even after Defendants knew or should have known of the risks of the Mesh Products;

q.    Negligently and carelessly promoting the Mesh Products as safe and effective for use with women when, in fact, they were unsafe;

r.    Negligently and carelessly over-promoting the Mesh Products in a zealous and unreasonable way, without regard to the potential danger that they posed to patients; and

s.    Negligently and carelessly failing to act as a reasonably prudent product manufacturer, distributor, marketer, promoter, or seller would under same or similar circumstances.

151.    In addition, Defendants' negligence and negligence per se resulted in the negligent design and/or manufacture of Defendants' Mesh Products.

**EXHIBIT**

**3**

25

152.   Defendants negligently failed to instruct and warn Plaintiffs and/or Plaintiffs' physicians, hospitals, health care professionals, and the general public regarding the risks associated with Defendants' Mesh Products.   Specifically, Defendants did not provide sufficient or adequate warnings regarding:

a.   The tendency of the Mesh Products to shrink, migrate, fragment, degrade and deform following implantation;

b.   The propensity of the Mesh Products to cause patients chronic infections;

c.   The propensity of the Mesh Products to require corrective surgery to remove or modify the placement of the Mesh Products;

d.   The Mesh Products design defects outlined herein;

e.   The increased risks associated with the Mesh Products when compared to equally or more effective alternative treatment options;

f.   The increased risk of complications associated with future corrective surgeries following implantation of the Mesh Products when compared to equally or more effective alternative treatment options;

g.   The increased risk for multiple future surgeries;

h.   The tendency of Mesh Products to extrude and erode;

i.   The propensity of Mesh Products to cause chronic infection and recurrent, intractable, and chronic pain;

j.   The propensity of the Mesh Products to cause permanent scarring in the vaginal and pelvic region, following implantation;

k.   The design defects of the Mesh Products which inhibit proper mating with the pelvic and vaginal tissues;

l.   The propensity of the Mesh Products to cause severe complications and expose patients to many health hazards;

m.   The propensity of removal of the Mesh Products to necessitate additional surgeries, exposing the patient to greater risk; and/or

n.   The risk that complete removal of the Mesh Products may not remedy the health issues of the patient.

EXHIBIT
3

26

**COMPLAINT FOR DAMAGES**

153.   Defendants knew or should have known that consumers, such as Plaintiffs, would suffer injury as a result of Defendants' failure to exercise ordinary care, as described above.

154.   Defendants' conduct described herein constitutes negligence *per se*.

155.   As a direct and proximate result of Defendants' negligence and negligence per se, Plaintiffs have sustained permanent injuries and damages as set forth herein.

### Count II: Strict Liability – Design Defect

156.   Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

157.   Defendants are strictly liable to Plaintiffs for injuries and damages suffered as result of the defective design of the Mesh Products.

158.   At all relevant times, Defendants' Mesh Products were not reasonably safe for their intended uses and were defectively designed.

159.   Defendants manufactured, marketed, promoted, distributed, and sold the Mesh Products in the stream of commerce despite the design defects that Defendants knew or should have known of.

160.   Defendants' Mesh Products are defectively designed when compared to safer non-vaginal mesh alternative treatments.  Patients who are implanted with Defendants' Mesh Products are exposed to a number of dangerous defects which include, but are not limited to:

   a.   The Mesh Products cause chronic immune, inflammatory, and fibrotic reactions, infections, tissue breakdown, pain, disability, and/or other resulting injuries and sequelae;

   b.   The materials used in the Mesh Products cause chronic immune, inflammatory, and fibrotic reactions, infections, tissue breakdown, pain, disability, and/or other resulting injuries and sequelae

**EXHIBIT**

**3**

27

c. The design of the Mesh Products and/or implantation kits requires implantation into and through an area of the body with high levels of bacteria that can adhere to the mesh and/or can injure nerves in the pelvic region causing chronic immune, inflammatory, and fibrotic reactions, infections, tissue breakdown, pain, disability, and/or other resulting injuries and sequelae;

d. The design of the Mesh Products increase the likelihood of contracture, shrinkage, erosion, and/or folding causing chronic immune, inflammatory, and fibrotic reactions, infections, tissue breakdown, pain, disability, and/or other resulting injuries and sequelae;

e. The design of the Mesh Product increases the risk of movement, elongation, and/or deformity after implantation causing chronic immune, inflammatory, and fibrotic reactions, infections, tissue breakdown, pain, disability, and/or other resulting injuries and sequelae;

f. The design of the Mesh Products increases the risk of improper mating to the delicate and sensitive areas where they are implanted causing chronic immune, inflammatory, and fibrotic reactions, infections, tissue breakdown, pain, disability, and/or other resulting injuries and sequelae;

g. The design of the Mesh Products increases the risk of degradation, erosion, and/or fragmentation causing chronic immune, inflammatory, and fibrotic reactions, infections, tissue breakdown, pain, disability, and/or other resulting injuries and sequelae;

h. The disintegration of and hyper-inflammatory responses to the collagen components of the Mesh Products cause chronic immune, inflammatory, and fibrotic reactions, infections, tissue breakdown, pain, disability, and/or other resulting injuries and sequelae;

i. The hardening of the Mesh Products following implantation cause chronic immune, inflammatory, and fibrotic reactions, infections, tissue breakdown, pain, disability, and/or other resulting injuries and sequelae; and/or

j. The design of the Mesh Products creates a non-anatomic condition in the pelvis causing chronic immune, inflammatory, and fibrotic reactions, infections, tissue breakdown, pain, disability, and/or other resulting injuries and sequelae.

161. Defendants knew and intended that consumers, including Plaintiffs, would use the Mesh Products, without any inspection for defects, and those using the Mesh Products would rely upon the representations made by Defendant

**EXHIBIT**

**3**

28

---

**COMPLAINT FOR DAMAGES**

162.     Prior to the manufacture, sale, and distribution of the Mesh Products, Defendants knew, or should have known, that the Mesh Products were defectively designed.

163.     The Mesh Products were used for the intended purpose and the dangerous defects could not have been discovered through the exercise of due care.

164.     At the time that Defendants manufactured, marketed, promoted, distributed, and sold the Mesh Products, there existed safer and more or equally effective alternative treatment methods.

165.     Defendants are strictly liable to Plaintiffs for designing, manufacturing, marketing, labeling, packaging, selling and/or distributing the defectively designed Mesh Products.

166.     As a direct and proximate result of Defendants' defective design of the Mesh Products, Plaintiffs have sustained permanent injuries and damages as set forth herein.

### Count III: Strict Liability – Manufacturing Defect

167.     Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

168.     Defendants are strictly liable to Plaintiffs for injuries and damages suffered as result of the defective manufacture of the Mesh Products.

169.     At all relevant times, Defendants' Mesh Products were not reasonably safe for their intended uses and were defectively manufactured.

170.     Defendants' Mesh Products were not reasonably safe for their intended uses and were defective as described herein as a matter of law with respect to their manufacture. These manufacturing defects pose unreasonable risks of serious bodily harm to Plaintiffs.

171.     Defendants knew that the Mesh Products would be used by Plaintiffs without inspection for defects, and that there was a reasonable expectation that Defendants' Mesh Products were free of manufacturing defects.

**EXHIBIT**

**3**

29

172.    Prior to the manufacture, sale, and distribution of the Mesh Products, Defendants knew, or should have known, that the Mesh Products were defectively manufactured.

173.    The Mesh Products used for their intended purpose and the manufacturing defects could not have been and were not discovered through the exercise of due care.

174.    At all relevant times, there existed safer and more or equally effective alternative treatment methods.

175.    Defendants are strictly liable to Plaintiffs for designing, manufacturing, marketing, labeling, packaging, selling and/or distributing the defectively manufactured Mesh Products.

176.    As a direct and proximate result of Defendants' defective manufacture of the Mesh Products, Plaintiffs have sustained permanent injuries and damages as set forth herein.

## Count IV: Strict Liability – Failure to Warn

177.    Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

178.    At all relevant times, Defendants' Mesh Products were not reasonably safe for their intended uses and were defective as a matter of law due to their lack of appropriate and necessary warnings.

179.    Amongst other failures, Defendants did not adequately warn that:

    a.    The Mesh Products cause chronic immune, inflammatory, and fibrotic reactions, infections, tissue breakdown, pain, disability, and/or other resulting injuries and sequelae;

    b.    The materials used in the Mesh Products cause chronic immune, inflammatory, and fibrotic reactions, infections, tissue breakdown, pain, disability, and/or other resulting injuries and sequelae;

    c.    The design of the Mesh Products and/or implantation kits requires implantation into and through an area of the body with high levels of bacteria that can adhere to the mesh and/or can injure nerves in the pelvic region causing chronic

**EXHIBIT**
**3**
30

immune, inflammatory, and fibrotic reactions, infections, tissue breakdown, pain, disability, and/or other resulting injuries and sequelae;

d. The design of the Mesh Products increase the likelihood of contracture, shrinkage, erosion, and/or folding causing chronic immune, inflammatory, and fibrotic reactions, infections, tissue breakdown, pain, disability, and/or other resulting injuries and sequelae;

e. The design of the Mesh Product increases the risk of movement, elongation, and/or deformity after implantation causing chronic immune, inflammatory, and fibrotic reactions, infections, tissue breakdown, pain, disability, and/or other resulting injuries and sequelae;

f. The design of the Mesh Products increases the risk of improper mating to the delicate and sensitive areas where they are implanted causing chronic immune, inflammatory, and fibrotic reactions, infections, tissue breakdown, pain, disability, and/or other resulting injuries and sequelae;

g. The design of the Mesh Products increases the risk of degradation, erosion, and/or fragmentation causing chronic immune, inflammatory, and fibrotic reactions, infections, tissue breakdown, pain, disability, and/or other resulting injuries and sequelae;

h. The disintegration of and hyper-inflammatory responses to the collagen components of the Mesh Products cause chronic immune, inflammatory, and fibrotic reactions, infections, tissue breakdown, pain, disability, and/or other resulting injuries and sequelae;

i. The hardening of the Mesh Products following implantation cause chronic immune, inflammatory, and fibrotic reactions, infections, tissue breakdown, pain, disability, and/or other resulting injuries and sequelae; and/or

j. The design of the Mesh Products creates a non-anatomic condition in the pelvis causing chronic immune, inflammatory, and fibrotic reactions, infections, tissue breakdown, pain, disability, and/or other resulting injuries and sequelae.

180.    At all relevant, times Defendants knew or should have known that the warnings they provided regarding the risks associated with the use of the Mesh Products were inadequate.

181.    Plaintiffs, and the Plaintiffs' healthcare providers, did not have the same knowledge as Defendants, and no adequate warning or other clinically relevant information was communicated to Plaintiffs or Plaintiffs' healthcare providers to adequately apprise them of the risks described herein.

**EXHIBIT**

**3**

31

182.    Defendants had a continuing duty to provide warnings regarding the risks and dangers associated with the Mesh Products as it became or should have become available to Defendants.

183.    Defendants knew or should have known that consumers, and Plaintiffs specifically, would foreseeably and needlessly suffer injury as a result of Defendants' failures to provide adequate warnings.

184.    Through both omissions and affirmative misstatements, Defendants misled Plaintiffs, Plaintiffs' treating physicians, the medical community, and the general public about the risks and benefits of the Mesh Products, which resulted in injury to Plaintiffs.

185.    Despite having inadequate warnings, Defendants continued to aggressively manufacture, market, promote, distribute, and sell the Mesh Products, even after they knew or should have known of the unreasonable risks of from the Mesh Products.

186.    By failing to provide Plaintiffs and the Plaintiff's physicians with adequate, clinically relevant information, and data and warnings regarding the adverse health risks associated with the Mesh Products, Defendants breached their duty of reasonable care and safety.

187.    Defendants are strictly liable to Plaintiffs for designing, manufacturing, marketing, labeling, packaging, selling and/or distributing the Mesh Products with inadequate warnings.

188.    As a direct and proximate result of Defendants' failure to warn, Plaintiffs have sustained permanent injuries and damages as set forth herein.

## Count V: Breach of Implied Warranties

189.    Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

190.    Defendants made implied assurances that the Mesh Products were safe and reasonably fit for their intended purposes.

**EXHIBIT**

**3**

32

**COMPLAINT FOR DAMAGES**

191.    Defendants are liable to Plaintiffs for the breach of implied warranties with respect to Defendants' Mesh Products.

192.    Defendants, by directly and indirectly advertising, marketing, and promoting the Mesh Products, and by placing the Mesh Products into the stream of commerce knowing that the Mesh Products would be implanted in women, impliedly warranted that the Mesh Products were safe, merchantable, effective, and reasonably fit for their intended purposes.

193.    Defendants knew or should have known that users of the Mesh Products would reasonably rely on these implied warranties.

194.    Plaintiffs' use of Defendants' Mesh Products was consistent with the purposes for which Defendants directly and indirectly advertised, marketed, and promoted the Mesh Products.

195.    Defendants breached these implied warranties because the Mesh Products implanted in Plaintiffs were unreasonably dangerous and defective and not as Defendants had represented.

196.    As a direct and proximate result of Defendants' breach of implied warranties, Plaintiffs have sustained permanent injuries and damages as set forth herein.

## Count VI: Gross Negligence

197.    Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

198.    At all relevant times, Defendants failed to perform adequate testing to ensure that the Mesh Products were reasonably safe for implantation in patients, including Plaintiffs.

199.    At all relevant times Defendants designed, patented, tested, manufactured, labeled, marketed, sold, and distributed the Mesh Products with actual and/or constructive knowledge that the Mesh Products can shrink, disintegrate and/or degrade inside the body, and cause the other serious medical problems and resulting sequelae.

**EXHIBIT**

**3**

33

200.   Defendants consciously disregarded reports from regulatory agencies, patients, the medical community, and individual health care providers that the Mesh Products did not perform as intended and that the Mesh Products were associated with increased risks of serious injuries and resulting sequelae.

201.   Rather than preforming adequate testing to determine the cause of these injuries, or to rule out defects with the Mesh Products, Defendants chose to continue marketing and selling the Mesh Products, fraudulently, intentionally, and/or recklessly misrepresenting, concealing, and/or suppressing material information regarding the safety and efficacy of the Mesh Products.

202.   Defendants knew or should have known that the Mesh Products were unreasonably dangerous in light of their risks.

203.   Defendants knew and consciously disregarded the fact that the Mesh Products caused debilitating injuries and related sequelae with significantly greater frequency than feasible alternative treatment methods.

204.   Defendants fraudulently, willfully, maliciously, oppressively, consciously, intentionally, and/or recklessly misrepresented, concealed, and/or suppressed material information regarding the safety and efficacy of the Mesh Products so as to minimize the perceived risk of injuries caused by the Mesh Products.

205.   Defendants knew or should have known of the Mesh Products' defective and unreasonably dangerous nature, but continued to manufacture, market, distribute, and sell the Mesh Products so as to maximize sales and profits at the expense of the health and safety of the public, including Plaintiffs.

206.   Defendants continue to fraudulently, willfully, maliciously, oppressively, consciously, intentionally, and/or recklessly misrepresent, conceal, and/or suppress material information regarding

**EXHIBIT**

**3**

34

the safety and efficacy of the Mesh Products from the public to promote continued and increased sales of the Mesh Products.

207.    As a direct and proximate result of Defendants' gross negligence, Plaintiffs suffered, and continue to suffer, injuries and damages, as set forth herein.

208.    Furthermore, Defendants have been unjustly enriched as a result of their gross negligence. In addition to the causes of action set forth herein, Plaintiffs assert a claim of unjust enrichment.

209.    Defendants' actions constitute a willful, despicable, fraudulent, malicious, oppressive, reckless, and conscious disregard for the rights of Plaintiffs and the public, justifying an award of punitive damages.

## VII.

### Plaintiffs' Damages

210.    Plaintiffs incorporate all of the above paragraphs as if set forth in full herein.

211.    As a direct and proximate result of Defendants' conduct and Defendants' Mesh Products, Plaintiffs have suffered severe injuries and damages in an amount in excess of the jurisdictional minimum of this Court.

212.    As a direct and proximate result of Defendants' conduct, Plaintiffs suffered physical injuries and damages. Further, the Plaintiffs have sustained in the past, and will sustain in the future, pain and suffering, mental anguish, emotional distress, disfigurement, physical impairment, embarrassment and humiliation, psychological injury, a reasonable and traumatic fear of an increased risk of additional injuries, progression of existing conditions, and other serious injury and loss.

213.    As a direct and proximate result of Defendants' conduct and/or Defendants' Mesh Products, Plaintiffs have incurred, and will continue to incur for the foreseeable future, medical,

EXHIBIT

**3**

35

nursing, diagnostic, hospital, pharmaceutical, rehabilitative, and other related costs and expenses for Plaintiffs' treatment and care, along with lost wages, lost earning capacity, and other damages.

214.    As Defendants' actions constitute a willful, despicable, fraudulent, malicious, oppressive, reckless, and conscious disregard for the rights of Plaintiffs and the public justifying an award of punitive damages, Plaintiffs sue for an additional amount as exemplary damages.

215.    Accordingly, Plaintiffs sue for special, compensatory, and punitive damages, cost of court, reasonable attorneys' fees, pre-judgment and post-judgment interests as authorized by law on the judgments which enter on Plaintiffs' behalf, and for all other relief to which they each may be entitled in law and/or equity.

**VIII.**

**Jury Demand**

216.    Plaintiffs' respectfully request trial by jury.

**IX.**

**Conclusion**

Plaintiffs respectfully request trial by jury and that the Court grant them the following relief against Defendants, both jointly and severely, on all counts of this Complaint, including:

a.    Special and compensatory damages representing fair, just, and reasonable compensation for their respective common law and statutory claims in excess of the jurisdictional minimum of this Court;

b.    Past and future lost wages and lost earning capacity;

c.    Past and future medical expenses;

d.    Past and future disfigurement, physical impairment, mental anguish, pain, and suffering;

e.    Punitive damages;

f.    Cost of court;

**EXHIBIT**

**3**

36

g.  Reasonable attorneys' fees;

h.  Pre-judgment and post-judgment interests as authorized by law on the judgments which enter on Plaintiffs' behalf; and

i.  Such other relief as is deemed just and appropriate.

Respectfully submitted,

**GIRARDI KEESE**



Thomas V. Girardi, SBN 36603
Amy F. Solomon, SBN 140333
1126 Wilshire Boulevard
Los Angeles, California 90017
Telephone: (213) 977-0211
Facsimile: (213) 481-1554

**ARNOLD & ITKIN LLP**
Kurt B. Arnold
Texas State Bar No:  24036150
Jason A. Itkin
Texas State Bar No: 24032461
Noah M. Wexler
6009 Memorial Drive
Houston, Texas 77007
Telephone: (713) 222-3800
Facsimile: (713) 222-3850

**THE MOSTYN LAW FIRM**
J. Steve Mostyn
State Bar No. 00798389
3810 West Alabama Street
Houston, TX  77027
(713) 861-6616 (Office)
(713) 861-8084 (Facsimile)
**Attorneys For Plaintiffs**

EXHIBIT

**3**

37

**COMPLAINT FOR DAMAGES**

# UNITED STATES JUDICIAL PANEL
## on
## MULTIDISTRICT LITIGATION

**IN RE: ETHICON, INC., PELVIC REPAIR
SYSTEM PRODUCTS LIABILITY LITIGATION**                    MDL No. 2327

(SEE ATTACHED SCHEDULE)

**CONDITIONAL TRANSFER ORDER (CTO –185)**

On February 7, 2012, the Panel transferred 36 civil action(s) to the United States District Court for
the Southern District of West Virginia for coordinated or consolidated pretrial proceedings pursuant
to 28 U.S.C. § 1407. *See* 844 F.Supp.2d 1359 (J.P.M.L. 2012). Since that time, 1,604 additional
action(s) have been transferred to the Southern District of West Virginia. With the consent of that
court, all such actions have been assigned to the Honorable Joseph R Goodwin.

It appears that the action(s) on this conditional transfer order involve questions of fact that are
common to the actions previously transferred to the Southern District of West Virginia and assigned
to Judge Goodwin.

Pursuant to Rule 7.1 of the <u>Rules of Procedure of the United States Judicial Panel on Multidistrict
Litigation</u>, the action(s) on the attached schedule are transferred under 28 U.S.C. § 1407 to the
Southern District of West Virginia for the reasons stated in the order of February 7, 2012, and, with
the consent of that court, assigned to the Honorable Joseph R Goodwin.

This order does not become effective until it is filed in the Office of the Clerk of the United States
District Court for the Southern District of West Virginia. The transmittal of this order to said Clerk
shall be stayed 7 days from the entry thereof. If any party files a notice of opposition with the Clerk
of the Panel within this 7–day period, the stay will be continued until further order of the Panel.

FOR THE PANEL:

Jeffery N. Lüthi
Clerk of the Panel

**EXHIBIT
4**

71

IN RE: ETHICON, INC., PELVIC REPAIR
SYSTEM PRODUCTS LIABILITY LITIGATION                    MDL No. 2327

### SCHEDULE CTO–185 – TAG–ALONG ACTIONS

| **DIST** | **DIV.** | **C.A.NO.** | **CASE CAPTION** |
|---|---|---|---|

CALIFORNIA CENTRAL

| DIST | DIV. | C.A.NO. | CASE CAPTION |
|---|---|---|---|
| CAC | 2 | 15–05309 | Theresa Barnes v. Johnson and Johnson et al |
| CAC | 2 | 15–05311 | Linda Berry v. Johnson and Johnson et al |
| CAC | 2 | 15–05312 | Carolyn Blackmer v. Johnson and Johnson et al |
| CAC | 2 | 15–05313 | Kelly Bradley–Lerma v. Johnson and Johnson et al |
| CAC | 2 | 15–05314 | Merry Breeden v. Johnson and Johnson et al |
| CAC | 2 | 15–05315 | Florence Buchanan v. Johnson and Johnson et al |
| CAC | 2 | 15–05316 | Mallah Buell v. Johnson and Johnson et al |
| CAC | 2 | 15–05317 | Sara Carmona v. Johnson & Johnson et al |
| CAC | 2 | 15–05318 | Serena Coovert v. Johnson & Johnson et al |
| CAC | 2 | 15–05319 | Dawn Cunningham v. Johnson and Johnson et al |
| CAC | 2 | 15–05320 | Ilham Dagon v. Johnson and Johnson et al |
| CAC | 2 | 15–05326 | Martha Davis v. Johnson and Johnson et al |
| CAC | 2 | 15–05327 | Margaret Duley v. Johnson and Johnson et al |
| CAC | 2 | 15–05330 | Mary Edwards v. Johnson and Johnson et al |
| CAC | 2 | 15–05331 | Judith Fesler v. Johnson and Johnson et al |
| CAC | 2 | 15–05334 | Mary Friel et al v. Johnson and Johnson et al |
| CAC | 2 | 15–05335 | Ruth Gaunt v. Johnson and Johnson et al |
| CAC | 2 | 15–05336 | Patricia Gibbs v. Johnson and Johnson et al |
| CAC | 2 | 15–05339 | Phyllis Goodman v. Johnson and Johnson et al |
| CAC | 2 | 15–05340 | Dina Guase v. Johnson and Johnson et al |
| CAC | 2 | 15–05342 | Sandra Hamann v. Johnson and Johnson et al |
| CAC | 2 | 15–05344 | Jane Hewlett v. Johnson and Johnson et al |
| CAC | 2 | 15–05345 | Janice Hird v. Johnson and Johnson et al |
| CAC | 2 | 15–05349 | Shirlene Huffman v. Johnson and Johnson et al |
| CAC | 2 | 15–05352 | Mary Katuin v. Johnson and Johnson et al |
| CAC | 2 | 15–05353 | Lauri Kotzen v. Johnson and Johnson et al |
| CAC | 2 | 15–05354 | Ava Krum v. Johnson and Johnson et al |
| CAC | 2 | 15–05355 | Sharon Loughman v. Johnson and Johnson et al |
| CAC | 2 | 15–0535? | ?ta Masters v. Johnson and Johnson et al |
| CAC | 2 | 15–05359 | Judy May v. Johnson and Johnson et al |
| CAC | 2 | 15–05360 | Angela McCaskell v. Johnson and Johnson et al |
| CAC | 2 | 15–05361 | Lisha McMillan v. Johnson and Johnson et al |

**EXHIBIT 4**

| CAC | 2 | 15–05362 | Hildegard Mileusnic v. Johnson and Johnson et al |
| CAC | 2 | 15–05363 | Marcille Miller v. Johnson and Johnson et al |
| CAC | 2 | 15–05364 | Marian Moxley v. Johnson and Johnson et al |
| CAC | 2 | 15–05365 | Tracy Muller v. Johnson and Johnson et al |
| CAC | 2 | 15–05366 | Lisa Murphy v. Johnson and Johnson et al |
| CAC | 2 | 15–05367 | Maida Naquin v. Johnson and Johnson et al |
| CAC | 2 | 15–05368 | Wilhelmina Newman v. Johnson and Johnson et al |
| CAC | 2 | 15–05369 | Joann Nunes v. Johnson and Johnson et al |
| CAC | 2 | 15–05370 | Medina Omerovic v. Johnson and Johnson et al |
| CAC | 2 | 15–05371 | Mary Orsi v. Johnson and Johnson et al |
| CAC | 2 | 15–05372 | Marie Parnell v. Johnson and Johnson et al |
| CAC | 2 | 15–05373 | Donna Pearson v. Johnson and Johnson et al |
| CAC | 2 | 15–05374 | Pamela Peele v. Johnson and Johnson et al |
| CAC | 2 | 15–05375 | Gwen Peltier et al v. Johnson and Johnson. et al |
| CAC | 2 | 15–05376 | Tammy Piazza v. Johnson and Johnson et al |
| CAC | 2 | 15–05377 | Tammy Piotroswski v. Johnson and Johnson et al |
| CAC | 2 | 15–05378 | Bibiana Quiambao v. Johnson and Johnson et al |
| CAC | 2 | 15–05379 | Joyce Reavis v. Johnson and Johnson et al |
| CAC | 2 | 15–05380 | Bobbie Jo Renucci v. Johnson and Johnson et al |
| CAC | 2 | 15–05381 | Sherry Roberts v. Johnson and Johnson et al |
| CAC | 2 | 15–05382 | Xochilt Robinson v. Johnson and Johnson et al |
| CAC | 2 | 15–05383 | Valentine Schuler v. Johnson and Johnson et al |
| CAC | 2 | 15–05384 | Susan Schuricht v. Johnson and Johnson et al |
| CAC | 2 | 15–05385 | Vickie Skelton v. Johnson and Johnson et al |
| CAC | 2 | 15–05386 | Jada Spangler v. Johnson and Johnson et al |
| CAC | 2 | 15–05387 | Pamela Stewart v. Johnson and Johnson et al |
| CAC | 2 | 15–05388 | Shirley Stewart v. Johnson and Johnson et al |
| CAC | 2 | 15–05389 | Beverly Tinkham v. Johnson and Johnson et al |
| CAC | 2 | 15–05390 | Georgina Vokaty v. Johnson and Johnson et al |
| CAC | 2 | 15–05391 | Linda Walton v. Johnson and Johnson et al |
| CAC | 2 | 15–05392 | Regina West v. Johnson and Johnson et al |
| CAC | 2 | 15–05393 | Marie Wick v. Johnson and Johnson et al |

NEW JERSEY

| NJ | 3 | 15–05476 | SOLIS v. JOHNSON & JOHNSON et al |

**EXHIBIT 4**

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

IN RE: ETHICON, INC. PELVIC REPAIR                    MDL No. 2327
SYSTEM PRODUCTS LIABILITY LITIGATION


                                                      Judge Goodwin
                                                      Mag. Judge Eifert

**THIS DOCUMENT RELATES TO:**
CAC- 2:15-cv-05309, *Theresa Barnes v. Johnson & Johnson, et. al.*
CAC- 2:15-cv-05335, *Ruth Gaunt v. Johnson & Johnson, et. al.*
CAC- 2:15-cv-05349, *Shirlene Huffman v. Johnson & Johnson, et. al.*
CAC- 2:15-cv-05362, *Hildegard Mileusnic v. Johnson & Johnson, et. al.*
CAC- 2:15-cv-05387, *Pamela Stewart v. Johnson & Johnson, et. al.*
CAC- 2:15-cv-05311, *Linda Berry v. Johnson & Johnson, et. al.*
CAC- 2:15-cv-05374, *Pamela Peele v. Johnson & Johnson, et. al.*
CAC- 2:15-cv-05312, *Carolyn Blackmer v. Johnson & Johnson, et. al.*
CAC- 2:15-cv-05359, *Judy May v. Johnson & Johnson, et. al.*
CAC- 2:15-cv-05375, *Gwen Peltier v. Johnson & Johnson, et. al.*
CAC- 2:15-cv-05313, *Kelly Bradley- Lerma v. Johnson & Johnson, et. al.*
CAC- 2:15-cv-05357, *Venita Masters v. Johnson & Johnson, et. al.*
CAC- 2:15-cv-05314, *Merry Breeden v. Johnson & Johnson, et. al.*
CAC- 2:15-cv-05355, *Sharon Loughman v. Johnson & Johnson, et. al.*
CAC- 2:15-cv-05373, *Donna Pearson v. Johnson & Johnson, et. al.*
CAC- 2:15-cv-05379, *Joyce Reavis v. Johnson & Johnson, et. al.*
CAC- 2:15-cv-05316, *Mallah Buell v. Johnson & Johnson, et. al.*
CAC- 2:15-cv-05392, *Regina West v. Johnson & Johnson, et. al.*
CAC- 2:15-cv-05319, *Dawn Cunningham v. Johnson & Johnson, et. al.*
CAC- 2:15-cv-05369, *Joann Nunes v. Johnson & Johnson, et. al.*
CAC- 2:15-cv-05370, *Medina Omerovic v. Johnson & Johnson, et. al.*
CAC- 2:15-cv-05390, *Goergina Vokaty v. Johnson & Johnson, et. al.*
CAC- 2:15-cv-05320, *Ilham Dagon v. Johnson & Johnson, et. al.*
CAC- 2:15-cv-05354, *Ava Krum v. Johnson & Johnson, et. al.*
CAC- 2:15-cv-05377, *Tammy Piotrowski v. Johnson & Johnson, et. al.*
CAC- 2:15-cv-05384, *Susan Schuricht v. Johnson & Johnson, et. al.*
CAC- 2:15-cv-05326, *Martha Davis v. Johnson & Johnson, et. al.*
CAC- 2:15-cv-05330, *Mary Edwards v. Johnson & Johnson, et. al.*
CAC- 2:15-cv-05327, *Margaret Duley v. Johnson & Johnson, et. al.*
CAC- 2:15-cv-05342, *Sandra Hamann v. Johnson & Johnson, et. al.*
CAC- 2:15-cv-05360, *Angela McCaskell v. Johnson & Johnson, et. al.*
CAC- 2:15-cv-05331, *Judith Fesler v. Johnson & Johnson, et. al.*
CAC- 2:15-cv-05345, *Janice Hird v. Johnson & Johnson, et. al.*
CAC- 2:15-cv-05361, *Lisha McMillan v. Johnson & Johnson, et. al.*
CAC- 2:15-cv-05378, *Bibiana Quiambao v. Johnson & Johnson, et. al.*
CAC- 2:15-cv-05334, *Mary Friel v. Johnson & Johnson, et. al.*
CAC- 2:15-cv-05336, *Patricia Gibbs v. Johnson & Johnson, et. al.*
CAC- 2:15-cv-05344, *Jane Hewlett v. Johnson & Johnson, et. al.*
CAC- 2:15-cv-05366, *Lisa Murphy v. Johnson & Johnson, et. al.*

**EXHIBIT**
**5**

CAC- 2:15-cv-05380, *Bobbie Jo Renucci v. Johnson & Johnson, et. al.*
CAC- 2:15-cv-05339, *Phyllis Goodman v. Johnson & Johnson, et. al.*
CAC- 2:15-cv-05372, *Marie Parnell v. Johnson & Johnson, et. al.*
CAC- 2:15-cv-05376, *Tammy Piazza v. Johnson & Johnson, et. al.*
CAC- 2:15-cv-05388, *Shirley Stewart v. Johnson & Johnson, et. al.*
CAC- 2:15-cv-05352, *Mary Katuin v. Johnson & Johnson, et. al.*
CAC- 2:15-cv-05364, *Marian Moxley v. Johnson & Johnson, et. al.*
CAC- 2:15-cv-05365, *Tracy Muller v. Johnson & Johnson, et. al.*
CAC- 2:15-cv-05381, *Sherry Roberts v. Johnson & Johnson, et. al.*
CAC- 2:15-cv-05353, *Lauri Kotzen v. Johnson & Johnson, et. al.*
CAC- 2:15-cv-05363, *Marcille Miller v. Johnson & Johnson, et. al.*
CAC- 2:15-cv-05367, *Maida Naquin v. Johnson & Johnson, et. al.*
CAC- 2:15-cv-05389, *Beverly Tinkham v. Johnson & Johnson, et. al.*
CAC- 2:15-cv-05393, *Marie Wick v. Johnson & Johnson, et. al.*
CAC- 2:15-cv-05368, *Wilhelmina Newman v. Johnson & Johnson, et. al.*
CAC- 2:15-cv-05391, *Linda Walton v. Johnson & Johnson, et. al.*
CAC- 2:15-cv-05318, *Serena Coovert v. Johnson & Johnson, et. al.*
CAC- 2:15-cv-05340, *Dina Guase v. Johnson & Johnson, et. al.*
CAC- 2:15-cv-05383, *Valentine Schuler v. Johnson & Johnson, et. al.*
CAC- 2:15-cv-05386, *Jada Spangler v. Johnson & Johnson, et. al.*
CAC- 2:15-cv-05315, *Florence Buchanan v. Johnson & Johnson, et. al.*
CAC- 2:15-cv-05317, *Sara Carmona v. Johnson & Johnson, et. al.*
CAC- 2:15-cv-05371, *Mary Orsi v. Johnson & Johnson, et. al.*
CAC- 2:15-cv-05385, *Vicki Skelton v. Johnson & Johnson, et. al.*
CAC- 2:15-cv-05382, *Xochilt Robinson v. Johnson & Johnson, et. al.*

## **PLAINTIFFS' NOTICE OF OPPOSITION TO CTO-185**

I represent the Plaintiffs in the above-captioned actions that have been included by Defendants on Conditional Transfer Order 185 ("CTO-185"). Plaintiffs in each of the above-captioned actions submit this Notice of Opposition to CTO-185 and understand that Plaintiffs respective Motions to Vacate will be due 14 days from the date of this filing.

**EXHIBIT**

**5**

Respectfully submitted,

*/s/ Kurt B. Arnold*

**ARNOLD & ITKIN LLP**
Kurt B. Arnold
karnold@arnolditkin.com
Jason A. Itkin
Noah M. Wexler
Caj D. Boatright
6009 Memorial Drive
Houston, TX 77007
Telephone: (713) 222-3800
Facsimile: (713) 222-3850

**THE MOSTYN LAW FIRM**
J. Steve Mostyn
Mark Sparks
3810 W. Alabama Street
Houston, TX 77027
(713) 861-6616 (Office)
(713) 861-8084 (Facsimile)

*Attorneys For Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on July 28, 2015, Plaintiffs' Notice of Opposition to CTO-185 was electronically filed through the Court's CM/ECF system, which will send a notice of electronic filing to counsel of record.

*/s/ Kurt B. Arnold*

Kurt B. Arnold

**EXHIBIT**
**5**